**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: September 22, 2010 at 11:30 a.m.<br>Objection Deadline: September 20, 2010 at 12:00 Noon (Deadline Extended for the Committee) |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) SECURED POSTPETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its proposed counsel, hereby submits this limited objection (the "Limited Objection") to the Motion of Debtors and Debtors in Possession for Interim and Final Orders (I) Authorizing (A) Secured Postpetition Financing on a Super Priority Basis Pursuant to 11 U.S.C. § 364, (B) Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c) (the "Motion").[2] In support of its Limited Objection, the Committee respectfully represents as follows:

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Circle System Group, inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).
[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

99992/47
09/20/2010 15225961.1

## BACKGROUND

1. On September 6, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

3. On the Petition Date, the Debtors filed the Motion [Docket No. 12], which sought authorization on an interim and final basis to use the cash collateral of certain prepetition lenders (the "Cash Collateral"), obtain post-petition senior secured super-priority financing, grant adequate protection to certain alleged prepetition secured parties and grant related relief (collectively, the "DIP Financing"). Bank of America, N.A. is the agent and lender (the "Secured Lender") for the financing arrangement proposed in the Motion.

4. On September 8, 2010, the Court entered an interim order [Docket No. 51] (the "Interim Order") granting the Motion on an interim basis and scheduling a final hearing on the Motion for September 22, 2010 (the "Final Hearing"). The Interim Order set a deadline of September 20, 2010 at 12:00 p.m. for the Committee to file an objection to the Motion (the "Objection Deadline").

5. On September 16, 2010, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. On that date, the Committee selected Lowenstein Sandler PC and Womble Carlyle Sandridge & Rice PLLC to serve as its counsel. The Committee has scheduled a conference call on September 21, 2010 to select its financial advisor.

6. As a result of certain issues relating to scheduling and the composition of the Committee, the Committee is in the process of reviewing the Motion and the related documents. Three of the seven members of the Committee are located in Asia and were required to return

home after the Committee formation meeting. The delay caused by such travel, coupled with the intervening Jewish holiday, has hampered the Committee members' ability to discuss the Committee's objections to the Proposed DIP Facility and to select a financial advisor to review the DIP Loan Documents and the Prepetition Loan Documents. Additionally, the holiday has hindered Committee counsel's ability to discuss the DIP Facility with the Secured Lender and the Debtors.

7. On Saturday, September 18, 2010, Committee counsel conferred telephonically with counsel for the Debtors and the Secured Lender with respect to the Committee's concerns relating to the DIP Facility. During that call, Committee counsel suggested that it would make good sense to adjourn the Final Hearing for a week to ten days, subject to the Court's calendar, to allow the Committee sufficient time to retain a financial advisor and get fully up to speed before having to address issues raised by the Final DIP Order. *See*, *e.g.,* Local Bankr. Rule 4001-2(c) ("Ordinarily, the final hearing shall be held at least seven (7) days following the organizational meeting of the creditors' committee contemplated by 11 U.S.C. § 1102."). Counsel for the Secured Lender indicated that they would consider this suggestion with their client but expressed doubt as to whether they would be willing to proceed in such a fashion.

8. In light of today's Objection Deadline, the Committee hereby submits this Limited Objection to place the parties on notice of the Committee's objections. The Committee is continuing its review of the Motion and relevant documents and intends to file a more formal objection by 9:00 a.m. on September 21, 2010. Debtors' counsel has advised that they will not object to the filing of a more formal objection by that date.

**JURISDICTION**

9. The Court has jurisdiction to consider the Motion and this Objection under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**OBJECTION**

10. Several of the items that the Committee finds objectionable in the Motion relate to the fact that the Committee has not received complete financial information from the Debtors. For these reasons, the Committee requests that the Court defer consideration of final approval of the Motion in order to provide the Committee with sufficient time to receive and review the necessary information to fully evaluate the proposed budget and the other relief requested through the Motion. In the alternative, the Final Order should only be approved if it satisfactorily addresses each of the Committee's objections set forth below and in the Committee's formal objection to be filed.

11. Many of the terms of the DIP Facility, the DIP Loan Documents, and the Interim DIP Order are inappropriate under the Bankruptcy Code and applicable law and, if continued in a final order granting the Motion, will unduly prejudice the rights and interests of the Debtors' estates and unsecured creditors. In particular, the Committee objects to the Motion on the following grounds:

- <u>DIP Financing Affords The Lenders Undue Control Over The Chapter 11 Process</u> - The Committee objects to the DIP Financing because its primary purpose is to benefit or improve the position of the Secured Lender. The Motion seeks relief that is calculated not to confer any real benefit for the estates of the Debtors, but rather to secure the existing interests of the Secured Lender and bestow overwhelming control and all remaining estate value on it.

