# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., et al.,[1] | Case No. 10-12795 (KJC) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 12 and 51,** *146* |

## FINAL ORDER AUTHORIZING (A) SECURED POSTPETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364

Upon the motion (the "**Motion**") dated September 6, 2010 of Schutt Sports, Inc. and its affiliates, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**"), (a) seeking this Court's authorization pursuant to sections 363(c), 364(c)(1), 364(c)(2) and 364(c)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), among other things, (i) for the Debtors to obtain postpetition financing in an aggregate amount not to exceed $34,000,000 (the "**DIP Financing**" or the "**DIP Loan**") from Bank of America, N.A. as agent and first-lien lender ("**Secured Lender**"), (ii) for the Debtors to grant the Secured Lender, pursuant to Bankruptcy Code § 364(c), security interests in all of the Debtors' currently owned and after acquired property to secure the Debtors' obligations under the DIP Financing, and (iii) for the Debtors to grant the Secured Lender priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

Code §§ 503(b) and 507(b); (b) seeking this Court's authorization to use the Secured Lender's cash collateral (consisting of DIP Loan proceeds) within the meaning of Bankruptcy Code § 363(a) (the **"Cash Collateral"**), pursuant to Bankruptcy Code § 363(c); (c) seeking this Court's authorization to provide adequate protection, pursuant to Bankruptcy Code §§ 361, 362, 363(e) and 364(d), to the Secured Lender; and (d) requesting that a final hearing (the **"Final Hearing"**) be scheduled by this Court to consider entry of a final order (this **"Order"**) authorizing on a final basis, among other things, the DIP Financing; due and sufficient notice of the Motion under the circumstances having been given; and the Preliminary Hearing and the Final Hearing on the Motion having been held before this Court; and upon the entire record made at the Preliminary Hearing and the Final Hearing, and this Court having found good and sufficient cause appearing therefor;

The Debtors and the Secured Lender STIPULATE for all purposes in these Chapter 11 Cases (as defined below), and the Court hereby makes the following FINDINGS, other than with respect to paragraph D below:

A.     Petition Date. On September 6, 2010 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the **"Chapter 11 Cases"**). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.     Jurisdiction. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2

C.    <u>Debtors' Stipulations Regarding the Prepetition Secured Indebtedness</u>.  Without prejudice to the rights of the parties in interest to the extent set forth in ordering paragraph 26 below:

(i)    The Secured Lender, as administrative agent and as lender, and the Debtors, as borrowers, are parties to that certain Amended and Restated Loan and Security Agreement dated as of September 30, 2005 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**") and all collateral and ancillary documents executed in connection therewith (the "**Prepetition Secured Loan Documents**"), pursuant to which, among other things, Secured Lender agreed, subject to the terms and conditions set forth in the Prepetition Credit Agreement, to make certain loans and other financial accommodations to Debtors through a term loan facility (the "**Prepetition Secured Term Indebtedness**") and a revolving and letter of credit loan facility (the "**Prepetition Secured Revolving Indebtedness**" and together with the Prepetition Secured Term Indebtedness, the "**Prepetition Secured Indebtedness**").  The principal amount of the Prepetition Secured Indebtedness was not less than $34,865,304.27 as of the Petition Date, plus accrued and unpaid prepetition and postpetition interest, fees, expenses and other amounts chargeable under the Prepetition Secured Loan Documents.  A true and correct copy of the Prepetition Credit Agreement and the amendments thereto (including the DIP Amendment) were filed contemporaneously with the Motion as exhibits thereto.  Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Prepetition Credit Agreement.  Without limiting the foregoing, the term "**DIP Event of Default**" shall mean any of the events specified in the DIP Loan Documents (as defined below).

3

(ii)     Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 26 below), (a) the Debtors stipulate that, in accordance with the terms of the Prepetition Secured Loan Documents, the Debtors are truly and justly indebted to the Secured Lender under the Prepetition Secured Loan Documents, without defense, counterclaim or offset of any kind, and that as of the Petition Date the Debtors were liable to the Secured Lender in the amount of the Prepetition Secured Indebtedness, which was not less than the amount set forth in finding paragraph C(i), above, and (b) as of the Petition Date, the Debtors, in consideration of the DIP Financing to be extended, waive and release any and all causes of action and claims against the Secured Lender and its agents, representatives, assigns and successors.

(iii)     Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 26 below), the Debtors further admit that, by reason of the Prepetition Secured Loan Documents, the Prepetition Secured Indebtedness is secured by enforceable liens and security interests granted by the Debtors to the Secured Lender, upon and in substantially all of the Debtors' assets and property, including[2] all of the Debtors' real property and all of the Debtors' assets and property in which a security interest can be obtained under the Uniform Commercial Code, including equipment, inventory, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and all other tangible and intangible personal property and the proceeds and products thereof (including the setoff rights described below, the "**Prepetition Collateral**").

D.     Prepetition Note Indebtedness.     On September 30, 2005, and by amendment thereafter, the Debtors issued pursuant to an Amended and Restated Subordinated Note Agreement

---

[2]     The rules of construction set forth in section 102 of the Bankruptcy Code are incorporated by reference herein and shall apply to this Order.

4

those certain unsecured notes due 2011 (the "**Prepetition Subordinated Notes**") to Windjammer Mezzanine & Equity Fund II, L.P. ("**Windjammer**"). Payment of the Prepetition Subordinated Notes is guaranteed by Schutt Holdings, Inc., the 100% owner of each of the Debtors. As of the Petition Date, the Debtors owed not less than $17.4 million on account of the Prepetition Subordinated Notes (the "**Prepetition Note Indebtedness**"). The Prepetition Subordinated Notes are fully subordinated in right of payment to the Prepetition Secured Indebtedness pursuant to the terms of an Amended and Restated Subordination Agreement, dated as of September 30, 2005 (as amended, restated, supplemented, or otherwise modified, the "**Prepetition Subordination Agreement**"), and in any event are unsecured.

E. <u>Need for Immediate Financing</u>. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses or to pursue an asset sale or recapitalization[3] to maximize the value of the Debtors' estates without the DIP Financing and the use of Cash Collateral. The ability of the Debtors to maintain business relationships with their vendors and suppliers, to maintain their inventory and otherwise finance their operations, is essential to the Debtors' continued viability while the Debtors pursue sale and recapitalization options. In addition, the Debtors' critical need for financing is immediate. In the absence of the DIP Financing and such use of the Cash Collateral, the continued operation of the Debtors' businesses, much of which is seasonal in nature and dependent upon incurring liability in September in advance of the school calendar year, would not be possible and serious and irreparable harm to the Debtors and their estates would occur.

---

[3] As used herein, the term "recapitalization" means a recapitalization that repays the Secured Indebtedness in full, unless the Secured Lender otherwise agrees.

CHI1189539.3
CHI 60,264,321v3 9-24-10

F.     Overadvance.   The Secured Lender has agreed to provide credit support for a sale/recapitalization process, within the parameters and timeframes described below.  The Debtors project that, during the term of the proposed sale/recapitalization process, i.e., through   at least November 12, 2010, they may require "overadvance loans", i.e., loans above the Borrowing Base formula provided for in the Prepetition Credit Agreement (any such amount by which the loans and other financial accommodations exceed the Borrowing Base on any date of determination, an **"Overadvance"**), of up to $3.72 million (inclusive of any and all Overadvance loans that existed on the Petition Date).  The Secured Lender is not willing to incur this additional credit exposure unless the DIP Financing is permitted in accordance with this Order and the DIP Loan Documents and in conjunction with an orderly, court-approved, sale/recapitalization process.

