IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 179 |

## DEBTORS' REPLY IN SUPPORT OF THE MOTION TO HOLD RIDDELL, INC. IN CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY

Until October 14th, Riddell failed to produce any documents in response to the Subpoena served upon it on September 20th.[2] As a result, Debtors filed their *Motion to Hold Riddell, Inc. in Contempt of Court for Violation of the Automatic Stay* with only the benefit of seeing a limited number of email communications forwarded to Schutt by customers who were targeted by Riddell's sales staff. On October 14th, Riddell produced just under **a thousand pages** of email communications from its sales staff to current and prospective Schutt customers referencing Schutt's bankruptcy proceedings. Notably, Riddell ignores the content of those emails in *Riddell Inc.'s Objection to Debtors' Motion to Hold Riddell, Inc. in Contempt of Court for Violation of the Automatic Stay* ("**Objection**"). The emails produced by Riddell are admissible evidence in support of Schutt's Motion.[3] Rather than burden the Court with the entire thousand pages, Schutt has included only those emails cited or excerpted herein, identified using the Bates-numbers assigned by Riddell ("**RID __**") (attached hereto as joint **Exhibit 1** ).

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] All capitalized terms shall have the same meaning indicated in the Motion.

[3] *See Lexington Ins. Co. v. Western Pa. Hosp.*, 423 F.3d 318, 328-29 (3d Cir. 2005) (citing cases) (a party's production of documents in response to discovery requests satisfies the "slight" burden of authentication); *United States v. Vaghari*, Criminal Action No. 08-693-01-02, 2009 WL 2245097, *8-*9 (E.D. Pa. July 27, 2009) (production of emails in discovery rendered emails authenticated); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp.2d 389, 398 (D. Conn. 2008) (same).

The documents produced by Riddell reveal that Riddell has repeatedly approached Schutt's customers, citing Schutt's inability to pay the $29 million Wisconsin Litigation pre-petition judgment. These documents also demonstrate a concerted effort to mislead current customers of Schutt in an apparent effort to drive Schutt out of business.[4] The documents show email communications running from just after Schutt's Chapter 11 petition was filed throughout September and into October. Moreover, Schutt's sales representative for the Southeastern region received a telephone call from a high school football coach visited **just last week** by a Riddell manager and salesperson, who not only asserted that Schutt failed to pay after losing "a big lawsuit to Riddell" but also falsely asserted that:

- Schutt is in a Chapter 7 bankruptcy liquidation.

- The coach would no longer be able to obtain Schutt parts for helmets or shoulder pads.

- Schutt would no longer be able to recondition its products.

- "Schutt is getting ready to close its doors."

Declaration of Jay Bode (attached hereto as **Exhibit 2**).

As explained herein, most emails from Riddell asked customers for in-person meetings with Riddell sales personnel to discuss the implications of Schutt's Chapter 11 filing; therefore, it is reasonable to assume that hundreds, if not thousands, of similar telephone or in-person communications from Riddell conveying false information may be occurring in the marketplace. Schutt should be permitted to conduct additional discovery to determine and to demonstrate the scope of such in-person communications from Riddell personnel.

---

[4] At each hearing before this Court, Riddell's counsel has stated that Riddell does not wish to put Schutt out of business. At the September 22, 2010 hearing, for example, Riddell's counsel stated: "We did not want to put this company out of business." (Transcript of Hearing at page 46.) The emails produced by Riddell are at odds with these statements to the Court.

Riddell argues in the Objection that its actions and emails are not an attempt to pressure Schutt to pay the judgment. Objection at ¶¶ 2, 13, 27-30. However, the emails produced thus far show that after the date of Schutt's Chapter 11 petition filing (*i.e.*, the effective date of the automatic stay), Riddell has targeted Schutt customers pressing upon them that Schutt owes Riddell $29 million. (RID 9, 161, 455) Riddell employees sent numerous emails to coaches and athletic directors citing the judgment in the Wisconsin Litigation.[5] (RID 11-12, 14, 15-17, 18-26, 117, 163-75.)

