IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SCHUTT SPORTS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-12795 (KJC)<br><br>(Jointly Administered)<br><br>Related Docket No. 331 |

RIDDELL, INC.'S LIMITED OBJECTION TO DEBTORS' MOTION FOR
ENTRY OF ORDERS: (A)(I) APPROVING BID PROCEDURES RELATING
TO SALE OF THE DEBTORS' ASSETS; (II) APPROVING BID PROTECTIONS;
(III) SCHEDULING A HEARING TO CONSIDER THE SALE; (IV) APPROVING
THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; (V)
ESTABLISHING PROCEDURES FOR NOTICING AND DETERMINING CURE
AMOUNTS; AND (VI) GRANTING RELATED RELIEF; AND (B)(I) APPROVING
ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF
CERTAIN ASSETS OF DEBTORS OUTSIDE THE ORDINARY COURSE OF
BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (III) AUTHORIZING THE
ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

Riddell, Inc. ("Riddell"), by and through its undersigned counsel, objects on a limited basis to Debtors' motion (the "Motion") for entry of an order approving Debtors' bid procedures, approving the form and manner of Debtors' notice of sale by auction, approving Debtors' asset purchase agreement, approving sale of certain of Debtors' assets outside the ordinary course of business and authorizing the sale of its assets free and clear of all liens, claims, encumbrances and interests. Debtors have entered into an asset purchase agreement (the "Agreement") with Kranos Intermediate Holding Corporation (the "Stalking Horse Bidder") wherein substantially all of Debtors' assets are to be sold to the Stalking Horse Bidder free and clear of all liens,

---

[1] The debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936) (collectively, "Debtors").

claims, encumbrances and interests. Riddell objects to the terms of the Agreement and the sale of Debtors' assets pursuant to the Agreement to the extent that any of Debtors' assets are to be sold free and clear of Riddell's intellectual property rights, including those assets determined to be in violation of Riddell's patents by the District Court for the Western District of Wisconsin in a judgment entered into prior to the filing of Debtors' bankruptcy cases, or Debtors aim to sell any of Riddell's intellectual property or intellectual property rights.

## BACKGROUND

1.  Riddell and Schutt Sports, Inc. ("Schutt"), a Debtor, are the primary competitors in the United States football helmet market. On December 10, 2008, Riddell brought suit against Schutt in the United States District Court for the Western District of Wisconsin (the "District Court"), Case No. 3:08-cv-00711, asserting numerous claims of patent infringement (the "Wisconsin Litigation").

2.  On August 9, 2010, after a six-day trial before the District Court, the jury entered a verdict (the "Verdict") finding that Schutt infringed upon Riddell's United States Patents, Numbers 6,934,971, 7,240,376 and 7,036,151 (collectively, the "Infringed Patents") through the manufacture, use, sale or offer for sale of its DNA and ION football helmets and REVO facemasks (collectively, the "Infringing Products") and awarding Riddell more than $29,000,000 in damages as compensation for Schutt's patent infringement.

3.  On August 6, 2010, Riddell moved orally for an immediate injunction. On August 10, 2010, in the interests of compromise, Riddell agreed to a stipulation (without prejudice) to postpone the scheduled hearing on Riddell's motion for a permanent injunction until September 7, 2010, and to stay the action until September 10, 2010.

4.  On August 17, 2010, the District Court entered a judgment confirming the Verdict

(the "Judgment").

5. On September 1, 2010, Riddell brought another lawsuit against Schutt in the District Court, Case No. 3:10-cv-00504, claiming that certain of Schutt's "AiR Flex" shoulder pads (the "Shoulder Pads") infringe upon Riddell's United States Patent Number 7,506,384 (the "Shoulder Pad Patent") entitled "Shoulder Pad for Contact Sports" (the "Shoulder Pad Litigation").

6. On September 6, 2010, Schutt filed its petition under Chapter 11 before this Court.

7. Due to Schutt's bankruptcy filing and the effect of the automatic stay, the District Court dismissed the Shoulder Pad Litigation without prejudice.

8. Debtors have now moved pursuant to the Motion to sell substantially all of their assets to the Stalking Horse Bidder, including goods described as "Purchased Assets." Under Section 1.2(a) of the Agreement, the Purchased Assets are described as including "all inventory (including without limitation, raw materials, work in process, finished goods, service parts, packaging materials and supplies)" that are not excluded from the sale.

