# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. [——]331** |

## ORDER (A) APPROVING BID PROCEDURES RELATING TO SALE OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS; (C) SCHEDULING A HEARING TO CONSIDER THE SALE; (D) APPROVING THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; (E) ESTABLISHING PROCEDURES FOR NOTICING AND DETERMINING CURE AMOUNTS; AND (F) GRANTING RELATED RELIEF

Upon the Motion[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") seeking entry of (i) an order (the "**Order**") (a) approving the bid procedures attached hereto as **Exhibit "1"** (the "**Bid Procedures**"), (b) establishing the date, time and place for a sale hearing (the "**Sale Hearing**"), (c) approving the form, manner of notice and date, time and place of the auction (the "**Sale Notice**"), attached to the Motion as **Exhibit "E"**, (d) establishing procedures for noticing and determining cure amounts (the "**Cure Notice**"), attached to the Motion as **Exhibit "F"**, and (e) granting related relief; and (ii) an order (a) approving the sale of substantially all of the Debtors' assets as specified in the asset purchase agreement (the "**Agreement**") attached to the Motion as **Exhibit "D"** (the "**Purchased Assets**") free and clear of all liens, claims, encumbrances and interests (the "**Transaction**" or the "**Sale**"), (b) authorizing the assumption and assignment of certain executory contracts and unexpired

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Agreement attached thereto as **Exhibit "D"**, and to the extent of any inconsistency, the Motion shall govern.

leases and (c) granting related relief (the "**Motion**"); and it appearing that the notice of the Motion provided is appropriate and sufficient under the circumstances and that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested herein are sections 105(a), 363, 365, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules 1015, 2002, 6004, 6006, and 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

C.     ~~Notice~~The Debtors' notice of the Motion ~~having been given to the Notice Parties (as defined below)~~ is sufficient in light of the circumstances and the nature of the relief requested herein.

D.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including, without limitation: (i) approving the Bid Procedures; (ii) Break-Up Fee (as modified herein and defined herein) and

---

[3]  The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Expense Reimbursement; (iii) scheduling an Auction and a Sale Hearing; (iv) approving the Sale Notice; and (v) approving the Cure Notice.

E.     The Bid Procedures were proposed and negotiated in good faith by the Debtors and the Stalking Horse Bidder and are fair, reasonable and appropriate under the circumstances and are properly designed to maximize the recovery from any sale of the Purchased Assets.

F.     The Break-Up Fee and Expense Reimbursement is the product of extensive negotiations between the Debtors and the Stalking Horse Bidder.  Accordingly, payment of the Break-Up Fee and the Expense Reimbursement under the circumstances described in the Agreement is: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the Transaction and to continue to be bound by the Agreement.

G.     The Break-Up Fee and Expense Reimbursement also induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid, on which the Debtors, their creditors, their other stakeholders and other bidders may rely.  The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors and stakeholders by increasing the likelihood that the Debtors will receive the best possible price for the Purchased Assets. Accordingly, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate under the circumstances.

H.    The Sale Notice attached hereto as **Exhibit "2"** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Transaction, the Sale Hearing, and the Auction and no other and further notice is required.

I.    The Cure Notice attached hereto as **Exhibit "3"** is appropriate and reasonably calculated to provide all counterparties to the Assigned Contracts (the "**Contract Parties**") with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure amounts relating thereto and no further notice is required.

J.    The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.    To the extent set forth herein, the Bid Procedures are approved and the relief requested in the Motion is granted.

2.    All objections to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or as reflected in this Order or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

3.    The Stalking Horse Bidder is hereby deemed a Qualified Bidder, whose Bid shall be deemed a Qualified Bid.  Notwithstanding anything to the contrary herein or in the Bid Procedures, the Stalking Horse Bidder shall have the right, but not the obligation, to be deemed the Back-Up Bidder by the Debtors at the conclusion of the Auction.

4.    The Secured Lender is hereby deemed a Qualified Bidder and shall be entitled to credit bid all or a portion of its claims against the Debtors as a Qualified Bid, subject to the terms of the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy

Code; *provided, however,* nothing in this Order or the Bid Procedures shall (i) constitute a finding or determination with respect to the nature, extent, validity, priority or perfection of the Secured Lender's alleged prepetition security interest in or liens upon the Acquired Assets (the "**Prepetition Liens**"); ~~or~~ (ii) give rise to a defense, claim of mootness or right to offset in any adversary proceeding or contested matter relating to the Prepetition Liens; or (ii) in any way impact, modify or moot the Committee's lien investigation rights as set forth in the Final DIP Order, and *further provided that,* should the Secured Lender be the Successful Bidder, the Secured Lender shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder from an additional advance under the DIP Financing.

5.     The Debtors are hereby authorized to enter into and execute the Agreement (as modified to the extent necessary to comply with the terms of this Order) and to perform such obligations under the Agreement which may arise prior to the Sale Hearing.

6.     The Stalking Horse Bidder shall be entitled, pursuant to the terms of the Agreement, to a break-up fee in the amount of $700,000 (the **"Break-Up Fee"**).  The Stalking Horse Bidder shall be required to submit redacted time entries to substantiate payment of the Expense Reimbursement, which shall be payable pursuant to the terms of the Agreement.  Subject to these modifications, the Break-Up Fee and Expense Reimbursement are  reasonable and appropriate under the circumstances and hereby approved.  In the event that the Transaction is consummated with any party other than the Stalking Horse Bidder, the Debtors shall pay the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement, in accordance with the terms set forth in the Agreement.

7.     The Bid Procedures attached hereto as **Exhibit "1"**, are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed Sale of the Purchased

Assets. The Minimum Initial Overbid shall be $1,000,000 with each subsequent Overbid being in the minimum amount of $100,000.

8. The Debtors are authorized to take any and all actions necessary or appropriate, consistent with the terms of this Order, to implement the Bid Procedures.

9. A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid ~~to the Notice Parties not later than 12:00 p.m. (Prevailing Eastern Time) on~~in accordance with the Bid Procedures on or before December 10, 2010 (the "**Bid Deadline**") and shall comply with the requirements set forth in the Bid Procedures in making such a bid for the Purchased Assets.

