IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>SCHUTT SPORTS, INC., *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 10-12795 (KJC)<br>(Jointly Administered)<br>Re: Docket No. 331, 348, 350, 354 |

### ORDER (A) APPROVING BID PROCEDURES RELATING TO SALE OF THE DEBTORS' ASSETS; (B) APPROVING BID PROTECTIONS; (C) SCHEDULING A HEARING TO CONSIDER THE SALE; (D) APPROVING THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; (E) ESTABLISHING PROCEDURES FOR NOTICING AND DETERMINING CURE AMOUNTS; AND (F) GRANTING RELATED RELIEF

Upon the Motion[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") seeking entry of (i) an order (the "**Order**") (a) approving the bid procedures attached hereto as **Exhibit "1"** (the "**Bid Procedures**"), (b) establishing the date, time and place for a sale hearing (the "**Sale Hearing**"), (c) approving the form, manner of notice and date, time and place of the auction (the "**Sale Notice**"), attached to the Motion as **Exhibit "E"**, (d) establishing procedures for noticing and determining cure amounts (the "**Cure Notice**"), attached to the Motion as **Exhibit "F"**, and (e) granting related relief; and (ii) an order (a) approving the sale of substantially all of the Debtors' assets as specified in the asset purchase agreement (the "**Agreement**") attached to the Motion as **Exhibit "D"** (the "**Purchased Assets**") free and clear of all liens, claims, encumbrances and interests (the "**Transaction**" or the "**Sale**"),

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Agreement attached thereto as **Exhibit "D"**, and to the extent of any inconsistency, the Motion shall govern.

(b) authorizing the assumption and assignment of certain executory contracts and unexpired leases and (c) granting related relief (the "**Motion**"); and it appearing that the notice of the Motion provided is appropriate and sufficient under the circumstances and that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested herein are sections 105(a), 363, 365, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rules 1015, 2002, 6004, 6006, and 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

C. The Debtors' notice of the Motion is sufficient in light of the circumstances and the nature of the relief requested herein.

D. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including, without limitation: (i) approving the Bid Procedures; (ii) Break-Up Fee (as modified herein and defined herein) and

---

[3] The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Expense Reimbursement; (iii) scheduling an Auction and a Sale Hearing; (iv) approving the Sale Notice; and (v) approving the Cure Notice.

E. The Bid Procedures were proposed and negotiated in good faith by the Debtors and the Stalking Horse Bidder and are fair, reasonable and appropriate under the circumstances and are properly designed to maximize the recovery from any sale of the Purchased Assets.

F. The Break-Up Fee and Expense Reimbursement is the product of extensive negotiations between the Debtors and the Stalking Horse Bidder. Accordingly, payment of the Break-Up Fee and the Expense Reimbursement under the circumstances described in the Agreement is: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (iv) necessary to induce the Stalking Horse Bidder to continue to pursue the Transaction and to continue to be bound by the Agreement.

G. The Break-Up Fee and Expense Reimbursement also induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid, on which the Debtors, their creditors, their other stakeholders and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors and stakeholders by increasing the likelihood that the Debtors will receive the best possible price for the Purchased Assets. Accordingly, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate under the circumstances.

H. The Sale Notice attached hereto as **Exhibit "2"** is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Transaction, the Sale Hearing, and the Auction and no other and further notice is required.

I. The Cure Notice attached hereto as **Exhibit "3"** is appropriate and reasonably calculated to provide all counterparties to the Assigned Contracts (the "**Contract Parties**") with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure amounts relating thereto and no further notice is required.

J. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. To the extent set forth herein, the Bid Procedures are approved and the relief requested in the Motion is granted.

2. All objections to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or as reflected in this Order or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

3. The Stalking Horse Bidder is hereby deemed a Qualified Bidder, whose Bid shall be deemed a Qualified Bid. Notwithstanding anything to the contrary herein or in the Bid Procedures, the Stalking Horse Bidder shall have the right, but not the obligation, to be deemed the Back-Up Bidder by the Debtors at the conclusion of the Auction.

