# **EXHIBIT 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 331 |

## BID PROCEDURES

Schutt Sports, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") filed chapter 11 cases, which are pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), jointly administered under Case No. 10-12795 (KJC). By motion dated November 22, 2010 (the "**Motion**"), the Debtors sought, among other things, approval of the processes and procedures set forth below (the "**Bid Procedures**") to effectuate the sale of the Purchased Assets (the "**Transaction**").[2] The Bid Procedures are designed to facilitate a full, open and fair bidding process to maximize the value of the Purchased Assets for the benefit of the Debtors' creditors, stakeholders and their bankruptcy estates.

On December 15, 2010, at 3:00 p.m. (Prevailing Eastern Time), as further described below, the Bankruptcy Court shall conduct a hearing (the "**Sale Hearing**") at which time the Debtors shall seek entry of an order (the "**Sale Order**") authorizing and approving the sale of the Purchased Assets (the "**Proposed Sale**") to the Stalking Horse Bidder (as defined below) or the Successful Bidder (defined below), as applicable.

*Asset Purchase Agreement*

The Debtors and the Stalking Horse Bidder have entered into an asset purchase agreement (the "**Agreement**"), pursuant to which the Stalking Horse Bidder will acquire the Purchased Assets free and clear of all liens, claims or interests other than the Assumed Liabilities. The Purchased Assets do not include the Excluded Assets. The Transaction contemplated by the Agreement is subject to competitive bidding, as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**").

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein) or the Motion, as applicable.

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "**Potential Bidder**") must first deliver (unless previously delivered) to the Debtors' investment banker and counsel (as identified below), no later than December 3, 2010 (the "**Participating Requirements Deadline**"), the following items, in writing (collectively, the "**Participation Requirements**"):

- (a) Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors (each, a "**Confidentiality Agreement**");

- (b) Identification of Potential Bidder. Identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction; and

- (c) Proof of Ability to Close. Written evidence that enables the Debtors to determine whether the Potential Bidder has the ability to close the contemplated Transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Transaction. Such information should include, *inter alia*, the following:

    - (i) the Potential Bidder's current financial statements (audited if they exist);

    - (ii) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, whether the written evidence of such financial wherewithal is acceptable, provided further, however, that in lieu of a Potential Bidder's financial statements, the Debtors may accept other information that reasonably demonstrates the Potential Bidder's financial condition; and

    - (iii) any other information requested by the Debtors or their advisors, prior to the Participation Requirements Deadline, with respect to a Potential Bidder's ability to close the contemplated Transaction, including, without limitation, analysis of any regulatory, antitrust or other potential issues relating to such Potential Bidder's ability to timely close the contemplated Transaction.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtors will afford each Potential Bidder due diligence access to the Purchased Assets; provided, however, that (i) the Debtors shall have the right to reasonably limit the due diligence provided to competitors; and (ii) the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtors have designated and employed Oppenheimer & Co., Inc. to

coordinate all reasonable requests from Potential Bidders for additional information and due diligence access.

*Designation as Qualified Bidder*

A "**Qualified Bidder**" is a Potential Bidder that delivers the documents satisfying the Participation Requirements described in subparagraphs (a)-(c) above prior to the Bid Deadline (as defined below), and that the Debtors, after consultation with the Official Committee of Unsecured Creditors (the "**Committee**") and Bank of America N.A., as a lender and agent for the Debtors' prepetition secured indebtedness and postpetition debtor-in-possession financing (in such capacity, the "**Secured Lender**"), shall determine, in their good faith judgment, is reasonably likely to submit a *bona fide* offer and to be able to consummate a sale if selected as a Successful Bidder (defined below). As soon as is practicable following receipt of such documents referred to above, the Debtors, after consultation with the Committee and the Secured Lender, shall notify the Potential Bidder whether such Potential Bidder is a Qualified Bidder, whether such Potential Bidder has been determined not to be a Qualified Bidder, or whether a determination as set forth above has not been able to be made that such Potential Bidder is a Qualified Bidder.

Each of the Secured Lender and the Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bidder's bid is a Qualified Bid, as defined herein. Subject to the terms of the order approving the Bid Procedures, the Secured Lender is entitled to credit bid all or a portion of its claims against the Debtors to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder, other than the Stalking Horse Bidder, shall be December 10, 2010 (the "**Bid Deadline**"). A Bid (as defined below) received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

