# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: December 15, 2010 at 3:00 p.m. (ET) |
| | Objection Deadline: At the Hearing |

## OBJECTION OF RAWLINGS SPORTING GOODS COMPANY, INC. TO (a) SALE TO KRANOS INTERMEDIATE HOLDING CORPORATION OF THE DEBTORS' ASSETS PURSUANT TO THE DEBTORS' MOTION FOR ENTRY OF ORDERS: (A)(I) APPROVING BID PROCEDURES RELATING TO SALE OF THE DEBTORS' ASSETS; (II) APPROVING BID PROTECTIONS; (III) SCHEDULING A HEARING TO CONSIDER THE SALE; APPROVING THE FORM AND MANNER OF NOTICE OF SALE BY AUCTION; ESTABLISHING PROCEDURES FOR NOTICING AND DETERMINING CURE AMOUNTS; AND (VI) GRANTING RELATED RELIEF; AND (B)(I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (III) AUTHORIZING THE ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF; AND (b) REQUEST TO RE-OPEN AUCTION BIDDING

Rawlings Sporting Goods Company, Inc. ("Rawlings") by and through its undersigned counsel hereby objects to the Auction[2] conducted pursuant to the Bid Procedures contained in the Orders: (A)(I) Approving Bid Procedures Relating To Sale Of The Debtors' Assets; (II) Approving Bid Protections; (III) Scheduling A Hearing To Consider The Sale; Approving The Form And Manner Of Notice Of Sale By Auction; Establishing Procedures For Noticing And Determining Cure Amounts; And (VI) Granting Related Relief dated December 1, 2010 (the

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Order.

"Bid Order"); And (B)(I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Assets Of Debtors Outside The Ordinary Course Of Business; (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; (III) Authorizing The Assumption, Sale And Assignment Of Certain Executory Contracts And Unexpired Leases; And (IV) Granting Related Relief.

## Status of the Case and Background

1. On September 6, 2010 (the "Joint Debtor Petition Date"), each of Mountain View Investment Company of Illinois, Schutt Sports, Inc., Circle System Group, Inc., Melas, Inc., R.D.H. Enterprises, Inc., and Triangle Sports, Inc. (collectively, the "Joint Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On September 15, 2010 (together with the Joint Debtor Petition Date, the "Petition Date"), Schutt Holdings, Inc., a Delaware corporation and the parent company of the Joint Debtors (the "Additional Debtor" and, together with the Joint Debtors, the "Debtors"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. On September 8, 2010, the Court granted joint administration of the Joint Debtors' cases and, subsequently, on September 22, 2010, joint administration of all of the Debtors' cases.

4. The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On September 16, 2010, the United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

## THE AUCTION[3]

6. Pursuant to the Bid Procedures, the Auction commenced on December 14, 2010 at 10:51 a.m. at the offices of Greenberg Traurig LLP, counsel to the Debtors.

7. The Auction was conducted by John Stark, managing director of Oppenheimer & Co., Inc., financial advisors to the Debtors. Three bidders qualified pursuant to the terms of the Bid Procedures and appeared at the Auction. They were Rawlings, Kranos Intermediate Holding Corp. ("Kranos"), and Two Point Conversion LLC ("Two Point" and collectively with Rawlings and Kranos, the "Bidders").

8. At the commencement of the Auction, Mr. Stark advised the Bidders that each would be allowed 20 minutes to make its bid. Despite the rules articulated by Mr. Stark, the Bidders were actually allowed as much time as necessary to submit a bid; in some instances, more than 1 hour.

9. During the course of the bidding, thirty one bids were submitted by the Bidders. Because of the length of time given by Mr. Stark to the Bidders, while the Auction commenced at 10:51 a.m. on December 14, 2010, it did not end until 6:46 a.m. on December 15, 2010.

10. At 12:35 a.m. on December 15, 2010, Two Point dropped out of the bidding after making a final bid which was valued by the Debtors' financial advisor as providing $31.7M. to the Debtors' estates. Under the rules of the Bid Procedures, Two Point consented to being the Back-Up Bidder if selected by the Debtors.

11. Thereafter, Rawlings and Kranos continued to bid and ultimately Kranos submitted a bid which would result in net proceeds to the Debtors' estates of $33.1M, fixed a closing date of December 15, 2010 and proposed to maintain the Debtors' employees in Illinois for 12 months, and Pennsylvania for 3 months.

---

[3] Annexed hereto are pages 113-125 of the transcript of the Auction held on December 14-15, 2010.

12. Rawlings countered with a bid of $36M which would result in net proceeds to the Debtors' estates of $35M, which although higher than Kranos' last bid was not deemed better by the Debtors' due to the fact that Rawlings' closing date was set for December 24, 2010.

13. At approximately 6:00 a.m. on December 15, 2010, Mr. Stark, together with Nancy Peterman, a partner at Greenberg Traurig and the Debtors' lead bankruptcy counsel, met privately with Rawlings representatives including Mitchell Hollander and Robert Kolodney of Kane Kessler, P.C., Rawlings' counsel. Mr. Stark stated that as the Auction was going on for over 18 hours, and time was running out on preparing the papers to present to the Court at the Sale Hearing set for 3:00 p.m. on December 15, 2010, the procedures for bidding would be changed and Rawlings and Kranos would be required to submit sealed bids with their respective final and best offers, which would then be opened in the Auction room. Both Mr. Hollander and Mr. Kolodney strenuously objected to the sealed bid procedure, and advised Mr. Stark and Ms. Peterman that Rawlings desired that the Bidding Process remain in the same form as had been conducted for over 18 hours, *i.e.* with each bidder continuing to make its bid after the other until the highest and best bid was selected. Mr. Hollander advised Mr. Stark that Rawlings was prepared to bid but only at an open auction.

