# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCHUTT SPORTS, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 331** |

## ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Sale Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") seeking entry of an order (the "**Order**"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) approving that certain second amended and restated asset purchase agreement (the "**Agreement**" attached hereto as **Exhibit "A"** ), dated as of December 15, 2010, between Kranos Intermediate Holding Company, as the purchaser (the "**Purchaser**"); (ii) approving the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Purchased**

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Mountain View Investment Company of Illinois (3563), Schutt Sports, Inc. (0521), Schutt Holdings, Inc. (0276), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, the Agreement, or the Bid Procedures Order, as applicable.

Assets"), free and clear of all Liens, Claims, Encumbrances and Interests (defined herein), with such sale to be in accordance with the terms and conditions of the Agreement; (iii) approving the assumption and assignment of certain executory contracts and unexpired leases to the Purchaser; and (iv) granting related relief; and this Bankruptcy Court having entered an order dated December 1, 2010 (the **"Bid Procedures Order"**), authorizing the Debtors to conduct the Auction pursuant to the Bid Procedures and approving, *inter alia,* (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and the Sale Hearing; (iii) procedures relating to the assumption and assignment of the Assigned Contracts, including the Cure Notice; and the Bankruptcy Court having established the date of the Sale Hearing; and the Bankruptcy Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334;[3] and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these Cases, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

---

[3] The **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[4]

A.     The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these Cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014, and (iii) Local Rule 6004-1.

F.     On September 6, 2010 (the "**Petition Date**"), each of Mountain View Investment Company of Illinois, Schutt Sports, Inc., Circle System Group, Inc., Melas, Inc., R.D.H. Enterprises, Inc., and Triangle Sports, Inc. (collectively, the "**Joint Debtors**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On September 15, 2010, Schutt Holdings, Inc., a Delaware corporation and the parent company of the Joint Debtors (the

---

[4] All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

"**Additional Debtor**" and, together with the Joint Debtors, the "**Debtors**"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.     As evidenced by the affidavits of service filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the Local Rules, and in compliance with the Bid Procedures Order. The Debtors also gave due and proper notice of the potential assumption and assignment of each contract listed **Exhibit "B"** on the hereto. On December 1, 6, 8 and 9, 2010, the Debtors served a copy of the Cure Notice to each non-debtor party under each such contract  In addition to the foregoing notice, the Debtors advertised the proposed sale and the relief requested in this Order, including the provisions requesting injunctive relief for the benefit of Purchaser against unknown claimants who may in the future assert claims relating to the manufacture and/or sale of products by the Debtors in the national edition of Wall Street Journal on December 6, 2010. Such notice was sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, or of the entry of this Order is necessary or shall be required.

H.     With the exception of those Assigned Contracts identified on "**Exhibit B**" hereto, which require the consent of the non-debtor party to the assignment of those Assigned Contracts to the Purchaser, no section of any Assigned Contracts which purports to prohibit, restrict, or

condition the use, transfer or assignment of any such Assigned Contracts in connection with the proposed Sale to the Purchaser shall have any force or effect.

I.  A reasonable opportunity to object or be heard regarding the requested relief in the Sale Motion and the Order has been afforded to all interested persons and entities, including, without limitation, (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the Secured Lender; (d) all taxing authorities having jurisdiction over any of the Purchased Assets subject to the sale, including the Internal Revenue Service; (e) the Environmental Protection Agency; (f) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (g) all parties that have requested special notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of this order; (h) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Purchased Assets; (i) all Contract Parties; (j) counsel to the Stalking Horse Bidder; (k) all Attorneys General for the states in which the Debtors conduct business; and (l) all potential bidders previously identified or otherwise known to the Debtors (collectively, the "**Notice Parties**").

J.  Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

K.  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Purchased Assets and assume and assign the Assigned Contracts under section 363 and 365 of the Bankruptcy Code prior to confirmation of a plan or reorganization under section 1129 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors,

their estates and their creditors. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale is not consummated quickly; (ii) the Agreement constitutes the highest or best offer for the Purchased Assets; (iii) the Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going-concern basis and avoid decline in the Debtors' business; and (iv) unless the Sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

L.     The Bid Procedures set forth in the Bid Procedures Order were non-collusive, created and followed in good faith, and substantively and procedurally fair to all parties.

M.     The Debtors and their professionals have complied, in good faith, with the Bid Procedures Order in all respects. As demonstrated by (a) any testimony and other evidence proffered or adduced at the Sale Hearing and (b) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets; (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets; and (iii) considered all Qualified Bids submitted on or before the Bid Deadline.

N.     The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration in cash and cash equivalents to be realized by the Debtors pursuant to the Agreement, (i) is the highest or otherwise best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and

estates; and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets.

