### 4. Mediation

On January 19, 2011, this Court entered an *Order Appointing Mediator* [Docket No. 576] (the "**Mediator Order**"). The purpose of the mediation was, among other things, to determine whether the Settlement Parties could (a) reach agreement as to the available assets in the Debtors' Estates for Distribution to the Holders of Allowed Claims generally and (b) how the available assets should be allocated among the creditors, including whether the $29 million judgment claim held by Riddell would be compromised as part of the mediation. The Settlement Parties worked cooperatively with the mediator over a two-day period and were able to reach agreement on the terms of the Settlement as described below.

### 5. Settlement Motion

On January 31, 2011, the Debtors Filed their *Motion For Entry of Order, Pursuant to Sections 105, 503(b)(3)(D) and 1107 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9019, Authorizing and Approving (A) Settlement By and Among Debtors, Riddell, Windjammer, Gridiron, Purchaser and Committee With Respect to the Global Resolution of Certain Litigation and Claims and (B) Consummation of Transactions Contemplated Thereby* [Docket No. 602] (the "**Settlement Motion**"). The Court approved the Settlement Motion on February 11, 2011 [Docket No. 643] (the "**Settlement Order**").

THE DESCRIPTION OF THE SETTLEMENT SET FORTH BELOW IS (I) ONLY A SUMMARY, (II) PROVIDED FOR INFORMATIONAL PURPOSES ONLY, AND (III) QUALIFIED IN ITS ENTIRETY BY THE SETTLEMENT ORDER AND DOCUMENTS RELATED THERETO.

The general terms of the Settlement, which are set forth in more detail in the Settlement Order [Docket No. 643], are as follows:

(a) Riddell was granted an Allowed General Unsecured Claim in the amount of $29,000,000, which Claim, upon approval of the Settlement Motion, was satisfied in full by an immediate cash payment of $1,000,000 from the Debtors' Estates. This payment has been made.

(b) Riddell was granted an Allowed Administrative Expense Claim in the amount of $70,348, which Claim was satisfied in full, upon approval of the Settlement Motion, by an immediate cash payment of $70,348 from the Debtors' Estates from funds held in escrow by the Debtors. This payment has been made.

(c) The judgment entered in favor of Riddell in the Helmet Litigation was to be deemed final. An injunction is to be issued against the Debtors with respect to the infringing helmets. Any and all other disputes between Riddell and the Debtors, including, without limitation, the Shoulder Pad Litigation, any matters pending before the Wisconsin District Court, the United States District Court for the District of Delaware and any matters pending before the Bankruptcy Court were deemed resolved. Riddell and the Debtors are in the process of preparing the necessary papers to be filed with the Wisconsin District Court. All pending matters between Riddell and the Debtors before the Bankruptcy Court or Delaware District Court have been dismissed or closed.

CHI 60,777,341 V11

**(d)**    Windjammer was granted an Allowed General Unsecured Claim in the amount of $17,357,529 against each of the Debtors. Windjammer sold its Claim to the Purchaser in exchange for a $1,000,000 payment from the Sale proceeds previously escrowed for Distribution to Trade Creditors holding Allowed General Unsecured Claims. This payment has been made. Under the Plan, the Disbursing Agent will disburse any Distributions received on account of the Windjammer Claim to Trade Creditors holding Allowed General Unsecured Claims and to Windjammer, as set forth in the Settlement Order and further described in Article VII of the Plan.

**(e)**    Gridiron was granted an Allowed General Unsecured Claim against SH Liquidating in the amount of $300,000 and will participate in Distributions under the Plan.

**(f)**    Windjammer and Gridiron were granted Allowed Administrative Expense Claims in the amounts of $100,000 and $50,000, respectively, for their substantial contribution to these Chapter 11 Cases, which Claims have been paid in full.

**(g)**    The Purchaser was authorized to direct the Debtors to pay, from the remaining Escrowed Sale Proceeds, at any time after approval of the Settlement Motion and without the need for further court order, $5.3 million to Holders of Allowed Claims of Critical Trade Vendors. These payments have been made or are in the process of being made.

**(h)**    The Purchaser, the Debtors, and the Committee agreed upon a list of Trade Creditors and, the Debtors were authorized to distribute $400,000 from the remaining escrowed Sale proceeds Pro Rata on account of Allowed General Unsecured Claims of Trade Creditors. These payments will be made after reconciliation of those proofs of Claims Filed by the Trade Creditors against the amounts reflected in the Debtors' books and records and resolution of any objections to such Claims.

**(i)**    The Debtors were authorized to disburse $800,000 of the Escrowed Sale Proceeds to the Holders of Allowed 503(b)(9) Claims, as such Claims are Allowed (the "**503(b)(9) Escrow**").

**(j)**    To the extent that those Sale proceeds that are currently being held by the Debtors' Estates to pay Administrative Expense Claims, including wind-down expenses, are not used, these Sale proceeds remain in the Estates and are available for Distribution to all Holders of Allowed Claims or Allowed Interests against the Debtors in accordance with the Plan.

**(k)**    The Settlement further provided for mutual general releases amongst all of the Settlement Parties.

## I.    Exclusivity Motion

On December 27, 2010, the Debtors Filed their motion to extend the exclusive periods during which the Debtors may File a chapter 11 plan and solicit acceptances thereof [Docket No. 476] (the "**Exclusivity Motion**"). Riddell Filed the Qualified Objection to the Exclusivity Motion [Docket No. 489], and the Debtors and the Committee each responded to such objection [Docket Nos. 518 and 519]. On February 11, 2011, the Bankruptcy Court entered an order granting the Exclusivity Motion and extending the exclusive Filing period through and including

April 4, 2011 and the exclusive solicitation period through and including June 3, 2011 [Docket No. 642] (the "**Exclusivity Order**"). The Debtors may seek a further extension of such exclusive periods depending upon the timing of confirmation of the Plan.

### J. Rejection Motion

On December 31, 2010, the Debtors Filed their motion to reject certain Executory Contracts [Docket No. 480] (the "**Rejection Motion**"). On January 10, 2011, the Bankruptcy Court entered an order granting the Rejection Motion [Docket No. 527] and authorizing the Debtors to reject certain Executory Contracts (the "**Rejected Contracts**") as set forth in the Rejection Motion.

### K. The Bar Date Order

On January 10, 2011, the Bankruptcy Court entered an order establishing the following Bar Dates [Docket No. 526] (the "**Bar Date Order**"):

- General Unsecured Claim Bar Date: February 14, 2011 at 5:00 p.m. (Prevailing Eastern Time)

- 503(b)(9) Claims Bar Date: February 14, 2011 at 5:00 p.m. (Prevailing Eastern Time)

- Governmental Unit Bar Date: March 14, 2011 at 5:00 p.m. (Prevailing Eastern Time)

The Bar Date Order exempts certain Claims from the provisions of the Bar Date Order, unless otherwise ordered by the Court, as follows:

- Claims already duly Filed in these Chapter 11 Cases with the Debtors' Claims Agent, or with the Clerk of the Bankruptcy Court for the District of Delaware;

- Claims listed in the Debtors' Schedules, or as listed in any supplements or amendments thereto, if the Holder of the Claim does not dispute the amount or manner in which its Claim is listed in the Schedules or the nature of the Claim and if such Claim is not designated as "contingent," "unliquidated," "subject to adjustment," "disputed," or "unknown" (or assigned a zero amount);

- Claims by any Entity holding an interest in any of the Debtors (an "**Interest Holder**"), which interest is based exclusively upon the ownership of stock in any of the Debtors or warrants or rights to purchase, sell or subscribe to such a security or interest (any such security or interest being referred herein as an "**Interest**"), need not File a proof of claim on or before the General Bar Date; provided, however, that Interest Holders that wish to assert Claims against any of the Debtors that arise out of or relate to the ownership or purchase of an Interest, including Claims arising out of or relating to the sale, issuance or distribution of

CHI 60,777,341 V11

the Interest, must File proofs of Claim on or before the General Bar Date, unless another exception identified herein applies;[7]

- Claims for which a separate deadline is (or has been) fixed by this Court; and

- Claims that have been Allowed by an order of this Court entered on or before the applicable Bar Date.

Finally, the Bar Date Order provides that any Person that is required to File a proof of claim against the Debtors in the Debtors' Chapter 11 Cases, but that fails to properly do so by the applicable bar date, shall not be treated as a Creditor with respect to such Claim for purposes of (a) Distributions pursuant to the Sale Order; or (b) voting upon or receiving Distributions under any plan or plans of reorganization or liquidation in these Chapter 11 Cases.

## L.    Co-Chief Administrative Officers and Consultants

On February 4, 2011, the Debtors filed a motion to retain and appoint Dan Schmidt and Steve Day (collectively, the "**Co-Chief Administrative Officers**") as co-chief administrative officers, *nunc pro tunc* to January 18, 2011 and to retain Rollen Jones and Barbara Crispens (collectively, the "**Consultants**") as consultants, *nunc pro tunc* to December 17, 2010 [Docket No. 615], which was granted by an order of the Bankruptcy Court, dated February 23, 2011 [Docket No. 668].

