**D.     Procedure/Voting Deadlines**

In order for your vote to be counted, you must complete, date, sign and properly mail or deliver the enclosed Ballot to the Claims Agent, Logan & Company, Inc., at the address set forth below:

**Schutt Sports Ballot Processing**
**c/o Logan & Company, Inc.**
**546 Valley Road**
**Upper Montclair, NJ  07043**

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by ordinary mail, courier service or hand delivery to the Claims Agent, at the appropriate address set forth above on or before 5:00 p.m., (Prevailing Eastern Time) on April 29, 2011 (the "**Voting Deadline**"). **Facsimile or electronically submitted Ballots will not be counted.**

Once you have delivered your Ballot to the Claims Agent, you may change your vote by submitting to the Claims Agent a valid subsequent Ballot to be received by the Voting Deadline. You may not, however, change your vote after the Voting Deadline, except upon cause shown to the Bankruptcy Court after notice and a hearing or upon the agreement of the Plan Proponents.

You are urged to timely complete, date, sign and promptly return the enclosed Ballot by mail, courier service or hand delivery.

Please be sure to complete the Ballot properly and legibly, identifying the exact amount of your Claim or Interest, the Class or Classes in which the Claim(s) or Interest(s) is/are classified under the Plan and the name of the Creditor or Interest Holder.

Each Holder of a Claim or Interest that votes against the Plan may elect, by checking the appropriate box provided on the Ballot, not to grant the releases set forth in Article 11.1 of the Plan.

**E.     Plan Confirmation Process**

**1.     Requirements**

The requirements for confirmation of the Plan are set forth in detail in section 1129 of the Bankruptcy Code.  The following summarizes some of the pertinent requirements:

**(a)     Acceptance by All Impaired Classes**

Except as noted below, each Impaired Class of Claims must vote to either accept the Plan or be deemed to accept the Plan. "Impaired" is defined in section 1124 of the Bankruptcy Code. A Claim or Interest is Impaired unless the Plan leaves unaltered the legal, equitable, or contractual rights of the Holder. Under the Plan, Claims and Interests in Class 3, Class 4, Class 5, Class 6, and Class 7 are Impaired. Holders of Claims in Class 3, Class 4, Class 5 and Class 6 and Holders of Interests in Class 7 are entitled to vote, separately, to accept or reject the Plan.

*CHI 60,777,341 V11*

Holders of Claims in 6 receive no Distributions under the Plan and, therefore, are deemed under section 1126(g) of the Bankruptcy Code to have rejected the Plan.

As a voting Creditor or Interest Holder, your acceptance of the Plan is important. In order for the Plan to be accepted by an Impaired Class of Claims, Creditors holding a majority in number and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Plan. At least one Impaired Class of Creditors, excluding the votes of Insiders (if any), must actually vote to accept the Plan. In order for the Plan to be accepted by an Impaired Class of Interests, Interest Holders holding two-thirds in amount of the Interests voting (of each Impaired Class of Interests) must vote to accept the Plan.

**(b)**     Feasibility

Pursuant to section 1129(a)(11) of the Bankruptcy Code, the Bankruptcy Court must determine, among other things, that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors or any successors to the Debtors under the Plan (unless such liquidation or reorganization is proposed in the Plan). In addition, section 1129(a)(13) requires that all fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan. These conditions are often referred to as the "feasibility" of the Plan. The Plan is a liquidating plan and, accordingly, all of the Debtors' remaining assets will be distributed to Holders of Allowed Claims or Allowed Interests pursuant to the terms of the Plan and, provided the Plan is confirmed and consummated, the Estates will no longer exist to be subject to future reorganization or liquidation. As a result, the Plan satisfies the feasibility test. Moreover, the Plan provides for payment of all statutory fees due and owing to the United States Trustee. Accordingly, the Plan Proponents believe that the Plan satisfies the requirements of feasibility under section 1129(a) of the Bankruptcy Code.

**(c)**     "Best Interests" Test

Pursuant to section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court must find that the Plan is in the best interests of Creditors and Interest Holders (commonly referred to as the "Best Interests" test). To satisfy the "Best Interests" test, the Bankruptcy Court must determine that each Holder of an Impaired Claim or Impaired Interest either: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the amount such Holder would receive if the Debtors' property were liquidated under chapter 7 of the Bankruptcy Code on that date.

The first step in meeting the "Best Interests" test is to determine the proceeds that would be generated from the hypothetical liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation. The gross amount of cash and cash equivalents available would be the sum of the proceeds from the disposition of the Debtors' assets and the Cash held by the Debtors at the time of the commencement of their chapter 7 cases. Such amount is reduced by the amount of any Claims secured by such assets, the costs and expenses of the liquidation, and such additional administrative expenses and priority claims that may result from the termination of the Debtors' businesses and the use of chapter 7 for the purposes of a liquidation.

CHI 60,777,341 V11

(i)        Costs and Expenses of Liquidation

In a chapter 7 liquidation, a trustee in bankruptcy would be appointed. The net amount generated from the liquidation of the Debtors' remaining assets would be reduced by the administrative expenses of both the chapter 7 cases and the Chapter 11 cases, including the fees and commissions of the chapter 7 trustee, as well as those of counsel and other professionals that might be retained by the chapter 7 trustee, in addition to unpaid expenses incurred by the Debtors and the Committee during the Chapter 11 Cases. These expenses and costs would reduce the net proceeds available to Holders of Allowed Claims or Allowed Interests.

Any remaining net Cash would be allocated to creditors and stockholders in strict accordance with the priorities set forth in section 726 of the Bankruptcy Code. The present value of such allocation of the hypothetical liquidation proceeds (after deducting the amounts described above) is then compared with the present value of the proposed Distributions under the Plan to each of the Classes of Claims and Interests to determine if the Plan is in the best interests of each Creditor or Holder of an Interest.

If the present value of the Distributions available to unsecured creditors under the hypothetical liquidation is less than or equal to the present value of the Distributions available to unsecured creditors under the Plan, then the Plan is in the best interests of creditors and can be considered in the "**best interests of creditors**" by the Bankruptcy Court.

(ii)        The Plan Meets the Best Interests Test

The Plan Proponents believe that the Plan will produce a recovery for Holders of Claims or Interests that would be equal to or better than would be achieved in a chapter 7 liquidation. The Plan Proponents are not seeking to require Holders of Claims or Interests to accept non-cash consideration so that the Estates could pursue going concern value. During the course of these Chapter 11 Cases, the Debtors sold their businesses as going concerns and are in the process of liquidating their remaining assets and winding down the Estates. The Debtors believe that their main remaining asset is the summary judgment in the State Court Action of the Circle System Matters. Ultimately, under the Plan, the Liquidating Trustee will make Distributions of Cash to Holders of Allowed Claims and Allowed Interests in accordance with the Plan. The Debtors believe that the Holders of Allowed Claims and Allowed Interests will receive at least the same, if not better, recovery under the Plan, as compared to a chapter 7 case, given that the additional administrative costs of a chapter 7 case will be avoided under the Plan.

Importantly, a chapter 7 liquidation would likely result in an increase in Administrative Expense Claims, because there would be an additional tier of Administrative Expense Claims by the chapter 7 trustee and his or her professionals. The chapter 7 trustee's professionals, including legal counsel and accountants, would add administrative expenses that would be entitled to be paid ahead of Allowed Claims against or Allowed Interests in the Debtors. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors and the Committee during these Chapter 11 Cases (such as compensation for professionals), which would continue to be allowed in the chapter 7 case as well. In addition, the Cash to be distributed to Creditors and Interest Holders would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is

determined based on the total amount of moneys disbursed or turned over by the chapter 7 trustee. While the Liquidating Trustee will be paid a fee for administering the Liquidating Trust, the Liquidating Trustee will not be paid a percentage of Distributions as a chapter 7 trustee may be paid. The Debtors have set forth in Exhibit D hereto an estimate as to the maximum fee that would likely be paid to a chapter 7 trustee based on expected disbursements made during a chapter 7 case. Additionally, it is likely that distributions from a chapter 7 estate would be significantly deferred. As a result, the present value of such distributions is likely to be lower than if made under the Plan.