- <u>Questionable Need for Postpetition Financing</u> - The Committee questions the need for DIP financing in these cases. According to the Debtors' budget, it appears the Secured Lender is extending only approximately $3.56 million in "new money" to the Debtors through December 31, 2010, the outside termination date for the DIP Facility. During the budget period ending November 12, 2010, the total debt outstanding to the Secured Lender will decline by $11 million. It does not appear that the Debtors need the DIP financing as proposed in the DIP Motion.

- <u>Excessive Fees</u> - The Committee objects to the excessive fees proposed to be paid to the Lender in connection with the DIP Facility. In consideration for providing approximately $3.56 million in "new money", the Secured Lender will be entitled to receive a DIP Closing Fee of 1% on the entire DIP Facility of $34 million. This represents 10.2% of the "new money" being provided to

the Debtors. The Secured Lender will also receive a monthly servicing fee of $10,000. Additionally, although it is unclear what the interest rate on the DIP Facility actually is, it appears that the interest rate will increase from the Default Rate of 2.0% plus the interest rate otherwise applicable thereto to either 4.25% or 5% over the Base Rate (which is "the rate of interest announced or quoted by Bank from time to time as its prime rate for commercial loans, whether or not such rate is the lowest rate charged by Bank to its most preferred borrowers"). Moreover, all of the Secured Lender's reasonable out-of-pocket expenses, including audit fees and out-of-pocket audit expenses, and including reasonable consultants', appraisers', attorneys' and paralegals' fees of Secured Lender, and other costs and expenses incurred in connection with the Secured Indebtedness, shall be paid by the Debtors on a monthly basis and added to the DIP Indebtedness. Given the limited new financing actually provided by the DIP Facility, the payment of these fees, on top of the interest, is offensive and unwarranted. The costs and fees associated with the DIP Facility appear well above market.

- Improper Roll-Up of Lender's Prepetition Debt - The Committee objects to the roll-up of the Secured Lender's prepetition debt into postpetition claims secured by unencumbered assets of the Debtors. Aside from the grave problems of using postpetition funds to pay prepetition debt outside of a plan of reorganization, the only reasons for the roll-up appear to be to (i) enhance the Secured Lender's collateral position and ensure payment in full of its prepetition claim; (ii) eliminate any defects in its prepetition collateral position; and (iii) generate additional fees and expenses for the Secured Lender.

- Unrealistic Sale Milestones - The Committee objects to the expedited sale process and unreasonable sale milestones in the DIP Loan Documents and Interim Financing Order. The milestones in the DIP Loan Documents dictate a sale process that is too short and, without any realistic mechanisms to obtain and implement extensions, virtually eliminates the potential to increase the value of the Debtors' assets through a competitive bidding process. The Debtors have not disclosed what marketing efforts were conducted prepetition, whether it is possible to sell the Debtors' assets on such a tight schedule given the disputes that exist with Riddell.

- Covenants and Termination Date Triggers - The DIP Facility contemplates a number of covenants by which the Debtors must abide or be in default. Additionally, the Interim Order sets forth numerous events that will trigger a Termination Date. By their nature, these provisions appear highly problematic. The proposed covenants may expose the Debtors to potential default as a result of other events beyond the Debtors' control. In the short time since the Committee's formation, the Committee and its professionals have spent significant time reviewing the prepetition loan documents and the DIP Loan Documents, as well as conducting due diligence of the Debtors corporate and financial structure. The Committee has not yet been able to prepare a sensitivity analysis regarding the Debtors' ability to meet these

covenants. However, the Committee is concerned that the covenants are too restrictive, may not be achievable or are patently improper. In particular, the Interim Order provides that the termination of Ernst & Young without the prior written consent of Secured Lender (which consent may be withheld in its reasonable discretion) on or before November 12, 2010, will terminate the DIP Facility. To date, Ernst & Young has not been retained by the Debtors. In fact, no application for the retention of Ernst & Young has been filed. The Committee had no information regarding the fees to be charged by Ernst & Young, whether Ernst & Young has a conflict precluding its retention or the specific services to be provided. Moreover, such services are potentially duplicative of another financial advisor and investment banker sought to be retained by the Debtors.