G.     No Unsecured Credit Available.   Given the Debtors' current financial condition and capital structure, the Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a postpetition basis is not otherwise available without the Debtors granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to Bankruptcy Code § 364(c).

H.     Adequate Protection for Secured Lender.   The Secured Lender has negotiated in good faith regarding the Debtors' use of the DIP Financing to fund the administration of the Debtors' estates and continued operation of their businesses.  The Secured Lender has agreed to permit the Debtors to use the DIP Financing for the period through the Termination Date (as defined below), subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code.  The Secured

CH\1189539.3
CHI 60,264,321v3 9-24-10

Lender is entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any Diminution in Value (as defined below). Based on the Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the DIP Financing.

I.    Notice. Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the forty (40) largest unsecured claims against the Debtors, (iii) counsel to the purchaser of the Prepetition Subordinated Notes, (iv) the Internal Revenue Service, (v) counsel to the Secured Lender, (vi) counsel to Windjammer, (vii) all known holders of prepetition liens against the Debtors' property, and (viii) counsel to the official committee of unsecured creditors (the "Committee"). The Final Hearing was held pursuant to the provisions of Bankruptcy Rule 4001(c)(2). The holders of the Prepetition Subordinated Notes were given proper notice of the Final Hearing and the relief requested in the Motion.

J.    Good Faith. Based on the record presented to this Court by the Debtors, it appears (and the Debtors and the Secured Lender have stipulated) that the DIP Financing has been negotiated in good faith and at arm's length between the Debtors and the Secured Lender, and any credit extended and loans made to the Debtors pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

K.    Terms Fair and Reasonable. Based on the record before this Court, it appears (and the Debtors and the Secured Lender have stipulated) that the terms of this Order, including the

7

terms of the DIP Financing, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.     Relief Essential; Best Interests. The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to use Cash Collateral and enter into the DIP Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses, and allow the Debtors to pursue asset sale and recapitalization options that will maximize the value of the Debtors' estates.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.     Motion Granted. The Motion is granted, subject to the terms and conditions set forth in this Order.

2.     Authorization. The Debtors are expressly authorized and empowered to (i) borrow money, use Cash Collateral, incur secured obligations, and perform their obligations pursuant to the provisions of this Order and (ii) enter into such agreements, instruments and documents (collectively, the **"DIP Loan Documents"**), including the Assumption Agreement, Ninth Amendment to Loan and Security Agreement, and Amendment to Other Loan Documents, dated as of September 3, 2010 by and among the Debtors and Secured Lender (the **"DIP Amendment"**) and the Prepetition Secured Loan Documents, as incorporated in this Order, as may be necessary or required to evidence their obligations to Secured Lender, to consummate the terms and provisions

8

of the Motion and this Order and to evidence perfection of the liens and security interests granted to Secured Lender pursuant hereto and thereto. In the event of any inconsistency between the terms of this Order and any other DIP Loan Documents, this Order shall control. All postpetition loans and all other indebtedness and obligations incurred on or after the Petition Date by the Debtors to Secured Lender pursuant to this Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are referred to herein as the **"DIP Indebtedness,"** and, together with the Prepetition Secured Indebtedness, as the **"Secured Indebtedness."**

3.  Borrowing; Refinancing of Prepetition Secured Debt.

a. Subject to the terms and conditions of this Order and the DIP Loan Documents, Secured Lender hereby consents to the Debtors' limited use of Cash Collateral in accordance with subsection (c) hereof. Secured Lender will extend DIP Financing consisting of revolving credit loans to Debtors, not to exceed a maximum amount at any time outstanding of the lesser of (i) $34,000,000, and (ii) the Borrowing Base plus the applicable "Overadvance" set forth in the Approved Budget (as defined below) during the corresponding period shown on the Approved Budget (the **"Permitted Overadvance"**), in each of cases (i) and (ii), less (w) a reserve for the Carve-Out (as defined below), (x) a reserve in the amount of Secured Lender's letter of credit exposure under the Prepetition Credit Agreement; (y) any other Borrowing Base reserves instituted by the Secured Lender at any time (which right of Secured Lender to do so at any time in its sole discretion, is hereby preserved), but subject to ordering paragraph 16(d), and (z) the amount of the Prepetition Secured Revolving Indebtedness outstanding at any given time (the **"DIP Commitment"**).

9

b. The Debtors are authorized to borrow the amount of a loan to refinance the revolving portion of the Prepetition Secured Indebtedness (the "**Replacement DIP Loan**") and use the proceeds thereof to refinance in full the then-outstanding Prepetition Secured Revolving Indebtedness. The refinancing of the revolving portion of the Prepetition Secured Indebtedness as provided herein, and the Replacement DIP Loan made to refund such payment, shall constitute part of the DIP Loan.

c. All DIP Loans shall be used to fund only (a) the Carve-Out (b) the payment of the Prepetition Secured Indebtedness and (c) the budgeted expenditures set forth in the Approved Budget in accordance with the provisions of ordering paragraph 16 hereof.

d. Notwithstanding anything herein or in the other DIP Loan Documents to the contrary, (a) the Debtors shall not use the proceeds of any DIP Financing to fund (i) any key employee retention plan costs, any management incentive plan costs or any other employee bonuses without the express prior written consent of the Secured Lender or (ii) any director and officer insurance premiums or costs (other than as set forth in the Approved Budget) without the prior written consent of the Secured Lender and (b) if Secured Lender in its sole discretion advances funds or other extensions of credit in excess of the applicable Permitted Overadvance (or any other limitations in the DIP Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute DIP Indebtedness entitled to the benefits of the DIP Loan Documents and this Order.

4. <u>Interest, Fees, Costs and Expenses</u>. All DIP Indebtedness shall bear interest at the rates set forth in the DIP Amendment (which includes interest at the default rate provided for in the Prepetition Credit Agreement). Interest shall be payable monthly in arrears on the first day of each month. Interest shall also be paid monthly in arrears on the Prepetition Secured Term Indebtedness

CH\1189539.3
CHI 60,264,321v3 9-24-10

subject to the reapplication to principal if, and to the extent of, a final and nonappealable order is entered determining that the Prepetition Secured Term Indebtedness was undersecured as of the Petition Date. All fees payable under the Prepetition Credit Agreement, including unused line fees, letter of credit fees, banking fees, and treasury management fees, shall be applicable to the DIP Financing. All of the Secured Lender's reasonable out-of-pocket expenses, including audit fees and out-of-pocket audit expenses, and including reasonable consultants', appraisers', attorneys' and paralegals' fees of Secured Lender, and other costs and expenses incurred in connection with the Secured Indebtedness, shall be paid on a monthly basis and added to the DIP Indebtedness, provided that such payments shall be paid not earlier than ten (10) days following receipt by the Debtors, the United States Trustee, and counsel to the Committee, of a written invoice (subject to any applicable privilege or work product doctrines). Such payments shall be subject to disgorgement only pursuant to a final non-appealable order of this Court determining that the fees and expenses incurred and paid were unreasonable. In consideration for providing the DIP Financing, the Secured Lender shall be entitled to receive (a) a 1% closing fee (the "**DIP Closing Fee**"), which shall be fully earned on the date hereof, non-refundable and payable on the date of entry of this Order and (b) a $10,000 servicing fee (the "**Servicing Fee**"), payable each month in advance, and non-refundable.