- Santo Buda of Riddell sales wrote: "They did not refute the money they owe or the fact that they lost the patient [sic] infringement suit. ... They must pay all their creditors (many vendors millions of dollars) including Riddell 30 million (29 million in suit and 1 million for parts they owe Riddell). ... Bob, life in the business is a lot like some sports. you get what's coming for you !!!" (RID 44)

- Mike McLerran wrote to the President of the Frisco Football League: "They lost $29 million to us in court for violating our patents. I guess they don't have the $29 mil so they filed bankruptcy." (RID 465)

- Dave Zukowski of Riddell sales wrote: "I GUESS SCHUTT LOST A 30 MILLION DOLLAR JURY DECISION TO US A MONTH AGO. SO THEY OWE RIDDELL THAT CASH PLUS "X" AT $$ PER HELMET THAT THEY SELL OF THEIRS (JUST THE "ION" AND "DNA"]. THEN LAST WEEK SCHUTT FILED FOR CHAPTER 11 BANKRUPTCY. ALSO, THE FATE OF THE XENITH HELMET SYSTEM APPEARS SHAKY, AT BEST." (RID 978)

- Jim Tansey of Riddell wrote to local school personnel: "Dunno how we are going to get the $." (RID 585)

- Gary Paulson of Riddell sales wrote: "They have to pay us royalties going back 5 years and will continue to do so until they fix this. ... This was the largest verdict in the history in the state of Wisconsin for a suit such as this." (RID 508)

- Ryan Wassink of Riddell Sales admits in an email that he used Schutt's bankruptcy to target Schutt customers that had previously rebuffed Riddell. And when doing so, Wassink pointed to NOCSAE as a creditor,

---

[5] In that these documents were only produced by Riddell on October 14, 2010, Schutt has not had an opportunity to conduct further discovery of the authors of each of these emails.

as well as Riddell's judgment. "Even before the $29 Million ruling; they were still $30 Million in debt." (RID 388-89)

- Craig Ray of Riddell sales wrote: "I guess we just put Schutt in the crapper as they have filed chapter 11." (RID 518)

- James Tonelli of Riddell sales wrote: "THANK GOD when we won our lawsuit from Schutt a few weeks back we force them to file for Bankruptcy this week." (RID 596)

Riddell's actions present the same problem for a debtor in possession as occurred in In re Sechuan City, Inc., 96 B.R. 37 (Bankr. E.D. Pa. 1989). There, the creditor "undertook a studied effort to coerce payment of the lessor's prepetition claim" by posting signs asserting that debtor did not pay its bills, which were designed to dissuade potential customers from patronizing the debtor's business. Id. at 41. "While [Riddell] did not bring suit against the debtor, its actions were designed to place the debtor in a position of either paying [Riddell's] prepetition claim or losing business due to [Riddell's] actions. Such a choice runs counter to the purpose of § 362(a)." Id. at 41-42 (revisions added to original quotation).

By targeting Schutt customers and pressing that pre-petition debt, Riddell is again trying to do indirectly what it cannot do directly – pressure Schutt for payment. John Strus of Riddell sales wrote: "We are sending information on Schutt Sports recent Bankruptcy filing to all our customers who purchased Schutt helmets last year." (RID 472, 520) Here, targeting Schutt's customers results in more harmful and egregious interference with Debtors' reorganization than if Riddell had simply sent those hundreds of emails directly to Schutt. Schutt and its employees could at least ignore badgering from Riddell, but Schutt cannot ignore its customers or end-users of its products across the country who are being bombarded with Riddell's messages about the Wisconsin Litigation judgment and the false notion that Schutt's bankruptcy proceedings mean that Schutt will not continue to do business.