9. The Agreement does not specifically describe the Purchased Assets as including or excluding the Infringing Products. *See* Agreement at §§ 1.2-1.3.

10. The Agreement also contemplates that the Stalking Horse Bidder will assume all of Schutt's liabilities and obligations, other than those liabilities excluded from the sale, which arise from the Purchased Assets or the operation of Schutt's business, but only to the extent that these liabilities relate to the period commencing on or after the Agreement's closing date. *See* Agreement at § 2.2.

11. The Agreement excludes from the liabilities assumed by the Stalking Horse

Bidder all liabilities and obligations of Schutt resulting from violations of the law that occurred or judgments that were entered prior to the Agreement's closing date, including: (i) all of Schutt's liabilities arising from the Judgment and Schutt's infringement of Riddell's Infringed Patents; and (ii) all other liabilities and claims of infringement of intellectual property by third parties arising from or relating to products sold by Schutt prior to the Agreement's closing date. *See* Agreement at § 2.3.

## DISCUSSION

Riddell objects to the Agreement and any sale pursuant to the Agreement to the extent that Debtors aim to sell any assets to the Stalking Horse Bidder or any other successful bidder free and clear of Riddell's Judgment of infringement or Riddell's other intellectual property rights. Moreover, Riddell objects to any sale of the Infringing Products, or any of Riddell's intellectual property or intellectual property rights, to the Stalking Horse Bidder or any other successful bidder. Irrespective of whether Debtors have such intentions, the Agreement as drafted appears to have such an effect.

Debtors have provided no legal authority that supports their ability to sell their assets free and clear of Riddell's intellectual property rights or any of Schutt's assets that have been judicially determined to violate Riddell's patents. An asset may "only" be sold free and clear of all interests in the asset pursuant to 11 U.S.C. § 363(b) if: (1) applicable nonbankruptcy law permits a sale free and clear of such interests; (2) the interest-holders consent to the sale; (3) such interests are liens and the price at which the property is to be sold is greater than the aggregate value of all liens on the property; (4) such interest is subject to a bona fide dispute; or (5) the interest-holders can be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. 11 U.S.C. § 363(f).

Debtors have stated that they "expect" to be able to sell their assets free and clear of all liens, claims, encumbrances and interests because the parties asserting such interests consent to the sale and/or their interests are liens and the purchase price for the assets is greater than the aggregate amount of all liens on the assets. *See* Motion at ¶¶ 62-63. In making this assertion, Debtors are incorrect. Riddell does *not* consent to a sale of Debtors' assets free and clear of Riddell's intellectual property rights and claims nor does Riddell consent to any sale of the Infringing Products. Additionally, Riddell's intellectual property rights do not constitute liens on Debtors' assets but are Riddell's property. Moreover, Debtors have failed to provide any support for the argument that nonbankruptcy law permits a sale free and clear of Riddell's intellectual property rights and claims, that Riddell's intellectual property rights and claims are subject to bona fide disputes or that Riddell can be compelled to accept a money satisfaction of its intellectual property rights and claims. In fact, courts can only authorize the sale of assets free and clear of interests pursuant to 11 U.S.C. § 363(f)(5) if those interest can be discharged pursuant to a chapter 7 liquidation. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-89 (3d Cir. 2003) ("The Bankruptcy Court determined that, because the travel voucher and EEOC claims were both subject to monetary valuation, the fifth condition had been satisfied. We agree. Had TWA liquidated its assets under Chapter 7 of the Bankruptcy Code, the claims at issue would have been converted to dollar amounts and the claimants would have received the distribution provided to other general unsecured creditors on account of their claims."); *In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("The court's power to sell free and clear is limited by its authority to affect claims. Its equitable power to sell free and clear must be interpreted consistent with its power to discharge claims"). The District Court's determination that Schutt's Infringing Products infringe upon Riddell's intellectual property

rights does not constitute a claim that can be discharged under a chapter 7 liquidation. Debtors have failed to satisfy the requirements of 11 U.S.C. § 363(f) and therefore they cannot sell the Infringing Products or any assets free and clear of Riddell's intellectual property rights and claims.