10. If the Debtors do not receive any Qualified Bids other than the Agreement with the Stalking Horse Bidder and if the Secured Lender does not credit bid, the Debtors will not hold the Auction, and the Stalking Horse Bidder will be named the Successful Bidder.

11. Not later than December ~~10,~~13, 2010 at ~~8~~12:00 p.m. (Prevailing Eastern Time), the Debtors will notify all Qualified Bidders (including the Stalking Horse Bidder), counsel to the Committee and counsel to the Secured Lender whether the Auction will occur.

12. To the extent at least one Qualified Bid, other than the Stalking Horse Bidder's Bid, is timely received or the Secured Lender elects to credit bid, the Debtors shall conduct the Auction commencing at 10:00 a.m. (Prevailing Eastern Time) on December ~~13,~~14, 2010 at the offices of Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801.

13. Upon conclusion of the bidding, the Auction shall be closed, and Debtors, (i) in consultation with the Committee and the Secured Lender, shall review each Qualified Bid and Overbid on the basis of financial and contractual terms and the factors relevant to the Sale

process and the contract assumption and rejection process, including, without limitation, those factors affecting the speed and certainty of consummating the Proposed Sale and the amount of the cash (or cash equivalent) consideration and the values or costs added by such Qualified Bid's or Overbid's contract assumption and rejection provision, and (ii) after such consultation, identify the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**" and the entity submitting such Successful Bid, the "**Successful Bidder**").

14.     The Debtors, in their reasonable discretion, may, after consultation with the Secured Lender and the Committee, (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors, their estates, their creditors and other stakeholders.

15.     The Debtors shall sell the Purchased Assets to the Successful Bidder upon approval of the Successful Bid by the Bankruptcy Court at the Sale Hearing.  The Purchased Assets will not include any football helmet shells in Debtor's possession as of earlier of the date of the Closing or December 31, 2010, which have been specifically found to infringe patents of Riddell, Inc. in that certain civil action styled *Riddell, Inc. v. Schutt Sports, Inc.*, identified by civil action number 3:08-cv-00711 pending in the United States District Court for the Eastern District of Wisconsin, and the intended sale will not otherwise serve to authorize any continuing or future infringement of Riddell's intellectual property rights (including the allegation of infringement directed to the "AiR Flex QB-WR-9405" shoulder pad set forth in that civil action

CHI 60,507,924v2 11-22-10
CHI 60507924v7 November 30, 2010

styled *Riddell, Inc. v. Schutt Sports, Inc.*, identified by civil action number 10-CV-000504 pending in the United States District Court for the Eastern District of Wisconsin).

16.    ~~15.~~ ~~The Debtors shall sell the Purchased Assets to the Successful Bidder upon approval of the Successful Bid by the Bankruptcy Court at the Sale Hearing.~~ The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval shall constitute Debtors' acceptance of the bid, subject only to approval by the Court at the Sale Hearing.

17.    ~~16.~~ The Court shall conduct the Sale Hearing commencing on December 15, 2010 at 3:00 p.m. (Prevailing Eastern Time), at which time, the Court will consider approval of the Sale to the Successful Bidder and entry of the Sale Order.

18.    ~~17.~~ Objections to ~~(i)~~ approval of the Sale and entry of the Sale Order (the form of which is attached as **Exhibit "C"** to the Motion), including the sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, with the liens, claims, encumbrances and interests to attach to the Sale Proceeds, ~~(ii) proposed Cure Amounts and (iii) the proposed assumption and assignment of agreements (the "**Assigned Contracts**"), including, but not limited to, objections related to adequate assurance of future performance,~~ must be in writing and filed with this Court and served upon (i) counsel to the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.), and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Victoria W. Counihan, Esq.), (ii) counsel to the Stalking Horse Bidder, McGuireWoods, LLP, 625 Liberty Avenue, 23rd Floor, Pittsburgh, Pennsylvania 15222 (Attn:  Mark E. Freedlander, Esq.), (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Mark Kenney, Esq.), (iv) counsel to the Committee (the

CHI 60,507,924v2 11-22-10
CHI 60507924v7 November 30, 2010

"**Committee**"), Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn. Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801 (Attn: Mark L. Desgrosseilliers, Esq.); and (v) counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: ~~J.~~ Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.) (collectively, the "**Notice Parties**"), so as to be received by such ~~parties~~Notice Parties on or before December ~~8,~~10, 2010 at 5:00 p.m. (Prevailing Eastern Time) ~~(the "Objection Deadline")~~; provided, however, that the deadline for objecting to the following shall be the commencement of the Sale Hearing: (a) any objections to the conduct of the Auction itself and (b) in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, ~~the deadline for objecting to the assignment of executory contracts and unexpired leases to such Successful Bidder shall be the commencement of the Sale Hearing, with any such objection being heard at the Sale Hearing or at a later-scheduled hearing as the Court deems appropriate.~~ (i) the form of Sale Order approving such Successful Bidder's asset purchase agreement, and (ii) the proposed asset purchase agreement between the Debtors and such Successful Bidder.

19. Objections (the "**Contract Objections**") to (i) the proposed Cure Amounts and (ii) the proposed assumption and assignment of agreements (the "**Assigned Contracts**"), including, but not limited to, objections related to adequate assurance of future performance, must be in writing and filed with this Court and served upon the Notice Parties so as to be received by such Notice Parties on or before December 14, 2010 at 9:00 a.m. (Prevailing Eastern Time) (the "**Contract Objection Deadline**"); provided, however, in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline to object to the

CHI 60,507,924v2 11-22-10
CHI 60507924v7 November 30, 2010

assignment of executory contracts and unexpired leases to such Successful Bidder shall be at the commencement of the Sale Hearing (the "**Amended Contract Objection Deadline**"). With respect to all Contract Objections, such Contract Objections shall be heard on December ___, 2010 at ___:___.m. (Prevailing Eastern Time) (the "**Contract Objection Hearing**").