4. The Secured Lender is hereby deemed a Qualified Bidder and shall be entitled to credit bid all or a portion of its claims against the Debtors as a Qualified Bid, subject to the terms of the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy

Code; *provided, however,* nothing in this Order or the Bid Procedures shall (i) constitute a finding or determination with respect to the nature, extent, validity, priority or perfection of the Secured Lender's alleged prepetition security interest in or liens upon the Acquired Assets (the "**Prepetition Liens**"); (ii) give rise to a defense, claim of mootness or right to offset in any adversary proceeding or contested matter relating to the Prepetition Liens; or (ii) in any way impact, modify or moot the Committee's lien investigation rights as set forth in the Final DIP Order, and *further provided that,* should the Secured Lender be the Successful Bidder, the Secured Lender shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder from an additional advance under the DIP Financing.

5. The Debtors are hereby authorized to enter into and execute the Agreement (as modified to the extent necessary to comply with the terms of this Order) and to perform such obligations under the Agreement which may arise prior to the Sale Hearing.

6. The Stalking Horse Bidder shall be entitled, pursuant to the terms of the Agreement, to a break-up fee in the amount of $700,000 (the "**Break-Up Fee**"). The Stalking Horse Bidder shall be required to submit redacted time entries to substantiate payment of the Expense Reimbursement, which shall be payable pursuant to the terms of the Agreement. Subject to these modifications, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate under the circumstances and hereby approved. In the event that the Transaction is consummated with any party other than the Stalking Horse Bidder, the Debtors shall pay the Stalking Horse Bidder the Break-Up Fee and Expense Reimbursement, in accordance with the terms set forth in the Agreement.

7. The Bid Procedures attached hereto as **Exhibit "1"**, are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed Sale of the

Purchased Assets. The Minimum Initial Overbid shall be $1,000,000 with each subsequent Overbid being in the minimum amount of $100,000.

8. The Debtors are authorized to take any and all actions necessary or appropriate, consistent with the terms of this Order, to implement the Bid Procedures.

9. A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid in accordance with the Bid Procedures on or before December 10, 2010 (the "**Bid Deadline**") and shall comply with the requirements set forth in the Bid Procedures in making such a bid for the Purchased Assets.

10. If the Debtors do not receive any Qualified Bids other than the Agreement with the Stalking Horse Bidder and if the Secured Lender does not credit bid, the Debtors will not hold the Auction, and the Stalking Horse Bidder will be named the Successful Bidder.

11. Not later than December 13, 2010 at 12:00 p.m. (Prevailing Eastern Time), the Debtors will notify all Qualified Bidders (including the Stalking Horse Bidder), counsel to the Committee and counsel to the Secured Lender whether the Auction will occur.

12. To the extent at least one Qualified Bid, other than the Stalking Horse Bidder's Bid, is timely received or the Secured Lender elects to credit bid, the Debtors shall conduct the Auction commencing at 10:00 a.m. (Prevailing Eastern Time) on December 14, 2010 at the offices of Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801.

13. Upon conclusion of the bidding, the Auction shall be closed, and Debtors, (i) in consultation with the Committee and the Secured Lender, shall review each Qualified Bid and Overbid on the basis of financial and contractual terms and the factors relevant to the Sale process and the contract assumption and rejection process, including, without limitation, those

CHI 60507924v7 November 30, 2010

6

factors affecting the speed and certainty of consummating the Proposed Sale and the amount of the cash (or cash equivalent) consideration and the values or costs added by such Qualified Bid's or Overbid's contract assumption and rejection provision, and (ii) after such consultation, identify the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**" and the entity submitting such Successful Bid, the "**Successful Bidder**").

14. The Debtors, in their reasonable discretion, may, after consultation with the Secured Lender and the Committee, (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors, their estates, their creditors and other stakeholders.