On or before the Bid Deadline, a Qualified Bidder, other than the Stalking Horse Bidder, that desires to make an offer, solicitation or proposal (a "**Bid**") shall deliver written copies of its Bid to Oppenheimer & Co., Inc., 100 International Drive, Suite 19000, Baltimore, Maryland 21202 (Attn: Michael Lynch) and counsel to the Debtors, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, Illinois 60601 (Attn: Nancy A. Peterman, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Victoria W. Counihan, Esq.). Counsel to the Debtors shall promptly provide copies of such Bids to (i) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Mark Kenney, Esq.); (ii) counsel to the Committee, Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey 07068 (Attn. Jeffrey D. Prol, Esq.), and Womble Carlyle Sandridge & Rice, PLLC, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801 (Attn: Mark L. Desgrosseilliers, Esq.); (iii) counsel to the Secured Lender, Latham & Watkins LLP, 233 South Wacker Drive, Suite 5800 Chicago, Illinois 60606 (Attn: Douglas Bacon, Esq.), and Edwards Angell Palmer & Dodge, LLP, 919 N. Market Street, Suite 1500, Wilmington, Delaware 19801 (Attn: Stuart M. Brown, Esq.) and (iv) counsel to the Stalking Horse Bidder, McGuireWoods, LLP, 625 Liberty Avenue, 23rd Floor,

Pittsburgh, Pennsylvania 15222 (Attn: Mark E. Freedlander, Esq.) (collectively, the "**Notice Parties**").

*Determination of Qualified Bid Status*

To be eligible to participate in the bidding process, each Qualified Bidder, other than the Stalking Horse Bidder, must deliver to the Debtors a written, irrevocable offer to be received by the Bid Deadline and compliant with each of the following conditions:

(a) Modified Agreement. A Bid must include fully executed transaction documents, pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction, including an executed asset purchase agreement. A Bid shall include a black-lined copy of the Agreement (the "**Modified Agreement**") to show all changes requested by the Bidder, including those related to the Purchase Price, and identify each and every executory contract and unexpired lease to be acquired, the assumption and assignment of which is a condition to closing and consent to being designated as a Back-Up Bid (as defined below).

(b) Purchased Assets. Each Bid must be for substantially all of the Purchased Assets or such portion of the Purchased Assets or any other assets of the Debtors as the Qualified Bidder wishes to purchase.

(c) Contingencies. A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence.

(d) Authorization to Bid. Each Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(e) Good Faith Deposit. Each Bid must be accompanied by a cash deposit in an amount equal to Two Million Five Hundred Thousand Dollars ($2,500,000) (the "**Good Faith Deposit**").

(f) No Fees payable to Qualified Bidder. Except as otherwise provided in the Agreement with respect to amounts payable to the Stalking Horse Bidder, a Bid may not request or entitle any other Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.

(g) Financing Sources. A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtors with appropriate contact information for all such financing sources and may not contain any financing contingency.

(h) Minimum Initial Bid Requirement. Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the Stalking Horse Bidder's Purchase Price, in cash (or cash equivalents), plus One Million Dollars ($1,000,000) (the "**Minimum Initial Bid**").

(i) <u>Other Evidence</u>. Each Bid must contain evidence satisfactory to the Debtors, that the Qualified Bidder (based on availability of financing, experience and other considerations or conditions) will be able to timely consummate the Transaction to purchase the Purchased Assets if selected as the Successful Bidder (as defined below).

(i) <u>Representation of Non-Collusion</u>. Pursuant to Local Rule 6004-1, each bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(j) <u>Other Acknowledgements</u>. Each Qualified Bidder must acknowledge and represent that the Qualified Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation and/or inspection of the Purchased Assets in making its bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or proposed transaction, or the completeness of any information provided in connection therewith or the Auction (as defined below), except as expressly stated in these Bidding Procedures or the Agreement.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtors' reasonable discretion, after consultation with the Committee and Secured Lender, and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid (a "**Qualified Bid**").

Not later than December 13, 2010 at 12:00 p.m. (Prevailing Eastern Time), the Debtors will, after consultation with the Secured Lender and Committee, determine whether a Qualified Bidder has submitted a Qualified Bid and will notify such Qualified Bidder whether it has submitted a Qualified Bid.

*Credit Bidding*

Subject to the terms of the Order approving the Bid Procedures, the Secured Lender shall be entitled to credit bid all or a portion of its claims against the Debtors to the fullest extent permissible under section 363(k) of the Bankruptcy Code, *provided, however,* that, in the event that the Secured Lender is the Successful Bidder, the Secured Lender shall pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Bidder from an additional advance under the DIP Financing. The Secured Lender must submit a Qualified Bid by the Bid Deadline; provided that they are not required to make a Good Faith Deposit.

*Auction*

Only in the event that the Debtors receive at least one (1) Qualified Bid (other than that of any Stalking Horse Bidder) by the Bid Deadline or upon request by the Secured Lender, the Debtors shall conduct an auction (the "**Auction**") of the Purchased Assets to determine the highest or otherwise best bid with respect to the Purchased Assets. No later than December 13, 2010 at 12:00 p.m. (Prevailing Eastern Time), the Debtors will notify all Qualified Bidders,

counsel to the Committee and counsel to the Secured Lender whether the Auction will occur. The Auction shall commence at 10:00 a.m. (Prevailing Eastern Time) on December 14, 2010 at the offices of Greenberg Traurig, LLP, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801.