14. After this conversation, Rawlings was invited into the Auction room by Mr. Stark. At that time, Rawlings offered to (a) increase its deposit (which was in the amount of $2.5M, as set by the Bid Procedures) to $7.5M, (b) reduce its previous bid from $36M to $35.1M which would result in a net recovery to the Debtors' estates of $34.1M that would be $1M above the Kranos bid (as a result of all the bids submitted by Rawlings, the unsecured trade creditors would receive $3.5M, the critical vendors would receive $2.5M, and the Debtors' estates would receive $3.6M to pay administration creditors and after payment was made to

them, any balance would go to trade creditors), and (c) agree to waive any closing conditions contained in its draft asset purchase agreement and close on December 24, 2010. Trans. pp. 113-116.

15. After a short recess in the bidding, Mr. Stark announced that as it was 6:30 in the morning and he had received 31 bids in the Auction, the final two Bidders have put their best bids on the table. Both Mr. Kolodney and Mr. Hollander disputed that fact and Mr. Hollander specifically stated that Rawlings' bid on the table was not Rawlings' best bid. Trans. p. 119, lines 18-23. When Mr. Stark responded that he understood this to be the best and highest offer of a bidder, Mr. Hollander responded that "In fairness, I thought you talked about that and *we specifically said we didn't want to do that*. I said maybe in the next round we would seriously considering do that, but at this time I thought we were very clear that we are not in a position to do that." Trans. p.120, lines 5-11 (emphasis added). He also stated that he expected to have a next round of bidding at which time Rawlings would consider making a next higher bid.

16. Mr. Kolodney also stated that "... the discussion we had had was that the proposal was going to be made for sealed bids, make your best offer, we'll open them up, and we clearly said that was not acceptable to us, that we wanted to go into the bidding, and that's what we were bidding on, based on that." Trans. p.120, lines 20-24 - p. 121, lines 1-2.

17. After further conversations between Mr. Stark, Mr. Hollander, and Mr. Kolodney, representatives of Rawlings left the Auction room for a few minutes and caucused and upon returning, as Mr. Hollander began to speak, Jacob Kotzubei, a representative of Platinum Equity (Kranos), stated that they would leave the building "this second and you guys make a decision, either our bid is accepted or we have lost, and either way we need to know right now." Trans. p. 123, lines 18-24. Mr. Kotzubei continued to interrupt Mr. Hollander and

stated to Mr. Hollander "...we have a made an ultimatum now to the Debtor to make a decision and we are not interested in hearing what you have to say right now." Trans. p. 124, lines 12-15. Thereafter Mr. Stark awarded the bid to Kranos and closed the Auction. When Mr. Hollander asked "what happened to our bid of $36 Million, Mr. Stark responded 'I don't know.'" Trans. p.125, lines 5-7.

## OBJECTION

18. Rawlings objects to the selection of Kranos as the winning bidder at the Auction and the manner in which Mr. Stark conducted the final minutes of an auction which lasted over 19 hours.

19. It is clear from the transcript that Mr. Stark was intimidated by Mr. Kotzubei's actions and threat to withdraw Kranos' offer. Mr. Stark ignored Mr. Kolodney's and Mr. Hollander's statements that the bidding was not to be done on a final basis and never clearly stated to the Bidders that he would not accept any further bids.

20. A Section 363 sale is conducted to generate the greatest return to the Debtors' estates. In this instance, Rawlings was not permitted to increase their last bid (which was $900,000 higher than the last Kranos bid) which if allowed, would have resulted in $1.5M of additional funds into the Debtors' estates.

21. It was improper for Mr. Stark to close the Auction so quickly simply because one bidder threatened to leave. As noted previously, under the terms of the Bidding Procedures, Two Point could be designated as a Back-up Bidder and therefore there would be no harm to the Debtors' estates if Kranos did not bid and Rawlings was allowed to make a successful bid as the Debtors would have a Back-Up Bid if Rawlings defaulted plus $7.5M in escrow proceeds to the benefit of the Debtors' estates.

22. A reading of the transcript attached to this objection clearly shows that after 19 hours the main objective of Mr. Stark and the Debtors was to end the Auction rather than obtain the highest and best return for the Debtors' estates.

23. For the reasons stated above, Rawlings respectfully requests that the Court (i) not approve the sale to Kranos and (ii) re-open the bidding to allow Rawlings to participate, which participation will certainly inure to the benefit of the Debtors' estates.

Dated: December 15, 2010                 Respectfully Submitted,

**SMITH KATZENSTEIN & JENKINS LLP**

By: /s/ Michael P. Migliore
Kathleen M. Miller (Id. No. 2898)
Michael P. Migliore (Id. No. 4331)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, DE 19899
Tel. (302) 652-8400
Fax (302) 652-8405
kmiller@skjlaw.com
mmigliore@skjlaw.com

-and-

KANE & KESSLER, P.C.
Robert Kolodney, Esq.
1350 Avenue of the Americas
New York, NY 10019-4896
Tel. (212) 519-5131
Fax (212) 245-3009
*Counsel for Rawlings Sporting Goods Company, Inc.*