O.    The Purchaser is the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order. The Bid Procedures enabled the Debtors to obtain the highest value for the Purchased Assets for the Debtors and their estates.

P.    The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to all of the Purchased Assets and the relief provided for in the Order. The Agreement was negotiated at arm's length and entered into in good faith and without collusion or fraud of any kind. The Purchaser has not engaged in collusion or any conduct that would otherwise control or tend to control the sale price as between or among potential bidders and, therefore, has not violated section 363(n) of the Bankruptcy Code. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code; or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the Sale and transfer of the Purchased Assets and the Assigned Contracts to the Purchaser. The Purchaser has complied in good faith with the Bid Procedures Order in all material respects. The Purchaser is entitled to all of the protections and immunities of section 363(m) of the Bankruptcy Code.

Q.    The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate the Sale.

R. The Debtors have advanced sound business reasons for seeking to enter into the Agreement, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assigned Contracts is a legal, valid and effective transfer of the Purchased Assets and any Assigned Contracts.

S. The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

T. Except with respect to Assumed Liabilities as provided in the Agreement, the Purchased Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges or interests of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties,

options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "**Liens, Claims, Encumbrances and Interests**") with such Liens, Claims, Encumbrances and Interests to attach to the proceeds of the Sale to be received by the Debtors in accordance with the Agreement in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Agreement to purchase the Purchased Assets otherwise.

U.      The transfer of the Purchased Assets to the Purchaser is a legal, valid and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the Agreement, shall vest the Purchaser with all rights, titles and interests to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. All such Liens, Claims, Encumbrances and Interests are to attach to the Sale Proceeds at the closing of the Sale. Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Assets being sold by the Debtors.

V.      The transfer of the Purchased Assets to the Purchaser, free and clear of all Liens, Claims, Encumbrances and Interests, will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims,

Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the Sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances and Interests against the Purchaser, any of their assets, property, successors or assigns, or the Purchased Assets.

W.       The Debtors may sell the Purchased Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties to the Assigned Contracts, who did not object, or who withdrew their objections, to the Sale of the Purchased Assets and the Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled. Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, Encumbrances and Interests, if any, attach to the proceeds of the Sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Liens, Claims, Encumbrances and Interests, and with such Liens, Claims, Encumbrances and Interests being subject to treatment by separate order of the Bankruptcy Court.

X.     Not selling the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances to the Purchaser would adversely impact the Debtors' estates, and the Sale of Purchased Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

Y.     The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A) and (B) and 365(f) of the Bankruptcy Code, in connection with the Sale and the assumption and assignment of the Assigned Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code. The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary (other than as identified on Exhibit B hereto). The Debtors have indicated that any cure payments will be paid by the Purchaser at closing and, therefore, have sufficiently provided for the cure payments required to assume and assign the Assigned Contracts to the Purchaser. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

Z.     The Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

AA.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors'

estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities and the Order will release and forever discharge the Purchaser and any of their affiliates, their successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Agreement.

BB.     The Sale of the Purchased Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan.

CC.     The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Transfer Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein. The Sale Motion complies with all aspects of Local Rule 6004-1.

2.     To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied. For the reasons set forth on the record, the objection of Rawlings Sporting Goods Company, Inc. is overruled.

3.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and 6006, the Local Rules and the orders of the Bankruptcy Court.

*Approval of Sale*

4.     The Sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.     Upon entry of this order, the liens and claims of the Secured Lender shall be allowed in full. Upon the Closing of the Sale, the Debtors are authorized and directed to pay the Secured Lender indefeasibly in full, in cash, those amounts due and owing under the Final DIP Order and the Prepetition Secured Loans.

6.     The Sale of the Purchased Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

7.     The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the

transfer of the Assigned Contracts as part of the Sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

8.     Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

9.     The Debtors are hereby authorized to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and the Sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court. The Purchaser shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their obligations to do so have been met, satisfied or waived.

10.     The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors,

officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

11.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any

such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

12.     Effective as of the Closing, the Sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all rights, titles and interests in and to the Purchased Assets, free and clear of all Liens, Claims, Encumbrances and Interests of any kind, pursuant to section 363(f) of the Bankruptcy Code. All such Liens, Claims, Encumbrances and Interests are to attach to the Sale Proceeds; and the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to any Assumed Liabilities.

13.     The Purchased Assets do not include any football helmet shells in Debtor's possession as of earlier of the date of the Closing or December 31, 2010, which have been specifically found to infringe patents of Riddell, Inc. in that certain civil action styled Riddell, Inc. v. Schutt Sports, Inc., identified by civil action number 3:08-cv-00711 pending in the United States District Court for the Eastern District of Wisconsin, and the Sale does not otherwise serve to authorize any continuing or future infringement of Riddell's intellectual property rights (including the allegation of infringement directed to the "AiR Flex QB-WR-9405" shoulder pad

set forth in that civil action styled <u>Riddell, Inc. v. Schutt Sports, Inc.</u>, identified by civil action number 10-cv-000504 pending in the United States District Court for the Eastern District of Wisconsin).