Each of the Co-Chief Administrative Officers had been appointed to the Debtors' Boards in August, 2010 and was a member of the Board subcommittee established to oversee the Debtors' postpetition sale and plan process. The Co-Chief Administrative Officers have extensive experience in corporate management, acquisitions and restructurings. Upon the Bankruptcy Court's approval, the Co-Chief Administrative Officers are paid an aggregate amount of $25,000 per month.

The Consultants served as the Debtors' Chief Financial Officer and Controller until the closing of the Sale. The Consultants are independent contractors that provide, among other things, assistance in the Debtors' liquidation and dissolution on an as-needed basis under the direction of the Co-Chief Administrative Officers. The Consultants are paid $200 per hour for their services, with the exception that Rollen Jones was paid $300 per hour for the time period from December 17, 2010 up to and including January 17, 2011.

## M.    Stay Relief Motion

On March 4, 2011, the Debtors filed a motion seeking relief from the automatic stay to authorize Zurich American Insurance Company (the "**Insurer**") to advance payments for certain prepetition and postpetition defense costs (the "**Defense Costs**") in accordance with and subject to the terms and conditions of that certain insurance policy (No. DOC 5914573 03) by and between the Debtors and the Insurer (the "**Policy**") [Docket No. 690], which motion is scheduled

---

[7]    The Debtors reserve the right to establish at a later time a bar date requiring Interest Holders to file proofs of Claim. If such a bar date is established, Interest Holders will be notified of the bar date for filings proofs of Claim at the appropriate time.

for hearing before the Bankruptcy Court on March 29, 2011 (the "**Insurance Stay Relief Motion**").

As described above, the Debtors' businesses were significantly burdened by the Circle Frauds and the consequent Circle System Matters. To defend the Circle System Matters, the Debtors incurred significant attorneys' fees and costs and will continue to incur such fees and costs through their various litigation defense counsel ("**Litigation Counsel**"). Since the Insurer made clear postpetition that, due to the possibility that the automatic stay may prohibit the Insurer from making payments to the Litigation Counsel under the Policy, the Insurer will require, as a condition to any payment, that the Debtors obtain an order from the Bankruptcy Court permitting the payment of the Defense Costs. Accordingly, the Debtors filed a motion to lift the automatic stay to authorize the Insurer to advance the contractually required payments for the Defense Costs in accordance with and subject to the terms and conditions of the Policy. The Abeshaus Parties filed an objection to such Insurance Stay Relief Motion.

The Court held a preliminary hearing on the Insurance Stay Relief Motion on March 29, 2011 and entered an interim order [Docket No. 791] lifting the automatic stay to authorize the Insurer to advance payments of the outstanding balance of the Defense Costs as set forth in the Insurance Stay Relief Motion, which balance aggregated approximately $270,000. The final hearing on the Insurance Stay Relief Motion will be held on May 9, 2011 at 2:30 p.m. (Prevailing Eastern Time).

**N.     Easton Lease Motion**

On March 8, 2011, the Debtors filed a motion (the "**Easton Lease Motion**") to assume and assign, as modified, that certain lease agreement (the "**Easton Lease**"), dated September 30, 2005, for certain facilities located in Easton, Pennsylvania, in connection with the operations of Circle System [Docket No. 696]. The Easton Lease Motion is scheduled for hearing before the Bankruptcy Court on March 29, 2011.

Except for the unpaid prepetition rent and certain utilities and taxes, the Debtors have no existing defaults outstanding under the Easton Lease, and, therefore, a cure payment is owed to the landlord under the Easton Lease (the "**Landlord**") under section 365(b) of the Bankruptcy Code (the "**Cure Amount**"). Upon approval of the Easton Lease Motion, the Cure Amount owed to the Landlord will include (i) unpaid rent of $48,125.01, which shall be paid by Purchaser within five business days of entry of the order as follows: (x) $34,439.46 to Alan and Sandra Abeshaus and (y) $13,685.55 to the Sandra Abeshaus Grantor Retained Annuity Trust; and (ii) unpaid taxes, utilities and any other similar charges due under the Easton Lease which accrued prior to March 1, 2011 and are to be paid by the Debtors. Provided that the pre-assumption defaults are cured as described above, the Landlord shall be forever barred under sections 105(a) and 365(e) of the Bankruptcy Code from taking any action to alter, impair or otherwise adversely affect the Debtors' or Purchaser's rights and interests under the Easton Lease based on any alleged pre-assumption default, including, without limitation, the filing or pendency of these Chapter 11 Cases. Except as related to the Cure Amount, Landlord waives any and all claims arising out of or related to the Easton Lease, if any, against the Debtors. The Court entered an order approving the Easton Lease Motion on March 25, 2011 [Docket No. 771].

CHI 60,777,341 V11

**O.**     **503(b)(9) Report and Objections**

On March 16, 2011, in accordance with the Bar Date Order, the Debtors filed a motion to seek allowance of certain administrative claims pursuant to section 503(b)(9) of the Bankruptcy Code and payment of such claims from the 503(b)(9) Escrow [Docket No. 738] (the "**503(b)(9) Allowance Motion**"). The Debtors also filed their first omnibus non-substantive objection [Docket No. 734] (the "**First Omnibus Objection**") and second omnibus substantive objection [Docket No. 739] (the "**Second Omnibus Objection**"), requesting that certain claims pursuant to section 503(b)(9) of the Bankruptcy Code be (i) reduced in amount and paid from the 503(b)(9) Escrow, (ii) disallowed and expunged, (iii) reclassified, (iv) modified so as to be asserted against the correct Debtor, allowed and paid from the 503(b)(9) Escrow as modified, and/or (v) modified so as to be asserted against the correct Debtor without being allowed given other objections against them, as applicable. The 503(b)(9) Allowance Motion, the First Omnibus Objection and the Second Omnibus Objection are scheduled for hearing before the Bankruptcy Court on April 20, 2011.

**P.**     **Late Claim Motion and Limited Objection Thereto**

On March 9, 2011, Jackie D. Jent, II ("**Jent**") filed a motion [Docket No. 703] (the "**Late Claim Motion**") for an order (i) authorizing tardy filing of certain proofs of claim attached to the Late Claim Motion (the "**Tardy Claims**") on account of alleged tortious conduct and related damages arising in connection with that certain Confidential Settlement Agreement and Mutual Release of Claims, dated August 31, 2009, in the context of an action between Jent and his ex-wife (the "**Jent Family Court Action**") before the State of Indiana, Lake County Superior Court, Civil Division, Sitting at Gary, Indiana (the "**Indiana Superior Court**"), (ii) directing the Debtors to provide certain accounting of balances due and owing between the Debtors and certain of the Debtors' vendors ("**Chi-Am**" and "**Zhuai**"), who are the subject of that certain order entered by the Indiana Superior Court in the Jent Family Court Action (the "**Kidnapping and Marital Property Order**"), (iii) striking certain of the Debtors' former officers and/or directors from the group of Released Parties under the Plan, and (iv) directing the Debtors to disclose the existence of and available remaining coverage under all applicable insurance policies between calendar years 2008 through 2011 and produce complete copies of all such policies.

In the Late Claim Motion, Jent alleges that the prepetition Debtors made certain payments to Chi-Am and Zhuhai in willful contempt and knowing abrogation of the terms and provisions of the Kidnapping and Marital Property Order directing the Debtors to pay all monies due and owing to Chi-Am or Zhuhai into a certain escrow account. The Debtors dispute all such allegations by Jent. On March 23, 2011, the Debtors filed their limited objection to, among other things, the Late Claim Motion [Docket No. 758]. The Committee filed a joinder to such limited objection by the Debtors [Docket No. 759] on March 23, 2011. The Debtors do not believe that they have any insurance policies that would provide coverage for the Tardy Claims. Notwithstanding the Debtors' belief, the Debtors do have D&O insurance in place that may be available to cover the Tardy Claims. On March 29, 2011, the Court directed Jent and the Debtors to submit an agreed form of order allowing the filing of the Tardy Claims and deeming such Claims timely filed.

CHI 60,777,341 V11

## V.     SUMMARY OF THE PLAN OF LIQUIDATION

The following sections summarize the salient provisions of the Plan. This summary refers to, and is qualified in its entirety by, reference to the Plan, a copy of which is attached hereto as Exhibit A. THE TERMS OF THE PLAN WILL GOVERN IN THE EVENT ANY INCONSISTENCY ARISES BETWEEN THIS SUMMARY AND THE PLAN.

Parties are encouraged to review the Plan in its entirety for a full understanding of its provisions and its impact on Creditors and Interest Holders.