For the reasons set forth above, the Plan Proponents believe that the Plan provides a recovery at least equal to, if not better than, the recovery in a chapter 7 case for Holders of Claims and Interests, and the Plan meets the requirements of the Best Interest Test. A Liquidation Analysis to the same effect is provided in the Plan Supplement.

> **(d)** "Cramdown" Provisions

Pursuant to section 1129(b) of the Bankruptcy Code, the Bankruptcy Court may confirm a plan even though a class of claims or equity interests has not voted to accept the plan, as long as one impaired class of claims has accepted the plan (excluding the votes of Insiders, if any) and the plan is "fair and equitable" and "does not discriminate unfairly" against the non-accepting classes.

The Plan only impairs certain Classes of Claims and Interests. Therefore, the Plan Proponents may, if applicable, pursue confirmation through a "cramdown" provision only under section 1129(b)(2)(B), which states, in pertinent part, that a plan is "fair and equitable" to a class if, among other things, the plan provides, with respect to unsecured claims and equity interests, that the holder of any such claim or equity interest that is junior to the claims or equity interests of such class, will not receive or retain, on account of such junior claim or equity interest, any property unless the senior class is paid in full.

A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to receive on account of its claim or interest. The Plan Proponents will invoke the "cramdown" provisions of section 1129(b)(2)(B) of the Bankruptcy Code should any voting Class fail to accept the Plan.

## 2. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. To confirm the Plan, the Bankruptcy Court must determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code (the "**Confirmation Hearing**"). The Bankruptcy Court has set _____, 2011 at _:00 _.m. **(Prevailing Eastern Time)** for the Confirmation Hearing. The Confirmation Hearing will be conducted in the courtroom of the Honorable Kevin J. Carey, Chief United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware, 19801.

### 3. Objections to Confirmation

Any party in interest may object to confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set _____ 2011 at _:00 _.m. (prevailing Eastern time) as the deadline for Filing and serving objections upon the Debtors' attorneys. Objections to confirmation must be Filed with the Bankruptcy Court electronically or at the following address:

> **UNITED STATES BANKRUPTCY COURT**
> District of Delaware
> 824 Market Street
> Wilmington, Delaware 19801

with a copy simultaneously served upon the attorneys for the Debtors at the addresses below:

> **GREENBERG TRAURIG, LLP**
> The Nemours Building
> 1007 North Orange Street, Suite 1200
> Wilmington, Delaware 19801
> Attn: Victoria W. Counihan and Sandra G. M. Selzer

> -and-

> **GREENBERG TRAURIG, LLP**
> 77 West Wacker Drive, Suite 3100
> Chicago, Illinois 60601
> Attn: Nancy A. Peterman and Keith J. Shapiro

and a copy simultaneously served upon the attorneys for the Committee at the addresses below:

> **LOWENSTEIN SANDLER PC**
> 65 Livingston Avenue
> Roseland, New Jersey 07068
> Attn: Jeffrey D. Prol

> -and-

> **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
> 222 Delaware Avenue, Suite 1501
> Wilmington, DE 19801
> Attn: Steven K. Kortanek

and a copy simultaneously served upon the Office of the United States Trustee at the address below:

> **OFFICE OF THE UNITED STATES TRUSTEE**
> 844 King Street, Suite 2207, Lockbox 35

CHI 60,777,341 V11

Wilmington, Delaware 19801
Attn: Mark S. Kenney

# XI.    RISK FACTORS

ALL IMPAIRED HOLDERS OF CLAIMS OR INTERESTS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.

## A.    Bankruptcy Factors

### 1.    Classifications of Claims and Interests

Parties in interest may object to the Plan Proponents' classification of Claims and Interests. Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors and the Committee believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 2.    Non-Occurrence of the Effective Date

If the conditions precedent to the Effective Date, which are discussed in detail in Article 10.1 of the Plan, have not been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order. THERE CAN BE NO ASSURANCE THAT ALL OF THE VARIOUS CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN WILL BE TIMELY SATISFIED OR WAIVED. In the event that the conditions precedent to the Effective Date have not been timely satisfied or waived, the Plan would be deemed null and void and the Debtors may propose or solicit votes on an alternative plan that may not be as favorable to parties-in-interest as the current Plan, convert these Chapter 11 Cases or dismiss these Chapter 11 Cases.

### 3.    Failure to Receive Requisite Accepting Votes

There can be no assurance that the requisite acceptances to confirm the Plan will be received. In order for the Plan to be accepted, of those Holders of Claims who cast Ballots, the affirmative vote of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims in each voting Class is required; and of those Holders of Interests who may cast Ballots, the affirmative vote of at least two-thirds (2/3) in amount of Allowed Interests in each voting Class is required.

If the requisite votes are not received, these Chapter 11 Cases could be converted into cases under chapter 7 of the Bankruptcy Code or dismissed. There can be no assurance that the distributions under a chapter 7 liquidation or dismissal would be similar to or as favorable to Holders of Claims or Interests as those proposed in the Plan. The Plan Proponents believe that

CHI 60,777,341 V11

Distributions to Creditors and Interest Holders would be reduced and delayed under a chapter 7 liquidation, as discussed in Section X.E of this Disclosure Statement.

### 4. Failure to Confirm the Plan

Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting creditor or equity holder of the Debtors might challenge the confirmation of the Plan or the balloting procedures and/or voting results as not being in compliance with the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determines that the Disclosure Statement and the balloting procedures and results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation have not been met, including that the terms of the Plan are fair and equitable to non-accepting Classes.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes and that the value of Distributions to non-accepting Holders of Claims or Interests within a particular Class under the Plan will not be less than the value of Distributions such Holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. While there can be no assurance that these requirements will be met, the Plan Proponents believe that non-accepting Holders within each Class under the Plan will receive Distributions at least as great as would be received following a liquidation under chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such chapter 7 case.

If the Plan is not confirmed, it is unclear what Distributions Holders of Claims or Interests ultimately would receive with respect to their Claims and Interests. If an alternative Plan could not be agreed to, it is possible that the Debtors would convert these Chapter 11 Cases to chapter 7 cases or dismiss these Chapter 11 Cases, in which case it is likely that Holders of Claims or Interests would receive substantially less favorable treatment than they would receive under the Plan.

In addition, in the event that the Plan is not confirmed, the Debtors will incur substantial expenses related to the development and confirmation of a new plan and possibly the approval of a new disclosure statement. This would only unnecessarily prolong the administration of the Debtors' assets and negatively affect Creditors' and Interest Holders recoveries on their Claims and Interests.

Similarly, as described above, in the event these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, the Debtors will incur substantial expenses related to hiring additional professionals and paying the fees of the chapter 7 trustee. As the Debtors' assets have already been liquidated, the additional cost will only serve to reduce Distributions to Creditors and Interest Holders.

### 5. Risk of Additional or Larger Claims

Claims in Classes 3 and 6 are subject to the risk of dilution if the total amount of the Claims against the Debtors is higher than the Debtors' estimate. The Disclosure Statement and

the attached exhibits necessarily include estimates, including estimates of future events and unliquidated Claims. These estimates include, but are not limited to, estimates as to the total amount of Claims that will be asserted against the Debtors and the outcome of Disputed Claims. The Plan Proponents believe that the estimates presented are reasonable and appropriate under the circumstances. Nevertheless, there is a risk that unforeseen future events may cause one or more of these estimates to be materially inaccurate. Among the potential risks are that: (i) additional prepetition or Administrative Expense Claims may be asserted; (ii) Disputed Claims may be resolved at higher amounts than expected; or (iii) the resolution of Claims may require the expenditure of unanticipated professional fees.