- Improper Liens on Avoidance Actions - The Committee objects to the granting of liens on chapter 5 causes of action which are not property of the Debtors' estates. There is no legal basis for the Court to grant the Secured Lender's liens and security interests, or a superpriority administrative expense claim on avoidance actions or the proceeds thereof. More fundamentally, it is unfair to allow the Secured Lender to receive liens and superpriority interests in what may be the unsecured creditors' only source of recovery.

- Inadequacy of the Carve-Out - The Committee objects to the inadequacy of the Carve-Out, which fails to make adequate provision for the payment of the estates' professionals or for the payment of claims pursuant to section 503(b)(9) of the Bankruptcy Code. The Carve-Out must provide for the payment of such claims as administrative claims.

- Section 506(c) Waiver - The Committee objects to the Debtors' waiver of their rights to surcharge the Secured Lender for the cost and expenses associated with the preservation and disposition of its prepetition collateral. Such a waiver is improper and inappropriate in these cases particularly since the DIP Facility does not provide for payment of all administrative expenses.

- Undue Restrictions on the Committee's Investigation Rights - The Committee objects to any attempt to impair the Committee's fiduciary obligation to conduct an investigation of the Secured Lender's alleged prepetition liens and security interests. The Committee should be given a 90 day period to investigate the validity, perfection, and enforceability of the Secured Lender's alleged liens and the amount and allowability of the Debtors' prepetition indebtedness. Further, any such deadline should be limited <u>solely</u> to those matters. The Committee should <u>not</u> be required to assert any and all affirmative claims against the Secured Lender for money damages within such period. The investigation of the acts, conduct and operation of the Debtors' businesses and other matters relevant to these cases is an essential component of the enumerated duties of statutory committees pursuant to section 1103(c)(2) of the Bankruptcy Code and should not be curtailed. The Committee further objects to the proposed Payoff Holdback which would holdback $2,000,000 from the proceeds of any sale or recapitalization to

secure the Debtors' purported indemnification obligations until claims with respect to the Secured Lender's prepetition or postpetition liens on the Collateral are not subject to the rights of third parties to contest such liens.

- <u>Standing to Assert Lien Challenge</u> – The Committee should be granted standing in any final DIP financing order to assert any challenge as to the validity, perfection, and enforceability of the alleged prepetition liens and should not be required to first file a motion seeking standing.

- <u>Competent Evidence Must be Presented To Support Any Findings And Conclusions Contained In A Final Order Approving The DIP Motion</u>. The Interim DIP Order, and presumably, the proposed Final Order contain a myriad findings, conclusions and stipulations. With respect to several of these findings and conclusions, the Committee requests that strict proof thereof be submitted to the Court at the Final Hearing.

- <u>The Committee Must Have Equal Access To Information</u>: The Final Order approving the DIP Facility must direct the Debtors and the Secured Lender to provide the Committee, through its counsel, with copies of all notices and any reports, budgets and/or financial data including, without limitation, projections, borrowing base statements, and reports, and any and all other documents the Debtors or the Secured Lender are required to provide, or otherwise do provide to the Secured Lender or Debtors pursuant to the DIP Loan Documents, the Prepetition Secured Loan Documents, or the Final Order.

- <u>Credit Bidding</u> - Any final DIP financing order should not grant the Secured Lender an automatic and absolute right to credit bid its prepetition claims in any sale under section 363 of the Bankruptcy Code or pursuant to a plan before the Committee's investigation period has expired and any challenges have been settled or adjudicated on a final basis.

12. The Committee objects to any DIP Facility containing the above provisions, protections, limitations and fees as not in the best interests of the Debtors' estates.

## RESERVATION OF RIGHTS

13. The Committee reserves the right to raise further and other objections to the DIP Motion prior to or at the hearing thereon in the event the Committee's objections raised herein are not resolved prior to such hearing.

**WHEREFORE,** the Committee respectfully requests that the Court (a) deny the Motion or, in the alternative, (b) modify the Proposed Final DIP Order to address the Committee's

objections as set forth herein; and (c) grant the Committee such other and further relief as the Court deems just and appropriate.

Dated: September 20, 2010

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

*/s/ Steven K. Kortanek*
Steven K. Kortanek (DE Bar No. 3106)
James M. Lennon (DE Bar No. 4570)
222 Delaware Avenue, Ste. 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330

-and-

**LOWENSTEIN SANDLER P.C.**
Kenneth A. Rosen, Esq.
Jeffrey D. Prol, Esq.
Vincent A. D'Agostino, Esq.
Cassandra M. Porter, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973-597-2500
Facsimile: 973-597-2400

*Proposed Co-Counsel for the Official Committee of Unsecured Creditors*