5.    <u>Termination of DIP Financing</u>.    Secured Lender's willingness to extend DIP Financing hereunder and Secured Lender's consent to the Debtors' use of Cash Collateral shall immediately and automatically terminate (except as Secured Lender may otherwise agree in writing in its sole discretion) upon the earliest to occur of the following (the "**Termination Date**"):

(i)    the date of final indefeasible payment and satisfaction in full in cash of the Secured Indebtedness;

(ii)    the effective date of any confirmed plan of reorganization in any or all of the Chapter 11 Cases;

11

(iii)    any Debtor files any motion with the Court seeking authority to sell any Collateral (as defined below) outside of the ordinary course of business (other than in an Acceptable Sale Transaction, as defined below) without the consent of the Secured Lender (which consent may be withheld in its sole discretion), or the entry of an order by the Court authorizing the sale of any Debtor's business or the sale of any of Debtors' assets outside of the ordinary course of business (other than in an Acceptable Sale Transaction) without the consent of the Secured Lender (which consent may be withheld in its sole discretion);

(iv)    the occurrence of any violation by any Debtor of this Order or an Event of Default under the DIP Loan Documents (in each case, including the occurrence of a Benchmark Default (as defined below)), the Debtors' failure to adhere to the Approved Budgets as set forth in ordering paragraph 16 of this Order, or any violation of the covenants set forth in ordering paragraph 17 of this Order, or any DIP Event of Default;

(v)    the termination of the Stalking Horse Agreement (as defined below) for any reason, unless the Debtors and a purchaser have at such time executed a binding contract for an Acceptable Sale Transaction;

(vi)    the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases into a case under Chapter 7 of the Bankruptcy Code;

(vii)    a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of any Debtor is appointed in any of the Chapter 11 Cases without the prior written consent of the Secured Lender (which consent may be withheld in its sole discretion), or any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the Secured Lender (which consent may be withheld in its sole discretion);

(viii)    this Order or any other order of the Court affecting the DIP Indebtedness is stayed, reversed, vacated, amended or otherwise modified in any respect, or any material provision of the DIP Loan Documents shall cease to be valid and binding on Debtors, without the prior written consent of Secured Lender (which consent may be withheld in its sole discretion);

(ix)    this or any other Court enters an order or judgment in any of the Chapter 11 Cases granting any party other than the Secured Lender relief from the automatic stay to permit any party other than the Secured Lender to enforce its rights with respect to any assets of or in the possession of the Debtors, having an aggregate value for all such parties in excess of $100,000;

(x)    any Debtor files with this or any other Court a challenge to the priority or validity of any Secured Indebtedness or the perfection, priority or validity of Secured Lender's prepetition or postpetition liens on any Collateral (as defined below), or this or any other Court with valid jurisdiction enters an order or judgment in any of the Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority or validity of any Secured Indebtedness or the perfection, priority or validity of Secured Lender's prepetition or postpetition liens on any Collateral or imposing, surcharging or assessing

12

against Secured Lender or any of its claims or any Collateral any costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(xi)     any Debtor files with this or any other Court a plan of reorganization or plan of liquidation in any of the Chapter 11 Cases that does not provide for payment in full in cash of all Secured Indebtedness on the date of effectiveness of such plan, unless otherwise agreed to in writing by the Secured Lender (which agreement may be withheld in its sole discretion);

(xii)     the consummation of the sale or other disposition of all or substantially all of the Collateral;

(xiii)     the payment of any prepetition indebtedness of the Debtors other than the Prepetition Secured Indebtedness or payments on account of prepetition amounts allowed and approved by the Court pursuant to the Debtors' first day motions and specifically provided for in an Approved Budget, except as otherwise consented to by Secured Lender;

(xiv)     the entry of any order of a court of competent jurisdiction that in any way impedes the application of all sale proceeds toward the Secured Indebtedness as provided in this Order;

(xv)     on or before November 12, 2010, the Debtors terminate for any reason Ernst & Young without the prior written consent of Secured Lender (which consent may be withheld in its reasonable discretion); and

(xvi)     December 31, 2010.

Subject to ordering paragraph 16(d), upon the Termination Date, (a) all Secured Indebtedness shall be immediately due and payable in cash (except as Secured Lender may otherwise agree in writing in its sole discretion), (b) Secured Lender shall have no obligation to lend or advance any additional funds to the Debtors, or provide other financial accommodations to the Debtors; provided that the Debtors may use Cash Collateral solely to make ordinary course disbursements to the extent and at times set forth in the Approved Budget during and until three (3) business days after the Debtors and their counsel, counsel to the Committee, and Windjammer and its counsel, receive by fax, e-mail or hand delivery written notice of the occurrence of the Termination Date and (c) Debtors shall not thereafter seek authority to use Cash Collateral except as set forth in the immediately preceding clause (b) or otherwise expressly permitted and consented

13

to by the Secured Lender pursuant to the terms of this Order. Nothing herein shall preclude the Debtors or any party in interest from contesting whether the Termination Date has occurred.

6.    <u>Security for Indebtedness</u>.

a.    Subject to Section 6(c) below, Secured Lender is hereby granted as security for the repayment of the DIP Indebtedness, pursuant to §§ 363, 364(c)(2) and 364(c)(3) of the Bankruptcy Code, valid and perfected first liens, subject only to Prior Claims (as defined below), on all present and after-acquired personal and real property of the Debtors of any nature whatsoever, including all cash contained in any account maintained by the Debtors, all rights of the Debtors under any contract for the sale of the assets, all prepetition causes of action and the proceeds thereof, all real property, the title to which is held by any Debtor, or possession of which is held by any Debtor pursuant to leasehold interest to the extent that such leasehold interest may be encumbered, all the proceeds of all pre-petition causes of action (but excluding all actions arising under §§ 502(d), 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code (such causes of action, the **"Avoidance Actions"**) except as provided in Section 6(b) hereof), together with all proceeds of the foregoing (collectively with all proceeds and products of any or all of the foregoing, the **"DIP Collateral,"** and collectively with the Prepetition Collateral, the **"Collateral"**). As used herein, the term **"Prior Claims"** shall mean (i) any non-avoidable valid, enforceable and perfected liens and security interests in favor of any person or entity on or in the assets of any Debtor, as prepetition debtor, which existed on the Petition Date and are not subject to § 552(a) of the Bankruptcy Code, but only to the extent such liens and security interests are superior in priority to the prepetition liens and security interests of the Secured Lender, after giving effect to any existing subordination or intercreditor arrangements, (ii) the Carve-Out

14

described in ordering paragraph 14 below and (iii) amounts required to be paid by Debtors to the United States Trustee during the term of this Order. Other than the liens and security interests in favor of Secured Lender pursuant to the DIP Loan Documents and this Order and the Prior Claims, no other claims, liens or security interests whether prior to or <u>pari passu</u> with the claims, liens or security interests of Secured Lender shall attach to the DIP Collateral in these or any subsequent or superseding cases (including any conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, collectively, "**Successor Case**") without the express written consent of Secured Lender (which consent may be withheld in its sole discretion). Secured Lender at its option may release at any time from its liens and security interests any assets determined by Secured Lender to have a risk of environmental liabilities which Secured Lender in its sole discretion deems unacceptable. In addition, subject to ordering paragraph 26 of this Order and except to the extent otherwise expressly set forth in this Order, or in a written instrument, agreement or other document executed by one or more duly authorized representatives of Secured Lender, no liens or security interests granted to Secured Lender, and no claim of Secured Lender, shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise. Any security interest or lien upon the DIP Collateral which is avoided or otherwise preserved for the benefit of any Debtors' estates under § 551 or any other provision of the Bankruptcy Code shall be subordinate to the security interests in and liens of Secured Lender upon the DIP Collateral.

b. Notwithstanding anything to the contrary in this Order or the other DIP Loan Documents, Secured Lender is hereby granted as security for the repayment of the DIP

CHI\1189539.3
CHI 60,264,321v3 9-24-10

Indebtedness, pursuant to §§ 363, 364(c)(2) and 364(c)(3) of the Bankruptcy Code, valid and perfected first priority liens in the proceeds of Avoidance Actions, solely to the extent of the amount of the fees and expenses paid to the Committee Professionals (as defined below) in these Chapter 11 Cases.

c. If and to the extent that the Secured Lender is determined by a final order of the Court not to hold a valid and perfected lien on any portion of the Prepetition Collateral (such portion the **"Unencumbered Assets"**), then the amount of the DIP Loan secured by such Unencumbered Assets and any proceeds thereof shall be limited to an amount equal to the maximum amount of the Overadvance actually reached at any time during the term of the DIP Loan (regardless of whether the Overadvance is subsequently reduced or eliminated). For the avoidance of doubt, this Section 6(c) does not affect the provisions of paragraph 26 hereof.