The distraction and detriment to Debtors' reorganization is palpable. The automatic stay should have provided Debtors with a breathing spell from the pressuring tactics of creditors. Instead, Riddell has used the past month-and-a-half of these Chapter 11 proceedings as an opportunity to take its effort to collect on the Wisconsin Litigation judgment directly to Schutt's customers. The fact that Riddell is a competitor does not give Riddell license to use such methods to pressure and harass Schutt indirectly by targeting its customers with the pre-petition judgment.

In addition to messages specifically pressing the $29 million judgment, Riddell continues to target Schutt customers asserting that the company will not survive. Riddell International Sales Manager Tony Domenick wrote that Riddell's management team advised its sales force to approach customers regarding Schutt's bankruptcy. (RID 149)

- When a customer indicated its intention to purchase Schutt helmets, Mike Binder of Riddell sales wrote: "FYI: last week Schutt filed for bankruptcy – there is a lot of uncertainty with Schutt at this time. No one knows how things will turn out – I would recommend a wait and see period. Like 12 months." (RID 387)

- Riddell Vice President of Consumer Products Michael Oller wrote: "Schutt has filed for bankruptcy which is a game changer. I don't care who the company is, it will not be 'business as usual' going forward. Whether it is money owed to Riddell or money owed to suppliers, I would be very careful putting any eggs in their basket." (RID 474-75, 478)

- Ryan Wassink of Riddell sales wrote: "There is speculation that they will go under. I think it would be wise to have a Plan B option in place in the event that this occurs." (RID 652) He repeated that claim in other communications. (RID 626, 732)

- When Schutt customers expressed satisfaction with Schutt products, Ryan Wassink of Riddell sales used Riddell's Wisconsin judgment and the prospect that Schutt would "go under" to press for an in-person meeting. (RID 731-32, 737)

- The same was true when customers using Schutt for helmet reconditioning expressed satisfaction. Wassink suggested that Schutt may "go under." Moreover, he cited the fact that because Schutt's parts suppliers are among

its bankruptcy creditors, Schutt "will have a difficult time getting parts from them." Wassink specifically pointed to the unpaid $29 million Wisconsin judgment to Riddell and total debts. (RID 758-59, 771)

The emails produced thus far by Riddell also reveal a concerted effort to seize upon Schutt's bankruptcy and distort its effect – specifically, by spreading fear among schools and coaches that Schutt's helmets already sold and currently on the market lack product liability insurance coverage as a result of the Chapter 11 filing.

- Rob Tattersall of Riddell sales wrote of Schutt: "Not good! No warranties, no new parts, hard to do recon. Plus they have to drop the dna and ion helmets because they infringed on riddell's patents." (RID 583)

- Craig Ray of Riddell sales wrote: "It only helps Riddell in this situation as I am sure customers will be skeptical and if they do go bankrupt the liability on the helmet is gone." (RID 518)

- Tuff Toldness of Riddell sales wrote: "Another thing guys, if you have not heard yet, Schutt filed bankruptcy a couple of weeks ago. Going forward, I think it would be in your best interest to let us do all your reconditioning in the future. We do not believe Schutt will have any product liability insurance in place going forward through bankruptcy!" (RID 586)

- Tuff Toldness of Riddell sales wrote: "I don't know if you have heard or not, but Schutt filed bankruptcy a couple of weeks ago, going forward it would be in your best interest to let us provide helmets and do your reconditioning in the future. Riddell does not believe Schutt has any product liability insurance in place." (RID 588)

- Tuff Toldness of Riddell sales wrote: "Also, I don't know if you have heard yet, but Schutt (helmet maker) filed bankruptcy recently. Going forward it would be to your advantage if you let us do your reconditioning and also buy Riddell helmets. We do not believe Schutt has or will have any product liability insurance in place." (RID 589)

- Riddell Sales and Regional Training Specialist Mike Hamilton wrote: "Check this out… another good reason to switch to Riddell. There is going to be a lot of uncertainty surrounding this company. the worst case scenario is that they get bought out by another company and that new company will not carry product liability insurance on the helmets already on the field." (RID 365-66, attaching news of Riddell's patent infringement judgment)