Debtors also are not permitted to sell any assets that constitute Riddell's intellectual property. "Section 363(b) states the general rule that only 'property of the estate' may be sold pursuant thereto." *In re Interiors of Yesterday, LLC*, Nos. 02-30563LMW, 233, 275, 276, 363, 2007 WL 419646, at *5 (Bankr. D. Conn. Feb. 2, 2007). "Implicit within the statutory grant of authority to sell property under Section 363 . . . is the requirement that the estate actually have an interest in the property to be sold." *In re Atlantic Gulf Communities Corp.*, 326 B.R. 294, 298-99 (Bankr. D. Del. 2005). The question "of whether an interest claimed by a debtor is property of the estate is a matter of federal law." *In re NJ Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *8 (Bankr. D. N.J. June 29, 2006) (citing *In re The Ground Round, Inc.*, 335 B.R. 253, 259 (B.A.P. 1st Cir. 2005) (citing *Butner v. U.S.*, 440 U.S. 48, 55 (1979))). The court must, however, look to the state law or federal law applicable to the property to "determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." *Id.*

United States intellectual property law and the property rights granted under it would be rendered meaningless if the Stalking Horse Bidder or another successful bidder is allowed to acquire the Debtors' assets free and clear of Riddell's intellectual property rights pursuant to a sale under 11 U.S.C. § 363. For instance, the United States Patent Act provides that "whoever without authority makes, uses, **offers to sell, or sells** any patented invention . . . infringes the patent." 35 U.S.C. § 271(a). A sale of goods pursuant to 11 U.S.C. § 363 that have been

previously determined to infringe upon a valid patent violates United States patent law and is impermissible. If the Stalking Horse Bidder is allowed to acquire the Infringing Products now owned by Schutt, the Stalking Horse Bidder will, in turn, sell goods that have been adjudicated to violate Riddell's patent rights. This result means that Riddell would be without any recourse to prevent the further violation of its patents, abrogating United States patent law and rendering it a nullity. Bankruptcy law does not permit debtors, or purchasers under a 11 U.S.C. § 363 sale, to violate United States patent law. *See, e.g., Compak Cos., LLC v. Johnson*, 415 B.R. 334. 343 (N.D. Ill. 2009) (holding that a 363 sale free and clear of a patent licensee's license was void "insofar as it purport[ed] to extinguish the defendant's license" because it was "unclear whether such a sale would be permissible without the licensee's express or implied consent"); *Larami Limited. v. Yes! Entm't, Corp.*, 244 B.R. 56, 59-60 (D. N.J. 2000) (holding that the automatic stay was not intended to enjoin post-petition efforts to prevent a debtor from engaging in unlawful conduct because if the automatic stay were read in this manner, "bankrupt businesses which operated post-petition could violate patent rights with impunity"); *Amplifier Research Corp. v. Hart*, 144 B.R. 693, 694 (E.D. Pa. 1992) (holding similarly).

Further, Riddell is entitled to a permanent injunction enjoining Schutt from selling the Infringing Products. "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Accumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). This right is often protected through the issuance of an injunction ancillary to a judgment of infringement. An ancillary injunction is essential to an infringement judgment because without it the infringement will continue. Courts generally grant injunctions where there is a two-supplier market and the patentee and infringer are direct competitors, as is the case here. *See, e.g., Enterasys Networks, Inc.*, No. 07-cv-229-bbc, 2008 WL 4756498, at *2 (W.D. Wis.

Oct. 29, 2008) (irreparable harm shown where parties are direct competitors); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (affirming permanent injunction based in part on finding that parties were direct competitors); *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, No. 105 CV 1071-ODE, 2007 WL 5011980, at *6 (N.D. Ga. Feb. 23, 2007).

The Bankruptcy Code was never intended by Congress to be a vehicle to allow patent infringers to strip patent holders of their property rights, or strip holders of other intellectual property rights of their rights, nor should it be so construed. No sale pursuant to the Agreement should be approved by this Court that has such an effect.

## CONCLUSION

For the foregoing reasons, Riddell respectfully requests that the Court: (a) deny Debtors' Motion to sell their assets free and clear of Riddell's intellectual property rights or to sell the Infringing Products to the Stalking Horse Bidder or any other bidder at an auction of Debtors' assets; and (b) require that the bid procedures order and the notice of sale by auction specifically state that: (i) the Infringing Products are not assets subject to the sale; and (ii) the assets sold pursuant to the sale are not sold free and clear of Riddell's intellectual property rights or claims.

Date: November 28, 2010

/s/ BG

Laura Davis Jones (Bar No. 2436)
Bruce Grohsgal (Bar No. 3583)
PACHULSKI, STANG, ZIEHL & JONES
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302.778.6401

Daniel A. Zazove, *pro hac vice*
David J. Gold
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: 312.324.8400

Attorneys for Riddell, Inc.