20. 18. Unless an objection to the assumption and assignment of an Assigneda Contract Objection is filed and served before the Contract Objection Deadline or the Amended Contract Objection Deadline, as applicable, all counterparties to the Assigned Contracts shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to the Assigned Contracts, and the Debtors and the Stalking Horse Bidder, or Successful Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (ii) deemed to have consented to the assumption and assignment, and (iii) forever barred and estopped from asserting or claiming against the Debtors or the Stalking Horse Bidder, or the Successful Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contracts, including, without limitation, any consent rights, or that there is any objection or defense to the assumption and assignment of such Assigned Contracts.

21. 19. Where a nondebtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Amounts (the "**Disputed Cure Amount**"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearingany hearing on such objection, and subject to the consent of the Stalking Horse Bidder, or the Successful Bidder, as applicable, of such consensual resolution, the Debtors shall promptly provide the Stalking Horse Bidder, or the Successful Bidder, as applicable, and the Committee notice and opportunity to object to such proposed

CHI 60,507,924v2 11-22-10
CHI 60507924v7 November 30, 2010

resolution and, absent an objection, the Cure Amount shall be in the amount agreed upon in such consensual resolution; or (b) to the extent the parties are unable to consensually resolve the dispute prior to ~~the Sale Hearing~~any hearing on such objection, or to the extent that the Stalking Horse Bidder or Successful Bidder, as applicable, does not consent to a proposed resolution prior to ~~the Sale Hearing~~such hearing, then such objection will be heard at the ~~Sale~~Contract Objection Hearing ~~or thereafter~~. Pending a ruling on such objection, (i) the Stalking Horse Bidder or Successful Bidder, as applicable, may, at its sole option and in its discretion, direct that the contract regarding which the Cure Amount objection is pending be removed from the Schedule of Assigned Contracts and render such contract an Excluded Asset; or (ii) the Debtors may reserve the amount necessary to satisfy the Cure Amount in the amount asserted by the objecting non-Debtor counterparty and, at the conclusion of proceedings regarding the objection, either (y) pay the Cure Amount in the amount and as determined by a final Court order or agreement, or (z) if directed by the Stalking Horse Bidder or Successful Bidder, as applicable, remove such contract from the Schedule of Assigned Contracts and render such contract an Excluded Asset. All ~~other~~ objections to the proposed assumption and assignment of an Assigned Agreement will be heard at the ~~Sale Hearing or at a later scheduled hearing as the Court deems appropriate~~Contract Objection Hearing.

22. ~~20.~~ The Debtors are hereby authorized to share certain of the Debtors' contracts that contain confidentiality restrictions with the Stalking Horse Bidder, subject to the terms of the non-disclosure agreement by and between the Debtors and the Stalking Horse Bidder, and other potential bidders, provided that each such potential bidder requesting access to such confidential contracts enters into a non-disclosure agreement with the Debtors, in a form acceptable to the Debtors.

*CHI 60,507,924v2 11-22-10*
CHI 60507924v7 November 30, 2010

23. ~~21.~~ All Qualified Bidders, including the Stalking Horse Bidder and the Secured Lender (if the Secured Lender submits a credit bid), at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtors relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

~~22.~~ ~~All bidders, including the Stalking Horse Bidder, submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters between and among any Qualified Bidder and the Debtors related to the Auction and the terms and conditions of the transfer of the Purchased Assets.~~

24. ~~23.~~ The Sale Notice attached hereto as **Exhibit "2"** provides proper notice to all parties in interest and is approved.

25. ~~24.~~ The Cure Notice attached hereto as **Exhibit "3"** provides proper notice to all parties in interest and is approved.

26. ~~25.~~ Within ~~three~~one (~~3~~1) business ~~days~~day of this Order, the Debtors shall serve by first class mail, postage prepaid (unless otherwise provided in this Paragraph), copies of: (i) this Order; and (ii) the Sale Notice upon the following entities: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the Secured Lender; (d) all taxing authorities having jurisdiction over any of the Purchased Assets subject to the sale, including the Internal Revenue Service; (e) the Environmental Protection Agency; (f) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (g) all parties that have requested special notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of this order; (h) all persons or entities known to the Debtors

that have or have asserted a lien on, or security interest in, all or any portion of the Purchased Assets; (i) all Contract Parties; (j) counsel to the Stalking Horse Bidder; (k) all Attorneys General for the states in which the Debtors conduct business; and (l) all potential bidders previously identified or otherwise known to the Debtors (collectively, the "Notice Parties"who will be served electronically or by facsimile in the event that the Debtors do not a mailing address).  The Debtors shall also serve, within threeone (31) business daysday after entry of this Order, the Sale Notice to all other creditors.  Finally, the Debtors shall serve, within one (1) business day after entry of this Order by overnight delivery, the Cure Notice to all Contract Parties.  The Debtors are also authorized and directed to publish notice the Sale Notice in the national edition of either the Wall Street Journal National Edition or USA Today once within sevenfive (75) business days after entry of this Order.

27.    The Debtors, after consultation with the Secured Lender, the Committee and the Stalking Horse, reserve the right to: (a) waive terms and conditions set forth herein with respect to any or all potential bidders, including, without limitation, waiver of any requirement that a Qualified Bidder serve as a back-up bidder, (b) impose additional terms and conditions with respect to any or all potential bidders, (c) extend the deadlines set forth herein or the date for the Auction and/or Sale Hearing (which may occur in open court); and (d) amend the Bid Procedures as they may determine to be in the best interests of their estates.