15. The Debtors shall sell the Purchased Assets to the Successful Bidder upon approval of the Successful Bid by the Bankruptcy Court at the Sale Hearing. The Purchased Assets will not include any football helmet shells in Debtor's possession as of earlier of the date of the Closing or December 31, 2010, which have been specifically found to infringe patents of Riddell, Inc. in that certain civil action styled *Riddell, Inc. v. Schutt Sports, Inc.*, identified by civil action number 3:08-cv-00711 pending in the United States District Court for the Eastern District of Wisconsin, and the intended sale will not otherwise serve to authorize any continuing or future infringement of Riddell's intellectual property rights (including the allegation of infringement directed to the "AiR Flex QB-WR-9405" shoulder pad set forth in that civil action styled *Riddell, Inc. v. Schutt Sports, Inc.*, identified by civil action number 10-CV-000504 pending in the United States District Court for the Eastern District of Wisconsin).

16. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval shall constitute Debtors' acceptance of the bid, subject only to approval by the Court at the Sale Hearing.

17. The Court shall conduct the Sale Hearing commencing on December 15, 2010 at 3:00 p.m. (Prevailing Eastern Time), at which time, the Court will consider approval of the Sale to the Successful Bidder and entry of the Sale Order.

18. Objections to approval of the Sale and entry of the Sale Order (the form of which is attached as **Exhibit "C"** to the Motion), including the sale of the Purchased Assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, with the liens, claims, encumbrances and interests to attach to the Sale Proceeds, must be in writing and filed with this Court and served upon (i) counsel to the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.), and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Victoria W. Counihan, Esq.), (ii) counsel to the Stalking Horse Bidder, McGuireWoods, LLP, 625 Liberty Avenue, 23rd Floor, Pittsburgh, Pennsylvania 15222 (Attn: Mark E. Freedlander, Esq.), (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Mark Kenney, Esq.), (iv) counsel to the Committee (the "**Committee**"), Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn. Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801 (Attn: Mark L. Desgrosseilliers, Esq.); and (v) counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500,

Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.) (collectively, the "**Notice Parties**"), so as to be received by such Notice Parties on or before December 10, 2010 at 5:00 p.m. (Prevailing Eastern Time); provided, however, that the deadline for objecting to the following shall be the commencement of the Sale Hearing: (a) any objections to the conduct of the Auction itself and (b) in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, (i) the form of Sale Order approving such Successful Bidder's asset purchase agreement, and (ii) the proposed asset purchase agreement between the Debtors and such Successful Bidder.

19. Objections (the "**Contract Objections**") to (i) the proposed Cure Amounts and (ii) the proposed assumption and assignment of agreements (the "**Assigned Contracts**"), including, but not limited to, objections related to adequate assurance of future performance, must be in writing and filed with this Court and served upon the Notice Parties so as to be received by such Notice Parties on or before December 14, 2010 at 9:00 a.m. (Prevailing Eastern Time) (the "**Contract Objection Deadline**"); provided, however, in the event the Auction results in a Successful Bidder other than the Stalking Horse Bidder, the deadline to object to the assignment of executory contracts and unexpired leases to such Successful Bidder shall be at the commencement of the Sale Hearing (the "**Amended Contract Objection Deadline**"). With respect to all Contract Objections, such Contract Objections shall be heard on December ___, 2010 at ___:___ _.m. (Prevailing Eastern Time) (the "**Contract Objection Hearing**").

20. Unless a Contract Objection is filed and served before the Contract Objection Deadline or the Amended Contract Objection Deadline, as applicable, all counterparties to the Assigned Contracts shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to the Assigned Contracts, and

the Debtors and the Stalking Horse Bidder, or Successful Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (ii) deemed to have consented to the assumption and assignment, and (iii) forever barred and estopped from asserting or claiming against the Debtors or the Stalking Horse Bidder, or the Successful Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contracts, including, without limitation, any consent rights, or that there is any objection or defense to the assumption and assignment of such Assigned Contracts.