*Participation in the Auction*

Only the Debtors, the Stalking Horse Bidder, any representative of the Committee, the Secured Lender and any other Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Only the Stalking Horse Bidder and other Qualified Bidders that have timely submitted Qualified Bids may make any subsequent Overbid at the Auction.

The Debtors and their professional advisors shall direct and preside over the Auction. At the beginning of the Auction, the Debtors and their professional advisors will announce the highest Qualified Bid received by the Bid Deadline which shall serve as the baseline bid at the Auction (the "**Baseline Bid**"). The Baseline Bid must be no less than the amount of the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Bidder in attendance at the Auction. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

*Terms of Overbids*

An "**Overbid**" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. Any Qualified Bidder's initial Overbid shall be at least in the amount of the Minimum Initial Bid in cash (or cash equivalents), and each subsequent Overbid must be made in increments of at least $100,000 in cash, cash equivalents or such other consideration accepted by the Debtors, after consultation with the Committee and the Secured Lender, over the previous highest or best bid.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as an Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding process, the Auction shall be closed, and the Debtors, (i) in consultation with the Committee and the Secured Lender, shall review each Qualified Bid and Overbid on the basis of financial and contractual terms and the factors relevant to the Sale process and the contract assumption and rejection process, including those factors affecting the speed and certainty of consummating the Transaction and the amount of the cash, cash equivalents or non-cash equivalents and the value or cost added by such Qualified Bid's or Overbid's contract assumption and rejection process, and (ii) after such consultation with the Committee and Secured Lender, determine, the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**"), the entity submitting such Successful Bid (the "**Successful**

Bidder"), the next highest or otherwise best offer after the Successful Bid (the "**Back-Up Bid**") and the entity submitting such Back-Up Bid (the "**Back-Up Bidder**"); and advise the Qualified Bidders of such determinations. The Back-Up Bid shall remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until the earlier of (i) consummation of the Transaction with the Successful Bidder, (ii) January 21, 2011 or (iii) such other date as agreed to by the Debtors and the Back-Up Bidder.

*Failure to Close*

In the event the Successful Bidder fails to close on the Transaction as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall be: (i) entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder (along with any other rights available under such purchase agreement); and (ii) enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.

Following the approval of the Sale of the Purchased Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale by December 31, 2010, the Debtors shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders, including the Stalking Horse Bidder and the Secured Lender (if the Secured Lender submits a credit bid), at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtors relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

*Acceptance of Successful Bid*

The Debtors shall sell the Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval shall constitute the Debtors' acceptance of such Qualified Bid, subject only to approval by the Bankruptcy Court.

*Free of Any and All Interests*

As set forth in the Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all right, title and interest in and to the Purchased Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**"), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds received by the Debtors from the Sale of the Purchased Assets (the "**Sale Proceeds**").

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on December 15, 2010, at 3:00 p.m. (Prevailing Eastern Time).

*Return of Good Faith Deposit*

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such Transaction at Closing. The Good Faith Deposits of all other Qualified Bidders, other than the Back-Up Bidder, shall be held in an interest-bearing escrow account until five (5) business days after the closing of the Auction, and thereafter returned to the respective bidders. The Good Faith Deposit of the Back-Up Bidder shall be held in an interest-bearing escrow account and shall be (i) applied to the Purchase Price in the event that Successful Bidder fails to close and the Debtor opts to consummate the Transaction with the Back-Up Bidder; or (ii) returned to the Back-Up Bidder on the earlier of (i) the date of the Closing with the Successful Bidder, (ii) January 21, 2011 or (iii) such other date as agreed to by the Debtors and the Back-Up Bidder. In the event of a breach or failure to consummate an approved sale by the Successful Bidder, or by the Back-Up Bidder in the event the Successful Bidder fails to consummate an approved sale and the Debtor determines to consummate the Transaction with the Back-Up Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as damages resulting from the breach or failure to perform by the Successful Bidder or Back-Up Bidder, as applicable (along with any other rights available under their respective purchase agreements).

*Modifications*

The Bid Procedures may be modified by the Debtors, after consultation with the Secured Lender, the Committee and the Stalking Horse Bidder, including, without limitation, (a) waiving the terms and conditions set forth herein with respect to any or all potential bidders, including, without limitation, waiver of any requirement that a Qualified Bidder serve as a back-up bidder, (b) imposing additional terms and conditions with respect to any or all potential bidders, (c) extending the deadlines set forth herein or the date for the Auction and/or Sale Hearing (which may occur in open court); or (d) amending the Bid Procedures as they may determine to be in the best interests of their estates; *provided that* all such modifications are disclosed to all Potential Bidders (if applicable) or Qualified Bidders (if applicable) prior to or during the Auction.

The Debtors, in their reasonable discretion, may, after consultation with the Secured Lender and the Committee, (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; or (b) reject, at any time before entry of an order of the Bankruptcy Court approving a

Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors, their estates, their creditors and other stakeholders.