14.   The Sale does not serve to authorize post-closing any alleged continuing or future infringement of USA Helmet Company, LLC's or Mad Partners, LLC's intellectual property rights, if any, as alleged in the Notice of Potential Patent Infringement filed on December 10, 2010 [Docket No. 382].

15.   Skydex Technologies, Inc. ("Skydex") alleges ownership of certain intellectual property rights and further alleges that the intellectual property rights that they purport to own are incorporated into certain products manufactured by the Debtors. The allegations by Skydex are disputed by the Debtors. This Order does not approve the sale or transfer of, any alleged intellectual property rights owned by Skydex Technologies, Inc. as alleged in Skydex Technologies, Inc.'s Objection to the Proposed Sale of the Debtors' Assets Pursuant to Proposed Asset Purchase Agreement filed on December 10, 2010 [Docket No. 386], including, but not limited to, the intellectual property allegedly provided to the Debtors pursuant to either the August 12, 2003 Purchase and Sale Agreement or the August 30, 2006 Mutual Confidential Disclosure Agreement entered into between Skydex Technologies, Inc. and the Debtors including, but not limited to, any technology based on Skydex Technologies, Inc.'s patented, proprietary or patent pending technology related to interdigitated hemis and/or interdigitated column technology. Additionally, neither the Sale nor this Order authorize any alleged continuing or future infringement of any of the aforementioned Skydex's intellectual property rights post-closing by the Purchaser or any past infringement of any of the aforementioned of Skydex's intellectual property rights, if any, by the Debtor or Debtor-In-Possession.

16.     Notwithstanding any provision in this order or the Agreement, the rights of Ropes & Gray to recoup and/or setoff the Unpaid Fees against the Retainer (as such terms are defined in the Limited Objection of Ropes & Gray LLP to the Proposed Sale of the Debtors' Assets Pursuant to Proposed Asset Purchase Agreement, Docket No. 406) shall be preserved and are not released, impaired, discharged, or otherwise affected by this Order or the Agreement.

*Transfer of Assets*

17.     Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), 363(f) and 365 of the Bankruptcy Code, to sell the Purchased Assets to the Purchaser. The sale of the Purchased Assets vests the Purchaser with all right, title and interest to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances and Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise. All such Liens, Claims, Encumbrances and Interests are to attach only to the proceeds of the Sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtors may possess with respect thereto. The Sale Motion shall be deemed to provide sufficient notice as to the Sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests in accordance with Local Rule 6004-1. Following the Closing Date, no holder of any Liens, Claims, Encumbrances and Interests in the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, Claims, Encumbrances and Interests, or any actions that the Debtors may take in

their chapter 11 Cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

18.    The provisions of this Order authorizing the Sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances and Interests, other than the Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. All such Liens, Claims, Encumbrances and Interests are to attach to the Sale Proceeds.

19.    On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances and Interests of any kind against the Purchased Assets, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances and Interests in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances and Interests that the person or entity has with respect to the Purchased Assets, the Debtor or the Purchaser, may, in their sole option and at their sole discretion, execute and file on behalf and in the stead of such creditor any such document as may be necessary to evidence the discharge on any Lien, Claim or Encumbrance. Nothing herein is intended to affect or limit the provisions of paragraph 17 of this Order. Each filing office, recording office or other registry where Liens, Claims, Encumbrances and Interests

are filed or recorded is authorized and directed to release such Liens, Claims, Encumbrances and Interests based upon the filing of a certified copy of this Order.

20. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

21. All of the Debtors' interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser free and clear of all Liens, Claims, Interests and Encumbrances. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

22. Except as otherwise provided in the Agreement, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective interests or claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

23. Except as otherwise expressly provided in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets are

directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

*Assumed Contracts and Assumed Leases*

24. Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assigned Contracts and the assignment of such Assigned Contracts to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.

25. The Assigned Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of all Cure Amounts.

26. Upon the payment of the Cure Amounts, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contracts. The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

27. Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, the Purchaser shall promptly pay or cause to be paid to the parties to any Assigned Contracts the requisite Cure Amounts, if any, set forth in the Cure Notice served by the Debtors on each of the parties to the Assigned Contracts, with respect to the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the Cure Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assigned Contracts are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Purchaser or the Purchased Assets with respect to any claim for cure, or any other claim, under any Assigned Contract.

28.    All defaults, actual pecuniary losses (as defined in Section 365(b)(1)(B) of the Bankruptcy Code) or other obligations under the Assigned Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts, and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any additional amounts are due or other defaults exist.

29.    Any provision in any Assigned Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any.  No sections or provisions of any Assigned Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assigned Contracts shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assigned Contract pursuant to the terms of the Agreement in any respect constitutes a default under any Assigned Contract. The non-debtor party to each Assigned Contract shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the

assumption or assignment thereof (other than with respect to those contracts specifically identified on Exhibit B hereto).

30.    Notwithstanding anything herein to the contrary, seven (7) business days following the Sale Hearing, Purchaser shall be entitled in its sole discretion to request that the Debtors add to the list of Assigned Contracts any executory contracts of Debtors by providing written notice thereto to the Debtors, and any executory contracts so added shall constitute Purchased Assets; provided that Purchaser shall not be entitled to add to the list of Assigned Contracts any contracts of the Debtors that, as of the date Purchaser provides written notice to Debtors, (a) any Debtors have rejected by Order of the Bankruptcy Court, (b) that have terminated or expired pursuant to their terms or by Order of the Bankruptcy Court, or (c) that are set forth on Schedule 1.4 of the Agreement. If Purchaser adds any executory contracts to the Assigned Contracts in accordance with the foregoing, then, at Purchaser's request, and subject to Section 1.5 of the Agreement, the Debtors shall take such steps as are necessary to cause such executory contracts to be assumed by the Debtors and assigned to Purchaser, including to the extent necessary promptly filing appropriate pleadings, with the bankruptcy Court to obtain approval of such assumption and assignment.

31.    The following filed or have informally raised objections to the Cure Amounts: (1) License Agreement, dated as of March 23, 1998, by and between Pamela S. Ryan, Leisure Inc. and Schutt Sports, Inc. f/k/a Schutt Athletic Sales Company; (2) outstanding purchase orders of Custom Manufacturing, Inc.; (3) outstanding purchase orders of LMC Industries; and (4) outstanding purchase orders of McDaniel Fire Systems, LLC. The Debtors reserve their right to among other things assert that these contracts are not executory. To the extent the Cure issues

raised by these parties are not resolved, the Court will hold a hearing on December 23, 2010, at 1:30 p.m. to address these issues.

32.     The Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assigned Contracts.

33.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assigned Contracts occurring on and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

34.     The non-debtor parties to Assigned Contracts shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of the Assigned Contracts.

*Additional Provisions*

35.     The Debtors are hereby authorized and empowered, upon and in connection with the Closing, to change their corporate names and the caption of these chapter 11 cases, consistent with applicable law. The Debtors shall file a notice of change of case caption, containing the new caption and the proposed new corporate names of the applicable Debtors, within one business day of the Closing, and the change of case caption for these chapter 11 cases shall be deemed effective as of the Closing.

36.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

37.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased

Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 Cases or the consummation of the transaction contemplated by the Agreement.

38.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' obligations or liabilities other than the Assumed Liabilities as set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Liens, Claims, Encumbrances and Interests based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Purchased Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens, Claims, Encumbrances and Interests or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims, Encumbrances and Interests or cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.

39.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the

Purchased Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Purchased Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' business within the meaning of, or in connection with, (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, collective bargaining agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements, collective bargaining agreements, or pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, and any obligations that might otherwise arise from any such cessation, dismissal or termination pursuant to any law of the United States, any State therein, or any other jurisdiction in the world, whether such obligations arise under any contract, agreement, statute, regulation, ordinance, common law, public policy, constitution or any other source, including without limitation, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations

Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Purchased Assets prior to Closing, and (ix) any litigation. The Purchaser shall have no successor or vicarious liabilities of any kind or character.

40.     Except with respect to Assumed Liabilities, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens Claims, Encumbrances or Interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' Business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting, against the Purchaser, any of its affiliates, its successors or assigns, their property or the Purchased Assets, such persons' or entities' Liens, Claims, Encumbrances or Interest in and to the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its

affiliates, successors, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates, successors, assets or properties; (iii) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates, successors, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due Purchaser, any of its affiliates or successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the Provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the business operated with the Purchased Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the Agreement.

41.    Other than the Assumed Liabilities as provided for in the Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors are deemed to release and forever discharge the Purchaser and any of its affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Agreement.

42.    Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, any such

waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

43.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

44.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

45.     This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in applicable chapter 7 cases if these Cases are converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

46.     The provisions of this Order are non-severable and mutually dependent.

47.     Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 Cases, or in any subsequent or

converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

48.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

49.     This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Encumbrances and Interests, and the attachment of such Liens, Claims, Encumbrances and Interests to the Sale Proceeds.

Dated:  Wilmington, Delaware
        Dec 16         , 2010

HONORABLE KEVIN J. CAREY
CHIEF UNITED STATES BANKRUPTCY JUDGE