The Court has not yet confirmed the Plan described in this Disclosure Statement. In other words, the terms of the Plan do not yet bind any person or entity. **HOWEVER, IF THE BANKRUPTCY COURT CONFIRMS THE PLAN AND THE PLAN BECOMES EFFECTIVE, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS OR INTERESTS.**

### A.     Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its interest holders, or to conduct an orderly liquidation of its assets to maximize asset recoveries. Another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan of reorganization or liquidation is the principal objective of a chapter 11 case. A plan generally sets forth the means for satisfying claims against and interests in the debtor. Confirmation of a plan by the Bankruptcy Court makes the plan binding upon the debtor, any issuer of securities under the plan, any person or entity acquiring property under the plan and any creditor of, or holder of equity in, the debtor, whether or not such creditor or equity holder (a) is impaired under or has accepted the plan or (b) receives or retains any property under the plan.

After a plan of reorganization or liquidation has been filed in a chapter 11 case, certain holders of claims against or equity interests in a debtor are permitted to vote to accept or reject the plan. Prior to soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed decision whether to accept or reject the plan. The Debtors and the Committee are submitting this Disclosure Statement to Holders of Allowed Claims against or Allowed Interests in each Debtor in order to satisfy the requirements of section 1125 of the Bankruptcy Code.

## B.     Plan Objectives

The primary objectives of the Plan are to: (i) maximize the value of the ultimate recovery to all Creditors and Interest Holders on a fair and equitable basis, compared to the value they would receive if the assets of the Debtors were liquidated under chapter 7 of the Bankruptcy Code; and (ii) settle, compromise or otherwise dispose of certain Claims and Interests on terms believed to be fair and reasonable in the best interests of the Debtors, the Debtors' Creditors and their Interest Holders. The Debtors and the Committee believe that through the Plan, Holders of Allowed Claims and Allowed Interests will obtain a recovery at least equal to, if not better than, any recovery they would receive if the assets of the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

## C.     Overall Structure of the Plan

The Plan provides for the treatment of Claims against the Debtors and Interests in the Debtors. As described in detail in Section IV.H of this Disclosure Statement, the Debtors sold substantially all of their assets pursuant to the Sale Order. Thus, the Plan provides for the wind-down of the Debtors' affairs and the Distribution of the Debtors' remaining assets. The Plan establishes, among other things, a Liquidating Trust that will, *inter alia*, prosecute certain Causes of Action, pursue any objections to Claims or Interests, execute the provisions governing Distributions to Holders of Allowed Claims or Allowed Interests, and facilitate the process for resolving Disputed Claims Filed against the Debtors.

The Plan Proponents believe that the Plan provides the best and most prompt possible recovery to Holders of Claims or Interests. Under the Plan, Claims against and Interests in the Debtors are divided into different Classes. Under the Bankruptcy Code, "claims" and "equity interests" are classified rather than "creditors" and "shareholders" because such entities may hold claims or equity interests in more than one class. For purposes of this Disclosure Statement, the term **"Holder"** refers to the holder of a Claim or Interest, respectively, in a particular Class under the Plan. If the Plan is confirmed by the Bankruptcy Court and consummated, then on the Effective Date or within the time periods set forth in the Plan, the Debtors and/or the Liquidating Trustee to be appointed at the Confirmation Hearing shall make Distributions in respect of certain Classes of Claims or Interests as provided for in the Plan. The Classes of Claims against and Interests in the Debtors created under the Plan, the treatment of those Classes under the Plan and Distributions to be made under the Plan are described below.

## D.     Classification and Allowance of Claims and Interests Generally

Section 1123 of the Bankruptcy Code provides that, except for administrative expense claims and priority tax claims, a plan of reorganization must categorize claims against and equity interests in a debtor into individual classes. Although the Bankruptcy Code gives a debtor significant flexibility in classifying claims and interests, section 1122 of the Bankruptcy Code dictates that a plan of reorganization may only place a claim or an equity interest into a class containing claims or equity interests that are substantially similar.

The Plan creates several "Classes" of Claims and Interests. These Classes take into account the differing nature and priority of Claims against and Interests in the Debtors.

Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or receiving Distributions under the Plan, but are treated separately as unclassified Claims.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The Plan provides specific treatment for each Class of Claims or Interests. Only Holders of Allowed Claims or Allowed Interests are entitled to vote on and receive Distributions under the Plan.

Unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim or Interest under the Plan will be in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim or Interest.

The categories of Claims and Interests and their treatment listed below classify Claims and Interests for all purposes, including voting, confirmation and Distribution pursuant to the Plan, except as otherwise provided herein or in the Plan, and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

## E.    Treatment of Unclassified Claims under the Plan

For purposes of brevity and convenience, the classification of Claims and Interests set forth below applies to each Debtor individually. Unclassified Claims are Unimpaired by the Plan. The following are the unclassified Claims: Administrative Expense Claims and Priority Tax Claims.

### 1.    Administrative Expense Claims

Administrative Expense Claims are Claims for costs and expenses of administration of the Chapter 11 Cases Allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Debtors' Estates under section 1930, chapter 123 of title 28 of the United States Code; (d) any 503(b)(9) Claims and (e) any Claims that have been designated "**Administrative Expense Claims**" by order of this Court.

**Bar Date for Administrative Expense Claims.** Holders of Administrative Expense Claims, other than 503(b)(9) Claims and Professional Fee Claims, shall file with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, **so as to actually be received on or before the Administrative Expense Bar Date.** Any such Claim not filed by the Administrative Expense Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Administrative Expense Bar Date and shall constitute notice of such Bar Date. The Liquidating Trustee shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Expense Claims.

**Bar Date for Applications for Professional Fees.** Professional Fee Claims are Administrative Expense Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

The Bankruptcy Code does not require that administrative expense claims be classified under a plan. It does require, however, that allowed administrative expense claims be paid in full in Cash in order for a plan to be confirmed, unless the holder of such claim consents to different treatment.

Treatment: Within the time period provided in Article VII of the Plan, each Holder of an Allowed Administrative Expense Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense Claim: (a) Cash equal to the amount of such Allowed Administrative Expense Claim; or (b) such other treatment as to which the Debtors, in consultation with the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Expense Claim shall have agreed upon in writing.

**2.     Priority Tax Claims**

A Priority Tax Claims is a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

The taxes entitled to priority are: (a) taxes on income or gross receipts that meet the requirements of section 507(a)(8)(A); (b) property taxes meeting the requirements of section 507(a)(8)(B); (c) taxes that were required to be collected or withheld by the Debtors and for which the Debtors are liable in any capacity as described in section 507(a)(8)(C); (d) employment taxes on wages, salaries, or commissions that are entitled to priority pursuant to section 507(a)(4), to the extent such taxes also meet the requirements of section 507(a)(8)(D); (e) excise taxes of the kind specified in section 507(a)(8)(E); (f) customs duties arising out of the

importation of merchandise that meet the requirements of section 507(a)(8)(F); and (g) prepetition penalties relating to any of the foregoing taxes to the extent such penalties are in compensation for actual pecuniary loss as provided in section 507(a)(8)(G).

The Bankruptcy Code does not require that Priority Tax Claims be classified under a plan. It does require, however, that such claims receive the treatment described below in order for a plan to be confirmed unless the holder of such claims consents to different treatment.

Treatment: Within the time period provided in Article VII of the Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) such other treatment as to which the Debtors, in consultation with the Committee, or the Liquidating Trustee, as appropriate, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

## F.    Treatment of Classified Claims and Interests under the Plan

The treatment of Claims against and Interests in the Debtors is set forth in detail in Article IV of the Plan. For purposes of brevity and convenience, the classification of Claims and Interests set forth below applies to each Debtor individually  A summary of that treatment is provided below.

Unless the Holder of an Allowed Claim or Allowed Interest and the Debtors (in consultation with the Committee), or the Liquidating Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Claim or Allowed Interest will receive the following Distributions in accordance with Article VII of the Plan:

### 1.    Class 1: Priority Non-Tax Claims

Classification: Class 1 shall consist of Priority Non-Tax Claims against the Debtors. Class 1 Claims are Unimpaired by the Plan and the Holders of Allowed Class 1 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

Treatment: Within the time period provided in Article VII of the Plan, each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors, in consultation with counsel to the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

Voting: Not entitled to vote. Deemed to accept the Plan.

### 2.    Class 2: Secured Claims

Classification: Class 2 shall consist of the Allowed Secured Claims against the Debtors. Class 2 Claims are Unimpaired by the Plan and the Holders of Class 2 Claims are not entitled to vote on the Plan.

CHI 60,777,341 V11

Treatment: Within the time period provided in Article VII of the Plan, each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) one of the treatments specified in section 1124 of the Bankruptcy Code; or (B) such other treatment which the Debtors, in consultation with counsel to the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Secured Claim have agreed upon in writing.

Voting: Not entitled to vote. Deemed to accept the Plan.

3.    **Class 3: General Unsecured Claims**

Classification: Class 3 shall consist of all Allowed General Unsecured Claims. Class 3 Claims are Impaired by the Plan and the Holders of Class 3 Claims are entitled to vote on the Plan.

Treatment: Within the time period provided in Article VII of the Plan, each Holder of an Allowed General Unsecured Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 3 Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims and any expenses of the Liquidating Trust.

Voting: Entitled to vote.

4.    **Class 4: Critical Trade Vendor Claims**

Classification: Class 4 shall consist of all Allowed Critical Trade Vendor Claims. Class 4 Claims are Impaired by the Plan and the Holders of Class 4 Claims are entitled to vote on the Plan.

Treatment: Within the time period provided in Article VII of the Plan, each Holder of an Allowed Critical Trade Vendor Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed 4 Class Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims and all expenses of the Liquidating Trust provided, however   a Holder of an Allowed Critical Vendor Claim shall not receive any Distribution under the Plan until the Holders of Allowed General Unsecured Claims have received a percentage recovery under the Plan, on account of their Allowed General Unsecured Claims, that equals the percentage recovery received by such Holder of an Allowed Critical Vendor Claim, on account of its Allowed Critical Vendor Claim, from the Critical Trade Vendor Escrow.

Voting: Entitled to vote.

5. **Class 5: Unsecured Convenience Claims**

Classification:  Class 5 shall consist of all Allowed Unsecured Convenience Claims against the Debtors.  Class 5 Claims are Impaired by the Plan and the Holders of Class 5 Claims are entitled to vote on the Plan.

Treatment:  Within the time period provided in Article VII of the Plan, each Holder of an Allowed Unsecured Convenience Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 5 Claim a Distribution from the Liquidating Trust equal to Cash in the amount of eighteen (18%) of their Allowed Unsecured Convenience Claim.  Holders of Class 5 Unsecured Convenience Claims shall not have any rights or receive any treatment as Holders of Class 3 General Unsecured Claims under the Plan or as Trade Creditors under the Settlement Order.

Voting:  Entitled to vote.

6. **Class 6: Penalty Claims**

Classification:  Class 6 shall consist of all Penalty Claims.  Class 6 Claims are Impaired by the Plan and the Holders of Class 6 Claims are entitled to vote on the Plan.

Treatment:  On the Effective Date, each Holder of an Allowed Penalty Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 6 Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims, Allowed General Unsecured Claims, Allowed Critical Trade Vendor Claims and expenses of the Liquidating Trust.

Voting:  Entitled to vote.

7. **Class 7: Interests**

Classification:  Class 7 shall consist of all Interests, excluding Intercompany Interests.  Class 7 Interests are Impaired by the Plan and the Holders of Class 7 Interests are entitled to vote on the Plan.

Treatment:  Within the time period provided in Article VII of the Plan, each Holder of an Allowed Interest, excluding Intercompany Interests, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 7 Interest its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims, Allowed General Unsecured Claims, Allowed Critical Trade Vendor Claims, Allowed Penalty Claims and all expenses of the Liquidating Trust.  Each Holder of Allowed Interests shall be paid pursuant to the terms of any documents by and between the Debtors and such Holders, including without limitation, the corporate charter and any shareholder agreements.

41

<u>Voting</u>: Entitled to vote.

8. **Class 8: Intercompany Interests**

<u>Classification</u>: Class 8 shall consist of all Intercompany Interests. Because Holders of Class 8 Intercompany Interests will receive no Distribution under the Plan, Holders of Class 8 Intercompany Interests are Impaired and deemed to reject the Plan, and, therefore are not entitled to vote on the Plan.

<u>Treatment</u>: On the Effective Date, all Intercompany Interests shall be deemed cancelled, extinguished and discharged and of no further force or effect. The Holders of Intercompany Interests shall not be entitled to receive or retain any property on account of such Intercompany Interests.

<u>Voting</u>: Not entitled to vote. Deemed to reject the Plan.

G. **Miscellaneous Provisions**

1. **Reservation of Rights Regarding Claims and Interests**

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

2. **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents reserve the right to request Confirmation of the Plan, as it may be modified from time to time, pursuant to section 1129(b) of the Bankruptcy Code. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement or any schedule or exhibit, including amending or modifying as necessary to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

3. **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or Interest is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

4. **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

CHI 60,777,341 V11

### 5. Removal of Debtors

If the Plan cannot be confirmed with respect to one or more of the Debtors, the Plan Proponents may remove such Debtor(s) from the Plan. In such event, the Classes pertaining to such Debtor(s) will be removed from the Plan, and the Plan will omit any treatment of the assets and liabilities of such Debtor(s). The removal of any Debtor from the Plan will not affect the Plan with respect to any other Debtor.

## H. Means of Implementing the Plan

### 1. Funding of Plan

The Plan will be funded by the Cash held by the Debtors as of the Effective Date, and thereafter by the proceeds of the Liquidating Trust Assets.

### 2. [INTENTIONALLY OMITTED]

### 3. Liquidating Trust

**(a) Appointment of the Liquidating Trustee.** Steven D. Sass of Receivables Management Services shall serve as the Liquidating Trustee. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date.

In accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidating Trust and the Reserves are dissolved in accordance with Article 7.8 of the Plan and (ii) the date such Liquidating Trustee resigns, is terminated or is otherwise unable to serve; provided, however, that, in the event that the Liquidating Trustee resigns, is terminated or is unable to serve, then the Court, upon the motion of any party-in-interest, shall approve a successor to serve as the Liquidating Trustee, and such successor Liquidating Trustee shall serve in such capacity until the Liquidating Trust is dissolved.

**(b) Establishment of a Liquidating Trust.** On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant to the Plan. In the event of any conflict between the terms of Article 6.3 of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

**(c) Liquidating Trust Assets.** Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and liens, subject only to the Allowed Claims or Allowed Interests of the Liquidating Trust Beneficiaries as set forth in the Plan and the expenses of the Liquidating Trust as set forth in the

Plan and in the Liquidating Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

In connection with any Causes of Action that are included in the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) shall also exist for the benefit of the Liquidating Trust and shall vest in the Liquidating Trustee and its representatives, and shall also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges.

(d) **Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor in-Interest.** The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, including the Causes of Action, make timely Distributions to the Liquidating Trust Beneficiaries and not unduly prolong its duration. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims or Allowed Interests of Liquidating Trust Beneficiaries entitled to Distributions from the Liquidating Trust Assets, followed by a transfer by such Holders to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate in his or her sole discretion) shall value the Liquidating Trust Assets based on the good faith determination of the value of such Liquidating Trust Assets. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidating Trust Assets.

The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets transferred to the Liquidating Trust, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Liquidating Trust Assets (pending Distributions in accordance with the Plan) in Permissible Investments; provided, however, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d),

may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

(e) **Responsibilities of Liquidating Trustee; Litigation.** The responsibilities of the Liquidating Trustee shall include, but shall not be limited to:

1. the making of Distributions as contemplated herein;

2. establishing and maintaining the Reserves in accordance with the terms of the Plan;

3. conducting an analysis of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, Critical Trade Vendor Claims, Unsecured Convenience Claims, Intercompany Claims, Penalty Claims and Interests and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with Articles 8.1 and 11.4 of the Plan;

4. filing appropriate tax returns in the exercise of its fiduciary obligations;

5. retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

6. taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action, including, without limitation, the Circle System Matters and Non-Trade Avoidance Actions; and

7. taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

(f) **Expenses of Liquidating Trustee.** Fees and expenses incurred by the Liquidating Trustee shall be paid from the Liquidating Trust Expense Reserve in accordance with Article VII of the Plan.

(g) **Bonding of Liquidating Trustee.** The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his sole discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

(h) **Fiduciary Duties of the Liquidating Trustee.** Pursuant to the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders all Claims and Interests that will receive Distributions pursuant to the terms of the Plan.

(i) **Dissolution of the Liquidating Trust.** The Liquidating Trust shall be dissolved no later than three (3) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed prior to the third anniversary or the end of any extension period approved by the Bankruptcy Court (the Filing of which shall automatically extend the term of the Liquidating

Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. After (a) the final Distribution of the Reserves and the balance of the assets or proceeds of the Liquidating Trust pursuant to the Plan, and (b) the Filing by or on behalf of the Liquidating Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, the Liquidating Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(j)     **Liability, Indemnification of the Liquidating Trust Protected Parties**. The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Protected Parties other than for specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with his attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such entities, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with his attorneys, accountants, financial advisors, and agents, and his determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties under the Plan; provided, however, that no such indemnification will be made to such Liquidating Trust Protected Parties for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

(k)     **Full and Final Satisfaction against Liquidating Trust**. On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Interests against the Liquidating Trust; provided, however, that nothing contained in the Plan shall be deemed to constitute or shall result in a discharge of any Debtor under section 1141(d) of the Bankruptcy Code.

### 4. Cancellation of Instruments and Stock

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtors, except such instruments that are authorized, or issued under the Plan, shall be canceled and extinguished. Additionally, as of the Effective Date, all Interests, and any and all warrants, options, rights, or interests with respect to Interests that have been issued, could be issued, or that have been authorized to be issued but that have not been issued, shall be deemed canceled and extinguished without any further action of any party. The Holders of or parties to the canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

### 5. Operating Reports

Prior to the Effective Date, the Debtors shall timely File all reports, including without limitation, monthly operating reports required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules, or the Office of the United States Trustee. On and after the Effective Date, the Liquidating Trustee shall timely File all reports, including without limitation, quarterly operating reports as required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules, or Office of the United States Trustee until entry of an order closing or converting the Chapter 11 Cases.

### 6. Post-Confirmation Professional Fees and Expenses

Professionals that perform post-Effective Date services for the Liquidating Trustee shall provide monthly invoices to the Liquidating Trustee describing the services rendered, and the fees and expenses incurred in connection therewith, on or before the twentieth (20th) day following the end of the calendar month during which such services were performed. Such post-Effective Date professionals of the Liquidating Trustee who timely tender such invoices shall be paid by the Liquidating Trustee for such services, subject to Article VII of the Plan, not less than ten (10) days after the submission to the Liquidating Trustee by such professionals of said monthly invoices, unless, within such ten (10) day period, a written objection to such payment is made by the Liquidating Trustee. To the extent a written objection to such professional's monthly invoice cannot be resolved by the professional and the Liquidating Trustee, payment of such invoice shall be made only upon Final Order of the Bankruptcy Court.

### 7. Disposition of Books and Records

After the Effective Date, the Debtors shall transfer all of the Debtors' books and records in their possession, if any, relating to the conduct of the Debtors' business prior to the Effective Date to the Liquidating Trustee. From and after the Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data transferred to the Liquidating Trustee by the Debtors and the Liquidating Trustee shall not destroy or otherwise abandon any such documents and records (in electronic or paper format) absent further order of the Court after a hearing upon thirty (30) days notice to parties-in-interest.

CHI 60,777,341 V11

8. **Corporate Action**

On the Effective Date, all matters expressly provided for under the Plan that would otherwise require approval of the shareholders or directors of one or more of the Debtors, including but not limited to, the dissolution or merger of any of the Debtors, shall be deemed to have occurred and shall be in effect upon the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated without any requirement of action by the shareholders or directors of the Debtors.

9. **Dissolution of Debtors**

On the Effective Date, the Debtors shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors; provided that in the sole discretion of the Liquidating Trustee, the Liquidating Trustee, on behalf of the Debtors, may (but shall not be required to) file a certificate of dissolution with the Office of the Secretary of State for the applicable state.

I. **Reserves and Distributions**

1. **Establishment of Reserves**

(a) On the Effective Date and prior to making any Distributions, the Liquidating Trustee shall establish the Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Liquidating Trustee to fund the Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve in accordance with the provisions of the Plan.

(b) On the Effective Date and prior to making any Distributions, the Liquidating Trustee shall establish the Liquidating Trust Expense Reserve, and shall transfer thereto the amount of Cash as deemed necessary by the Liquidating Trustee to fund the expenses of the Liquidating Trust in accordance with the provisions of the Plan.

(c) As soon as reasonably practicable, but not to exceed thirty (30) days after the Effective Date, the Liquidating Trustee shall establish the Disputed General Unsecured Claims Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Liquidating Trustee to fund the Disputed General Unsecured Claims Reserve in accordance with the provisions of the Plan.

(d) In the Liquidating Trustee's discretion, at any time after the Effective Date, and if it appears that Distributions may be available to Holders of Allowed Penalty Claims or Allowed Interests, he may establish a reserve for the Penalty Claims or Interests.

2. **Funding of Reserves**

(a) With respect to the Disputed Administrative, Priority Tax, Priority Non-Tax and Secured Claims Reserve and the Disputed General Unsecured Claims Reserve, the amount of Cash deposited into each of the foregoing reserves shall be equal to the percentage of Cash that Holders of Disputed Claims in each reserve would be entitled under the Plan if such

Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as authorized in Article 7.1 of the Plan. To the extent that the Liquidating Trustee determines, in his discretion, to establish one or more reserves for Penalty Claims or Interests, such reserves would be similarly funded.

**(b)** With respect to the Liquidating Trust Expense Reserve, the amount of Cash deposited into such reserve shall be equal to the amount of Cash necessary to fund the expenses expected to be incurred by the Liquidating Trust as determined in the Liquidating Trustee's sole discretion.

**(c)** For the purposes of effectuating the provisions of Article VII of the Plan and the Distributions to Holders of Allowed Claims, the Liquidating Trustee may, at any time and regardless of whether an objection to a Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix, or liquidate the amount of such Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed, or liquidated shall be deemed the Allowed amounts of such Claims for purposes of Distribution under the Plan and establishment of the necessary Reserve. In lieu of estimating, fixing or liquidating the amount of any Disputed Claims or Disputed Interests, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claims or Disputed Interests (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the Liquidating Trustee and the Holder of such Disputed Claims or Disputed Interests.

**(d)** Notwithstanding the foregoing, nothing in the Plan or the Confirmation Order, or any related document, agreement, instrument or order shall prohibit the Liquidating Trustee from using Liquidating Trust Assets and other reserve amounts to fund Liquidating Trust Expenses.

**3.** **Disbursing Agent**

The Liquidating Trustee may employ or contract with other Persons or Entities to assist in or make the Distributions required by the Plan.

**4.** **Distributions by Liquidating Trustee**

Within the time periods provided in Article 7.8 of the Plan, the Liquidating Trustee shall make periodic and final Distributions of the Liquidating Trust Assets on hand and the Permitted Investments, except such amounts as are necessary to maintain the Reserves, in accordance with the terms of the Plan. The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

The Liquidating Trustee shall require any Liquidating Trust Beneficiary or other distributee to furnish to the Liquidating Trustee in writing an Employer Identification Number or Taxpayer Identification Number as assigned by the Internal Revenue Service and the Liquidating Trustee may condition any Distribution to any Liquidating Trust Beneficiary or other distributee upon receipt of such identification number.

CHI 60,777,341 V11

### 5. Distributions on Account of the Allowed Windjammer Subordinated Note Claim

Distributions on account of the Allowed Windjammer Subordinated Note Claim shall be as follows:

(a) The Distributions on account of the Allowed Windjammer Subordinated Note Claim from the Liquidating Trust Assets that are not proceeds of Excluded Assets shall be disbursed as follows (i) the first to $200,000 to Purchaser and (ii) the balance shall be distributed Pro Rata to Trade Creditors on account of their Allowed General Unsecured Claims, and

(b) The Distributions on account of the Allowed Windjammer Subordinated Note Claim from the Liquidating Trust Assets that are proceeds of Excluded Assets shall be disbursed as follows: (i) the first $2,000,000 shall be distributed 50% to Windjammer and 50% to the Holders of Allowed Trade Claims, to be distributed on a Pro Rata basis on account of their Allowed General Unsecured Trade Claims; (ii) the next $1,000,000 shall be distributed to Windjammer; and (iii) any additional amounts shall be distributed 50% to Windjammer and 50% to the Holders of Allowed Trade Claims, to be distributed on a Pro Rata basis on account of the Allowed General Unsecured Trade Claims.

### 6. Distributions on Account of Allowed Critical Trade Vendor Claims

A Holder of an Allowed Critical Vendor Claim shall not receive any Distribution under the Plan until the Holders of Allowed General Unsecured Claims have received a percentage recovery under the Plan, on account of their Allowed General Unsecured Claims, that equals the percentage recovery received by such Holder of an Allowed Critical Vendor Claim, on account of its Allowed Critical Vendor Claim, from the Critical Trade Vendor Escrow.

### 7. Distributions on Account of Allowed Claims of ZHUHAI PUTUO Commerce and Trading Company Limited and Manufacturing Solutions Co., LTD.

Distributions on Account of Allowed Claims of ZHUHAI PUTUO Commerce and Trading Company Limited and Manufacturing Solutions Co., LTD shall be made from the applicable Reserve and in accordance with the *Order on Petitioner/Father's Emergency Petition For Immediate Modification of Custody of Minor Child and For Freezing of Assets entered in the State of Indiana, County of Lake, In re the Marriage of Jackie D. Jent, II, Petitioner/Father and Yan Wu, Respondent/Mother*, Cause No. 45D03-810-DR-1120 (as may be amended or modified) (the **"Kidnapping and Marital Property Order"**) unless upon a final determination by a court of competent jurisdiction, the Kidnapping and Marital Property Order is determined to be invalid and/or not binding upon the Debtors. Nothing contained in Article 7.7 of the Plan or this Disclosure Statement shall constitute an admission of any sort by the Debtors, the Committee, or any other Person as to the validity, applicability or scope of the Kidnapping and Marital Property Order.

CHI 60,777,341 V11

## 8. Timing of Distributions

(a)     The Debtors shall pay each Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim, Allowed Secured Claim, and Allowed Unsecured Convenience Claim on the later of:

1.     the Effective Date of the Plan,

2.     the date on which such Claim becomes an Allowed Claim by Final Order,

3.     the date on which, in the ordinary course of business, such Allowed Claim becomes due, or

4.     such other date as may be agreed upon by the Debtors, in consultation with the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim.

(b)     As soon as reasonably practicable, but not to exceed sixty (60) days after the establishment of the Reserves, the Liquidating Trustee shall make an initial Distribution of the available Cash component of the Liquidating Trust Assets in accordance with the provisions of the Plan and the Confirmation Order, to the extent practicable in the sole discretion of the Liquidating Trustee, to the Holders of Allowed General Unsecured Claims and Allowed Interests to the extent of available Cash. The Liquidating Trustee shall make periodic Distributions thereafter to Holders of Allowed General Unsecured Claims and Allowed Interests, as appropriate, in his discretion.

(c)     Any Cash remaining in the Reserves, after all Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, Disputed General Unsecured Claims, Disputed Unsecured Convenience Claims, Disputed Critical Trade Vendor Claims, Disputed Penalty Claims and Disputed Interests have been resolved, and paid, as appropriate, and the costs and expenses of the Liquidating Trust have been fully paid, shall be available for Distributions in accordance with the Plan.

(d)     Once all Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims and Disputed Secured Claims have been resolved, the Disputed Administrative, Priority Tax, Priority Non-Tax and Secured Claims Reserve shall be dissolved. Once the Disputed General Unsecured Claims have been resolved, the Disputed General Unsecured Claims Reserve shall be dissolved. Once all costs and expenses of the Liquidating Trust have been paid in full in Cash and the Liquidating Trust has been dissolved, the Liquidating Trust Expense Reserve shall be dissolved. To the extent that reserves are established for Disputed Penalty Claims or Disputed Interests, once all Disputed Penalty Claims or Disputed Interests have been resolved, such reserves shall be dissolved.

(e)     If there are any residual Unclaimed Distributions at the time of the dissolution of the Liquidating Trust, such residual Unclaimed Distributions shall be donated to the ABI Endowment Fund, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

### 9. Distributions upon Allowance of Disputed Claims or Disputed Interests

The Holder of a Disputed Claim or Disputed Interest that becomes an Allowed Claim or Allowed Interest subsequent to the Effective Date shall receive a Distribution from the applicable Reserve as soon as reasonably practicable following the date on which such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest pursuant to a Final Order or by agreement of the parties in accordance with Article VII of the Plan. Such Distributions shall be made in accordance with the Plan based upon the Distributions that would have been made to such Holder under the Plan if the Disputed Claim or Disputed Interest had been made an Allowed Claim or Allowed Interest on or prior to the Effective Date. No Holder of a Disputed Claim or Disputed Interest shall have any Claim or Interest against the applicable Reserve, the Liquidating Trustee, the Liquidating Trust, the Debtors or the Estates with respect to such Disputed Claim or Disputed Interest until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, and no Holder of a Disputed Claim or Disputed Interest shall have any right to interest, dividends or other Distributions on such Disputed Claim or Disputed Interest except as provided in the Plan.

### 10. Undeliverable and Unclaimed Distributions

#### (a) Holding Undeliverable and Unclaimed Distributions.

If the Distribution to any Holder of an Allowed Claim or Allowed Interest is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, no additional Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address. Nothing contained in the Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim or Allowed Interest.

#### (b) After Distributions Become Deliverable.

To the extent that a Distribution has become deliverable or has been claimed on or after the Distribution Date, the Liquidating Trustee shall make such Distribution as soon as reasonably practicable after such Distribution has become deliverable or has been claimed.

#### (c) Failure to Claim Unclaimed/Undeliverable Distributions.

Any Holder of an Allowed Claim or Allowed Interest that does not assert a claim pursuant to the Plan for an undeliverable or unclaimed Distribution within six (6) months after the Distribution Date shall be deemed to have forfeited its right to such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim or Allowed Interest and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claim or Allowed Interest against the Debtors, their Estates, the Liquidating Trust or their property. In such cases, Unclaimed Distributions shall be paid to Holders of Allowed Claims or Allowed Interests on a Pro Rata basis according to the parameters set forth in Article IV of the Plan within the time periods provided in Article 7.8 of the Plan, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

CHI 60,777,341 V11

## 11.    Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## 12.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary in the Plan or in the Disclosure Statement, no Holder of an Allowed Claim will receive, in respect of such Claim, Distributions under the Plan in excess of the Allowed amount of such Claim.

## 13.    Means of Cash Payment

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Disbursing Agent.

## 14.    Delivery of Distributions

Except as otherwise set forth in the Plan, Distributions to Holders of Allowed Claims or Allowed Interests shall be made (a) at the addresses set forth on the proofs of Claim or proofs of Interest Filed by such Holders (or at the last known addresses of such Holders if no proof of Claim or proof of Interest is Filed or if the Disbursing Agent has been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent, or (c) if no proof of Claim or proof of Interest has been Filed and the Disbursing Agent has not received a written notice of a change of address, at the addresses reflected in the Schedules, if any.

## 15.    Record Date for Distributions

The Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim or Allowed Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes in the Plan to recognize and distribute only to those Holders of Allowed Claims or Allowed Interests that are Holders of such Claims or Interests, or participants therein, as of the close of business on the Distribution Record Date. The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

## 16.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions by the Disbursing Agent shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all Objections to such Disputed Claim or Disputed Interest have been settled or withdrawn by agreement of the parties or have been determined by Final Order, and the Disputed Claim or Disputed Interest, or some portion thereof, has become an Allowed Claim or Allowed Interest; provided however, that the Debtors, with the consent of the

Committee, or the Liquidating Trustee, may in their discretion, pay any undisputed portion of a Disputed Claim or Disputed Interest.

### 17. Withholding and Reporting Requirements

In connection with the Plan and all Distributions under the Plan, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements. Each Holder of an Allowed Claim or Allowed Interest shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim or Allowed Interest that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

### 18. Setoffs

The Debtors or the Liquidating Trustee, as applicable, may, but shall not be required to, setoff against any Claim or Interest and the payment or other Distribution to be made pursuant to the Plan in respect of such Claim or Interest, claims of any nature whatsoever that a Debtor may have against the Holder of such Claim or Interest; provided, however, neither the failure to do so nor the allowance of any Claim or Interest under the Plan shall constitute a waiver or release by the Disbursing Agent of any such claim that the Disbursing Agent may have against such Holder, unless otherwise agreed to in writing by such Holder and the Debtors or the Liquidating Trustee, as applicable.

### 19. *De Minimis* Distributions

Notwithstanding any provision in the Plan to the contrary, no payment of less than twenty-five dollars ($25.00) shall be made on account of any Allowed Claim. All Distributions not made pursuant to Article 7.19 of the Plan shall be treated as Unclaimed Distributions and are subject to Article 7.10 of the Plan.

### 20. Extensions of Time

The Liquidating Trustee may File a motion to extend any deadlines for the making of Distributions or the establishment of Reserves under the Plan prior to the occurrence of any such deadlines to the extent necessary, which deadlines shall be deemed automatically extended after the Filing of such motion, and pending the entry of an order by the Bankruptcy Court extending any such deadline.

CHI 60,777,341 V11

**Provisions for Claims Objections and Estimation of Claims**

### 1. Claims Objection Deadline; Prosecution of Claims Objections

Except as otherwise provided for in the Plan, as soon as reasonably practicable after the Effective Date, but in no event later than the Claims Objection Deadline (unless extended, after notice to those Creditors who requested notice in accordance with Bankruptcy Rule 2002, by an Order of the Bankruptcy Court), the Liquidating Trustee shall File Objections to Claims and serve such objections upon the Holders of each of the Claims to which Objections are made. The Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such Objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature, and/or amount thereof. If the Liquidating Trustee agrees with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim in the amount of $100,000 or less, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval. Otherwise, the Liquidating Trustee may only compromise, settle, and/or resolve such Disputed Claim with Bankruptcy Court approval.

### 2. Estimation of Claims

The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Committee or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation or a hearing concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any Contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes the maximum allowed amount of such Claim, the Debtors or the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Executory Contracts and Unexpired Leases Deemed Rejected

On the Effective Date, all of the Debtors' Executory Contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent: (a) the Debtors previously have assumed, assumed and assigned or rejected such Executory Contract or unexpired lease, or (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an Executory Contract or unexpired lease on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute

approval of all rejections of Executory Contracts and unexpired leases pursuant to Article 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code.

## B.  Bar Date for Rejection Damages

If the rejection by the Debtors of an Executory Contract or an unexpired lease results in damages to the other party or parties to such Executory Contract or unexpired lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Claims Agent **so as to actually be received on or before** the Rejection Bar Date.

# VII.  CONFIRMATION AND CONSUMMATION OF THE PLAN

## A.  Conditions Precedent to the Effective Date

Each of the following is a condition precedent to the occurrence of the Effective Date:

(a)  the Confirmation Order, in a form and substance reasonably acceptable to the Debtors and the Committee, shall have been entered by the Bankruptcy Court;

(b)  all documents, instruments, and agreements provided under, or necessary to implement, the Plan shall have been executed and delivered by the applicable parties and shall be in a form and substance reasonably acceptable to the Debtors and the Committee; and

(c)  the Debtors and the Liquidating Trustee shall have executed the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant to Article 6.3 of the Plan and shall be in a form and substance reasonably acceptable to the Debtors and the Committee.

## B.  Notice of Effective Date

On or before five (5) Business Days after the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all Holders of Claims or Interests and, at the option of the Liquidating Trustee, cause to be published in the Wall Street Journal National Edition a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, (c) notice of the Administrative Expense Bar Date, Professional Fee Bar Date and Rejection Bar Date; and (d) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

## C.  Waiver of Conditions Precedent to the Effective Date

The Debtors, subject to consent of the Committee, which consent shall not be unreasonably withheld, may at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in Article 10.1 of the Plan, whereupon the Effective Date shall occur without further action by any Person, provided, however, that the condition specified in Article 10.1(a) of the Plan may not be waived. The Plan Proponents reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of the Plan.

**D.     Effect of Non-Occurrence of Effective Date**

If each of the conditions specified in Article 10.1 of the Plan have not been satisfied or waived in the manner provided in Article 10.3 of the Plan within thirty (30) calendar days after the Confirmation Date (as such date may be agreed to by the Debtors and the Committee), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, and the Plan shall be deemed withdrawn.    Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

## VIII.   EFFECTS OF CONFIRMATION OF THE PLAN

**A.     Exculpation and Releases**

**1.     Exculpation and Limitation of Liability**

Notwithstanding any other provision of the Plan, the Released Parties shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission relating to, in any way, or arising from (i) these Chapter 11 Cases, (ii) formulating, negotiating or implementing the Plan (including the Disclosure Statement), any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors; (iv) the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or (v) the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Released Parties from liability.

**2.     Releases by the Debtors**

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors, on their own behalf and as a representative of their respective Estate, shall, and shall be deemed to, completely and forever release, waive,

CHI 60,777,341 V11

void, extinguish, and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective assets, property, and Estates or the Chapter 11 Cases, that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties; provided, however, that nothing in Article 11.1 of the Plan shall be construed to release any Released Party from willful misconduct or gross negligence as determined by a Final Order.

3.    Releases by Holders of Claims and Interests

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action, or liability of any nature whatsoever, or any Interest, shall be deemed to completely and forever release, waive, void, extinguish, and discharge unconditionally each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors or their respective assets, property and Estates, the Chapter 11 Cases or the Plan or the Disclosure Statement; provided, however, (1) that each Person that has submitted a Ballot rejecting the Plan may elect, by checking the appropriate box on its Ballot, not to grant the releases set forth in Article 11.1(c) of the Plan with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise) and (2) that each Person that holds a Claim or Interest entitled to vote and who abstains from voting to either accept or reject the Plan is not bound by the releases set forth in Article 11.1(c) of the Plan with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise); and provided, further, however, that nothing in Article 11.1(c) of the Plan shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order. Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims will be deemed to be bound to the releases in Article 11.1(c) of the Plan.

CHI 60,777,341 V11

4.    **Exceptions to Releases**

Notwithstanding the releases set forth in Articles 11.1(a), (b) and (c) of the Plan, the following Claims and Causes of Action are expressly excepted from such releases:

(a)    any and all Claims held by the Debtors and their respective Estates relating to or arising from the Circle System Matters, provided that the Debtors and the Liquidating Trustee shall have no right to pursue, and hereby expressly waive their right to pursue, Gridiron Capital, LLC, Windjammer or their respective current and former officers, directors, shareholders, Affiliates, employees, legal counsel, accountants, other professionals, agents and representatives of any kind, predecessors-in-interest, successors, assigns, for any matters relating to or arising from the Circle System Matters; and

(b)    any and all Non-Trade Avoidance Actions, provided that the Debtors and the Liquidating Trustee are expressly releasing Riddell, Inc., Gridiron Capital, LLC, Windjammer and the Purchaser from any such Non-Trade Avoidance Actions.

5.    **Injunction Related to Exculpation and Releases**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, relating to any of the Debtors or any of their respective assets, property and Estates, that is released or enjoined pursuant to Article XI of the Plan and (ii) all other parties in interest in these Chapter 11 Cases are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities:

(a)    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum;

(b)    enforcing, attaching (including, without limitation, any prejudgment attachment), executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or other order;

(c)    creating, perfecting or enforcing, directly or indirectly, in any manner, any lien or encumbrance of any kind;

(d)    setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article 11.1 of the Plan; and

CHI 60,777,341 V11

(e)     commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## B.     Injunction

Except as expressly contemplated by the Plan or the Confirmation Order, from and after the Effective Date, all Persons or Entities who have held, currently hold or may hold Claims against or Interests in the Debtors or their Estates that arose prior to the Effective Date (including, but not limited to, Governmental Units, and any official, employee or other entity acting in an individual or official capacity on behalf of any Governmental Unit) are permanently enjoined from:

(a)     Commencing, conducting or continuing in any manner, directly, or indirectly, any suit, action or other proceeding against the Debtors, the Estates or the Liquidating Trust Protected Parties in any forum (including, without limitation, any judicial, arbitral, administrative or other proceeding);

(b)     enforcing, attaching, executing, collecting or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates or the Liquidating Trust Protected Parties;

(c)     creating, perfecting, or enforcing, directly or indirectly, in any manner, any lien or encumbrance of any kind against the Debtors, the Estates or the Liquidating Trust Protected Parties;

(d)     asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against any obligation due to the Debtors, the Estates or the Liquidating Trust Protected Parties; and

(e)     any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with the provisions of the Plan in respect of the Debtors, the Estates or the Liquidating Trust Protected Parties.

Any Entity injured by any willful violation of such injunction shall recover actual damages, including, but not limited to, costs and attorneys' fees and expenses, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in Article XI of the Plan shall prohibit the Holder of a Disputed Claim or Disputed Interest from litigating its right to seek to have such a Disputed Claim or Disputed Interest declared an Allowed Claim or Allowed Interest and paid in accordance with the distribution provisions of the Plan or the Liquidating Trust Agreement, or enjoin or prohibit the enforcement by the Holder of such Disputed Claim or Disputed Interest of any of the obligations of any Liquidating Trust Protected Party under the Plan.

## C.     Consideration for Releases and Exculpations

The Debtors and the Committee have been instrumental in moving these Chapter 11 Cases forward through the Sale process and now to conclusion. The other Released Parties have

also contributed to bringing these Chapter 11 Cases to the confirmation process, especially through the compromises and settlements they made in accordance with the Settlement Order. As provided in the term sheet to the Settlement Motion, it was the expectation of the Settlement Parties that approval of releases and exculpations, such as the ones contemplated in the Plan, would be sought in return of the compromises and settlements the Settlement Parties made in accordance with the Settlement Order. Furthermore, as set forth in the *Declaration of Steve Day in Support of the Settlement Motion* [Docket No. 609], the settlements and compromises that the Settlement parties agreed to pursuant to the Settlement Order enabled the Debtors to (i) avoid the risks, costs and delays inherent in litigation, (ii) move these Chapter 11 Cases forward, and (iii) thereby maximize the value of the Debtors' Estates for the benefit of all of the Debtors' creditors and stakeholders.

**D.    Term of Bankruptcy Injunction or Stays**

Pursuant to Article 11.3 of the Plan, all injunctions or stays provided for in these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**E.    Vesting Provision**

Any and all Liquidating Trust Assets accruing to the Debtors or assertable as accruing to the Debtors shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall be transferred to and vest in the Liquidating Trust. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidating Trust and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms of the Plan and the Liquidating Trust Agreement or compromise or settle any Liquidating Trust Assets. From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee may commence, litigate and settle any Causes of Action, Claims or Causes of Action relating to the Liquidating Trust Assets or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Liquidating Trust and Liquidating Trustee after the Effective Date, except as otherwise expressly provided in the Plan and the Liquidating Trust Agreement. Other than as set forth herein, no other Person may pursue such Liquidating Trust Assets after the Effective Date. The Liquidating Trustee shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for either the Committee or each Debtor in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Liquidating Trust Asset without the need for Filing any motion for such relief.

**IX.    MISCELLANEOUS PLAN PROVISIONS**

**A.    Retention of Jurisdiction**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed

before or after the Effective Date and whether or not Contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented by the Plan or arising under the Plan, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interests, or Cause of Action;

(d)     determine and resolve controversies related to the Liquidating Trust;

(e)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

(f)     ensure that all Distributions to Holders of Allowed Claims or Allowed Interests under the Plan and the performance of the provisions of the Plan are accomplished as provided in the Plan and resolve any issues relating to Distributions to Holders of Allowed Claims or Allowed Interests pursuant to the provisions of the Plan;

(g)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and Consummation of the Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(h)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Plan (and all exhibits and schedules to the Plan) or the Confirmation Order, including the releases and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(i)     modify the Plan, the Disclosure Statement, and/or the Confirmation Order before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, as well as any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document

62

created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(j)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of the Plan or the Confirmation Order;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)     determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(m)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

(p)     determine and resolve controversies related to the Estates, the Debtors or the Liquidating Trust from and after the Effective Date;

(q)     hear and determine any other matter relating to the Plan; and

(r)     enter a final decree closing these Chapter 11 Cases.

## B.     Modification of the Plan

The Debtors and the Committee may alter, amend, or modify the Plan or any exhibits or schedules hereto under section 1127(a) of the Bankruptcy Code at any time prior to or after the Confirmation Date but prior to the substantial Consummation of the Plan, provided, however, that any such alteration, amendment or modification does not materially and adversely affect the treatment of Holders of Claims or Interests under the Plan. Any Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

## C.     Subordination Rights

The classification and manner of satisfying all Claims and Interests and the respective Distributions and treatments under the Plan take into account and/or conform to the relative priority and rights of the Claims and Interests in each Class in connection with the contractual,

CHI 60,777,341 V11

legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. All subordination rights that a Holder of a Claim or Interest may have with respect to any Distribution to be made under the Plan shall be implemented through the Plan, and all actions by such Holder of a Claim or Interest related to the enforcement of such subordination rights shall be enjoined permanently. The provisions of any contractual or structural subordination of Claims or Interests shall remain enforceable by the Liquidating Trustee on behalf of the Liquidating Trust after the occurrence of the Effective Date. Without limitation hereunder, the Liquidating Trustee, on behalf of the Liquidating Trust, may likewise enforce any right of the Debtors or their Estates to equitably or otherwise subordinate Claims under section 510 of the Bankruptcy Code, which rights are deemed transferred to, remain and are preserved in the Liquidating Trust, except as otherwise expressly set forth herein or as expressly provided in a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

**D.    Dissolution of the Committee**

The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to these Chapter 11 Cases, except with respect to, and to the extent of any applications for Professional Fee Claims or expense reimbursements for members of such Committee. The Professionals retained by the Committee shall not be entitled to assert any Administrative Expense Claims nor shall they have an Allowed Administrative Expense Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Filed fee application.

**E.    Exemption from Section 1146**

Pursuant to section 1146(a) of the Bankruptcy Code, under the Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; (ii) the creation, modification, consolidation or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease; or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall be directed by the Bankruptcy Court to forego the collection of any such tax or government assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment. To the extent that the Liquidating Trustee elects to sell any property prior to or after the Confirmation Date, such sales of property will be exempt from any transfer taxes in accordance with section 1146(c) of the Bankruptcy Code. All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases shall be deemed to be or have been done in furtherance of the Plan.

CHI 60,777,341 V11

# X.   GENERAL INFORMATION ON VOTING AND CONFIRMATION PROCEDURE

## A.   Purpose of Disclosure Statement

The Disclosure Statement is generally provided to all Holders of Claims and Interests entitled to vote upon the Plan pursuant to section 1125 of the Bankruptcy Code to enable such Holders to make an informed decision concerning the Plan Proponents' solicitation of acceptances of the Plan. After notice and a hearing conducted on March 29, 2011, by order dated [_____], 2011, the Bankruptcy Court approved this Disclosure Statement as containing "adequate information" (as defined in section 1125(a) of the Bankruptcy Code) of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Holders of Claims against the Debtors to make an informed decision in voting to accept or reject the Plan. Approval of this Disclosure Statement by the Bankruptcy Court, however, does not constitute a recommendation to accept or reject the Plan.

## B.   Voting On the Plan

The following is a summary of the procedures and requirements that have been established for voting on the Plan. If you are entitled to vote to accept or reject the Plan, you should receive a Ballot for the purpose of voting on the Plan. If you hold Claims or Interests in more than one Class and you are entitled to vote such Claims or Interests in more than one Class, you will receive separate Ballots, which must be used for each separate Class of Claims or Interests. If you are entitled to vote and did not receive a Ballot, or you received a damaged Ballot, or you lost your Ballot, please contact the Claims Agent, Logan & Company, Inc. by one of these methods:   (a) by telephone at 973-509-3190; (b) by sending an e-mail to info@loganandco.com; (c) by visiting the Claims Agent's website at www.loganandco.com; or (d) by requesting a Ballot by mail to the Claims Agent at Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043.

Votes <u>cannot</u> be transmitted orally, by facsimile or by electronic mail (e-mail). Accordingly, you are urged to return your signed and completed Ballot promptly. Any executed Ballot that does not indicate either an acceptance or a rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, will not be counted as a vote to either accept or reject the Plan.

THE DEBTORS RESERVE THE RIGHT TO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN UNDER THE CRAMDOWN PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IN THE EVENT ANY OF CLASSES 3, 4, 5, 6 OR 7 VOTE TO REJECT THE PLAN, AND, IF REQUIRED, MAY AMEND THE PLAN TO CONFORM TO THE STANDARDS OF SUCH SECTION.

SUBJECT TO THE TERMS AND CONDITIONS OF THE PLAN, THE DEBTORS RESERVE THE RIGHT TO AMEND THE PLAN EITHER BEFORE OR AFTER THE PETITION DATE.

AMENDMENTS TO THE PLAN THAT DO NOT MATERIALLY AND ADVERSELY AFFECT THE TREATMENT OF CLAIMS MAY BE APPROVED BY THE BANKRUPTCY

CHI 60,777,341 V11

COURT AT THE CONFIRMATION HEARING WITHOUT THE NECESSITY OF RESOLICITING VOTES. IN THE EVENT RESOLICITATION IS REQUIRED, THE DEBTORS WILL FURNISH NEW BALLOTS TO BE USED TO VOTE TO ACCEPT OR REJECT THE PLAN, AS AMENDED.

### C. Voting Record Date

Consistent with the provisions of Rule 3018(b) of the Bankruptcy Rules, the Bankruptcy Court has fixed March 29, 2011 at 5 p.m. (Prevailing Eastern Time) as the "**Voting Record Date**" for the determination of the Holders of Claims and Interests entitled to vote to accept or reject the Plan.

#### 1. Who May Vote

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims or Interests in Classes that are Impaired by, and are receiving Distributions under, the Plan may vote on the Plan. Holders of Claims that are Unimpaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. Holders of Claims or Interests that receive no recovery under the Plan are deemed to reject the Plan and are not entitled to vote on the Plan. Administrative Expense Claims and Priority Tax Claims are not generally classified for purposes of voting or receiving Distributions under the Plan.

**In this case, Holders of Claims in Classes 3, 4, and 5 and Interest in Class 7 are entitled to vote to accept or reject the Plan.** If you are entitled to vote to accept or reject the Plan, a Ballot has been enclosed for the purpose of voting.

#### 2. Eligibility

In order to vote to accept or reject the Plan, a Holder of an Allowed Claim must have timely Filed or been assigned a timely Filed proof of claim, unless its Claim is listed on the Debtors' Schedules and is not identified therein as disputed, unliquidated or contingent or has not been objected to prior to the Confirmation Hearing. Those Holders of Interests, which Interests are identified in the Debtors' Schedules and are not identified therein as disputed, unliquidated or contingent or have not been objected to prior to the Confirmation Hearing, will be deemed eligible for voting on the Plan. If a proof of Interest has been Filed, the Debtors will provide a Ballot in accordance with such proof of Interest unless such proof of Interest is objected to prior to the Confirmation Hearing. Creditors or Interest Holders having an Allowed Claim or an Allowed Interest in more than one Class may vote in each Class in which they hold a separate Claim or Interest by casting a Ballot in each Class.

#### 3. Binding Effect

Whether a Holder of an Allowed Claim or Allowed Interest votes on the Plan or not, such Holder shall be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Unless a Ballot is completed and returned in accordance with approved Bankruptcy Court procedures, a Holder of an Allowed Claim or Allowed Interest that submits a vote on the Plan shall not be counted for purposes of determining the amount and number of Creditors and Interest Holders voting on the Plan.

CHI 60,777,341 V11