### 6. Alternative Chapter 11 Plan

If the Plan is not confirmed, any other party-in-interest may attempt to formulate an alternative chapter 11 plan, which might provide for the liquidation of the Debtors' remaining assets other than as provided by the Plan. However, the Plan Proponents believe that such an alternative chapter 11 plan will necessarily be substantially similar to the Plan jointly proposed herewith. The prosecution of an alternative chapter 11 plan would unnecessarily delay Creditors' and Interest Holders' receipt of Distributions and, due to the incurrence of additional administrative expenses during such period of delay, may provide for smaller Distributions to Holders of Allowed Claims in Classes 3, 4, 5 and 6 and Allowed Interests in Class 7 than are currently provided for in the Plan. Accordingly, the Plan Proponents believe that the Plan will enable all Creditors and Interest Holders to realize the greatest possible recovery on their respective Claims and Interests with the least delay.

## B. Other Risk Factors

### 1. Variances from Projections

As noted in this Disclosure Statement, the Debtors have estimated Distributions to Holders of Allowed Claims and Allowed Interests based upon certain financial projections. The projections reflect assumptions concerning, among other things, the Debtors' and the Liquidating Trustee's ability to control expenses. The Plan Proponents believe that the assumptions underlying the projections are reasonable; however, unanticipated events occurring subsequent to the preparation of the projections may affect the actual financial results of the Debtors or the Liquidating Trust.

### 2. Litigation Risks

The Plan provides, among other things, for the Causes of Action to be conveyed into the Liquidating Trust. Although the Plan Proponents anticipate that the Liquidating Trustee will, in time, resolve the Causes of Action on a basis that provides a substantial net benefit to the Debtors' Estates, there can be no guarantee that the result will be favorable. Fees and expenses incurred by the Liquidating Trustee shall be paid from the Liquidating Trust Expense Reserve in accordance with Article VI of the Plan. There also can be no assurance that the funds available in the Liquidating Trust Expense Reserve will be sufficient to fund completely the prosecution of the Causes of Action.

## XII.  CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following discussion is a summary of certain material United States federal income tax aspects of the Plan, is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest.  This discussion does not purport to be a complete analysis or listing of all potential tax considerations.

This discussion is based on provisions of the Internal Revenue Code of 1986, as amended (the "**IRC**"), proposed Treasury Regulations promulgated thereunder, and administrative rulings and court decisions, all as in effect on the date hereof.  Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the United States federal income tax consequences of the Plan.  Any such changes or interpretations may be retroactive and could significantly affect the United States federal income tax consequences of the Plan.  To the extent that the following discussion relates to the consequences to Holders of Allowed Claims or Interests, it is limited to Holders that are United States persons within in the meaning of the IRC.  For purposes of the following discussion, a "**United States person**" is any of the following:

- An individual who is a citizen or resident of the United States;

- A corporation created or organized under the laws of the United States or any state or political subdivision thereof;

- An estate, the income of which is subject to federal income taxation regardless of its source; or

- A trust that (a) is subject to the primary supervision of a United States court and which has one or more United States fiduciaries who have the authority to control all substantial decisions of the trust, or (b) has a valid election in effect under applicable United States Treasury regulations to be treated as a United States person

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  No ruling has been requested or obtained from the Internal Revenue Service (the "**IRS**") with respect to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect thereto.  Thus, no assurance can be given as to whether the IRS will agree with the assertions and conditions discussed herein.  No representations or assurances are being made to the Holders of Claims or Interests with respect to the United States federal income tax consequences described herein.

This summary is limited to those Holders of Claims or Interests who have held such Claims and Interest as capital assets.  Certain Holders (including, among others, insurance companies, banks, tax exempt organizations, financial institutions, broker-dealers, small business investment companies, regulated business companies, investors in pass-through entities, foreign companies, persons who are not citizens or residents of the United States, dealers in securities or foreign currency, and persons holding Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale or conversion transaction) may be

subject to special rules and are not discussed below. In addition, this summary does not address other federal taxes or the foreign, state, or local tax consequences of the Plan.

Any discussion of United States federal tax issues set forth in this Disclosure Statement is written solely in connection with the confirmation of the Plan. To ensure compliance with Treasury Department Circular 230, Holders of Claims or Interests are hereby notified that: (a) any discussion of federal tax issues in this Disclosure Statement is not intended or written to be relied upon, and cannot be relied upon, by Holders of Claims or Interests for the purpose of avoiding penalties that may be imposed on Holders of Claims or Interests under the Internal Revenue Code; (b) such discussion is being used in connection with the promotion or marketing (within the meaning of Circular 230) by the debtors of the transactions or matters addressed herein; and (c) a Holder of a Claim or Interest should seek advice based on their particular circumstances from an independent tax advisor.

## A.   Certain U.S. Federal Income Tax Consequences to the Debtors

Under the IRC, a taxpayer generally must include in gross income the amount of any cancellation of indebtedness income ("**COD Income**") realized during the taxable year. Section 108 of the IRC provides an exception to this general rule, however, if the cancellation occurs in a case under the Bankruptcy Code, but only if the taxpayer is under the jurisdiction of the bankruptcy court and the cancellation is granted by the court or is pursuant to a plan approved by the court.

Section 108 of the IRC requires the amount of COD Income so excluded from gross income to be applied to reduce certain tax attributes of the taxpayer. The tax attributes that may be subject to reduction include the taxpayer's net operating losses and net operating loss carryovers (collectively, "**NOLs**"), certain tax credits and most tax credit carryovers, capital losses and capital loss carryovers, tax bases in assets, and foreign tax credit carryovers. Attribute reduction is calculated only after the tax for the year of the discharge has been determined. Section 108 of the IRC further provides that a taxpayer does not realize COD Income from cancellation of indebtedness to the extent that payment of such indebtedness would have given rise to a deduction.

Under the Plan, Holders of Allowed General Unsecured Claims, Allowed Convenience Claims, Allowed Critical Trade Vendor Claims, Allowed Penalty Claims, or Allowed Interests are expected to receive less than full payment on their Claims or Interests. The Debtors' liability to the Holders of Allowed General Unsecured Claims, Allowed Convenience Claims, Allowed Critical Trade Vendor Claims, Allowed Penalty Claims, or Allowed Interests in excess of the amount satisfied by Distributions under the Plan will be canceled and therefore, will result in COD Income to the Debtors. The Debtors should not realize any COD Income, however, to the extent that payment of such Allowed General Unsecured Claims, Allowed Convenience Claims, Allowed Critical Trade Vendor Claims, Allowed Penalty Claims, or Allowed Interests would have given rise to a deduction to the Debtors had such amounts been paid. In addition, any COD Income that the Debtors realize should be excluded from the Debtors' gross income pursuant to the bankruptcy exception to section 108 of the IRC described above, because the cancellation will occur in a case under the Bankruptcy Code, while the taxpayer is under the jurisdiction of

the bankruptcy court, and the cancellation is granted by the court or is pursuant to a plan approved by the court.

The exclusion of the COD Income, however, will result in a reduction of certain tax attributes of the Debtors, such as the NOLs, as described above. Because attribute reduction is calculated only after the tax for the year of discharge has been determined, the COD Income realized by the Debtors under the Plan should not diminish the NOLs and other tax attributes that may be available to offset any income and gains recognized by the Debtors in the taxable year that includes the Effective Date.

## B.    Certain U.S. Federal Income Tax Consequences to Holders of Allowed Claims or Interests

A Holder of an Allowed Claim or Interest will generally recognize ordinary income to the extent that the amount of Cash or property received (or to be received) under the Plan is attributable to interest that accrued on a Claim or Interest but was not previously paid by the Debtors or included in income by the Holder of the Allowed Claim or Interest. A Holder of an Allowed Claim or Interest will generally recognize gain or loss equal to the difference between the Holder's adjusted basis in its Claim or Interest and the amount realized by the Holder upon consummation of the Plan that is not attributable to accrued but unpaid interest. The amount realized will equal the sum of Cash and the fair market value of other consideration received (or to be received).

The character of any gain or loss that is recognized as such will depend upon a number of factors, including the status of the Creditor or Interest Holder, the nature of the Claim or Interest in the Creditor's or Interest Holder's hands, whether the Claim or Interest was purchased at a discount, whether and to what extent the Creditor or Interest Holder has previously claimed a bad debt deduction with respect to the Claim or Interest, and the Creditor's or Interest Holder's holding period of the Claim or Interest. If the Claim or Interest in the Creditor's or Interest Holder's hands is a capital asset, the gain or loss realized will generally be characterized as a capital gain or loss. Such gain or loss will constitute long-term capital gain or loss if the Creditor or Interest Holder held such Claim or Interest for longer than one year, or short-term capital gain or loss if the Creditor or Interest Holder held such Claim or Interest for less than one year.

A Holder of an Allowed Claim or Interest who receives, in respect of its Claim or Interest, an amount that is less than its tax basis in such Claim or Interest may be entitled to a bad debt deduction if either: (i) the Holder is a corporation; or (ii) the Claim or Interest constituted (a) a debt created or acquired (as the case may be) in connection with a trade or business of the Holder or (b) a debt the loss from the worthlessness of which is incurred in the Holder's trade or business. A Holder that has previously recognized a loss or deduction in respect of its Claim or Interest may be required to include in its gross income (as ordinary income) any amounts received under the Plan to the extent such amounts exceed the Holder's adjusted basis in such Claim or Interest.

Holders of Claims or Interests who were not previously required to include any accrued but unpaid interest with respect to a Claim or Interest may be treated as receiving taxable interest income to the extent any consideration they receive under the Plan is allocable to such interest.

Holders previously required to include in their gross income any accrued but unpaid interest with respect to a Claim or Interest may be entitled to recognize a deductible loss to the extent such interest is not satisfied under the Plan.

Holders of a Claim or Interest constituting any installment obligation for tax purposes may be required to currently recognize any gain remaining with respect to such obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of section 453B of the IRC.

The Holders of Claims in Class 3, Class 4, Class 5 and Class 6 and Interests in Class 7 are expected to receive only a partial Distribution of their Allowed Claims or Allowed Interests. Whether the Holder of such Claims and Interests will recognize a loss, a deduction for worthless securities or any other tax treatment will depend upon facts and circumstances that are specific to the nature of each Holder and its Claims. Accordingly, the Holders of Class 3, 4, 5, and 6 and Interests in Class 7 should consult their own tax advisors.

### C. Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOREGOING DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE UNCERTAIN IN MANY CASES AND MAY VARY DEPENDING ON A CLAIM HOLDER'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS AND INTEREST HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

### XIII. ALTERNATIVES TO THE PLAN

The Plan Proponents have determined that the Plan is the most practical means of providing for maximum recoveries to the Holders of Allowed Claims and Allowed Interests. Alternatives to the Plan that have been considered and evaluated by the Plan Proponents during the course of the Chapter 11 Cases include (i) liquidation of the Debtors' remaining assets under chapter 7 of the Bankruptcy Code and (ii) dismissal of these Chapter 11 Cases. Through consideration of these alternatives to the Plan, the Plan Proponents have concluded that the Plan, in comparison, will likely provide a greater recovery to Holders of Allowed Claims and Allowed Interests on a more expeditious timetable, and in a manner that minimizes certain risks inherent in any other course of action available to the Plan Proponents.

### A. Liquidation under Chapter 7

If the Plan or any other chapter 11 plan for the Debtors cannot be confirmed under sections 1129(a) and (b) of the Bankruptcy Code, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, and a trustee would be elected or appointed to liquidate any remaining assets of the Debtors for Distribution to Holders of Allowed Claims and

Interests pursuant to chapter 7 of the Bankruptcy Code. If a trustee is appointed and the remaining assets of the Debtors are liquidated under chapter 7 of the Bankruptcy Code, all Creditors and Interest Holders under the Plan may receive Distributions of a lesser value on account of their Allowed Claims and Allowed Interests and may have to wait a longer period of time to receive such Distributions than they would under the Plan.

## B.    Dismissal

If these Chapter 11 Cases are dismissed, the protections of the Bankruptcy Code would disappear, thereby resulting in costly, uncontrolled and protracted litigation in various jurisdictions among and between the Debtors and the Holders of Claims and Interests. Therefore, the Plan Proponents believe that dismissal of the Chapter 11 Cases is not a viable alternative to Confirmation of the Plan.

## XIV.    RECOMMENDATIONS

The Debtors and the Committee believe that the Plan is substantially preferable to any other plan, preferable to liquidation under chapter 7 of the Bankruptcy Code, and preferable to a dismissal of these Chapter 11 Cases. Conversion of these Chapter 11 Cases to cases under chapter 7 would result in substantial delays in the distribution of proceeds available and would significantly increase administrative costs, and, therefore, would materially reduce Creditor and Interest Holder recoveries. Therefore, the Debtors and the Committee strongly recommend that you vote in favor of the Plan.

## XV.    CONCLUSION

It is important that you exercise your right to vote on the Plan. The Debtors and the Committee believe that the Plan fairly and equitably provides for the treatment of all Claims against, and Interests in, the Debtors and recommends that you cast your Ballot in favor of the Plan.

CHI 60,777,341 V11

Dated: March __, 2011
Wilmington, Delaware

**SSI Liquidating, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
    Steve Day
    Co-Chief Administrative Officer


**SH Liquidating, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
    Steve Day
    Co-Chief Administrative Officer


**Mountain View Investment Company of Illinois**
**Debtor and Debtor-in-Possession**

By:_____
    Steve Day
    Co-Chief Administrative Officer


**Circle System Group, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
    Steve Day
    Co-Chief Administrative Officer


**Melas, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
    Steve Day
    Co-Chief Administrative Officer

**R.D.H. Enterprises, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
     Steve Day
     Co-Chief Administrative Officer


**Triangle Sports, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
     Steve Day
     Co-Chief Administrative Officer

**GREENBERG TRAURIG, LLP**
Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
- and -
Keith J. Shapiro
Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Counsel for the Debtors and Debtors-in-Possession

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
Jeffrey D. Prol
Vincent A. D'Agostino
Suzanne Iazzetta
65 Livingston Avenue
Roseland, New Jersey 07068
-and-
1251 Avenue of the Americas
New York, NY 10020
- and -
**WOMBLE CARLYLE SANDRIDGE**
**& RICE, PLLC**
Steven K. Kortanek (DE Bar No. 3106)
James M. Lennon (DE Bar No. 4570)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Counsel for Official Committee of Unsecured
Creditors

# EXHIBITS

**Exhibit A**     The Plan

**Exhibit B**     The Debtors' Corporate Organization Chart

**Exhibit C**     Sources and Uses of Estate Assets Prior to the Effective Date

**Exhibit D**     Liquidation Analysis

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SSI LIQUIDATING, INC., *et al.*,**[1] | **Case No. 10-12795 (KJC)** |
| **Debtors.** | **(Jointly Administered)** |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF
## LIQUIDATION PROPOSED BY THE DEBTORS AND THE
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS

### MARCH 29, 2011

**GREENBERG TRAURIG, LLP**
Keith J. Shapiro
Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
-and-
Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
Jeffrey D. Prol
Vincent A. D'Agostino
Suzanne Iazzetta
65 Livingston Avenue
Roseland, New Jersey 07068
-and-
1251 Avenue of the Americas
New York, NY 10020

**WOMBLE CARLYLE SANDRIDGE
& RICE, PLLC**
Steven K. Kortanek (DE Bar No. 3106)
James M. Lennon (DE Bar No. 4570)
222 Delaware Avenue, Ste. 1501
Wilmington, Delaware 19801

**COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

**COUNSEL FOR THE
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

---

[1] The new name for each of the Debtors, some of whose names have changed, along with the former name of each such Debtor and the last four digits of each Debtor's tax identification number, are: SSI Liquidating, Inc. (f/k/a Schutt Sports, Inc.) (0521), SH Liquidating, Inc. (f/k/a Schutt Holdings, Inc.) (0276), Mountain View Investment Company of Illinois (3563), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARTICLE 1 DEFINED TERMS AND RULES OF INTERPRETATION ..................................... 1
    Defined Terms ....................................................................................................... 1
    Rules of Interpretation ......................................................................................... 13

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS.......................................... 14
    2.1     Classification..................................................................................... 14
    2.2     Unimpaired Classes of Claims........................................................... 15
    2.3     Impaired Classes of Claims ............................................................... 15
    2.4     Impaired Classes of Interests ............................................................ 15

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS................................................. 16
    3.1     Administrative Expense Claims.......................................................... 16
    3.2     U.S. Trustee Fees............................................................................. 16
    3.3     Priority Tax Claims........................................................................... 17

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS............................ 17
    4.1     Class 1: Priority Non-Tax Claims....................................................... 17
    4.2     Class 2: Secured Claims.................................................................... 17
    4.3     Class 3: General Unsecured Claims.................................................... 17
    4.4     Class 4: Critical Trade Vendor Claims................................................ 17
    4.5     Class 5: Unsecured Convenience Claims ............................................ 18
    4.6     Class 6: Penalty Claims ................................................................... 18
    4.7     Class 7: Interests ............................................................................. 18
    4.8     Class 8: Intercompany Interests ........................................................ 18
    4.9     Reservation of Rights Regarding Claims and Interests ......................... 18

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN .......................................... 19
    5.1     Classes Entitled to Vote.................................................................... 19
    5.2     Acceptance by Impaired Classes of Claims or Interests....................... 19
    5.3     Presumed Acceptance by Unimpaired Classes.................................... 19
    5.4     Presumed Rejections by Impaired Classes .......................................... 19
    5.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.................... 19
    5.6     Controversy Concerning Impairment ................................................. 19
    5.7     Elimination of Vacant Classes........................................................... 19
    5.8     Removal of Debtors ......................................................................... 20

ARTICLE VI MEANS OF IMPLEMENTING THE PLAN................................................... 20
    6.1     Funding of Plan................................................................................ 20
    6.3     Liquidating Trust ............................................................................. 20
    6.4     Cancellation of Instruments and Stock ............................................... 23
    6.5     Operating Reports ............................................................................ 24
    6.6     Post-Confirmation Professional Fees and Expenses............................. 24

*CHI 60,777,290v11 3-29-11*

| | | |
|---|---|---|
| 6.7 | Disposition of Books and Records | 24 |
| 6.8 | Corporate Action | 24 |
| 6.9 | Dissolution of Debtors | 25 |

ARTICLE VII PROVISIONS GOVERNING RESERVES AND DISTRIBUTIONS ............... 25

| | | |
|---|---|---|
| 7.1 | Establishment of Reserves | 25 |
| 7.2 | Funding of Reserves | 25 |
| 7.3 | Disbursing Agent | 26 |
| 7.4 | Distributions by Liquidating Trustee | 26 |
| 7.5 | Distributions on Account of the Allowed Windjammer Subordinated Note Claim | 26 |
| 7.6 | Distributions on Account of Allowed Critical Trade Vendor Claims | 27 |
| 7.7 | Distributions on Account of Allowed Claims of ZHUHAI PUTUO Commerce and Trading Company Limited and Manufacturing Solutions Co., LTD | 27 |
| 7.8 | Timing of Distributions | 27 |
| 7.9 | Distributions upon Allowance of Disputed Claims or Disputed Interests | 28 |
| 7.10 | Undeliverable and Unclaimed Distributions | 29 |
| 7.11 | Interest on Claims | 29 |
| 7.12 | No Distribution in Excess of Allowed Amount of Claim | 29 |
| 7.13 | Means of Cash Payment | 29 |
| 7.14 | Delivery of Distribution | 29 |
| 7.15 | Record Date for Distributions | 30 |
| 7.16 | No Distributions Pending Allowance | 30 |
| 7.17 | Withholding and Reporting Requirements | 30 |
| 7.18 | Setoffs | 30 |
| 7.19 | *De Minimis Distributions* | 30 |
| 7.20 | Extensions of Time | 31 |

ARTICLE VIII PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS ................................................................................................ 31

| | | |
|---|---|---|
| 8.1 | Claims Objection Deadline; Prosecution of Claims Objections | 31 |
| 8.2 | Estimation of Claims | 31 |

ARTICLE IX EXECUTORY CONTRACTS AND LEASES ............................................. 32

| | | |
|---|---|---|
| 9.1 | Executory Contracts and Unexpired Leases Deemed Rejected | 32 |
| 9.2 | Bar Date For Rejection Damages | 32 |

ARTICLE X CONFIRMATION AND CONSUMMATION OF THE PLAN ..................... 32

| | | |
|---|---|---|
| 10.1 | Conditions Precedent to the Effective Date | 32 |
| 10.2 | Notice of Effective Date | 32 |
| 10.3 | Waiver of Conditions Precedent to the Effective Date | 33 |
| 10.4 | Effect of Non-Occurrence of Effective Date | 33 |

ARTICLE XI EFFECTS OF CONFIRMATION ............................................................. 33

| | | |
|---|---|---|
| 11.1 | Exculpation and Releases. | 33 |
| 11.2 | Injunction | 36 |

11.3    Term of Bankruptcy Injunction or Stays ................................................................ 37
11.4    Vesting Provision ................................................................................................... 37

ARTICLE XII RETENTION OF JURISDICTION .................................................................. 37
12.1    Exclusive Jurisdiction of Bankruptcy Court ......................................................... 37

ARTICLE XIII MISCELLANEOUS PROVISIONS .............................................................. 39
13.1    Modification of the Plan ........................................................................................ 39
13.2    Revocation, Withdrawal, or Non-Confirmation of the Plan ................................. 39
13.3    Binding Effect ....................................................................................................... 40
13.4    Subordination Rights ............................................................................................. 40
13.5    Severability of Plan Provisions ............................................................................. 40
13.6    Dissolution of the Committee ................................................................................ 40
13.7    Exemption from Section 1146 ............................................................................... 41
13.8    Filing of Additional Documents ............................................................................ 41
13.9    Insurance ................................................................................................................ 41
13.10   Successors and Assigns ......................................................................................... 41
13.11   Governing Law ...................................................................................................... 41
13.12   Exhibits and Schedules ......................................................................................... 42
13.13   Computation of Time ............................................................................................. 42
13.14   Notices ................................................................................................................... 42
13.15   Reservation of Rights ............................................................................................ 43

# INTRODUCTION

SSI Liquidating, Inc. (f/k/a Schutt Sports, Inc.), SH Liquidating, Inc. (f/k/a Schutt Holdings, Inc.), Mountain View Investment Company of Illinois, Circle System Group, Inc., Melas, Inc., R.D.H. Enterprises, Inc., and Triangle Sports, Inc., the debtors and debtors in possession in these Chapter 11 Cases, and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases hereby jointly propose the following Plan for the liquidation of the Debtors' remaining assets and for the resolution of all outstanding Claims against and Interests in the Debtors.

For a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, summary and analysis of this Plan, and certain other related matters, reference is hereby made to the Disclosure Statement that is distributed herewith. In the event of any inconsistencies between the Plan and the Disclosure Statement, the terms and provisions of the Plan shall control.

The Debtors and the Committee are the Plan Proponents within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### Defined Terms

**1.1** "**503(b)(9) Claims**" shall mean Claims arising under section 503(b)(9) of the **Bankruptcy** Code against a Debtor, which were to be filed against the Debtors on or before the 503(b)(9) Claims Bar Date.

**1.2** "**503(b)(9) Claims Bar Date**" shall mean February 14, 2011 at 5:00 p.m. (prevailing Eastern time) as established by the Bar Date Order.

**1.3** "**503(b)(9) Escrow**" shall mean the Escrowed Sale Proceeds in the amount of $800,000 set aside for payment of Allowed 503(b)(9) Claims pursuant to the Sale Order and the Settlement Order.

**1.4** "**Administrative Expense Bar Date**" shall mean the date that falls on the thirtieth (30th) day following the Confirmation Date by which Holders of Administrative Expense Claims, other than Administrative Expense Claims arising under section 503(b)(9) of

the Bankruptcy Code and Administrative Expense Claims arising pursuant to the allowance and payment of Professional Fee Claims, shall file with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

1.5 **"Administrative Expense Claims"** shall mean a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Debtors' Estates under section 1930, chapter 123 of title 28 of the United States Code; (d) any 503(b)(9) Claims, and (e) any Claims that have been designated **"Administrative Expense Claims"** by order of this Court.

1.6 **"Affiliate"** shall mean **"affiliate"** as defined in section 101(2) of the Bankruptcy Code.

1.7 **"Allowed"** shall mean all of or a portion of a Claim against the Debtors or an Interest in the Debtors (a) that has been listed by the Debtors in their Schedules as liquidated in amount and not Disputed or Contingent, and with respect to which no contrary proof of Claim or proof of Interest has been Filed, (b) as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors (with the consent of the Committee) prior to the Effective Date, or the Liquidating Trustee on or after the Effective Date or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions under this Plan, a Claim or Interest that has been deemed **"Allowed"** shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

1.8 **"Asset Purchase Agreement"** shall mean that certain asset purchase agreement by and between the Debtors and the Purchaser dated December 16, 2010.

1.9 **"Assigned Avoidance Actions"** shall mean those Avoidance Actions identified in the Plan Supplement that were assigned to the Purchaser under the Asset Purchase Agreement and released by the Purchaser as of the closing date of the Sale.

**1.10** **"Avoidance Actions"** shall mean any and all claims and causes of action of the Debtors arising under the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549, and 550 thereof.

**1.11** **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**1.12** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

**1.13** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms or the Local Rules of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**1.14** **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against the Debtors in these Chapter 11 Cases for that specific Claim or Interest.

**1.15** **"Bar Date Order"** shall mean the Order (a) Fixing Last Date for Filing Proofs of Claim, (b) Fixing Last Date for Filing Proof of Claim by Governmental Units; (c) Fixing Last Date for Filing Requests for Allowance of Section 503(b)(9) Expense Claims; and (d) Designating Form and Manner of Notice Thereof [Docket No. 526].

**1.16** **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.17** **"Cash"** shall mean money that is legal tender of the United States of America.

**1.18** **"Causes of Action"** shall mean all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, defenses, judgments, third-party claims, counterclaims, and cross claims (including, but not limited to, all Claims arising under state, federal or other non-bankruptcy law, and any avoidance, recovery, subordination or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including any and all Claims and causes of action under sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code) that are or may be pending or existing on the Effective Date against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including the Unknown Causes of Action that have not been released by the Plan, the Sale Order, the Settlement Order or any other order of the Bankruptcy Court.

**1.19** **"Circle System"** shall mean Circle System Group, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.20** **"Circle System Matters"** shall mean all Causes of Action held by the Debtors related to their acquisition of Circle System, including, without limitation, with respect to each of

the following proceedings (and any and all appeals with respect to each of the following): (i) the breach of employment agreement action filed in the First Judicial District of Pennsylvania, Philadelphia County, styled as Alan Abeshaus, et al. v. Circle System Group, Inc., Case No. 02797; (ii) the breach of stock purchase agreement, securities and common law fraud action filed in First Judicial District of Pennsylvania, Philadelphia County, styled as Circle System Group, Inc., et al. v. Alan Abeshaus, et al., U.S.D.C. Ed of PA, No. 5:08-cv-05376; (iii) the false claims act filed in the United States District Court for the Eastern District of Pennsylvania, styled as Gerry Dale, et al. v. Circle System Group, Inc., et al., No. 06-cv-04747-JKG; and (iv) Twin City Fire Insurance Company v. Circle System Group, Inc., CCP Phila. County, July Term, 2010, No. 2648.

**1.21** **"Chapter 11 Cases"** shall mean the chapter 11 cases commenced by the Debtors and jointly administered under case number 10-12795 (KJC) in the Bankruptcy Court.

**1.22** **"Claim"** or **"Claims"** shall mean a claim or claims against any Debtor or Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.23** **"Claims Agent"** shall mean the Debtors' claims agent, Logan & Company, Inc.

**1.24** **"Claims Objection Deadline"** shall mean one hundred and eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court.

**1.25** **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article II of this Plan.

**1.26** **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

**1.27** **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.28** **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.29** **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

**1.30** **"Consummation"** shall mean the occurrence of the Effective Date.

**1.31** **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.32** **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.33** **."Critical Trade Vendor Escrow"** shall mean the Escrowed Sale Proceeds in the amount of $5,300,000 set aside for payment to the Critical Trade Vendors pursuant to the Sale Order and the Settlement Order.

**1.34** **"Critical Trade Vendors"** shall mean the critical trade vendors, as designated by the Purchaser in accordance with the Sale Order and the Settlement Order.

**1.35** **"Debtors"** shall mean SSI Liquidating, SH Liquidating, Mountain View, Circle System, Melas, RDH, and Triangle Sports.

**1.36** **"Disallowed"** shall mean with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is Contingent as of the time of allowance or disallowance of such Claim. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**1.37** **"Disbursing Agent"** shall mean (a) on or prior to the Effective Date, the Debtors and (b) after the Effective Date, the Liquidating Trustee; provided that the Debtors or the Liquidating Trustee may, in their discretion, retain a third party to act as Disbursing Agent.

**1.38** **"Disclosure Statement"** shall mean the disclosure statement accompanying the Plan, as amended, supplemented or modified from time to time, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

**1.39** **"Disputed"** shall mean any Claim or Interest: (a) which is listed in the Schedules as disputed, Contingent or unliquidated and for which a proof of Claim or proof of Interest has been timely filed pursuant to this Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court; (b) which is objected to in whole or in part on or before the Claims Objection Deadline (or on or before any deadline for objecting to Interests) or for which a request for estimation has been Filed in accordance with the Bankruptcy Code and the Bankruptcy Rules and as to which no Final Order allowing or disallowing such Claim or Interest has been entered; or (c) for which a motion to approve a settlement of such Claim or Interest has been Filed in accordance with the Bankruptcy Code and the Bankruptcy Rules and as to which no Final Order approving or disapproving such settlement has been entered. To the extent an Objection relates to the allowance of only part of a Claim or Interest, such Claim or Interest shall be Disputed only to the extent of the Objection.

**1.40** **"Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve"** shall mean the reserve established pursuant to Article 7.1(a) of this Plan, which reserve shall contain amounts relating to Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims and Disputed Secured Claims.

**1.41** **"Disputed General Unsecured Claims Reserve"** shall mean the reserve established pursuant to Article 7.1(c) of the Plan, which reserve shall contain amounts relating to Disputed General Unsecured Claims, Disputed Unsecured Convenience Claims, and Disputed Critical Vendor Claims.

**1.42** **"Distribution"** shall mean a delivery of Cash by the Disbursing Agent to the Holders of Allowed Claims or Allowed Interests pursuant to this Plan.

**1.43** **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to this Plan.

**1.44** **"Distribution Record Date"** shall mean the date established for determining the Holders of Claims and Interests entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

**1.45** **"Effective Date"** shall mean the first Business Day after the later of the date on which (a) all conditions in Article 10.1 of this Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect; provided, however, the Effective Date may occur on such other date agreed to in writing by the Debtors and the Committee.

**1.46** **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.47** **"Escrowed Sale Proceeds"** shall mean the aggregate of $6.5 million of the Sale Proceeds comprised of the Critical Trade Vendor Escrow, the Trade Creditor Escrow and the 503(b)(9) Escrow.

**1.48** **"Estate(s)"** shall mean the estates of each of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.49** **"Excluded Assets"** shall have the meaning ascribed to it in the Asset Purchase Agreement.

**1.50** **"Executory Contract"** shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under 365 of the Bankruptcy Code.

**1.51** **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.52** **"Final Order"** shall mean an unstayed order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors and the Committee (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.53** **"General Unsecured Claim"** shall mean a Claim against a Debtor, including any Rejection Claims or Intercompany Claims, but excluding any Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Critical Trade Vendor Claims, Unsecured Convenience Claims, Penalty Claims, Interests and Intercompany Interests.

**1.54** **"General Unsecured Claim Bar Date"** shall mean February 14, 2011 at 5:00 p.m. (Prevailing Eastern Time) for certain Claims arising before the Petition Date, including General Unsecured Claims, Unsecured Convenience Claims or Priority Non-Tax Claims as established by the Bar Date Order.

**1.55** **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.56** **"Governmental Unit Bar Date"** shall mean March 14, 2011 at 5:00 p.m. (Prevailing Eastern Time) as established by the Bar Date Order.

**1.57** **"Holder"** or **"Holders"** shall mean a Person or an Entity holding a Claim or Interest.

**1.58** **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.59** **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired.

**1.60** **"Insider"** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

**1.61** **"Intercompany Claim"** shall mean any Claim by a Debtor against another Debtor.

**1.62** **"Intercompany Interests"** shall mean those Interests held by SH Liquidating in each of the other Debtors and any Interest of a Debtor in the Treasury stock of any other Debtor.

**1.63** **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated stock or a similar security.

**1.64** **"IRS"** shall mean the Internal Revenue Service.

**1.65** **"Liquidating Trust"** shall mean the liquidating trust established by this Plan and described in Article 6.3 of this Plan and the Liquidating Trust Agreement.

**1.66** **"Liquidating Trust Agreement"** shall mean the agreement establishing and delineating the terms and conditions of the Liquidating Trust, substantially in the form included in the Plan Supplement.

**1.67** **"Liquidating Trust Assets"** shall mean all assets of the Estates, including Causes of Action, Non-Trade Avoidance Actions and the Excluded Assets, transferred, conveyed and assigned, pursuant to the Plan, by the Debtors to the Liquidating Trust as of the Effective Date.

**1.68** **"Liquidating Trust Beneficiaries"** shall mean the Holders of Allowed Claims and Interests under this Plan.

**1.69** **"Liquidating Trust Expense Reserve"** shall mean the reserve established pursuant to Section 7.1(b) of the Plan by the Liquidating Trustee to hold funds as are reasonably necessary for the Liquidating Trust to satisfy the expenses of administering the Liquidating Trust, including, without limitation, the winding down and closing of the Chapter 11 Cases, the Liquidating Trustee's reasonable professional fees and expenses in respect of the claims reconciliation process, the liquidation of Liquidating Trust Assets, the prosecution, negotiation and settlement of any Causes of Action with respect thereto, and the making of Distributions by the Liquidating Trustee under this Plan.

**1.70** **"Liquidating Trust Protected Parties"** shall mean collectively the Liquidating Trust, the Liquidating Trustee, and each of their members, designees, agents, professionals, employees, mangers, partners, actuaries, financial advisors, investment bankers, and attorneys.

**1.71** **"Liquidating Trustee"** shall mean Steven D. Sass of Receivables Management Services.

**1.72** **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

**1.73** **"Melas"** shall mean Melas, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.74** **"Mountain View"** shall mean Mountain View Investment Company of Illinois, one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.75** **"Non-Trade Avoidance Actions"** shall mean any and all Avoidance Actions that are not Assigned Avoidance Actions, as identified in the Plan Supplement.

**1.76** **"Objection(s)"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim).

**1.77** **"Penalty Claim"** shall mean any Claim against a Debtor, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (but only to the extent that such attorneys' fees are punitive in nature), multiple, treble, exemplary or punitive damages, or for any other amount that does not represent compensation for actual pecuniary loss suffered by the Holder of such Claim, and all Claims against any of the Debtors of the type described in section 510(b) of the Bankruptcy Code.

**1.78** **"Permissible Investments"** shall mean (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (d) such other investments as the Bankruptcy Court may approve from time to time.

**1.79** **"Person"** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.80** **"Petition Date"** shall mean September 6, 2010 for Mountain View, SSI Liquidating, Circle System, Melas, RDH, Triangle Sports, and shall mean September 15, 2010 for SH Liquidating.

**1.81** **"Plan"** shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time

including in accordance with any Plan Supplement and the Bankruptcy Code or the Bankruptcy Rules.

**1.82** **"Plan Proponents"** shall mean the Debtors and the Committee.

**1.83** **"Plan Supplement"** shall mean the supplement to the Plan to be Filed as provided for herein.

**1.84** **"Plan Supplement Filing Date"** shall mean the date, which shall be at least five (5) days prior to the Voting Deadline, on which the Plan Supplement shall be Filed with the Bankruptcy Court.

**1.85** **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

**1.86** **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

**1.87** **"Professional"** or collectively **"Professionals,"** shall mean a Person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.88** ."**Professional Fee Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Confirmation Date, as set forth in Article 3.1 herein.

**1.89** **"Professional Fee Claims"** shall mean all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases on or prior to the Effective Date.

**1.90** **"Pro Rata"** shall mean the proportion that the Allowed Claim or Interest in a particular Class bears to the aggregate amount of (a) Allowed Claims or Allowed Interests in such Class as of the date of determination, plus (b) Disputed Claims or Disputed Interests in such Class as of the date of determination, in their aggregate face amounts or such other amount: (i) as calculated by the Debtors or the Liquidating Trustee, as applicable, on or before the date of any such Distribution, (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim, or (iii) as directed by a Final Order of the Bankruptcy Court.

**1.91** **"Purchaser"** shall mean Kranos Intermediate Holding Company, the Entity that acquired substantially all of the Debtors' assets pursuant to the Sale Order.

**1.92** **"RDH"** shall mean R.D.H. Enterprises, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

1.93    **"Rejection Bar Date"** shall mean the deadline by which a counterparty to a rejected Executory Contract or an unexpired lease of the Debtors must file a proof of Claim for damages resulting from the rejection of such Executory Contract or unexpired lease by the Debtors, and shall be the later of: (a) the General Unsecured Claim Bar Date; (b) thirty (30) days after the entry of an order by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order authorizing such rejection.

1.94    **"Rejection Claim"** shall mean any Claim for amounts due as a result of the rejection by the Debtors of any Executory Contract or unexpired lease under section 365 of the Bankruptcy Code.

1.95    **"Released Parties"** shall mean the Debtors, the Committee, and any of their respective present or former officers, directors, shareholders, members, Affiliates, employees, managers, partners, attorneys, actuaries, financial advisors, investment bankers, agents, and professionals.

1.96    **"Reserves"** shall mean, collectively, the Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve, the Liquidating Trust Expense Reserve, the Disputed General Unsecured Claims Reserve and any other reserves established by the Liquidating Trustee pursuant to Article 7.1 of the Plan.

1.97    **"Sale"** shall mean the sale of substantially all of the Debtors' assets to Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

1.98    **"Sale Motion"** shall mean the Debtors' Motion for Entry of Orders: (A)(I) Approving Bid Procedures Relating to Sale of the Debtors' Assets; (II) Approving Bid Protections; (III) Scheduling a Hearing to Consider the Sale; (IV) Approving the Form and Manner of Notice of Sale by Auction; (V) Establishing Procedures for Noticing and Determining Cure Amounts; and (VI) Granting Related Relief; and (B)(I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of Debtors Outside the Ordinary Course of Business; (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (III) Authorizing the Assumption, Sale and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief [Docket No. 331], Filed on November 22, 2010.

1.99    **"Sale Order"** shall mean the Order (i) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of Debtors Outside the Ordinary Course of Business, (ii) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (iv) Granting Related Relief entered by the Bankruptcy Court on December 16, 2010 [Docket No. 438].

1.100    **"Schedules"** shall mean the schedules of assets and liabilities, schedules of Executory Contracts and unexpired leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

**1.101** **"Secured Claim"** shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected, and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of this Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.102** **"Settlement Order"** shall mean the Order Authorizing and Approving (A) the Settlement by and Among Debtors, Riddell, Windjammer, Gridiron, Purchaser and Committee with Respect to the Global Resolution of Certain Litigation and Claims, and (B) The Consummation of the Transactions Contemplated entered by the Bankruptcy Court on February 11, 2011 [Docket No. 643].

**1.103** **"SH Liquidating"** shall mean SH Liquidating, Inc., formerly known as Schutt Holdings, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.104** **"SSI Liquidating"** shall mean SSI Liquidating, Inc., formerly known as Schutt Sports, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.105** **"Solicitation Procedures Order"** shall mean the Order (A) Approving the Disclosure Statement, (B) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors, (C) Scheduling a Hearing to Consider Confirmation of the Joint Plan of Liquidation, and (D) Establishing Notice and Objection Procedures in Respect Thereof entered by the Bankruptcy Court on March ___, 2011 [Docket No. __].

**1.106** **"Tax"** or **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.107** **"Trade Claims"** shall mean Claims asserted by Trade Creditors.

**1.108** **"Trade Creditor Escrow"** shall mean Escrowed Sale Proceeds in the amount of $400,000.00 set aside for payment to the Trade Creditors pursuant to the Sale Order and the Settlement Order.

**1.109** **"Trade Creditors"** shall mean the trade creditors set forth in the Notice of Filing of Exhibit A (Trade Creditor Listing) to Term Sheet Annexed to Debtors' Motion For Entry of Order, Pursuant to Sections 105, 503(b)(3)(D) and 1107 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9019, Authorizing and Approving (A) Settlement By and Among Debtors, Riddell, Windjammer, Gridiron, Purchaser and Committee With Respect to the Global Resolution of Certain Litigation and Claims and (B) Consummation

of Transactions Contemplated Thereby Filed with the Bankruptcy Court on February 4, 2011 [Docket No. 613], which listing of Trade Creditors may be amended, modified or supplemented from time to time in accordance with the Settlement Order and which listing will be included in the Plan Supplement.

**1.110 "Triangle Sports"** shall mean Triangle Sports, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.111 "Unclaimed Distributions"** shall mean any undeliverable or unclaimed Distributions.

**1.112 "Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.113 "Unsecured Convenience Claims"** shall mean a Claim against a Debtor that is a General Unsecured Claim in an amount equal to or less than $5,000.

**1.114 "Unknown Causes of Action"** shall mean any Causes of Action that currently exist or may subsequently arise and which have not been otherwise set forth herein, in the Disclosure Statement or in the Plan Supplement, because the facts upon which such Causes of Action are based are not currently or fully known by the Debtors or the Committee.

**1.115 "U.S. Trustee Fees"** shall mean fees payable pursuant to 28 U.S.C. § 1930.

**1.116 "Voting Deadline"** shall mean April 29, 2011, at 5:00 p.m. (prevailing Eastern time), the date and time by which all ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

**1.117 "Windjammer"** shall mean Windjammer Mezzanine & Equity Fund, II, L.P.

**1.118 "Windjammer Subordinated Note Claim"** shall mean the Allowed General Unsecured Claim of Windjammer in the amount of $17,357,529, against each of the Debtors, based upon the Amended and Restated Subordinated Note Agreement, as such agreement may have been amended or modified, which Claim was Allowed pursuant to the Settlement Order.

**Rules of Interpretation**

**1.119** For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used in the Plan that is not otherwise defined in the Plan shall have the meaning ascribed to it in the Disclosure Statement (or any exhibit hereto or thereto), (b) any capitalized term used in the Plan that is not defined in the Plan or the Disclosure Statement, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (c) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (d) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on

particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (e) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (f) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (g) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (h) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (i) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1    Classification.**  All Claims and Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article III of the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

For purposes of brevity and convenience, the classification of Claims and Interests set forth in this Article II applies to each Debtor individually.

| | | |
|---|---|---|
| **Class 1**: Priority Non-Tax Claims | Unimpaired | Not entitled to Vote<br>Deemed to accept Plan |
| **Class 2**: Secured Claims | Unimpaired | Not entitled to Vote<br>Deemed to accept Plan |
| **Class 3**: General Unsecured Claims | Impaired | Entitled to Vote |
| **Class 4**: Critical Trade Vendor Claims | Impaired | Entitled to Vote |
| **Class 5**: Unsecured Convenience Claims | Impaired | Entitled to Vote |
| **Class 6**: Penalty Claims | Impaired | Entitled to Vote |
| **Class 7**: Interests | Impaired | Entitled to Vote |
| **Class 8**: Intercompany Interests | Impaired | Not entitled to Vote<br>Deemed to reject Plan |

### 2.2 Unimpaired Classes of Claims

**Class 1: Priority Non-Tax Claims.** Class 1 shall consist of Priority Non-Tax Claims against the Debtors. Class 1 Claims are Unimpaired by the Plan and the Holders of Allowed Class 1 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

**Class 2: Secured Claims.** Class 2 shall consist of the Allowed Secured Claims against the Debtors. Class 2 Claims are Unimpaired by the Plan and the Holders of Class 2 Claims are not entitled to vote on the Plan.

### 2.3 Impaired Classes of Claims

**Class 3: General Unsecured Claims.** Class 3 shall consist of all Allowed General Unsecured Claims. Class 3 Claims are Impaired by the Plan and the Holders of Class 3 Claims are entitled to vote on the Plan.

**Class 4: Critical Trade Vendor Claims.** Class 4 shall consist of all Allowed Critical Trade Vendor Claims. Class 4 Claims are Impaired by the Plan and the Holders of Class 4 Claims are entitled to vote on the Plan.

**Class 5: Unsecured Convenience Claims.** Class 5 shall consist of all Allowed Unsecured Convenience Claims against the Debtors. Class 5 Claims are Impaired by the Plan and the Holders of Class 5 Claims are entitled to vote on the Plan.

**Class 6: Penalty Claims.** Class 6 shall consist of all Penalty Claims. Class 6 Claims are Impaired by the Plan and the Holders of Class 6 Claims are entitled to vote on the Plan.

### 2.4 Impaired Classes of Interests

**Class 7: Interests.** Class 7 shall consist of all Interests, excluding Intercompany Interests. Class 7 Interests are Impaired by the Plan and the Holders of Class 7 Interests are entitled to vote on the Plan.

**Class 8: Intercompany Interests.** Class 8 shall consist of all Intercompany Interests. Because Holders of Class 8 Intercompany Interests will receive no Distribution under the Plan, Holders of Class 8 Intercompany Interests are Impaired and deemed to reject the Plan, and, therefore are not entitled to vote on the Plan.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS**

For purposes of brevity and convenience, the treatment of unclassified Claims set forth in this Article III applies to each Debtor individually.

**3.1** **Administrative Expense Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Administrative Expense Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense Claim: (a) Cash equal to the amount of such Allowed Administrative Expense Claim; or (b) such other treatment as to which the Debtors, in consultation with the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Expense Claim shall have agreed upon in writing.

**(a)** **Bar Date for Administrative Expense Claims.** Holders of Administrative Expense Claims, other than 503(b)(9) Claims and Professional Fee Claims, shall file with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, **so as to actually be received on or before the Administrative Expense Bar Date**. Any such Claim not filed by the Administrative Expense Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Administrative Expense Bar Date and shall constitute notice of such Bar Date. The Liquidating Trustee shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Expense Claims.

**(b)** **Bar Date for Applications for Professional Fees.** Professional Fee Claims are Administrative Expense Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

**3.2** **U.S. Trustee Fees.** All fees payable on or before the Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. From and after the Effective Date, the Liquidating Trust shall be liable and shall