7. <u>Secured Lender's Superpriority Claims</u>. Secured Lender is hereby granted allowed superpriority administrative expense claims (the **"DIP Financing Superpriority Claims"**) pursuant to Bankruptcy Code section 364(c)(1) for the DIP Loan, having priority over any and all other administrative claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all of the Collateral and all proceeds thereof including, without limitation (but subject to the limitation set forth in Section 6(b)), any proceeds or property

CHI 189539.3
CHI 60,264,321v3 9-24-10

recovered in connection with the pursuit of Avoidance Actions; provided, that the DIP Financing Superpriority Claims shall be subject and subordinate only to the payment of the Carve-Out.

8.     Adequate Protection for Prepetition Secured Lender. As adequate protection for the Secured Lender's interest in the Prepetition Collateral for, and in an aggregate amount equal to, the diminution in value (collectively, "**Diminution in Value**") of such interests from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, whether or not resulting from the use, sale or lease by the Debtors of the applicable Prepetition Collateral, the granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) or otherwise, the Secured Lender shall receive the following adequate protection (collectively referred to as the "**Secured Lender Adequate Protections**"):

a.     Adequate Protection Replacement Liens. Solely to the extent of any aggregate postpetition Diminution in Value of the prepetition interests of the Secured Lender in the applicable Prepetition Collateral, the Secured Lender hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, senior replacement Liens upon all of the DIP Collateral, including any Avoidance Actions (but only to the extent set forth in Section 6(b) hereof) (the adequate protection replacement liens granted to the Secured Lender, the "**Adequate Protection Replacement Liens**", which Adequate Protection Replacement Liens on such DIP Collateral shall be subject and subordinate to the DIP Liens, the Prior Claims, and the payment of the Carve-Out to the extent expressly provided in the DIP Loan Documents and this Order.

CH\1189539.3
CHI 60,264,321v3 9-24-10

b. Adequate Protection Super-Priority Claims. Solely to the extent that their respective Adequate Protection Replacement Liens have failed to provide adequate protection, and in such event solely to the extent of any applicable Diminution in Value not adequately protected by such Adequate Protection Replacement Liens, the Secured Lender is hereby granted, subject to the payment of the Prior Claims, the DIP Financing Superpriority Claims, the Adequate Protection Replacement Liens and the Carve-Out, allowed super-priority administrative claims (the **"Adequate Protection Superpriority Claims"**) as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the DIP Financing Superpriority Claims and payable from and having recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including all Avoidance Actions (but only to the extent set forth in Section 6(b) hereof); provided, however, that the Secured Lender shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection Superpriority Claims unless and until (i) all DIP Indebtedness has indefeasibly been paid in full in cash or, in the case of letters of credit or other DIP Indebtedness which survives termination, cash collateralized, in each case, in accordance with the DIP Loan Documents and this Interim Order, and (ii) all DIP Commitments under the DIP Loan Documents have been irrevocably terminated (the conditions described in clauses (i) and (ii), collectively, **"Paid in Full"** or **"Payment in Full"**). The Adequate Protection Super-priority Claims against each Debtor shall be against each Debtor on a joint and several basis.

c. Adequate Protection Payments. In addition to the foregoing, the Secured Lender shall receive from the Debtors, promptly after receipt of invoices therefor, additional adequate protection from and including the Petition Date through and including the

CH\1189539.3
*CHI 60,264,321v3 9-24-10*

Termination Date, in the forms of (i) immediate cash payment of all accrued and unpaid prepetition interest (at the applicable default rate of interest) and all accrued unpaid reimbursable fees, costs and expenses, including, but not limited to, regularly scheduled amortization payments on the Prepetition Secured Term Indebtedness, in each case as provided for, and to the extent permitted, in the Prepetition Secured Loan Documents; and (ii) all reimbursable fees, costs and expenses (including, without limitation, the fees and expenses of counsel and the fees, expenses and transaction fee for financial advisors), in each case as provided for, and to the extent permitted, in the Prepetition Secured Loan Documents and retention agreements permitted thereunder, and without the need to file (or for the applicable professionals to file) any applications for payment of same. Such professionals shall provide documentation to the Debtors, the United States Trustee and any Committee of fees and expenses that shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information and subject to a full reservation of all applicable privileges and work product doctrine). The payments made pursuant to this paragraph 8(c) shall be subject to an appropriate remedy, if, and to the extent of, a final and nonappealable order is entered determining that the Prepetition Secured Term Indebtedness was undersecured as of the Petition Date.

d. <u>Consent to Priming and Adequate Protection</u>. The Secured Lender consents to the adequate protection and the priming provided for herein; <u>provided</u>, <u>however</u>, that the consent of the Secured Lender to the priming of its prepetition liens, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Order and such consent shall not be deemed to extend to any other replacement financing or

19

debtor in possession financing other than the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent shall be of no force and effect in the event this Order is not entered and the DIP Loan Documents and DIP Financing as set forth herein are not approved; and provided, further, that in the event of the occurrence of the Termination Date, nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtors.

9. [intentionally removed]

10. Perfection of New Liens. All liens and security interests on or in the DIP Collateral granted to Secured Lender by this Order, the Interim Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of § 362 of the Bankruptcy Code, (i) Secured Lender may, at its sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as Secured Lender may require, and (ii) Secured Lender may require the Debtors to deliver to Secured Lender any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtors are directed to cooperate and comply therewith. If Secured Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other

20

documents with respect to such security interests and liens, or if Secured Lender, in accordance with the DIP Loan Documents, shall elect to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as set forth herein. Secured Lender may (in its sole discretion) but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of Secured Lender's interests in the DIP Collateral.

11. <u>Waiver</u>. The Debtors and their estates (and any party in interest acting on behalf of any Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without Secured Lender's prior written consent (which may be withheld in its sole discretion), or (b) without prior indefeasible payment and satisfaction in full of the Secured Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any Collateral, which are <u>pari passu</u> with or superior to Secured Lender's liens on and security interests in such Collateral; (ii) to return goods pursuant to § 546(c) of the Bankruptcy Code to any creditor of any Debtor or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise; or (iii) to modify or affect any of the rights of Secured Lender under this Order or any DIP Loan Documents by any order entered in any of the Chapter 11 Cases or any Successor Case.

12. <u>Modification of Automatic Stay; Other Remedies</u>.

CH\1189539.3
CHI 60,264,321v3 9-24-10

a. Except as set forth in subparagraph (b) of this paragraph and ordering paragraph 16 hereof, which govern any action by Secured Lender to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies, the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to Secured Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this Order and the other DIP Loan Documents without further application or motion to, or order from, the Court, and regardless of any change in circumstances (whether or not foreseeable) neither § 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit Secured Lender's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies. Secured Lender is hereby granted leave, among other things, to (i) receive and apply payments of the Secured Indebtedness and collections on and proceeds of the Collateral to the Secured Indebtedness in the manner specified in this Order, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the Prepetition Secured Loan Documents, the DIP Loan Documents and this Order as provided therein, (iv) to give any Debtor any notice provided for in any of the DIP Loan Documents or this Order, (v) upon the Termination Date, cease making loans or other extensions of credit and/or suspend or terminate any obligation of Secured Lender to make loans or other extensions of credit under the DIP Loan Documents or this Order, and (vi) upon the Termination Date, and without application or motion to, or order from the Court or any other court, (A) terminate

22

the DIP Financing under this Order and the other DIP Loan Documents, (B) declare all Secured Indebtedness immediately due and payable, accelerate all Prepetition Secured Indebtedness, and require that all contingent Secured Indebtedness consisting of issued and undrawn letters of credit be cash collateralized or terminated without liability to Secured Lender, and (C) revoke the Debtors' right, if any, under this Order and/or the other DIP Loan Documents to use Cash Collateral; provided that the Debtors may use Cash Collateral to make ordinary course disbursements to the extent and at times set forth in the Approved Budget during and until three (3) business days after the Debtors and their counsel, counsel to the Committee, and Windjammer and its counsel receive by fax, e-mail or hand delivery written notice of the occurrence of the Termination Date.

b. Upon the occurrence of any DIP Event of Default, or upon the Termination Date, Secured Lender shall be entitled (i) to file an expedited motion for relief from the automatic stay for the purpose of foreclosing or otherwise enforcing its liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan Documents, this Order or applicable law, and (ii) to obtain an expedited hearing, subject to the Court's calendar, on such motion upon three (3) business days' notice to counsel for the Debtors, counsel for the Committee, counsel to Windjammer, and the United States Trustee. Secured Lender shall be entitled to relief from the automatic stay sought pursuant to the preceding sentence upon a showing that one or more Events of Default have occurred and are then continuing or that the Termination Date has occurred.

c. Upon Secured Lender's obtaining relief from the automatic stay to enforce Secured Lender's liens or to exercise any other default-related remedies (whether upon further order of this Court or automatically as provided in this Order), (i) the Secured Lender may

CH\1189539.3
CHI 60,264,321v3 9-24-10

exercise any remedies available to Secured Lender under this Order, the Prepetition Credit Agreement and other Prepetition Secured Loan Documents or applicable law, including to foreclose on the Collateral and (ii) provided that Secured Lender in its sole discretion have made available to Debtors (through additional DIP Financing or by consenting to Debtors' use of Cash Collateral) sufficient funds to pay the costs thereof, the Debtors shall cooperate with the Secured Lender in connection with any enforcement action by Secured Lender by, among other things, (A) providing access to their premises to representatives of the Secured Lender, (B) providing Secured Lender access to the Debtors' books and records, (C) performing all other obligations set forth in the Prepetition Credit Agreement, the Prepetition Secured Loan Documents, this Order and/or the other DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the Collateral until Secured Lender can make adequate provision to protect and safeguard the Collateral, and Debtors shall not otherwise interfere or encourage others to interfere with the Secured Lender's enforcement of its rights. In addition, upon the occurrence of any DIP Event of Default (as determined by mutual agreement of the Debtors and the Secured Lender, or in the absence of such agreement, by the Court), or upon the Termination Date, and provided that Secured Lender in its sole discretion has made available to Debtors (through additional DIP Financing or by consenting to Debtors' use of Cash Collateral) funds that in the judgment of the Debtors are sufficient to pay the costs thereof, the Debtors shall, at the request by the Secured Lender, use commercially reasonable efforts to sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to Secured Lender and shall turn over the proceeds of such sale(s) or other disposition(s) to the Secured Lender for application to the Secured Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

24

13.     Priority Claims; No 506(c) Charges.  No costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including any expenses set forth in any Approved Budget or any other budget) by any person or entity shall be imposed against the Secured Lender, its claims, or its Collateral under § 506(c) of the Bankruptcy Code or otherwise, unless, prior to incurring such costs or expenses (i) the party proposing to incur such cost or expense shall obtain the written consent of the Secured Lender allowing such charge to be imposed against Secured Lender, its claims or its Collateral under § 506(c) of the Bankruptcy Code, or (ii) this Court enters an order allowing such charge to be imposed against Secured Lender, its claims or its Collateral under § 506(c) of the Bankruptcy Code.  Nothing in this Order or the Approved Budget or any other budget shall constitute consent to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including any amounts set forth in the Approved Budget or any other budget) against the Secured Lender, its claims or its Collateral under § 506(c) of the Bankruptcy Code or otherwise.

14.     Carve-Out.

a.  "Carve-Out" shall mean:

(i)  the allowed and unpaid professional fees and disbursements incurred by professionals of the Debtors (the "**Debtor Professionals**") and any professionals of statutory committees appointed in the Chapter 11 Cases (the "**Committee Professionals**") from and after the business day immediately following the date on which a notice is given by Secured Lender of any DIP Event of Default to the Debtors, their counsel, lead counsel for any committee, counsel to Windjammer, the United States Trustee, and the Court (the "**Trigger Notice**"), regardless of when such fees and expenses become

25

allowed by order of the Court, in an aggregate amount not in excess of $100,000 for Debtor Professionals and $50,000 for Committee Professionals, plus the lesser of (a) the aggregate weekly line item amounts for (y) "Bankruptcy Professional Fees - Debtor" set forth in the Approved Budget (which amounts per week shall be reserved exclusively for the Debtor Professionals and shall not be shared with any other professionals retained in these cases) and (z) "Bankruptcy Professional Fees - UCC" set forth in the Approved Budget (which amounts per week shall be reserved exclusively for the Committee Professionals and shall not be shared with any other professionals retained in these cases), and (b) the actual professional fees and disbursements incurred by the Debtor Professionals and the Committee Professionals, in either case to the extent such amounts (x) were incurred on or prior to the date on which the Trigger Notice was delivered, (y) have or have not been paid, and (z) are previously or subsequently allowed by the Court; and

(ii) the payment of fees pursuant to 28 U.S.C. § 1930.

b. Notwithstanding anything to the contrary herein, the Carve-Out and payment of allowed professional fees covered by the Carve-Out that are due and owing (to the extent not paid by Debtors, and after demand upon Secured Lender) shall be prior to the repayment of obligations under the DIP Loan Documents, obligations under the Prepetition Secured Loan Documents and other payment obligations of the Debtors. The Carve-Out shall be construed as the Secured Lender's agreement to subordinate its claims and liens to payment

26

of the Carve-Out without reduction to the extent of the Secured Indebtedness or liens and security interests securing the Secured Indebtedness;

c. Subject to subsection (a) above, the Debtors are authorized to pay (i) Debtor Professionals' compensation and reimbursement of fees and expenses payable under Bankruptcy Code sections 328, 330 and 331, as the same may be due and payable under any interim compensation procedures or otherwise, and (ii) Committee Professionals' compensation and reimbursement of fees and expenses allowed and payable under Bankruptcy Code sections 328, 330 and 331, as the same may be due and payable; provided, however, that the Debtor Professionals and the Committee Professionals shall be required to first satisfy such allowed fees and expenses from any prepetition retainers held by such professionals prior to payment from the Debtors or from the proceeds of DIP Financing.

d. Secured Lender shall have the right to reserve against borrowing availability under the DIP Loan Documents for the amount of the Carve-Out (including the post-Trigger Notice amounts set forth above) based, in part, on the professional fees and disbursements incurred by the Debtors and any statutory committee appointed in the Chapter 11 Cases, to the extent not paid currently, including, without limitation or duplication, reserves established as of the first day of each week for the professional fees and disbursements projected to be incurred during such week as contemplated by the Approved Budget. By no later than the 15th calendar day of each month, the Debtors and any statutory committee appointed in these Chapter 11 Cases shall use commercially reasonable efforts to deliver to the Secured Lender reasonably detailed invoices for their respective professionals' fees incurred during the prior calendar month. Promptly following the issuance by any professional included in the Carve-Out of its invoice for services rendered, the Secured

27

Lender may adjust its reserve and Debtors' borrowing availability to reflect the actual invoiced expenses for such period.

e. Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, the prepetition and postpetition liens and security interests and the administrative priority claims of the Secured Lender shall be senior to, and no proceeds of Secured Indebtedness or Cash Collateral (including any prepetition retainer funded by the Secured Lender pursuant to the Prepetition Secured Loan Documents) nor any Collateral (or proceeds thereof) may be used to pay, any claims for services rendered by any of the Debtor Professionals or the Committee Professionals in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief:   (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Secured Indebtedness or the liens and security interests of the Secured Lender in any Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by Secured Lender of any of their rights and remedies under this Order and/or the DIP Loan Documents or the Secured Lender's enforcement or realization upon any of the liens on or security interests in any Collateral in accordance with the terms of this Order; provided, however, that the foregoing limitations shall not apply to claims of up to $50,000 in the aggregate for services rendered by the Committee Professionals in connection with the investigation of (but not a challenge of) the validity, extent, priority, avoidability or enforceability of the Prepetition Secured Indebtedness or the Secured Lender's prepetition liens on and security interests in the Prepetition Collateral.

CH\1189539.3
CHI 60,264,321v3 9-24-10

15. <u>Cash Collection and Application Procedures</u>. From and after the date of the entry of this Order all collections and proceeds of any DIP Collateral and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtors, or to which the Debtors shall become entitled at any time, shall be deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Credit Agreement (or in such other accounts as are designated by Secured Lender from time to time). All collections and proceeds of any Collateral, subject to professionals' rights with respect to the Carve-Out, shall be delivered to the Secured Lender and shall be applied in accordance with paragraph 18 hereof. All financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtors are located are hereby authorized and directed to comply with any request of Secured Lender to turnover to Secured Lender all funds therein without offset or deduction of any kind.

16. <u>Budget; Use of Loan and Collateral Proceeds</u>.

a. Attached as **Exhibit A** hereto and incorporated herein by reference is a budget (which has been approved by Secured Lender) setting forth by line item all projected sales, cash receipts and disbursements and the Borrowing Base on a weekly and cumulative basis through November 12, 2010 (the **"Initial Approved Budget"**). The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which Secured Lender and the Debtors agree in each of their sole discretion, without the need for further Court approval (but with notice to the Committee) (each such additional budget, a **"Supplemental Approved Budget"**). The aggregate of all items approved by Secured Lender in the Initial Approved Budget and any and all Supplemental Approved Budgets

29

(acceptable to Secured Lender in its sole discretion) shall constitute an "**Approved Budget**." Notwithstanding any provision of this Order, including the provisions of ordering paragraph 3(a), the Secured Lender's obligation to lend funds beyond the term of this Order is conditioned upon its approval of a Supplemental Approved Budget, and the Secured Lender has made no commitments with respect thereto.

    b.  The Debtors shall not:

        (i)    permit cumulative "Cash Receipts" from the Petition Date through September 24, 2010 to be more than $500,000 below the cumulative "Cash Receipts" amount set forth in the Approved Budget for the period commencing on the Petition Date and ending September 24, 2010;

        (ii)    permit cumulative "Cash Receipts" from the Petition Date through October 1, 2010 or any Friday thereafter to be more than $1,000,000 below the cumulative "Cash Receipts" amount set forth in the Approved Budget for the period commencing on the Petition Date and ending on such date;

        (iii)    permit cumulative "Sales" from the Petition Date through September 24, 2010 or any Friday thereafter to be less than 85% of the cumulative "Sales" amount set forth in the Approved Budget for the period commencing on the Petition Date and ending on such date;

        (iv)    permit cumulative of each, on a line-item basis, of "Interest," "Capital Expenditures", "Critical Vendor Payments" or "Bankruptcy Professional Fees -- Debtor" from the Petition Date through September 10, 2010 or any Friday thereafter to be more than 105% of such component's amount set forth in the Approved Budget for the period commencing on the Petition Date and ending on such date;

        (v)    permit the sum of cumulative "Material & freight," "Payroll & payroll related," "General admin," and "Term loan repayment," from the Petition Date through September 10, 2010 or any Friday thereafter to be more than 105% of such components' sum amount set forth in the Approved Budget for the period commencing on the Petition Date and ending on such date; and

        (vi)    permit the sum of cumulative "Total Operating Disbursements" plus cumulative "Total Bankruptcy Disbursements" from the Petition Date through September 10, 2010 or any Friday thereafter to be more than $500,000 in excess of the sum of cumulative "Total Operating Disbursements" plus cumulative "Total Bankruptcy Disbursements" set forth in the Approved Budget for the period commencing on the Petition Date and ending on such date.

CHI\1189539.3
CHI 60,264,321v3 9-24-10

c. Within two (2) business days following the end of each calendar week, the Debtors shall provide the Secured Lender and the Committee with a report, in form and scope reasonably satisfactory to the Secured Lender, comparing actual sales and cash receipts and disbursements with budgeted sales and cash receipts and disbursements for the preceding calendar week and for the aggregate period from the Petition Date through the end of such preceding calendar week.

d. Secured Lender shall have no obligation with respect to the Debtors' use of the proceeds of the DIP Financing or the DIP Collateral (including Cash Collateral constituting DIP Collateral), and shall not be obligated to ensure or monitor the Debtors' compliance with any Approved Budget or to pay (directly or indirectly from its DIP Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget, other than with respect to the Carve-Out. Funds borrowed under this Order and Cash Collateral used under this Order shall be used by the Debtors in accordance with this Order. Except as otherwise provided in ordering paragraphs 18 and 19 hereof, the proceeds of any DIP Financing shall be used for the payment of the expenses set forth in any Approved Budget (subject to the limitations and exceptions set forth in this ordering paragraph) and to fund the Carve-Out. Upon the Termination Date, other than with respect to the Carve-Out, (x) the Secured Lender's obligation to extend the DIP Financing hereunder and under the DIP Loan Documents shall terminate, and (y) the Secured Lender shall have no obligation to provide any additional loans or extensions of credit to the Debtors or to allow the Debtors to use their Cash Collateral, and the Debtors shall no longer be entitled to any additional DIP Financing, and shall be prohibited from using the Cash Collateral of the Secured Lender upon three (3) business days' prior written notice to counsel for the Debtors, counsel to the

31

Committee, and counsel for Windjammer; provided, however, that the Secured Lender shall continue to extend DIP Financing and allow the use of Cash Collateral solely to the extent necessary to enable the Debtors to pay the Carve-Out and to pay administrative expenses incurred and unpaid from the Petition Date through the Termination Date, and solely in accordance with the Approved Budget (the "**Accrued Administrative Expenses**"); provided, further, that other than to pay the Carve-Out, in no event shall the Secured Lender be required to allow the use of its Cash Collateral or to make loans to pay Accrued Administrative Expenses to the extent that doing so would cause, as of any date of determination, the aggregate Secured Indebtedness to exceed the DIP Commitment; and provided further that the institution of any Borrowing Base reserves after the Petition Date, or any other changes to the Borrowing Base (other than ordinary course adjustments reflecting the collection of receivables and the disposition of assets) after the Petition Date shall not preclude the payment of Accrued Administrative Expenses incurred prior to the date of the institution of such Borrowing Base reserve or other change, as applicable. The Secured Lender's consent to any Approved Budget shall not be construed as a consent to the use of any Cash Collateral or a commitment to continue to provide DIP Financing after the occurrence of an Event of Default or beyond the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended, other than as described in the preceding sentence. Nothing herein contained shall: (a) affect or impair the Secured Lender's right to seek adequate protection of their interests in the Prepetition Collateral; or (b) be deemed to constitute a waiver of any postpetition Event of Default (as defined in the Prepetition Credit Agreement) by the Debtors under the Prepetition Credit Agreement or the Prepetition Secured Loan Documents. The Secured Lender may waive

32

any postpetition Event of Default by the Debtors under the Prepetition Credit Agreement or the Prepetition Secured Loan Documents only in writing. In accordance with ordering paragraph 9 hereof, so long as any Secured Indebtedness is outstanding, the Debtors shall not seek, assert, argue for, encourage or support any alternative DIP financing ("**Alternative DIP Financing**") that contemplates any superpriority administrative expense claim or any lien which is pari passu with or senior to those of the Secured Lender, or authorization to use cash collateral without the consent of the Secured Lender (together, a "**Priming Position**"), and the approval of any such Alternative DIP Financing or Priming Position shall be prohibited, <u>unless</u> such Priming Position and the corresponding Alternative DIP Financing requires the repayment in cash in full of all outstanding Secured Indebtedness from the first funds obtained via the Priming Position.

17. <u>Sale and Recapitalization Covenants</u>. The Debtors shall comply with the following covenants (and the deadlines set forth in the following covenants may be extended by the Secured Lender in the Secured Lender's discretion by delivery of a written extension to the Debtors):

a. By September 28, 2010, the Court shall have entered an order authorizing the Debtors to retain Oppenheimer & Co., Inc. on terms and conditions reasonably acceptable to the DIP Agent, to market substantially all of the assets of the Debtors for sale as a going concern.

b. By October 29, 2010, the Debtors shall have (i) received one or more binding letters of intent from third parties for the purchase of substantially all of the Collateral and (ii) completed all solicitation for proposals for the recapitalization of the Debtors' financial obligations.

33

c. By November 12, 2010, the Debtors shall have either (i) entered into a binding agreement (subject only to Court approval) for a sale transaction with a stalking horse purchaser (the "**Stalking Horse Agreement**"), on terms and conditions acceptable to Secured Lender in its sole discretion, with a purchase price that is sufficient to generate net sale proceeds of at least $250,000 in excess of (x) the Secured Indebtedness as of the closing of such sale (plus the Payoff Holdback, as defined below) and (y) the Accrued Administrative Expenses, as of the closing of such sale (an "**Acceptable Sale Transaction**"), and filed with the Court a corresponding a motion for the approval of bidding procedures and the protections (if any) set forth in the Stalking Horse Agreement or (ii) entered into a binding agreement (subject only to Court approval) for the recapitalization of the Debtors' existing business structure, including binding commitments for any related financing, which agreement is on terms and conditions acceptable to Secured Lender in its sole discretion (an "**Acceptable Recapitalization**").

d. If the Debtors have timely entered into a Stalking Horse Agreement:

(i)     On or before November 22, 2010, either the Court shall have entered an order, in form and substance reasonably acceptable to Secured Lender, approving sale procedures and scheduling an auction date and final sale hearing in accordance herewith.

(ii)    By December 10, 2010, the Debtors shall conduct an auction of substantially all of Debtors' assets.

(iii)   By December 15, 2010, the Court shall have entered an order, in form and substance acceptable to the Secured Lender in its sole discretion, approving an Acceptable Sale Transaction.

34

(iv)     By December 27, 2010, the Debtors will close the Acceptable Sale Transaction and deliver sufficient net proceeds of such sale (after provision for Accrued Administrative Expenses through the closing of the sale and the other amounts provided for herein, including the Carve-Out) to Secured Lender in cash to repay all outstanding Secured Indebtedness (including the Payoff Holdback) in full.

e. If the Debtors have timely entered into an agreement for an Acceptable Recapitalization:

(i)     On or before November 15, 2010, the Debtors shall have filed with the Court a plan of reorganization and accompanying disclosure statement to effectuate the Acceptable Recapitalization.

(ii)     On or before December 15, 2010, the Court shall have entered an order approving the disclosure statement that shall accompany the plan of reorganization to effectuate the Acceptable Recapitalization.

(iii)     On or before January 15, 2011, the Court shall have entered an order confirming the plan of reorganization to effectuate the Acceptable Recapitalization.

(iv)     On or before January 21, 2011, the effective date of the confirmed plan of reorganization shall have occurred and the Debtors shall have consummated the Acceptable Recapitalization.

f. The Debtors and their advisors shall provide Secured Lender and Committee with weekly telephonic reports of all sale and recapitalization efforts, expressions of interest and offers received.

35

g. The Debtors shall keep the Secured Lender and Committee informed on a current basis of the status of all written proposals for any sale or recapitalization received and provide the Secured Lender with copies of all such proposals and other related communications received from third parties within two (2) business days after the Debtors' receipt thereof.

h. On each business day, the Debtors shall provide the Secured Lender and Committee with a completed and executed Borrowing Base Certificate, which reflects the Borrowing Base as of the end of the immediately preceding business day.

The Debtors' failure to comply with any of the covenants in the foregoing subparagraphs 17(a) through (e) is referred to herein as a "**Benchmark Default**." The rights of the Committee and Windjammer to object to the reasonableness of the covenants set forth in this Section 17 are hereby preserved, provided, however, that the filing or pendency of any such objection shall not affect the rights of the Secured Lender under this Order or any DIP Loan Document in the event of a Benchmark Default.

18. <u>Application of Collateral Proceeds</u>. Prior to the Termination Date, subject to the Carve-Out, all proceeds of Prepetition Collateral shall be applied. The Debtors shall not have the right to direct the manner of application of any payments to Secured Lender or any other receipts by Secured Lender of proceeds of any Collateral other than in the manner set forth in this ordering paragraph and the Prepetition Credit Agreement.

19. <u>Non-Ordinary Course Dispositions</u>. Except as allowed under Section 2.9 of the Prepetition Credit Agreement, no sale, lease or other disposition of any Collateral outside the ordinary course of business (including any auction or other similar sales or any sales pursuant to a plan of reorganization) may be done without the Secured Lender's prior written consent, unless the

proceeds thereof are used to pay the Secured Indebtedness in full. The Secured Lender shall have the right to credit bid for any asset or assets of the Debtors offered at a sale, lease or other disposition of any Collateral outside the ordinary course of business (including any auction or other similar sales), whether pursuant to a plan of reorganization or a motion pursuant to § 363 of the Bankruptcy Code, or otherwise, and may, if the Secured Lender purchases such asset or assets, offset the purchase price of such asset or assets against the Secured Indebtedness. Notwithstanding any of the foregoing, the provisions regarding credit bid rights are subject to the rights of the Committee to seek further relief to address the effect of any lien or claim infirmity on such credit bid rights. All proceeds of such non-ordinary course dispositions shall be applied in accordance with paragraph 18 hereof.

20. <u>Books and Records</u>. The Debtors shall permit Secured Lender and any authorized representatives designated by Secured Lender (including their auditors, appraisers and financial advisors) to visit and inspect any of the properties of any Debtor, including the Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtors' affairs, finances and business with the Debtors' officers, financial advisor, and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. The Debtors shall permit Secured Lender and any authorized representatives designated by Secured Lender (including their auditors, appraisers and financial advisors) to conduct field exams, inventory appraisals, real estate appraisals and environmental analyses, as deemed necessary by the Secured Lender in its sole discretion and at the expense of Debtors, and the Debtors shall cooperate with such efforts. Without limiting the generality of the foregoing, the Debtors shall promptly provide to Secured Lender and Secured Lender's designated representatives any information, data, appraisals and such other reports and financial information

37

reasonably requested to monitor the Debtors' compliance with the covenants in the Prepetition Credit Agreement and the provisions of the DIP Loan Documents and this Order and to perform Secured Lender's own appraisals or other valuation analyses of any property of any Debtors, if elected by Secured Lender.

21. <u>Secured Lender's Reservation of Rights; No Waiver.</u> Secured Lender does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against any Debtor and any officer, director, employee, agent or other representative of any Debtor. In addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of the Secured Lender arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, in their prepetition capacity, under the Prepetition Secured Loan Documents. Without limiting the generally of the foregoing, the Secured Lender may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Secured Indebtedness, the DIP Indebtedness or otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the protection of the Secured Lender's interests in the Prepetition Collateral. Nothing contained herein or in the DIP Loan Documents shall bind, commit, obligate or otherwise require the Secured Lender to vote in favor of any plan of reorganization or liquidation in these Chapter 11 Cases.

22. <u>Order Binding on Successors.</u> The provisions of this Order shall be binding upon and inure to the benefit of Secured Lender, the Debtors, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any estate in any Successor Case). Except as otherwise explicitly set forth in this

38

Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan Documents.

23. Effect of Dismissal, Conversion or Substantive Consolidation. If any of the Chapter 11 Cases are dismissed, converted, otherwise superseded or substantively consolidated, Secured Lender's rights and remedies under this Order and the DIP Loan Documents shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supercission or substantive consolidation, all of the terms and conditions of this Order, including the liens and the priorities granted hereunder, shall remain in full force and effect.

24. Releases and Validation of Prepetition Secured Indebtedness and Liens; Allowance of Secured Claim. Subject only to the right of the Committee and any other party in interest to object on the terms and conditions set forth in ordering paragraph 26 below the Debtors and their estates, hereby: (a) release and discharge Secured Lender, together with its affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Secured Loan Documents, any aspect of the prepetition relationship between Secured Lender and any Debtor, or any other acts or omissions by Secured Lender in connection with any of the Prepetition Secured Loan Documents or its prepetition relationship with any Debtor; (b) waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Prepetition Secured Indebtedness and the security interests in and liens on the Prepetition Collateral in favor of Secured Lender (which liens and security interests are first priority subject only to the Prior Claims); and (c) agree, without further Court order and without the need

CHI 189539.3
CHI 60,264,321v3 9-24-10

for the filing of any proof of claim, to the allowance of the prepetition claims of the Secured Lender pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Prepetition Secured Indebtedness as fully secured claims according to the Secured Lender's books and records. Prior to Secured Lender's release of liens on the DIP Collateral as and when otherwise appropriate under this Order (other than the release of liens on the DIP Collateral in accordance with ordinary course sales), the Debtors must provide full and general releases to Secured Lender, acceptable in form and substance to Secured Lender in its sole discretion. Unless and until the priority or validity of the Secured Indebtedness and the perfection, priority and validity of Secured Lender's prepetition or postpetition liens on the Collateral are finally and fully allowed and the release by the Debtors is final and not subject to any rights of any third party, including the Committee, to object, the Secured Lender shall be entitled, upon consummation of an Acceptable Sale Transaction or an Acceptable Recapitalization, to hold back a Cash Collateral reserve in the amount of $2,000,000 from the proceeds of the DIP Collateral (the **"Payoff Holdback"**) to secure the Debtors' indemnification obligations under the Prepetition Secured Loan Documents and the DIP Loan Documents.

25.     Secured Lender's Relationship with Debtors.  In making decisions to advance any Loans or other extensions of credit to any Debtor, establishing and funding any reserves, approving and funding any Overadvance, in taking any other actions or exercising any discretion set forth in this Order or the DIP Loan Documents (including the exercise of its approval rights with respect to any budget), Secured Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtor, and Secured Lender's relationship with any Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between Secured Lender and any Debtor with respect to all parties who have received actual notice of this Order.

40

26.     Objections by Parties in Interest.  Except as set forth in finding paragraph C hereof and in ordering paragraph 24 hereof and in this ordering paragraph, all of the provisions of this Order shall be final and binding on the Debtors and all creditors and other parties in interest.  With respect to objections (i) parties in interest other than the Debtors shall have the earlier of (a) November 22, 2010 and (b) the date of confirmation of a plan of reorganization in these Chapter 11 Cases, and (ii) the Committee shall have the earlier of (y) November 19, 2010 (unless extended by agreement between the Committee and Secured Lender without further order of the Court, or by further order of the Court entered prior to November 19, 2010) and (z) the date of confirmation of a plan of reorganization  in these Chapter 11 Cases (collectively, the **"Objection Deadline"**) within which to file, on behalf of the Debtors, and to serve upon counsel for the Secured Lender, objections or complaints respecting (y) the claims, causes of actions and defenses released by the Debtors pursuant to ordering paragraph 24 above or (z) the validity, extent, priority, avoidability, or enforceability of the Prepetition Secured Indebtedness or the Secured Lender's prepetition liens on and prepetition security interests in the Prepetition Collateral (any such party that timely files such an objection or complaint, an **"Objecting Party"**).  In the event that no objections or complaints are filed with this Court and served upon counsel of record for the Secured Lender prior to the Objection Deadline, the provisions of ordering paragraph 24 of this Order shall become final and binding on all such parties on the Objection Deadline.  In the event that one or more objections or complaints are filed with this Court and served upon counsel of record for the Secured Lender prior to the Objection Deadline, the provisions of ordering paragraph 24 of this Order shall become final and binding on all parties other then the Objecting Parties on the Objection Deadline.  For the avoidance of doubt, any trustee appointed or elected in these cases shall, until passage of the Objection Deadline, and thereafter for the duration of any litigation commenced by the filing of an

41

objection or complaint as described in this paragraph 26 (whether filed by such trustee or by any other party in interest, including the Committee, on behalf of the Debtors' estates), be deemed to be a party "other than the Debtors" and shall not, for purposes of such litigation, be bound by the acknowledgments, admissions and confirmations of the Debtors in this Order. Notwithstanding the "roll-up" provisions in this Order, to the extent it is determined by final order of this Court that the Secured Lender did not have a valid and enforceable lien on any prepetition asset of the Debtors, this Order is without prejudice to the Committee's rights to seek appropriate relief, except as provided in paragraph 6(c). For the avoidance of doubt, the roll-up provisions are not intended to prejudice the Committee's lien challenge rights as set forth herein.

27.     <u>Effect of Modification of Order</u>.  The Debtors shall not, without Secured Lender's prior written consent, seek to modify, vacate or amend this Order or any DIP Loan Documents. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Secured Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Secured Indebtedness. Notwithstanding any such stay, modification or vacatur, any Secured Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and Secured Lender shall be entitled to all the rights, privileges and benefits, including the security interests and priorities granted herein, with respect to all such Secured Indebtedness.

28.     <u>Safe Harbor</u>.  The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to

42

obtain credit on the terms and conditions upon which the Debtors and Secured Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

29. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Order have been withdrawn, overruled or resolved in accordance with the terms of this Order.

30. <u>Controlling Effect of Order</u>. To the extent any provisions in this Order conflict with any provisions of the Motion, any Prepetition Secured Loan Documents or any DIP Loan Documents, the provisions of this Order shall control.

31. <u>Order Effective</u>. This Order shall be effective as of the date of signature by the Court.

32. IT IS SO ORDERED.

DATED this 29TH day of September 2010.

_____
KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

CHI\1189539.3
CHI 60,264,321v3 9-24-10