- Rick Carl of Riddell teams sales wrote: "Speaking of Football, as you might have heard by now Schutt (the other football helmet company) filed for bankruptcy on 9-6-10, they owe over $60,000,000.00 to their suppliers... This raises a lot of questions for those schools that use their helmets – are parts going to be available, is the insurance going to be intact after this year, etc...? At this point nobody really knows what's going to happen with this company. This might be the year to play it safe and try some Riddell helmets and ease your worries." (RID 84-93)

- Matt Spack of Riddell sales wrote: "As you may know by now Schutt has declared bankruptcy and there will be a lot of uncertainty over the next year with their business. This should generate concern with schools carrying an abundance of Schutt helmets." (RID 568)

- Matt Spack of Riddell sales wrote: "There is going to be a lot of uncertainty over the next 6 months and I know you have a lot of Schutt helmets, I don't want to see you guys take a big hit." (RID 567)

And where Riddell did not put its specious claim that Schutt products lacked insurance coverage in the text of its emails, Riddell sent out hundreds of emails attempting to meet in person with customers to press the notion that somehow Schutt's Chapter 11 case affected the safety or insurance on existing Schutt products. Riddell Sales and Regional Training Specialist Mike Hamilton wrote: "I would like to come in and see you to discuss the recent developments with Schutt filing for bankruptcy and how this could possible [*sic*] affect the current helmets MPS has purchased in the past." (RID 347) Ryan Wassink repeatedly told customers that there was an effect on "current equipment," *i.e.*, Schutt products already purchased. (RID 5, 139, 153, 176, 221, 361, 601)[6] Wassink's suggestion that Schutt's bankruptcy impacts school's *current* equipment were duplicated by other Riddell sales personnel, including Brad Dickey of Riddell Sales (RID 338), Riddell Sales and Regional Training Specialist Mike Hamilton (RID 350, 354-360, 407), and Scott Friesner of Riddell Team Sports (RID 294, 297-99, 308-315).

---

[6] Ryan Wassink produced hundreds of pages of similar emails, each asserting that Schutt's bankruptcy proceedings affected Schutt products already purchased and in use. To avoid burdening the Court, Schutt has not included all of those pages; however, the relevant portion of the Riddell's document production containing those additional emails from Wassink is found at RID 608-977.

- "I'm sure you've already heard about Schutt filing for bankruptcy this week. I'd like to discuss how this may affect how [*sic*] old/new schutt products." (RID 704)

- "I'd also like to discuss how this may affect your current schutt helmets going forward." (RID 802)

- ""I'd like to discuss how this may affect your current Schutt products as well." (RID 856)

Brad Hergert of Riddell Sales made clear that the message of Riddell's sales staff would be that Schutt will not have product liability coverage as a result of its Chapter 11 case. Hergert suggested that schools should be wary of doing business with any dealer that uses Schutt for its reconditioning services in light of the bankruptcy. (RID 339) He advised schools to require bidders on reconditioning services to provide a copy of a certificate of products liability insurance. (RID 340) Riddell Sales Representative Tom Rodiez wrote: "not sure if you heard this but Schutt has filed for bankruptcy..... we are not sure what will come of this...but what **our company** is suggesting you contact your dealer and ask for a certificate of insurance on the helmets you bought so you know you are still covered." (RID 517, emphasis added).

This is an obvious attempt to "poison the well" for Schutt products by spreading the false notion that bankruptcy should be equated to a lack of liability insurance coverage. Riddell even went so far as to advise Schutt customers that they would likely not be able to purchase Schutt products going forward as a result of the bankruptcy proceedings. In response to a request from a parent asking if a Schutt helmet was available, Riddell sales representative Ed Luster writes "NO, Schutt just filed bankruptcy on 9/6/2010. Who know [*sic*] what is going to happen to them." (RID 115, 410) These mischaracterizations regarding Schutt were accompanied by flyers suggesting it "would be a good time to try Riddell helmets and reconditioning to guaranty availability, timely delivery and liability insurance on service and products." (RID 40-41, 373-86) Luster's comment was not an anomaly:

- Jim Tonelli of Riddell team sales wrote: "You'll have to switch to Schutt because they don't buy parts from us. But wait...Schutt filed for bankruptcy so you can't do that either. Other choice is to eliminate football or be stuck with us. Sorry." (RID 580)

- James Tonelli of Riddell sales wrote: "Can't buy schutt that [sic] are bankrupt. Lol" (RID 600)

- Santo Buda of Riddell direct teams sales wrote: "I left some info about one of our competitors filing bankruptcy. If you do business with them, there is a chance that their deliverys [sic] may not arrive on time because they owe many vendors a lot of money, so they will have to pay up front for parts and supplies. Riddell is there to fill that void." (RID 48-64, 68, 581)

- Santo Buda of Riddell direct teams sales wrote: "Re: New customers You need to read this !!! Our competitor Schutt has filed bankruptcy. There is an uncertainty about their future and there [sic] ability to deliver products and on time. Riddell is there to fill that uncertainty." (RID 69-82)

- Joe Clausen of Riddell sales wrote in response to an athletic direct making an inquiry on behalf of a parent who wanted the safest helmet from either Riddell or Schutt: "BY THE WAY SCHUTT DECLARED BANKRUPTCY MONDAY DELIVERY FROM THEM COULD BE PROBLEM FROM SCHUTT" (RID 141)

The cases Riddell cites to justify its conduct were those where creditors either made general public commentary regarding a debtor *or* communicated accurate information to the debtor itself. *See* Objection at ¶¶ 31-34. In none of those cases did a creditor specifically target a debtor-in-possession's customers and attempt to dissuade the customers from doing business with the debtor because of the debtor's unpaid debt to the communicating creditor, as Riddell has done here. Moreover, those cases did not involve a creditor communicating false or misleading information about a debtor's insurance coverage or ability to meet customer demands, as Riddell has done here. Finally, those cases did not involve a creditor who would profit by interfering with a debtor's transactions, as Riddell would profit from customers misled into believing that Schutt products carry safety or insurance liability risks.

Riddell's actions exceed the actions of creditors that have been found to violate the automatic stay. Riddell has directly targeted Schutt's customers to press an unpaid pre-petition claim. Riddell has spread misinformation to those customers regarding Schutt's insurance and ability to continue delivering products and services. Riddell has a profit incentive to depress Schutt's sales, which will directly harm other creditors and the value of the bankruptcy estate. The Court should not allow a disgruntled or opportunistic creditor to act in this fashion. The Court should order Riddell to cease its misleading communications regarding the impact of the Wisconsin judgment as well as those communications that mischaracterize the effect of Schutt's bankruptcy case.

The legislative history with respect to the automatic stay notes that it is one of the fundamental debtor protections provided by the Bankruptcy Code. It is intended to give the debtor a breathing spell from creditors and stop all collection efforts and creditor harassment. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340-42 (1977); and S. Rep. No. 989, 95th Cong., 2d Sess. 49-51 (1978). The e-mail campaign initiated by Riddell, which focuses on Riddell's asserted $29 million claim and plays on common public misperceptions about the effects and consequences of bankruptcy, is the epitome of creditor harassment.

Finally, Riddell takes the position that emails sent by sales representatives such as Joe Wilcox who sell Riddell products, are paid a commission by Riddell, and use the "riddellsales.com" email system owned and operated by Riddell are not attributable to Riddell because Riddell has labeled them "independent" rather than "employees." *See* Objection at ¶¶ 12, 18-19, 23. As the emails from other Riddell employees reveal, however, Joe Wilcox copied Riddell sales employees when he sent the message that is attached to the Motion. (RID 602) In

any event, Joe Wilcox and other similarly situated representatives were acting as agents of Riddell and, as such, their acts are attributable to Riddell.[7]

As explained in Schutt's Motion, the label Riddell places on such representatives is irrelevant: Riddell is in possession and control of all emails sent on riddellsales.com mail accounts. Based on Schutt's review of the documents produced to date, Riddell did not produce emails from Joe Wilcox's account, apparently on the basis asserted in the Objection. Presumably that means Riddell did not produce emails from the fifteen other "independent" representatives either. *See* Objection at ¶ 26, n.3. For this reason, this Court should order Riddell to comply *fully* with the terms of the Subpoena (the scope of which was not objected to by Riddell). All communications – including those of "independent" representatives made using riddellsales.com email accounts – should be produced. Further, Riddell should be required to certify that its production is complete and in full compliance with the scope of the Subpoena.

---

[7] *See, e.g., American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1437-38 (3d Cir. 1994) ("a principal will be held liable for the independent contractor-agent's misrepresentations upon matters which the principal might reasonably expect would be the subject of representations, provided the other party has no notice that the representations are unauthorized") (citing *Nagels v. Christy*, 330 S.W.2d 754, 757 (Mo. 1959) (principal liable for misrepresentations by independent contractor sales agent) (citing cases)); *H.C. Smith Investments, LLC v. Outboard Marine Co.*, 377 F.3d 645, 653-54 (6th Cir. 2004) (holding that purportedly independent contractor's acts were attributable to principal company because contractor was an agent of the principal company); *Crouch v. Atlas Van Lines, Inc.*, 834 F. Supp. 596, 601 (N.D.N.Y. 1993) ("the actions of a local representative of a non-domiciliary may be attributed to the non-domiciliary if it requested the performance of the subject actions and the actions benefit it, regardless of whether the representative acted as an agent or independent contractor"); *Kaltreider v. C.I.R.*, 255 F.2d 833, 838 (3d Cir. 1958) ("the rule is settled that a person may engage in business via an agent, and the sales activities of an agent for the benefit of the principal will be imputed to the principal"); *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 793-96 (3d Cir. 1978) (apparent agency is a question of fact to be determined based upon the relationship between the principal and contractor as well as the representations made to third parties; the labels given by the parties to their relationship are not determinative); *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988) (citations omitted) ("When one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent. Liability may attach to the principal corporation even though it is not a party named in the agreement.").

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order, pursuant to sections 105(a), 362(a) and 362(k) of the Bankruptcy Code, granting this Motion and:

(i) holding Riddell in contempt of court for willful violation of the automatic stay under section 362(a) of the Bankruptcy Code;

(ii) ordering Riddell and its sales agents to cease immediately communications to Debtors' current and prospective customers that are designed to harass Debtors, disparage Debtors' products, misinform customers regarding the effect of Debtors' chapter 11 proceedings, and/or coerce payment to Riddell of the judgment entered against Schutt in the Wisconsin Litigation;

(iii) ordering Riddell to comply fully with a subpoena issued to it for the production of documents and electronic information containing such communications, and to certify that its production is complete and in full compliance with the scope of the subpoena;

(iv) awarding Debtors their costs, attorneys fees and actual damages resulting from Riddell's violations of the automatic stay, in an amount to be proven before this Court;

(v) awarding Debtors punitive damages in an amount appropriate to deter Riddell from future violations of the automatic stay;

(vi) permitting Debtors to take additional discovery regarding communications by Riddell's employees and independent sales representatives with Schutt customers or end-users of Schutt products; and

(vii) granting such further and different relief as the Court deems just and proper.

Dated: Wilmington, Delaware
October 18, 2010

GREENBERG TRAURIG, LLP

*Victoria Counihan* (signature)

Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: counihanv@gtlaw.com
 selzers@gtlaw.com

-and-

Keith Shapiro
Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email: shapirok@gtlaw.com
 petermann@gtlaw.com

Counsel for the Debtors
and Debtors-in-Possession