28.    26. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

29.    27. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. 28. Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

31. 29. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

Dated:  Wilmington, Delaware
　　　　　　　　 _____, 2010


_____
HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE

Document comparison by Workshare Professional on Tuesday, November 30, 2010
9:30:47 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://CHI-DMS1/CHI/60507924/2 |
| Description | #60507924v2<CHI> - Schutt - Bid Procedures Order (Platinum Version) |
| Document 2 ID | interwovenSite://CHI-DMS1/CHI/60507924/7 |
| Description | #60507924v7<CHI> - Schutt - Bid Procedures Order (Platinum Version) |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 47 |
| Deletions | 49 |
| Moved from | 7 |
| Moved to | 7 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 110 |

# **EXHIBIT 1**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. [—]331** |

## BID PROCEDURES

Schutt Sports, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") filed chapter 11 cases, which are pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), jointly administered under Case No. 10-12795 (KJC).  By motion dated November 22, 2010 (the "**Motion**"), the Debtors ~~seek~~sought, among other things, approval of the processes and procedures set forth below (the "**Bid Procedures**") to effectuate the sale of the Purchased Assets (the "**Transaction**").[2]  The Bid Procedures are designed to facilitate a full, open and fair bidding process to maximize the value of the Purchased Assets for the benefit of the Debtors' creditors, stakeholders and their bankruptcy estates.

On December 15, 2010, at 3:00 p.m. (Prevailing Eastern Time), as further described below, the Bankruptcy Court shall conduct a hearing (the "**Sale Hearing**") at which time the Debtors shall seek entry of an order (the "**Sale Order**") authorizing and approving the sale of the Purchased Assets (the "**Proposed Sale**") to the Stalking Horse Bidder (as defined below) or the Successful Bidder (defined below), as applicable.

*Asset Purchase Agreement*

The Debtors and the Stalking Horse Bidder have entered into an asset purchase agreement (the "**Agreement**"), pursuant to which the Stalking Horse Bidder will acquire the Purchased Assets free and clear of all liens, claims or interests other than the Assumed Liabilities.  The Purchased Assets do not include the Excluded Assets.  The Transaction contemplated by the Agreement is subject to competitive bidding, as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein) or the Motion, as applicable.

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "**Potential Bidder**") must first deliver (unless previously delivered) to the Debtors' investment banker and counsel (as identified below), no later than December 3, 2010, at 5:00 p.m. (Prevailing Eastern Time)2010 (the "**Participating Requirements Deadline**"), the following items, in writing (collectively, the "**Participation Requirements**"):

(a)    <u>Confidentiality Agreement</u>. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors (each, a "**Confidentiality Agreement**");

(b)    <u>Identification of Potential Bidder</u>. Identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction; and

(c)    <u>Proof of Ability to Close</u>. Written evidence that enables the Debtors to determine whether the Potential Bidder has the ability to close the contemplated Transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Transaction. Such information should include, *inter alia*, the following:

(i)    the Potential Bidder's current financial statements (audited if they exist);

(ii)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; <u>provided</u>, <u>however</u>, that the Debtors shall determine, in their reasonable discretion, whether the written evidence of such financial wherewithal is acceptable, <u>provided further</u>, <u>however</u>, that in lieu of a Potential Bidder's financial statements, the Debtors may accept other information that reasonably demonstrates the Potential Bidder's financial condition; and

(iii)    any other information requested by the Debtors or their advisors, prior to the Participation Requirements Deadline, with respect to a Potential Bidder's ability to close the contemplated Transaction, including, without limitation, analysis of any regulatory, antitrust or other potential issues relating to such Potential Bidder's ability to timely close the contemplated Transaction.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtors will afford each Potential Bidder due diligence access to the Purchased Assets; <u>provided</u>, <u>however</u>, that (i) the Debtors shall have the right to reasonably limit the due diligence provided to competitors; and (ii) the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtors have designated and employed Oppenheimer & Co., Inc. to

coordinate all reasonable requests from Potential Bidders for additional information and due diligence access.

*Designation as Qualified Bidder*

A "**Qualified Bidder**" is a Potential Bidder that delivers the documents satisfying the Participation Requirements described in subparagraphs (a)-(c) above prior to the Bid Deadline (as defined below), and that the Debtors, after consultation with the Official Committee of Unsecured Creditors (the "**Committee**") and Bank of America N.A., as a lender and agent for the Debtors' prepetition secured indebtedness and postpetition debtor-in-possession financing (in such capacity, the "**Secured Lender**"), shall determine, in their good faith judgment, is reasonably likely to submit a *bona fide* offer and to be able to consummate a sale if selected as a Successful Bidder (defined below). As soon as is practicable following receipt of such documents referred to above ~~and in no event later than the Participation Requirements Deadline~~, the Debtors, after consultation with the Committee and the Secured Lender, shall notify the Potential Bidder whether such Potential Bidder is a Qualified Bidder, whether such Potential Bidder has been determined not to be a Qualified Bidder, or whether a determination as set forth above has not been able to be made that such Potential Bidder is a Qualified Bidder.

Each of the Secured Lender and the Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bidder's bid is a Qualified Bid, as defined herein. ~~The~~<u>Subject to the terms of the order approving the Bid Procedures, the</u> Secured Lender is entitled to credit bid all or a portion of its claims against the Debtors~~, without otherwise complying with the Bid Procedures,~~ to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder, other than the Stalking Horse Bidder, shall be December 10, ~~2010, at 12:00 p.m. (Prevailing Eastern Time)~~<u>2010</u> (the "**Bid Deadline**"). A Bid (as defined below) received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

On or before the Bid Deadline, a Qualified Bidder, other than the Stalking Horse Bidder, that desires to make an offer, solicitation or proposal (a "**Bid**") shall deliver written copies of its Bid to Oppenheimer & Co., Inc., 100 International Drive, Suite 19000, Baltimore, Maryland 21202 (Attn: Michael Lynch) and counsel to the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Victoria W. Counihan, Esq.). Counsel to the Debtors shall promptly provide copies of such Bids to (i) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Mark Kenney, Esq.); (ii) counsel to the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn. Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801 (Attn: Mark L. Desgrosseilliers, Esq.); (iii) counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: ~~J.~~ Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.) and

(iv) counsel to the Stalking Horse Bidder, McGuireWoods, LLP, 625 Liberty Avenue, 23rd Floor, Pittsburgh, Pennsylvania 15222 (Attn: Mark E. Freedlander, Esq.) (collectively, the "**Notice Parties**").

*Determination of Qualified Bid Status*

To be eligible to participate in the bidding process, each Qualified Bidder, other than the Stalking Horse Bidder, must deliver to the Debtors a written, irrevocable offer to be received by the Bid Deadline and compliant with each of the following conditions:

(a) <u>Modified Agreement</u>. A Bid must include fully executed transaction documents, pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction, including an executed asset purchase agreement. A Bid shall include a black-lined copy of the Agreement (the "**Modified Agreement**") to show all changes requested by the Bidder, including those related to the Purchase Price, and identify each and every executory contract and unexpired lease to be acquired, the assumption and assignment of which is a condition to closing and consent to being designated as a Back-Up Bid (as defined below).

(b) <u>Purchased Assets</u>. Each Bid must be for substantially all of the Purchased Assets or such portion of the Purchased Assets or any other assets of the Debtors as the Qualified Bidder wishes to purchase.

(c) <u>Contingencies</u>. A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence.

(d) <u>Authorization to Bid</u>. Each Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(e) <u>Good Faith Deposit</u>. Each Bid must be accompanied by a cash deposit in an amount equal to Two Million Five Hundred Thousand Dollars ($2,500,000) (the "**Good Faith Deposit**").

(f) <u>No Fees payable to Qualified Bidder</u>. Except as otherwise provided in the Agreement with respect to amounts payable to the Stalking Horse Bidder, a Bid may not request or entitle any other Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.

(g) <u>Financing Sources</u>. A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtors with appropriate contact information for all such financing sources and may not contain any financing contingency.

(h) <u>Minimum Initial Bid Requirement</u>. Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the Stalking Horse Bidder's Purchase

Price, in cash (or cash equivalents), plus One Million ~~Two Hundred Thousand~~ Dollars ($~~1,200,000~~1,000,000) (the "**Minimum Initial Bid**").

(i) <u>Other Evidence</u>. Each Bid must contain evidence satisfactory to the Debtors, that the Qualified Bidder (based on availability of financing, experience and other considerations or conditions) will be able to timely consummate the Transaction to purchase the Purchased Assets if selected as the Successful Bidder (as defined below).

(i) <u>Representation of Non-Collusion</u>. Pursuant to Local Rule 6004-1, each bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(j) <u>Other Acknowledgements</u>. Each Qualified Bidder must acknowledge and represent that the Qualified Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation and/or inspection of the Purchased Assets in making its bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or proposed transaction, or the completeness of any information provided in connection therewith or the Auction (as defined below), except as expressly stated in these Bidding Procedures or the Agreement.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtors' reasonable discretion, after consultation with the Committee and Secured Lender, and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid (a "**Qualified Bid**").

Not later than December ~~10,~~13, 2010 at ~~8~~12:00 p.m. (Prevailing Eastern Time), the Debtors will, after consultation with the Secured Lender and Committee, determine whether a Qualified Bidder has submitted a Qualified Bid and will notify such Qualified Bidder whether it has submitted a Qualified Bid.

*Credit Bidding*

~~The~~Subject to the terms of the Order approving the Bid Procedures, the Secured Lender shall be entitled to credit bid all or a portion of its claims against the Debtors to the fullest extent permissible under section 363(k) of the Bankruptcy Code, *provided, however,* that, in the event that the Secured Lender is the Successful Bidder, the Secured Lender shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder from an additional advance under the DIP Financing. The Secured Lender must submit a Qualified Bid by the Bid Deadline; provided that they are not required to make a Good Faith Deposit.

*Auction*

Only in the event that the Debtors receive at least one (1) Qualified Bid (other than that of any Stalking Horse Bidder) by the Bid Deadline or upon request by the Secured Lender, the

Debtors shall conduct an auction (the "**Auction**") of the Purchased Assets to determine the highest or otherwise best bid with respect to the Purchased Assets. No later than December 10,13, 2010 at 812:00 p.m. (Prevailing Eastern Time), the Debtors will notify all Qualified Bidders, counsel to the Committee and counsel to the Secured Lender whether the Auction will occur. The Auction shall commence at 10:00 a.m. (Prevailing Eastern Time) on December 13,14, 2010 at the offices of Greenberg Traurig, LLP, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801.

*Participation in the Auction*

Only the Debtors, the Stalking Horse Bidder, any representative of the Committee, the Secured Lender and any other Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Only the Stalking Horse Bidder and other Qualified Bidders that have timely submitted Qualified Bids may make any subsequent Overbid at the Auction.

The Debtors and their professional advisors shall direct and preside over the Auction. At the beginning of the Auction, the Debtors and their professional advisors will announce the highest Qualified Bid received by the Bid Deadline which shall serve as the baseline bid at the Auction (the "**Baseline Bid**"). The Baseline Bid must be no less than the amount of the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Bidder in attendance at the Auction. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

*Terms of Overbids*

An "**Overbid**" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. Any Qualified Bidder's initial Overbid shall be at least in the amount of the Minimum Initial Bid in cash (or cash equivalents), and each subsequent Overbid must be made in increments of at least $200,000100,000 in cash, cash equivalents or such other consideration accepted by the Debtors, after consultation with the Committee and the Secured Lender, over the previous highest or best bid.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as an Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding process, the Auction shall be closed, and the Debtors, (i) in consultation with the Committee and the Secured Lender, shall review each Qualified Bid and Overbid on the basis of financial and contractual terms and the factors relevant to the Sale process and the contract assumption and rejection process, including those factors affecting the speed and certainty of consummating the Transaction and the amount of the cash, cash

CHI 60,507,907v5 11-22-10
CHI 60507907v7 November 29, 2010

equivalents or non-cash equivalents and the value or cost added by such Qualified Bid's or Overbid's contract assumption and rejection process, and (ii) after such consultation with the Committee and Secured Lender, determine, the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**"), the entity submitting such Successful Bid (the "**Successful Bidder**"), the next highest or otherwise best offer after the Successful Bid (the "**Back-Up Bid**") and the entity submitting such Back-Up Bid (the "**Back-Up Bidder**"); and advise the Qualified Bidders of such determinations.  The Back-Up Bid shall remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until the earlier of (i) consummation of the Transaction with the Successful Bidder, (ii) January 21, 2011 or (iii) such other date as agreed to by the Debtors and the Back-Up Bidder.

*Failure to Close*

In the event the Successful Bidder fails to close on the Transaction as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall be: (i) entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder (along with any other rights available under such purchase agreement); and (ii) enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.

Following the approval of the Sale of the Purchased Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale by December 31, 2010, the Debtors shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders, including the Stalking Horse Bidder and the Secured Lender (if the Secured Lender submits a credit bid), at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtors relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

*Acceptance of Successful Bid*

The Debtors shall sell the Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.  The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval shall constitute the Debtors' acceptance of such Qualified Bid, subject only to approval by the Bankruptcy Court.

*Free of Any and All Interests*

As set forth in the Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all right, title and interest in and to the Purchased Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**"), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds received by the Debtors from the Sale of the Purchased Assets (the "**Sale Proceeds**").

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on December 15, 2010, at 3:00 p.m. (Prevailing Eastern Time).

*Return of Good Faith Deposit*

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such Transaction at Closing. The Good Faith Deposits of all other Qualified Bidders, other than the Back-Up Bidder, shall be held in an interest-bearing escrow account until five (5) business days after the closing of the Auction, and thereafter returned to the respective bidders. The Good Faith Deposit of the Back-Up Bidder shall be held in an interest-bearing escrow account and shall be (i) applied to the Purchase Price in the event that Successful Bidder fails to close and the Debtor opts to consummate the Transaction with the Back-Up Bidder; or (ii) returned to the Back-Up Bidder on the earlier of (i) the date of the Closing with the Successful Bidder, (ii) January 21, 2011 or (iii) such other date as agreed to by the Debtors and the Back-Up Bidder. In the event of a breach or failure to consummate an approved sale by the Successful Bidder, or by the Back-Up Bidder in the event the Successful Bidder fails to consummate an approved sale and the Debtor determines to consummate the Transaction with the Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as damages resulting from the breach or failure to perform by the Successful Bidder or Back-Up Bidder, as applicable (along with any other rights available under their respective purchase agreements).

*Modifications*

The Bid Procedures may be modified by the Debtors, after consultation with the Secured Lender, the Committee and the Stalking Horse Bidder, including, without limitation, (a) waiving the terms and conditions set forth herein with respect to any or all potential bidders, including, without limitation, waiver of any requirement that a Qualified Bidder serve as a back-up bidder, (b) imposing additional terms and conditions with respect to any or all potential bidders, (c) extending the deadlines set forth herein or the date for the Auction and/or Sale Hearing (which may occur in open court); or (d) amending the Bid Procedures as they may determine to be in the best interests of their estates; *provided that* all such modifications are disclosed to all Potential Bidders (if applicable) or Qualified Bidders (if applicable) prior to or during the Auction.

The Debtors, in their reasonable discretion, may, after consultation with the Secured Lender and the Committee, (a) determine which Qualified Bid, if any, is the highest or otherwise

best offer; ~~and~~or (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors, their estates, their creditors and other stakeholders.

*CHI 60,507,907v5 11-22-10*
*CHI 60507907v7 November 29, 2010*

Document comparison by Workshare Professional on Tuesday, November 30, 2010
9:19:56 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://CHI-DMS1/CHI/60507907/5 |
| Description | #60507907v5<CHI> - Schutt - Bid Procedures (With Platinum) |
| Document 2 ID | interwovenSite://CHI-DMS1/CHI/60507907/7 |
| Description | #60507907v7<CHI> - Schutt - Bid Procedures (With Platinum) |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 18 |
| Deletions | 21 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 39 |

# EXHIBIT 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 331** |

## NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

NOTICE IS HEREBY GIVEN, as follows:

1.      On [~~____~~]November 22, 2010, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed a motion seeking approval of among other things (i) bid procedures (the "**Bid Procedures**") and bid protections in connection with the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Purchased Assets**"), (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors, (iii) the date, time and place for a sale hearing (the "**Sale Hearing**") and for objections to the Sale and (iv) related relief (the "**Bid Procedures Motion**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  By order dated November [~~__~~,~~]29, 2010, the Bankruptcy Court approved the Bid Procedures and the Bid Procedures Motion (the "**Bid Procedures Order**").[2]

2.      The Debtors have entered into an asset purchase agreement (the "**Agreement**") with Kranos Intermediate Holding Corporation (the "**Stalking Horse Bidder**"), for the sale of the Purchased Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon to the maximum extent permitted by section 363 of the Bankruptcy Code, but as set forth in the Bid Procedures, the sale of the Purchased Assets remains subject to competing offers from any prospective bidder that submits a Qualified Bid.

3.      All interested parties are invited to submit a Qualified Bid and to make offers to purchase the Purchased Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order. The Bid Deadline is **December [~~__], 2010 at [____] p.m. (Prevailing Eastern Time).~~10, 2010.**

---

[1]  The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Order.  A copy of the Bid Procedures Order can be accessed on the Court's website at https://ecf.deb.uscourts.gov or by written request to Debtors' counsel.

4.　　Pursuant to the Bid Procedures Order, in the event the Debtor receives one or more Qualified Bids in addition to the bid of the Stalking Horse Bidder on or before the Bid Deadline, the Debtors shall conduct the Auction for the purpose of determining the highest and best bid for the Purchased Assets.  Only representatives of parties submitting Qualified Bids, the Debtors, the Stalking Horse Bidder, the Secured Lender and the Committee will be eligible to participate in the Auction.  The Auction will be held at the offices of Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801, on **December [~~,~~14,** 2010 at [~~~~10:00 a.m.** (Prevailing Eastern Time), or at such other place and time as the Debtors shall notify all parties that submitted Qualified Bids.

5.　　At the Sale Hearing on **December [~~,~~15,** 2010 at [~~~~3:00 p.m.** (Prevailing Eastern Time) or such other time as the Bankruptcy Court shall determine, the Debtors intend to seek the Bankruptcy Court's approval of the sale of the Purchased Assets ~~and the assumption and assignment certain unexpired leases and executory contracts, (collectively, the "Assigned Contracts")~~ to the Stalking Horse Bidder pursuant to the terms of the Agreement, or to the Successful Bidder at the Auction (the "**Successful Bidder**").  In determining the Successful Bidder, in addition to the amount of cash or cash equivalent consideration offered, the Debtors will consider, among other factors, the assumption of liabilities contemplated by each Qualified Bid, certainty of Closing and other factors relating to the value and certainty of the Bid.  The Sale Hearing will be held before the Honorable Kevin J. Carey, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

6.　　At the Sale Hearing, the Debtors will seek entry of an order which provides, except with respect to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens Claims, Encumbrances or Interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting, against the Purchaser, any of its affiliates, its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens, Claims, Encumbrances or Interest in and to the Purchased Assets, including, without limitation, the following actions:  (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates, successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates, successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due Purchaser, any of its affiliates or successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the Provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the business operated with the Purchased

Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the Agreement.

7.     At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these chapter 11 cases.

8.     Objections, if any, to the Sale of the Purchased Assets **("Sale Objections")** or the or the assumption and assignment of the Assigned Contracts pursuant to the terms of the agreement reached between the Debtors and the Stalking Horse Bidder or Successful Bidder **("Contract Objections")** shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estate or properties, the basis for the objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court and be served upon: ~~(i) counsel for the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Victoria W. Counihan, Esq.); (ii) counsel to the Stalking Horse Bidder, McGuireWoods, LLP, EQT Plaza, 625 Liberty Avenue, 23rd Floor, Pittsburgh, Pennsylvania 15222-3142 (Attn: Mark E. Freedlander, Esq.); (iii) counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: J. Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.); (iv) counsel to the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn: Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware19801 (Attn: Mark L. Desgrosseilliers, Esq.); and (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.), not later than~~ the Notice Parties[3] so that (a) with respect to any Sale Objections, such Sale Objections are received no later than **December 10, 2010 at** 5:00 p.m. (Prevailing Eastern Time) ~~on December 8, 2010; provided, however, that in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for objecting~~ and (b) with respect to any Contract Objections, such Contract Objections are received no later than **December 14, 2010 at 9:00 a.m. (Prevailing Eastern Time)**.

---

[3]   The Notices Parties shall include: (i) counsel for the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Victoria W. Counihan, Esq.); (ii) counsel to the Stalking Horse Bidder, McGuireWoods, LLP, EQT Plaza, 625 Liberty Avenue, 23rd Floor, Pittsburgh, Pennsylvania 15222-3142 (Attn: Mark E. Freedlander, Esq.); (iii) counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: J. Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.); (iv) counsel to the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn: Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801 (Attn: Mark L. Desgrosseilliers, Esq.); and (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.).

9.     In the event (a) an Auction is conducted, the deadline for filing any objections related to the conduct of the Auction itself shall be the commencement of the Sale Hearing and (b) in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for filing objections relating to (i) the form of Sale Order approving such Successful Bidder's asset purchase agreement, and (ii) the proposed asset purchase agreement between the Debtors and such Successful Bidder shall be the commencement of the Sale Hearing.

10.     In the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline to object to the assignment of executory contracts and unexpired leases to such Successful Bidder shall be at the commencement of the Sale Hearing, with any such objection being heard at the Sale Hearing or at a later scheduled hearing as the Court deems appropriate. (the "**Amended Contract Objection Deadline**").  With respect to all Contract Objections, such Contract Objections shall be heard on **December ___, 2010 at ___:___ _.. (Prevailing Eastern Time)**.

11. 8. Requests for any other information concerning the Bid Procedures or the Sale should be directed by request to Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Sandra G. M. Selzer, Esq.).

Dated:  Wilmington, Delaware
_____, 2010

GREENBERG TRAURIG, LLP

---

Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 661-7000
Facsimile:  (302) 661-7360
Email:  counihanv@gtlaw.com
        selzers@gtlaw.com

-and-

Keith Shapiro

Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
Telephone:  (312) 456-8400
Facsimile:  (312) 456-8435
Email:  shapirok@gtlaw.com
        petermann@gtlaw.com

Counsel for the Debtors
and Debtors-in-Possession

Document comparison by Workshare Professional on Tuesday, November 30, 2010
9:28:08 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://CHI-DMS1/CHI/60378488/3 |
| Description | #60378488v3<CHI> - Schutt - Sale Notice |
| Document 2 ID | interwovenSite://CHI-DMS1/CHI/60378488/4 |
| Description | #60378488v4<CHI> - Schutt - Sale Notice |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 14 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 37 |

# EXHIBIT 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 331** |

## NOTICE OF DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN
## LEASES AND EXECUTORY CONTRACTS AND FIXING OF CURE AMOUNTS

PLEASE TAKE NOTICE that, on [~~            ~~,]November 22, 2010, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed a motion seeking approval of, among other things (i) bid procedures (the "**Bid Procedures**") and bid protections in connection with the sale of substantially all of the Debtors' assets (the "**Purchased Assets**"); (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors; and (iii) related relief (the "**Bid Procedures Motion**") with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). By order dated [~~            ~~,]November 29, 2010, the Bankruptcy Court approved the Bid Procedures and the Bid Procedures Motion (the "**Bid Procedures Order**"). A copy of the Bid Procedures Order is annexed hereto as **Exhibit "A"**.[2]

PLEASE TAKE FURTHER NOTICE, that at a hearing on **December 15, 2010 at 3:00 p.m.** (Prevailing Eastern Time) or such other time as the Bankruptcy Court shall determine (the "**Sale Hearing**"), the Debtors intend to seek approval of the sale of the Purchased Assets free and

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Motion.

clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon to the maximum extent permitted by section 363 of the Bankruptcy Code (the "**Sale**") to [          ]Kranos Intermediate Holding Company (the "**Stalking Horse Bidder**"), pursuant to the terms of a purchase agreement with the Stalking Horse Bidder (the "**Agreement**"), or to such other party as is determined pursuant to the Bid Procedures to have submitted the highest and best bid for the Purchased Assets (the "**Successful Bidder**").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Cure Procedures, at the Sale Hearing, the Debtors intend to seek approval to assume and assign certain unexpired leases and executory contracts (collectively, the "**Assigned Contracts**") to the Stalking Horse Bidder or the Successful Bidder, as applicable, pursuant to section 365 of the Bankruptcy Code.  You have been identified as a party to an Assigned Contract that the Debtors may seek to assume and assign.  The Assigned Contract with respect to which you have been identified as a non-Debtor party is set forth on **Exhibit "B"** annexed hereto.

PLEASE TAKE FURTHER NOTICE that, the Debtors believe that any and all defaults (other than the filing of these chapter 11 Cases), actual pecuniary losses and any amounts due under the Assigned Contract can be cured and satisfied in full by the payment of the cure amount, also set forth on **Exhibit "B"** annexed hereto (the "**Cure Amount**").

PLEASE TAKE FURTHER NOTICE that, the Debtors believe that only those contracts listed in **Exhibit "C"** annexed hereto containhave indicated on **Exhibit "B"** if they believe that the Assigned Contract contains enforceable consent rights, pursuant to which the Debtors are required to obtain consent from the non-debtor parties to assign such contracts.  To the extent that anthe Debtors indicate on **Exhibit "B"** that they do not believe that the Assigned Contract does not appear on **Exhibit "C"**contain enforceable consent rights, such Assigned Contract will

be assumed and assigned to the Stalking Horse or Successful Bidder, without the need to obtain a consent from the non-debtor party to such Assigned Contract, unless such non-debtor party files a timely Contract Objection which is sustained.

PLEASE TAKE FURTHER NOTICE that, any party objecting to (i) any Cure Amount and/or (ii) the proposed assumption and assignment of any Assigned Contract in connection with the Sale must file with the Bankruptcy Court and serve an objection (a "**Contract Objection**"), in writing, setting forth with specificity any and all obligations that the objecting party asserts must be cured or satisfied in respect to the Assigned Contract, and/or any and all objections to the potential assumption and assignment of such agreement, together with all documentation supporting such cure claim or objection, upon: (i) counsel to the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Victoria W. Counihan, Esq); (ii) counsel to the Stalking Horse Bidder, [~~                ~~] ~~(Attn: [              ~~]McGuireWoods, LLP, 625 Liberty Avenue, 23rd Floor, Pittsburgh, Pennsylvania 15222 (Attn:  Mark E. Freedlander, Esq.); (iii)  counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: J. Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.); (iv) counsel to the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn. Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware19801 (Attn: Mark L. Desgrosseilliers, Esq.); and (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.); **so as to be received no later than ~~5~~9:00 ~~p~~a.m. (Prevailing Eastern**

**Time) on December** ~~8,~~14, **2010** (the "**Contract Objection Deadline**"); provided, however, that in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline for objecting to the assignment of the Assigned Contracts to such Successful Bidder shall be the commencement of the Sale Hearing~~, with any such objection being heard at the Sale Hearing or at a later-scheduled hearing as the Court deems appropriate~~. All Contract Objections will be heard on December __, 2010 at ___:___ at _ .m. (Prevailing Eastern Time). Unless the Contract Objection is timely filed and served, the assumption, sale and assignment of the applicable Assigned Contract will proceed without further notice or the need for other action, including the obtaining of consents.

PLEASE TAKE FURTHER NOTICE that, if no Cure Amount is due, or no other amount is due or owing under the Assigned Contract, and the non-debtor party to such agreement does not otherwise object to the Debtors' assumption, sale and assignment of such agreement, no further action needs to be taken on the part of that non-debtor party.

PLEASE TAKE FURTHER NOTICE that, unless an objection to the assumption and assignment of an Assigned Contract is filed and served before the Objection Deadline or the Amended Contract Objection Deadline, as applicable, all counterparties to the Assigned Contracts shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to the Assigned Contracts, and the Debtors and the Stalking Horse Bidder, or Successful Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (ii) deemed to have consented to the assumption and assignment, and (iii) forever barred and estopped from asserting or claiming against the Debtors or the Stalking Horse Bidder, or the Successful Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to

assignment must be satisfied under such Assigned Contracts, including, without limitation, any consent rights, or that there is any objection or defense to the assumption and assignment of such Assigned Contracts.

PLEASE TAKE FURTHER NOTICE that, a hearing on Contract Objections may be held (a) at the Sale Hearing, or (b) at such other date prior to or after the Sale Hearing as the Bankruptcy Court may designate upon request by the Debtors.

PLEASE TAKE FURTHER NOTICE that, the Debtors' decision to assume and assign the Assigned Contract is subject to the Court's approval of and consummation of the Sale. Absent consummation of the Sale, each Assigned Contract shall not be deemed either assumed or assigned and shall in all respects be subject to further administration under the Bankruptcy Code. The designation of any agreement as an Assigned Contract shall not constitute or be deemed to be a determination or admission by the Debtors or the Stalking Horse Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

PLEASE TAKE FURTHER NOTICE that, Debtors reserve the right to remove any Assigned Contract from any proposed asset sale and to withdraw the request to assume and assign any such Assigned Contract.

Dated: Wilmington, Delaware
_____, 2010

GREENBERG TRAURIG, LLP

_____

Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: counihanv@gtlaw.com
        selzers@gtlaw.com

-and-

Keith Shapiro

Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email: shapirok@gtlaw.com
        petermann@gtlaw.com

Counsel for the Debtors
and Debtors-in-Possession

## Exhibit B

| | Contract | Cure Amount as of the Petition Date | Cure Amounts after the Petition Date | **Contains Enforceable Consent Rights** |
|---|---|---|---|---|
| 1. | | | | |

Document comparison by Workshare Professional on Tuesday, November 30, 2010 9:24:10 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://CHI-DMS1/CHI/60378489/3 |
| Description | #60378489v3<CHI> - Schutt - Cure Notice |
| Document 2 ID | interwovenSite://CHI-DMS1/CHI/60378489/5 |
| Description | #60378489v5<CHI> - Schutt - Cure Notice |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 16 |
| Deletions | 17 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 33 |