21. Where a nondebtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Amounts (the "**Disputed Cure Amount**"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to any hearing on such objection, and subject to the consent of the Stalking Horse Bidder, or the Successful Bidder, as applicable, of such consensual resolution, the Debtors shall promptly provide the Stalking Horse Bidder, or the Successful Bidder, as applicable, and the Committee notice and opportunity to object to such proposed resolution and, absent an objection, the Cure Amount shall be in the amount agreed upon in such consensual resolution; or (b) to the extent the parties are unable to consensually resolve the dispute prior to any hearing on such objection, or to the extent that the Stalking Horse Bidder or Successful Bidder, as applicable, does not consent to a proposed resolution prior to such hearing, then such objection will be heard at the Contract Objection Hearing. Pending a ruling on such objection, (i) the Stalking Horse Bidder or Successful Bidder, as applicable, may, at its sole option and in its discretion, direct that the contract regarding which the Cure Amount objection is pending be removed from the Schedule of Assigned Contracts and render such contract an Excluded Asset;

or (ii) the Debtors may reserve the amount necessary to satisfy the Cure Amount in the amount asserted by the objecting non-Debtor counterparty and, at the conclusion of proceedings regarding the objection, either (y) pay the Cure Amount in the amount and as determined by a final Court order or agreement, or (z) if directed by the Stalking Horse Bidder or Successful Bidder, as applicable, remove such contract from the Schedule of Assigned Contracts and render such contract an Excluded Asset. All objections to the proposed assumption and assignment of an Assigned Agreement will be heard at the Contract Objection Hearing.

22. The Debtors are hereby authorized to share certain of the Debtors' contracts that contain confidentiality restrictions with the Stalking Horse Bidder, subject to the terms of the non-disclosure agreement by and between the Debtors and the Stalking Horse Bidder, and other potential bidders, provided that each such potential bidder requesting access to such confidential contracts enters into a non-disclosure agreement with the Debtors, in a form acceptable to the Debtors.

23. All Qualified Bidders, including the Stalking Horse Bidder and the Secured Lender (if the Secured Lender submits a credit bid), at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtors relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

24. The Sale Notice attached hereto as **Exhibit "2"** provides proper notice to all parties in interest and is approved.

25. The Cure Notice attached hereto as **Exhibit "3"** provides proper notice to all parties in interest and is approved.

26. Within one (1) business day of this Order, the Debtors shall serve by first class mail, postage prepaid (unless otherwise provided in this Paragraph), copies of: (i) this Order; and (ii) the Sale Notice upon the following entities: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the Secured Lender; (d) all taxing authorities having jurisdiction over any of the Purchased Assets subject to the sale, including the Internal Revenue Service; (e) the Environmental Protection Agency; (f) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (g) all parties that have requested special notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of this order; (h) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Purchased Assets; (i) all Contract Parties; (j) counsel to the Stalking Horse Bidder; (k) all Attorneys General for the states in which the Debtors conduct business; and (l) all potential bidders previously identified or otherwise known to the Debtors (who will be served electronically or by facsimile in the event that the Debtors do not a mailing address). The Debtors shall also serve, within one (1) business day after entry of this Order, the Sale Notice to all other creditors. Finally, the Debtors shall serve, within one (1) business day after entry of this Order by overnight delivery, the Cure Notice to all Contract Parties. The Debtors are also authorized and directed to publish notice the Sale Notice in the national edition of either the Wall Street Journal National Edition or USA Today once within five (5) business days after entry of this Order.

27. The Debtors, after consultation with the Secured Lender, the Committee and the Stalking Horse, reserve the right to: (a) waive terms and conditions set forth herein with respect to any or all potential bidders, including, without limitation, waiver of any requirement that a Qualified Bidder serve as a back-up bidder, (b) impose additional terms and conditions with

respect to any or all potential bidders, (c) extend the deadlines set forth herein or the date for the Auction and/or Sale Hearing (which may occur in open court); and (d) amend the Bid Procedures as they may determine to be in the best interests of their estates.

28. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

29. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

31. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

Dated: Wilmington, Delaware
December 1, 2010

_____
HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE