pay the fees assessed against the Debtors' Estates until such time as a particular Debtor's Chapter 11 Case is closed, dismissed or converted.

**3.3 Priority Tax Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) such other treatment as to which the Debtors, in consultation with the Committee, or the Liquidating Trustee, as appropriate, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

For purposes of brevity and convenience, the treatment of classified Claims and Interests set forth in this Article IV applies individually to each Debtor.

Unless the Holder of an Allowed Claim or Allowed Interest and the Debtors (in consultation with the Committee), or the Liquidating Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Claim or Allowed Interest shall receive the following Distributions in accordance with Article VII of the Plan:

**4.1 Class 1: Priority Non-Tax Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors, in consultation with counsel to the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

**4.2 Class 2: Secured Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) one of the treatments specified in section 1124 of the Bankruptcy Code; or (B) such other treatment which the Debtors, in consultation with counsel to the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Secured Claim have agreed upon in writing.

**4.3 Class 3: General Unsecured Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed General Unsecured Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 3 Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims and any expenses of the Liquidating Trust.

**4.4 Class 4: Critical Trade Vendor Claims.** Within the time period provided in Article VII of the Plan, each Holder of an Allowed Critical Trade Vendor Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed 4 Class Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of

all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims and all expenses of the Liquidating Trust; provided, however a Holder of an Allowed Critical Vendor Claim shall not receive any Distribution under the Plan until the Holders of Allowed General Unsecured Claims have received a percentage recovery under the Plan, on account of their Allowed General Unsecured Claims, that equals the percentage recovery received by such Holder of an Allowed Critical Vendor Claim, on account of its Allowed Critical Vendor Claim, from the Critical Trade Vendor Escrow.

**4.5     Class 5: Unsecured Convenience Claims.**  Within the time period provided in Article VII of this Plan, each Holder of an Allowed Unsecured Convenience Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 5 Claim a Distribution from the Liquidating Trust equal to Cash in the amount of eighteen percent (18 %) of its Allowed Unsecured Convenience Claim.   Holders of Class 5 Unsecured Convenience Claims shall not have any rights or receive any treatment as Holders of Class 3 General Unsecured Claims under the Plan or as Trade Creditors under the Settlement Order.

**4.6     Class 6: Penalty Claims.**  On the Effective Date, each Holder of an Allowed Penalty Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 6 Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims, Allowed General Unsecured Claims, Allowed Critical Trade Vendor Claims and expenses of the Liquidating Trust.

**4.7     Class 7: Interests.**  Within the time period provided in Article VII of the Plan, each Holder of an Allowed Interest, excluding Intercompany Interests, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 7 Interest its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims, Allowed General Unsecured Claims, Allowed Critical Trade Vendor Claims, Allowed Penalty Claims and all expenses of the Liquidating Trust.  Each Holder of Allowed Interests shall be paid pursuant to the terms of any documents by and between the Debtors and such Holders, including without limitation, the corporate charter and any shareholder agreements.

**4.8     Class 8: Intercompany Interests.**  On the Effective Date, all Intercompany Interests shall be deemed canceled, extinguished and discharged and of no further force or effect. The Holders of Intercompany Interests shall not be entitled to receive or retain any property on account of such Intercompany Interests.

**4.9     Reservation of Rights Regarding Claims and Interests.**  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

# ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1    Classes Entitled to Vote.**  Because Claims and Interests in Classes 3, 4, 5, 6 and 7 are Impaired and Holders thereof will receive or retain property or an interest in property under the Plan, Holders of Claims and Interests in Classes 3, 4, 5, 6 and 7 shall be entitled to vote to accept or reject the Plan.

**5.2    Acceptance by Impaired Classes of Claims or Interests.**  In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.   In accordance with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if such Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Plan.

**5.3    Presumed Acceptance by Unimpaired Classes.**  Because Claims in Classes 1 and 2 are Unimpaired pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 and 2 are deemed to have accepted the Plan and, therefore, Holders of Claims in Classes 1 and 2 are not entitled to vote to accept or reject the Plan.

**5.4    Presumed Rejections by Impaired Classes.**  Because Holders of Intercompany Interests in Class 8 are not entitled to receive or retain any property under the Plan, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Intercompany Interests in Class 8 are presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

**5.5    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents reserve the right to request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**5.6    Controversy Concerning Impairment.**  If a controversy arises as to whether any Claim or Interest is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**5.7    Elimination of Vacant Classes.**  Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**5.8     Removal of Debtors.**  If this Plan cannot be confirmed with respect to one or more of the Debtors, the Plan Proponents may remove such Debtor(s) from this Plan.  In such event, the Classes pertaining to such Debtor(s) will be removed from this Plan, and the Plan will omit any treatment of the assets and liabilities of such Debtor(s).  The removal of any Debtor from this Plan will not affect this Plan with respect to any other Debtor.

**ARTICLE VI**
**MEANS OF IMPLEMENTING THE PLAN**

**6.1     Funding of Plan.**  The Plan will be funded by the Cash held by the Debtors as of the Effective Date, and thereafter by the proceeds of the Liquidating Trust Assets.

**6.2 - [INTENTIONALLY OMITTED]**

**6.2     Liquidating Trust.**

**(a)     Appointment of the Liquidating Trustee.**  Steven D. Sass of Receivables Management Services shall serve as the Liquidating Trustee.  The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date.

In accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidating Trust and the Reserves are dissolved in accordance with Article 7.8 and (ii) the date such Liquidating Trustee resigns, is terminated or is otherwise unable to serve, provided, however, that, in the event that the Liquidating Trustee resigns, is terminated or is unable to serve, then the Court, upon the motion of any party-in-interest, shall approve a successor to serve as the Liquidating Trustee, and such successor Liquidating Trustee shall serve in such capacity until the Liquidating Trust is dissolved.

**(b)     Establishment of a Liquidating Trust.**  On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant to this Plan.  In the event of any conflict between the terms of this Article 6.3 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

**(c)     Liquidating Trust Assets.**  Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and liens, subject only to the Allowed Claims or Allowed Interests of the Liquidating Trust Beneficiaries as set forth in the Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement.  Thereupon, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

In connection with any Causes of Action that are included in the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications thereto (whether written or oral) shall also exist for the benefit of the Liquidating Trust and shall vest in the Liquidating Trustee and its representatives, and shall also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges.

(d)     **Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor in-Interest**. The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, including the Causes of Action, make timely distributions to the Liquidating Trust Beneficiaries and not unduly prolong its duration. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims or Allowed Interests of Liquidating Trust Beneficiaries entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such Holders to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate in his or her sole discretion) shall value the Liquidating Trust Assets based on the good faith determination of the value of such Liquidating Trust Assets. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidating Trust Assets.

The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets transferred to the Liquidating Trust, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Liquidating Trust Assets (pending distributions in accordance with the Plan) in Permissible Investments; provided, however, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

(e)    **Responsibilities of Liquidating Trustee; Litigation**.  The responsibilities of the Liquidating Trustee shall include, but shall not be limited to:

      1.    the making of Distributions as contemplated herein;

      2.    establishing and maintaining the Reserves in accordance with the terms of this Plan;

      3.    conducting an analysis of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, Critical Trade Vendor Claims, Unsecured Convenience Claims, Intercompany Claims, Penalty Claims and Interests and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with Articles 8.1 and 11.4;

      4.    filing appropriate tax returns in the exercise of its fiduciary obligations;

      5.    retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

      6.    taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action, including, without limitation, the Circle Systems Matters and Non-Trade Avoidance Actions; and

      7.    taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

(f)    **Expenses of Liquidating Trustee**.    Fees and expenses incurred by the Liquidating Trustee shall be paid from the Liquidating Trust Expense Reserve in accordance with Article VII below.

(g)    **Bonding of Liquidating Trustee**. The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his sole discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

(h)    **Fiduciary Duties of the Liquidating Trustee**.  Pursuant to this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders all Claims and Interests that will receive Distributions pursuant to the terms of this Plan.

(i)    **Dissolution of the Liquidating Trust**.  The Liquidating Trust shall be dissolved no later than three (3) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed prior to the third anniversary or the end of any extension period approved by the Bankruptcy Court (the Filing of which shall automatically extend the term of the Liquidating Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a

liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets. After (a) the final Distribution of the Reserves and the balance of the assets or proceeds of the Liquidating Trust pursuant to this Plan, and (b) the Filing by or on behalf of the Liquidating Trust of a certification of dissolution with the Bankruptcy Court in accordance with this Plan, the Liquidating Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

**(j)     Liability, Indemnification of the Liquidating Trust Protected Parties.** The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Protected Parties other than for specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his functions, and in his sole and absolute discretion, consult with his attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such entities, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with his attorneys, accountants, financial advisors, and agents, and his determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such Liquidating Trust Protected Parties for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

**(k)     Full and Final Satisfaction against Liquidating Trust.** On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of and in exchange for all Claims or Interests against the Liquidating Trust; provided, however, that nothing contained in the Plan shall be deemed to constitute or shall result in a discharge of any Debtor under section 1141(d) of the Bankruptcy Code.

**6.3     Cancellation of Instruments and Stock.** On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtors, except such instruments

that are authorized or issued under this Plan, shall be canceled and extinguished. Additionally, as of the Effective Date, all Interests, and any and all warrants, options, rights, or interests with respect to Interests that have been issued, could be issued, or that have been authorized to be issued but that have not been issued, shall be deemed canceled and extinguished without any further action of any party. The Holders of or parties to the canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to this Plan.

6.4     **Operating Reports**. Prior to the Effective Date, the Debtors shall timely File all reports, including without limitation, monthly operating reports required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules., or the Office of the United States Trustee. On and after the Effective Date, the Liquidating Trustee shall timely File all reports, including without limitation, quarterly operating reports as required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules, or Office of the United States Trustee until entry of an order closing or converting the Chapter 11 Cases.

6.5     **Post-Confirmation Professional Fees and Expenses**. Professionals that perform post-Effective Date services for the Liquidating Trustee shall provide monthly invoices to the Liquidating Trustee describing the services rendered, and the fees and expenses incurred in connection therewith, on or before the twentieth $(20^{th})$ day following the end of the calendar month during which such services were performed. Such post-Effective Date professionals of the Liquidating Trustee who timely tender such invoices shall be paid by the Liquidating Trustee for such services, subject to Article VII herein, not less than ten (10) days after the submission to the Liquidating Trustee by such professionals of said monthly invoices, unless, within such ten (10) day period, a written objection to such payment is made by the Liquidating Trustee. To the extent a written objection to such professional's monthly invoice cannot be resolved by the professional and the Liquidating Trustee, payment of such invoice shall be made only upon Final Order of the Bankruptcy Court.

6.6     **Disposition of Books and Records**. After the Effective Date, the Debtors shall transfer all of the Debtors' books and records in their possession, if any, relating to the conduct of the Debtors' business prior to the Effective Date to the Liquidating Trustee. From and after the Effective Date, the Liquidating Trustee shall continue to preserve and maintain all documents and electronic data transferred to the Liquidating Trustee by the Debtors and the Liquidating Trustee shall not destroy or otherwise abandon any such documents and records (in electronic or paper format) absent further order of the Court after a hearing upon thirty (30) days notice to parties-in-interest.

6.7     **Corporate Action**. On the Effective Date, all matters expressly provided for under this Plan that would otherwise require approval of the shareholders or directors of one or more of the Debtors, including but not limited to, the dissolution or merger of any of the Debtors, shall be deemed to have occurred and shall be in effect upon the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated without any requirement of action by the shareholders or directors of the Debtors.

**6.8    Dissolution of Debtors**.  On the Effective Date, the Debtors shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors; provided that in the sole discretion of the Liquidating Trustee, the Liquidating Trustee, on behalf of the Debtors, may (but shall not be required to) file a certificate of dissolution with the Office of the Secretary of State for the applicable state.

## ARTICLE VII
## PROVISIONS GOVERNING RESERVES AND DISTRIBUTIONS

**7.1    Establishment of Reserves.**

**(a)**    On the Effective Date and prior to making any Distributions, the Liquidating Trustee shall establish the Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Liquidating Trustee to fund the Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve in accordance with the provisions of the Plan.

**(b)**    On the Effective Date and prior to making any Distributions, the Liquidating Trustee shall establish the Liquidating Trust Expense Reserve, and shall transfer thereto the amount of Cash as deemed necessary by the Liquidating Trustee to fund the expenses of the Liquidating Trust in accordance with the provisions of the Plan.

**(c)**    As soon as reasonably practicable, but not to exceed thirty (30) days after the Effective Date, the Liquidating Trustee shall establish the Disputed General Unsecured Claims Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Liquidating Trustee to fund the Disputed General Unsecured Claims Reserve in accordance with the provisions of the Plan.

**(d)**    In the Liquidating Trustee's discretion, at any time after the Effective Date, and if it appears that Distributions may be available to Holders of Allowed Penalty Claims or Allowed Interests, he may establish a reserve for the Penalty Claims or Interests.

**7.2    Funding of Reserves.**

**(a)**    With respect to the Disputed Administrative, Priority Tax, Priority Non-Tax and Secured Claims Reserve and the Disputed General Unsecured Claims Reserve, the amount of Cash deposited into each of the foregoing reserves shall be equal to the percentage of Cash that Holders of Disputed Claims in each reserve would be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or such lesser amount as authorized in Article 7.2 (c) of the Plan.  To the extent that the Liquidating Trustee determines, in his discretion, to establish one or more reserves for Penalty Claims or Interests, such reserves would be similarly funded.

**(b)**    With respect to the Liquidating Trust Expense Reserve, the amount of Cash deposited into such reserve shall be equal to the amount of Cash necessary to fund the expenses expected to be incurred by the Liquidating Trust as determined, in the Liquidating Trustee's sole discretion.

**(c)** For the purposes of effectuating the provisions of this Article and the Distributions to Holders of Allowed Claims, the Liquidating Trustee may, at any time and regardless of whether an objection to a Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix, or liquidate the amount of such Disputed Claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed, or liquidated shall be deemed the Allowed amounts of such Claims for purposes of Distribution under this Plan and establishment of the necessary Reserve. In lieu of estimating, fixing or liquidating the amount of any Disputed Claims or Disputed Interests, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claims or Disputed Interests (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the Liquidating Trustee and the Holder of such Disputed Claims or Disputed Interests.

**(d)** Notwithstanding the foregoing, nothing in this Plan or the Confirmation Order, or any related document, agreement, instrument or order shall prohibit the Liquidating Trustee from using Liquidating Trust Assets and other reserve amounts to fund Liquidating Trust Expenses.

**7.3 Disbursing Agent.** The Liquidating Trustee may employ or contract with other Persons or Entities to assist in or make the Distributions required by this Plan.

**7.4 Distributions by Liquidating Trustee.** Within the time periods provided in Article 7.8 of this Plan, the Liquidating Trustee shall make periodic and final distributions of the Liquidating Trust Assets on hand and the Permitted Investments, except such amounts as are necessary to maintain the Reserves, in accordance with the terms of this Plan. The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

The Liquidating Trustee shall require any Liquidating Trust Beneficiary or other distributee to furnish to the Liquidating Trustee in writing an Employer Identification Number or Taxpayer Identification Number as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any Distribution to any Liquidating Trust Beneficiary or other distributee upon receipt of such identification number.

**7.5 Distributions on Account of the Allowed Windjammer Subordinated Note Claim.** Distributions on account of the Allowed Windjammer Subordinated Note Claim shall be as follows:

**(a)** The distributions on account of the Allowed Windjammer Subordinated Note Claim from the Liquidating Trust Assets that are not proceeds of Excluded Assets shall be disbursed as follows (i) the first to $200,000 to Purchaser and (ii) the balance shall be distributed Pro Rata to Trade Creditors on account of their Allowed Trade Claims, and

**(b)** The distributions on account of the Allowed Windjammer Subordinated Note Claim from the Liquidating Trust Assets that are proceeds of Excluded Assets shall be disbursed as follows: (i) the first $2,000,000.00 shall be distributed 50% to Windjammer

and 50% to the Holders of Allowed Trade Claims, to be distributed on a Pro Rata basis on account of their Allowed Trade Claims; (ii) the next $1,000,000.00 shall be distributed to Windjammer; and (iii) any additional amounts shall be distributed 50% to Windjammer and 50% to the Holders of Allowed Trade Claims, to be distributed on a Pro Rata basis on account of the Allowed Trade Claims.

**7.6     Distributions on Account of Allowed Critical Trade Vendor Claims.**  A Holder of an Allowed Critical Vendor Claim shall not receive any Distribution under the Plan until the Holders of Allowed General Unsecured Claims have received a percentage recovery under the Plan, on account of their Allowed General Unsecured Claims, that equals the percentage recovery received by such Holder of an Allowed Critical Vendor Claim, on account of its Allowed Critical Vendor Claim, from the Critical Trade Vendor Escrow.

**7.7     Distributions on Account of Allowed Claims of ZHUHAI PUTUO Commerce and Trading Company Limited and Manufacturing Solutions Co., LTD.**  Distributions on Account of Allowed Claims of ZHUHAI PUTUO Commerce and Trading Company Limited and Manufacturing Solutions Co., LTD shall be made from the applicable Reserve and in accordance with the *Order on Petitioner/Father's Emergency Petition For Immediate Modification of Custody of Minor Child and For Freezing of Assets entered in the State of Indiana, County of Lake, In re the Marriage of Jackie D. Jent, II, Petitioner/Father and Yan Wu, Respondent/Mother*, Cause No. 45D03-810-DR-1120 (as may be amended or modified) (the **"Kidnapping and Marital Property Order"**) unless upon a final determination by a court of competent jurisdiction, the Kidnapping and Marital Property Order is determined to be invalid and/or not binding upon the Debtors.  Nothing contained in this Section 7.7 of the Plan or the Disclosure Statement shall constitute an admission of any sort by the Debtors, the Committee, or any other Person as to the validity, applicability or scope of the Kidnapping and Marital Property Order.

**7.8     Timing of Distributions.**

**(a)**     The Debtors shall pay each Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Non-Tax Claim, Allowed Secured Claim, and Allowed Unsecured Convenience Claim on the later of:

1.     the Effective Date of this Plan,

2.     the date on which such Claim becomes an Allowed Claim by Final Order,

3.     the date on which, in the ordinary course of business, such Allowed Claim becomes due, or

4.     such other date as may be agreed upon by the Debtors, in consultation with the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim.

**(b)**     As soon as reasonably practicable, but not to exceed sixty (60) days after the establishment of the Reserves, the Liquidating Trustee shall make an initial Distribution of the available Cash component of the Liquidating Trust Assets in accordance with the

provisions of this Plan and the Confirmation Order, to the extent practicable in the sole discretion of the Liquidating Trustee, to the Holders of Allowed General Unsecured Claims and Allowed Interests to the extent of available Cash. The Liquidating Trustee shall make periodic Distributions thereafter to Holders of Allowed General Unsecured Claims and Allowed Interests, as appropriate, in his discretion.

(c)     Any Cash remaining in the Reserves after all Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, Disputed Secured Claims, Disputed General Unsecured Claims, Disputed Unsecured Convenience Claims, Disputed Critical Trade Vendor Claims, Disputed Penalty Claims and Disputed Interests have been resolved, and paid, as appropriate, and the costs and expenses of the Liquidating Trust have been fully paid, shall be available for Distributions in accordance with the Plan.

(d)     Once all Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims and Disputed Secured Claims have been resolved, the Disputed Administrative, Priority Tax, Priority Non-Tax and Secured Claims Reserve shall be dissolved. Once the Disputed General Unsecured Claims have been resolved, the Disputed General Unsecured Claims Reserve shall be dissolved. Once all costs and expenses of the Liquidating Trust have been paid in full in Cash and the Liquidating Trust has been dissolved, the Liquidating Trust Expense Reserve shall be dissolved. To the extent that reserves are established for Disputed Penalty Claims or Disputed Interests, once all Disputed Penalty Claims or Disputed Interests have been resolved, such reserves shall be dissolved.

(e)     If there are any residual Unclaimed Distributions at the time of the dissolution of the Liquidating Trust, such residual Unclaimed Distributions shall be donated to the ABI Endowment Fund, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

7.9     **Distributions upon Allowance of Disputed Claims or Disputed Interests.** The Holder of a Disputed Claim or Disputed Interest that becomes an Allowed Claim or Allowed Interest subsequent to the Effective Date shall receive a Distribution from the applicable Reserve as soon as reasonably practicable following the date on which such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest pursuant to a Final Order or by agreement of the parties in accordance with Article VII of the Plan. Such Distributions shall be made in accordance with the Plan based upon the Distributions that would have been made to such Holder under the Plan if the Disputed Claim or Disputed Interest had been made an Allowed Claim or Allowed Interest on or prior to the Effective Date. No Holder of a Disputed Claim or Disputed Interest shall have any Claim or Interest against the applicable Reserve, the Liquidating Trustee, the Liquidating Trust, the Debtors or the Estates with respect to such Disputed Claim or Disputed Interest until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, and no Holder of a Disputed Claim or Disputed Interest shall have any right to interest, dividends or other Distributions on such Disputed Claim or Disputed Interest except as provided in the Plan.

**7.10    Undeliverable and Unclaimed Distributions.**

**(a)    Holding Undeliverable and Unclaimed Distributions.** If the Distribution to any Holder of an Allowed Claim or Allowed Interest is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, no additional Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then-current address. Nothing contained in this Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim or Allowed Interest.

**(b)    After Distributions Become Deliverable.** The Liquidating Trustee shall make all Distributions that have become deliverable or have been claimed on and after the Distribution Date as soon as reasonably practicable after such Distribution has become deliverable or has been claimed.

**(c)    Failure to Claim Unclaimed/Undeliverable Distributions.** Any Holder of an Allowed Claim or Allowed Interest that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the Distribution Date shall be deemed to have forfeited its right to such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim or Allowed Interest and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claim or Allowed Interest against the Debtors, their Estates, the Liquidating Trust or their property. In such cases, Unclaimed Distributions shall be paid to Holders of Allowed Claims or Allowed Interests on a Pro Rata basis according to the parameters set forth in Article 4 above within the time periods provided in Article 7.8 of this Plan, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

**7.11    Interest on Claims.** Unless otherwise specifically provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**7.12    No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim will receive, in respect of such Claim, Distributions under this Plan in excess of the Allowed amount of such Claim.

**7.13    Means of Cash Payment.** Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Disbursing Agent.

**7.14    Delivery of Distribution.** Except as otherwise set forth in this Plan, Distributions to Holders of Allowed Claims or Allowed Interests shall be made (a) at the addresses set forth on the proofs of Claim or proofs of Interest Filed by such Holders (or at the last known addresses of such Holders if no proof of Claim or proof of Interest is Filed or if the Disbursing Agent has been notified of a change of address), (b) at the addresses set forth in any written notices of

address changes delivered to the Disbursing Agent, or (c) if no proof of Claim or proof of Interest has been Filed and the Disbursing Agent has not received a written notice of a change of address, at the addresses reflected in the Schedules, if any.

**7.15    Record Date for Distributions.** The Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim or Allowed Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims or Allowed Interests that are Holders of such Claims or Interests, or participants therein, as of the close of business on the Distribution Record Date. The Disbursing Agent shall instead be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

**7.16    No Distributions Pending Allowance.** Notwithstanding any other provision of this Plan, no payments or Distributions by the Disbursing Agent shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all Objections to such Disputed Claim or Disputed Interest have been settled or withdrawn by agreement of the parties or have been determined by Final Order, and the Disputed Claim or Disputed Interest, or some portion thereof, has become an Allowed Claim or Allowed Interest; provided however, that the Debtors, with the consent of the Committee, or the Liquidating Trustee, may in their discretion, pay any undisputed portion of a Disputed Claim or Disputed Interest.

**7.17    Withholding and Reporting Requirements.** In connection with this Plan and all Distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements. Each Holder of an Allowed Claim or Allowed Interest shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim or Allowed Interest that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

**7.18    Setoffs.** The Debtors or the Liquidating Trustee, as applicable, may, but shall not be required to, setoff against any Claim or Interest and the payment or other Distribution to be made pursuant to this Plan in respect of such Claim or Interest, claims of any nature whatsoever that a Debtor may have against the Holder of such Claim or Interest; provided, however, neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Disbursing Agent of any such claim that the Disbursing Agent may have against such Holder, unless otherwise agreed to in writing by such Holder and the Debtors or the Liquidating Trustee, as applicable.

**7.19    *De Minimis Distributions*.** Notwithstanding any provision in this Plan to the contrary, no payment of less than twenty-five dollars ($25.00) shall be made on account of any

Allowed Claim. All Distributions not made pursuant to this Article 7.19 shall be treated as Unclaimed Distributions and are subject to Article 7.10 hereof.

**7.20** **Extensions of Time** . The Liquidating Trustee may File a motion to extend any deadlines for the making of Distributions or the establishment of Reserves hereunder prior to the occurrence of any such deadlines, to the extent necessary, which deadlines shall be deemed automatically extended after the Filing of such motion, and pending the entry of an order by the Bankruptcy Court extending any such deadline.

## ARTICLE VIII
## PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS

**8.1** **Claims Objection Deadline; Prosecution of Claims Objections.** Except as otherwise provided for in this Plan, as soon as reasonably practicable after the Effective Date, but in no event later than the Claims Objection Deadline (unless extended, after notice to those Creditors who requested notice in accordance with Bankruptcy Rule 2002, by an Order of the Bankruptcy Court), the Liquidating Trustee shall File Objections to Claims and serve such objections upon the Holders of each of the Claims to which Objections are made. The Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such Objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature, and/or amount thereof. If the Liquidating Trustee agrees with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim in the amount of $100,000 or less, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval. Otherwise, the Liquidating Trustee may only compromise, settle, and/or resolve such Disputed Claim with Bankruptcy Court approval.

**8.2** **Estimation of Claims.** The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any Contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Committee, or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation or a hearing concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any Contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes the maximum allowed amount of such Claim, the Debtors or the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE IX
## EXECUTORY CONTRACTS AND LEASES

**9.1     Executory Contracts and Unexpired Leases Deemed Rejected.**  On the Effective Date, all of the Debtors' Executory Contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent: (a) the Debtors previously have assumed, assumed and assigned or rejected such Executory Contract or unexpired lease, or (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an Executory Contract or unexpired lease on which the Bankruptcy Court has not ruled.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts and unexpired leases pursuant to this Article 9.1 and sections 365(a) and 1123 of the Bankruptcy Code.

**9.2     Bar Date For Rejection Damages.**  If the rejection by the Debtors of an Executory Contract or an unexpired lease results in damages to the other party or parties to such Executory Contract or unexpired lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Claims Agent so as to actually be received on or before the Rejection Bar Date.

## ARTICLE X
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**10.1     Conditions Precedent to the Effective Date.**  Each of the following is a condition precedent to the occurrence of the Effective Date:

**(a)**     the Confirmation Order, in a form and substance reasonably acceptable to the Debtors and the Committee, shall have been entered by the Bankruptcy Court;

**(b)**     all documents, instruments, and agreements provided under, or necessary to implement, this Plan shall have been executed and delivered by the applicable parties and shall be in a form and substance reasonably acceptable to the Debtors and the Committee; and

**(c)**     the Debtors and the Liquidating Trustee shall have executed the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant to Article 6.3 of the Plan and shall be in a form and substance reasonably acceptable to the Debtors and the Committee.

**10.2     Notice of Effective Date.**  On or before five (5) Business Days after the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all Holders of Claims or Interests and, at the option of the Liquidating Trustee, cause to be published in the Wall Street Journal National Edition a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, (c) notice of the Administrative Expense Bar Date, Professional Fee Bar Date and Rejection Bar Date; and (d) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**10.3    Waiver of Conditions Precedent to the Effective Date.** The Debtors, subject to consent of the Committee, which consent shall not be unreasonably withheld, may at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in Article 10.1, whereupon the Effective Date shall occur without further action by any Person, provided, however, that the condition specified in Article 10.1(a) may not be waived. The Plan Proponents reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of this Plan.

**10.4    Effect of Non-Occurrence of Effective Date.** If each of the conditions specified in Article 10.1 have not been satisfied or waived in the manner provided in Article 10.3 herein within thirty (30) calendar days after the Confirmation Date (as such date may be agreed to by the Debtors and the Committee), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, and the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

**ARTICLE XI**
**EFFECTS OF CONFIRMATION**

**11.1    Exculpation and Releases.**

**(a)    Exculpation and Limitation of Liability.    Notwithstanding any other provision of this Plan, the Released Parties shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission relating to, in any way, or arising from (i) these Chapter 11 Cases, (ii) formulating, negotiating, or implementing this Plan (including the Disclosure Statement), any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors; (iv) the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the Consummation of this Plan, or (v) the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. This exculpation shall be in addition to, and not in limitation of, all other releases,**

indemnities, exculpations, and any other applicable law or rules protecting such Released Parties from liability.

(b)    Releases by the Debtors.  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors, on their own behalf and as a representative of their respective Estate, shall, and shall be deemed to, completely and forever release, waive, void, extinguish, and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective assets, property, and Estates or the Chapter 11 Cases, that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties; provided, however, that nothing in this Article 11.1 shall be construed to release any Released Party from willful misconduct or gross negligence as determined by a Final Order.

(c)    Releases by Holders of Claims and Interests.  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action, or liability of any nature whatsoever, or any Interest, shall be deemed to, completely and forever release, waive, void, extinguish, and discharge unconditionally each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors or their respective assets, property and Estates, the Chapter 11 Cases or the Plan or the Disclosure Statement; provided, however, (1) that each Person that has submitted a ballot rejecting the Plan may elect, by checking the appropriate box on its ballot, not to grant the releases set forth in this Article 11.1(c) with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise) and (2) that each Person that holds a Claim or Interest entitled to vote and who abstains from voting to either accept or reject the Plan is not bound by the releases set forth in this Article 11.1(c) with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise); and provided, further, however, that

nothing in this Article 11.1(c) shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order. Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims will be deemed to be bound to the releases in this Article 11.1(c).

(d)    Exceptions to Releases. Notwithstanding the releases set forth in Articles 11.1(a), (b) and (c) herein, the following Claims and Causes of Action are expressly excepted from such releases:

      1.    any and all Claims held by the Debtors and their respective Estates relating to or arising from the Circle System Matters, provided that the Debtors and the Liquidating Trustee shall have no right to pursue, and hereby expressly waive their right to pursue, Gridiron Capital, LLC, Windjammer or their respective current and former officers, directors, shareholders, Affiliates, employees, legal counsel, accountants, other professionals, agents and representatives of any kind, predecessors-in-interest, successors, assigns, for any matters relating to or arising from the Circle System Matters; and

      2.    any and all Non-Trade Avoidance Actions, provided that the Debtors and the Liquidating Trustee are expressly releasing Riddell, Inc., Gridiron Capital, LLC, Windjammer and the Purchaser from any such Non-Trade Avoidance Actions.

(e)    Injunction Related to Exculpation and Releases. Except as provided in the Plan or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, relating to any of the Debtors or any of their respective assets, property and Estates, that is released or enjoined pursuant to this Article XI of the Plan and (ii) all other parties in interest in these Chapter 11 Cases are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities:

      1.    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum;

      2.    enforcing, attaching (including, without limitation, any prejudgment attachment), executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or other order;

3.     creating, perfecting or enforcing, directly or indirectly, in any manner, any lien or encumbrance of any kind;

4.     setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article 11.1 of this Plan; and

5.     commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

**11.2    Injunction.    Except** as expressly contemplated by this Plan or the Confirmation Order, from and after the Effective Date, all Persons or Entities who have held, currently hold or may hold Claims against or Interests in the Debtors or their Estates that arose prior to the Effective Date (including, but not limited to, Governmental Units, and any official, employee or other entity acting in an individual or official capacity on behalf of any Governmental Unit) are permanently enjoined from:

(a)     commencing, conducting or continuing in any manner, directly, or indirectly, any suit, action or other proceeding against the Debtors, the Estates or the Liquidating Trust Protected Parties in any forum (including, without limitation, any judicial, arbitral, administrative or other proceeding);

(b)     enforcing, attaching, executing, collecting or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates or the Liquidating Trust Protected Parties;

(c)     creating, perfecting, or enforcing, directly or indirectly, in any manner, any lien or encumbrance of any kind against the Debtors, the Estates or the Liquidating Trust Protected Parties;

(d)     asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against any obligation due to the Debtors, the Estates or the Liquidating Trust Protected Parties; and

(e)     any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with the provisions of this Plan in respect of the Debtors, the Estates or the Liquidating Trust Protected Parties.

Any Entity injured by any willful violation of such injunction shall recover actual damages, including, but not limited to, costs and attorneys' fees and expenses, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article XI of this Plan shall prohibit the Holder of a Disputed Claim or Disputed Interest from litigating its right to seek to have such a Disputed Claim or Disputed Interest declared an Allowed Claim or Allowed Interest and paid in accordance with the distribution provisions of this Plan or the Liquidating Trust

**Agreement, or enjoin or prohibit the enforcement by the Holder of such Disputed Claim or Disputed Interest of any of the obligations of any Liquidating Trust Protected Party under this Plan.**

**11.3    Term of Bankruptcy Injunction or Stays.**  All injunctions or stays provided for in these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.4    Vesting Provision.**  Any and all Liquidating Trust Assets accruing to the Debtors or assertable as accruing to the Debtors shall remain assets of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall be transferred to and vest in the Liquidating Trust.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidating Trust and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms of this Plan and the Liquidating Trust Agreement, compromise or settle any Liquidating Trust Assets.  From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee may commence, litigate and settle any Causes of Action, Claims or Causes of Action relating to the Liquidating Trust Assets or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Liquidating Trust and Liquidating Trustee after the Effective Date, except as otherwise expressly provided in this Plan and the Liquidating Trust Agreement.  Other than as set forth herein, no other Person may pursue such Liquidating Trust Assets after the Effective Date.  The Liquidating Trustee shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for either the Committee or each Debtor in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Liquidating Trust Asset without the need for Filing any motion for such relief.

## ARTICLE XII
## RETENTION OF JURISDICTION

**12.1    Exclusive Jurisdiction of Bankruptcy Court.**  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not Contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

**(b)** grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

**(c)** hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interest, or Cause of Action;

**(d)** determine and resolve controversies related to the Liquidating Trust;

**(e)** determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

**(f)** ensure that all Distributions to Holders of Allowed Claims or Allowed Interests under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims or Allowed Interests pursuant to the provisions of this Plan;

**(g)** construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and Consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of this Plan in accordance with sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

**(h)** determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the releases and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

**(i)** modify the Plan, the Disclosure Statement, and/or the Confirmation Order before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, as well as any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

**(j)**     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of this Plan or the Confirmation Order;

**(k)**     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

**(l)**     determine any other matters that may arise in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

**(m)**     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**(n)**     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

**(o)**     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

**(p)**     determine and resolve controversies related to the Estates, the Debtors or the Liquidating Trust from and after the Effective Date;

**(q)**     hear and determine any other matter relating to this Plan; and

**(r)**     enter a final decree closing these Chapter 11 Cases.

# ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1    Modification of the Plan.** The Debtors and the Committee may alter, amend, or modify this Plan or any exhibits or schedules hereto under section 1127(a) of the Bankruptcy Code at any time prior to or after the Confirmation Date but prior to the substantial Consummation of this Plan, provided, however, that any such alteration, amendment or modification does not materially and adversely affect the treatment of Holders of Claims or Interests under this Plan. Any Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

**13.2    Revocation, Withdrawal, or Non-Confirmation of the Plan.** The Debtors and the Committee reserve the right to revoke or withdraw this Plan prior to the Confirmation Hearing. If this Plan is revoked or withdrawn prior to the Confirmation Hearing, or if the Plan is not confirmed by the Bankruptcy Court, then:

**(a)**     this Plan shall be null and void in all respects, and

**(b)**     nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors, the Committee or any other Person, or (iii) constitute an admission of any sort by the Debtors, the Committee, or any other Person.

**13.3     Binding Effect.**   Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

**13.4     Subordination Rights.**   The classification and manner of satisfying all Claims and Interests and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Interests in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise.   All subordination rights that a Holder of a Claim or Interest may have with respect to any Distribution to be made under the Plan shall be implemented through the Plan, and all actions by such Holder of a Claim or Interest related to the enforcement of such subordination rights shall be enjoined permanently.   The provisions of any contractual or structural subordination of Claims or Interests shall remain enforceable by the Liquidating Trustee on behalf of the Liquidating Trust after the occurrence of the Effective Date.   Without limitation hereunder, the Liquidating Trustee, on behalf of the Liquidating Trust, may likewise enforce any right of the Debtors or their Estates to equitably or otherwise subordinate Claims under section 510 of the Bankruptcy Code, which rights are deemed transferred to, remain and are preserved in the Liquidating Trust, except as otherwise expressly set forth herein or as expressly provided in a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

**13.5     Severability of Plan Provisions.**   If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, with the consent of the Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.6     Dissolution of the Committee.**   The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to these Chapter 11 Cases, except with respect to, and to the extent of, any applications for Professional Fee Claims or expense reimbursements for members

of such Committee. The Professionals retained by the Committee shall not be entitled to assert any Administrative Expense Claims nor shall they have an Allowed Administrative Expense Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Filed fee application.

**13.7    Exemption from Section 1146.**  Pursuant to section 1146(a) of the Bankruptcy Code, under this Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; (ii) the creation, modification, consolidation or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment or recording of any lease or sublease; or (iv) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, mortgage recording tax, stamp tax or similar government assessment, and the appropriate state or local government official or agent shall be directed by the Bankruptcy Court to forego the collection of any such tax or government assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment.  To the extent that the Liquidating Trustee elects to sell any property prior to or after the Confirmation Date, such sales of property will be exempt from any transfer taxes in accordance with section 1146(c) of the Bankruptcy Code.  All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases shall be deemed to be or have been done in furtherance of this Plan

**13.8    Filing of Additional Documents.**  On or before the Effective Date of this Plan, the Debtors may issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Plan.

**13.9    Insurance.**  Confirmation of this Plan and the occurrence of the Effective Date shall have no effect on insurance policies of the Debtors in which the Debtors are or were insured parties.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to these Chapter 11 Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured Claims.

**13.10    Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**13.11    Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws is applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with this Plan, the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the

laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**13.12 Exhibits and Schedules.** All exhibits and schedules annexed hereto, or Filed on or before the Plan Supplement Filing Date or otherwise are incorporated into and are a part of this Plan as if set forth in full herein. Holders of Claims and Interests may obtain copies of the Filed exhibits and schedules upon written request to the Debtors. Upon their Filing, the exhibits and schedules may be inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours. The documents contained in the exhibits and schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**13.13 Computation of Time.** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply

**13.14 Notices.** Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

(a)　If to the Debtors:

> **GREENBERG TRAURIG, LLP**
> The Nemours Building
> 1007 North Orange Street, Suite 1200
> Wilmington, Delaware 19801
> Attn: Victoria W. Counihan and Sandra G. M. Selzer

> -and-

> **GREENBERG TRAURIG, LLP**
> 77 West Wacker Drive, Suite 3100
> Chicago, Illinois 60601
> Attn: Nancy A. Peterman and Keith J. Shapiro

(b)　If to the Committee:

> **LOWENSTEIN SANDLER PC**
> 65 Livingston Avenue
> Roseland, New Jersey 07068
> Attn: Jeffrey D. Prol

> -and-

> **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
> 222 Delaware Avenue, Suite 1501
> Wilmington, DE 19801
> Attn: Steven K. Kortanek

**(c)** If to the Office of the United States Trustee:

**OFFICE OF THE UNITED STATES TRUSTEE**
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: Mark S. Kenney

**13.15 Reservation of Rights.** The Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors or Committee with respect to this Plan shall not be, and shall not be deemed to be, an admission or waiver of any rights of the Debtors or Committee with respect to the Holders of Claims and Interests.

Dated: March __, 2011
Wilmington, Delaware

**SSI Liquidating, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer

**SH Liquidating, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer

**Mountain View Investment Company of Illinois**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer

**Circle System Group, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer

**Melas, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer

**R.D.H. Enterprises, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer


**Triangle Sports, Inc.**
**Debtor and Debtor-in-Possession**

By:_____
Steve Day
Co-Chief Administrative Officer

**GREENBERG TRAURIG, LLP**
Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
- and -
Keith J. Shapiro
Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Counsel for the Debtors and Debtors-in-
        Possession

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
Jeffrey D. Prol
Vincent A. D'Agostino
Suzanne Iazzetta
65 Livingston Avenue
Roseland, New Jersey 07068
-and-
1251 Avenue of the Americas
New York, NY  10020
- and -
**WOMBLE CARLYLE SANDRIDGE**
**& RICE, PLLC**
Steven K. Kortanek (DE Bar No. 3106)
James M. Lennon (DE Bar No. 4570)
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Counsel for Official Committee of
       Unsecured Creditors

# EXHIBIT B

# Debtors' Corporate Organizational Chart



SH Liquidating, Inc. (DE)

100% — Triangle Sports, Inc. (IL)

100% — Mountain View Investment Company of Illinois (DE)

100% — SSI Liquidating, Inc. (IL)

100% — R.D.H. Enterprises, Inc. (IL)

100% — Melas, Inc. (IL)

100% — Circle System Group, Inc. (PA)

# EXHIBIT C

# Sources & Uses Summary
*($ in 000s)*

| | | |
|---|---:|---|
| Initial Purchase Price | $ 25,425.0 | |
| Plus: 503(b)(9) claims | 800.0 | |
| Plus: critical vendor payments (no impact on working capital) | 4,500.0 | |
| Plus: trade vendor payments (no impact on working capital) | 2,200.0 | |
| Plus: assumption of benefit plans (to be validated) | 175.0 | |
| **Gross proceeds...** | | |
| Less: non-cash consideration | (175.0) | |
| Less: working capital adjustment | (843.0) | |
| **Gross proceeds from 363 sale** | **$ 32,082.0** | |
| Cash paid to DIP lender | [14,723.4] | |
| **Remaining 363 proceeds after settlement of DIP lender** | **$ 17,358.6** | |
| Less: escrowed payments for unsecured parties | | |
| Critical vendors | (5,300.0) | |
| Windjammer | (1,000.0) | |
| Trade vendors | (400.0) | |
| 503(b)(9) | (800.0) | |
| | (7,500.0) | |
| **Remaining proceeds after escrowed payments to unsecured parties** | **$ 9,858.6** | |
| Less: escrowed Management Incentive Plan ("MIP") funds | (1,526.4) | |
| Less: escrowed carve-out for unpaid professional fees | (2,009.2) | |
| Less: settlement payment to Riddell | (1,000.0) | |
| Less: settlement payment to Windjammer | (100.0) | |
| Less: settlement payment to Gridiron | (50.0) | |
| **Remaining proceeds after escrowed carve-out, MIP, & settlement payments** | **$ 5,173.1** | |
| Less: administrative claims | (2,830.6) | see page 2 for detail |
| Less: incremental 503(b)(9) claims | TBD | |
| **Remaining proceeds after escrowed administrative claims** | **$ 2,342.4** | see page 3 for detail |
| Less: wind-down costs | (2,236.2) | |

**Memo:**

| | | |
|---|---:|---|
| Cash recovered by estate for general unsecured creditors | $ 347.0 | see page 3 for detail |

### Cash Summary as of March 15, 2019

| Account Description | Beginning Balance | Activity to Date | Current Balance |
|---|---:|---:|---:|
| Critical trade vendors | $ 5,300.0 | $ (5,256.2) | $ 43.8 |
| Windjammer | 1,000.0 | (1,000.0) | - |
| Trade vendors | 400.0 | - | 400.0 |
| 503(b)(9) claims | 800.0 | (49.8) | 750.2 |
| Management Incentive plan | 1,526.4 | (1,526.4) | - |
| Bankruptcy pro fees (carve-out) | 2,009.2 | (2,009.2) | - |
| General disbursements [1] | 6,323.1 | (4,043.7) | 2,279.3 |
| Cash recovery | - | 144.7 | 144.7 |
| | $ 17,358.6 | $ (13,740.6) | $ 3,618.0 |

[1] General disbursements account to be used for settlement payments, administrative claims, and wind-down expenses

# Administrative Claims Summary

($ in 000s)

| | Actual through 25-Mar | Forecast 1 1-Apr | Forecast 2 8-Apr | Forecast 3 15-Apr | Forecast 4 22-Apr | Total |
|---|---|---|---|---|---|---|
| **Administrative disbursements** | | | | | | |
| Bankruptcy pro fees (excess of carve-out) | 1,322.1 | - | 215.0 | - | - | 1,537.1 |
| 401(k) payment | 184.4 | - | - | - | - | 184.4 |
| Oppenheimer success fee | 446.5 | - | - | - | - | 446.5 |
| Transaction costs | 15.4 | - | - | 196.6 | - | 212.0 |
| Board fees | 71.3 | - | - | - | - | 71.3 |
| Ordinary course pro fees - McGladrey | 64.1 | - | - | 19.5 | - | 83.6 |
| Ordinary course pro fees - Hurst-Rosche | 12.5 | - | - | - | - | 12.5 |
| Ordinary course pro fees - Merrill | 3.5 | - | - | - | - | 3.5 |
| Ordinary course pro fees - Thorp Reed | - | - | - | 40.0 | - | 40.0 |
| Ordinary course pro fees - Davis & White | 3.6 | - | - | - | - | 3.6 |
| Ordinary course pro fees - Brinks Hofer | 4.9 | - | - | - | - | 4.9 |
| Ordinary course pro fees - Kirkland & Ellis | - | - | - | 80.8 | - | 80.8 |
| Claims agent - Logan (Oct-Dec) | 74.4 | - | - | - | - | 74.4 |
| US trustee fees (Oct-Dec) | 37.8 | - | - | - | - | 37.8 |
| Easton lease real estate taxes | - | - | - | 35.8 | - | 35.8 |
| Miscellaneous | 2.4 | - | - | - | - | 2.4 |
| **Total disbursements** | 2,242.9 | - | 215.0 | 372.7 | - | 2,830.6 |
| | | | | | | |
| Net cash flow | (2,242.9) | - | (215.0) | (372.7) | - | (2,830.6) |
| Cumulative net cash flow | (2,242.9) | (2,242.9) | (2,457.9) | (2,830.6) | (2,830.6) | |

# Wind-down Cost Summary
($ in 000s)

| | Actual through 25-Mar | Forecast 1 1-Apr | Forecast 2 8-Apr | Forecast 3 15-Apr | Forecast 4 22-Apr | Total |
|---|---|---|---|---|---|---|
| **Operating disbursements** | | | | | | |
| Officer of the Estate - fixed fee | 36.3 | - | 25.0 | - | 12.5 | 73.8 |
| Consultant - CFO (hourly) | 14.0 | 10.0 | - | - | 10.0 | 34.0 |
| Consultant - Controller (hourly) | 17.2 | 14.0 | - | - | 14.0 | 45.2 |
| Insurance - product liability policy | 137.2 | - | - | - | - | 137.2 |
| Insurance - D&O policy | 67.5 | - | - | - | - | 67.5 |
| Insurance - D&O tail | 27.6 | - | - | - | - | 27.6 |
| Legal fees - Circle litigation | - | 5.0 | 5.0 | - | 3.0 | 13.0 |
| Legal fees - personal injury (Davis & White) | 7.2 | - | 5.0 | - | 3.0 | 15.2 |
| Mediator - Riddell appeal | 12.6 | - | - | - | - | 12.6 |
| Pro fees - tax returns & 401(k) audit | - | 95.0 | - | - | - | 95.0 |
| [1] Easton expenses payments | 91.9 | - | - | - | - | 91.9 |
| [1] Easton expenses reimbursement | (106.4) | - | - | - | - | (106.4) |
| Board fees | 18.7 | 7.5 | - | - | 7.5 | 33.7 |
| Miscellaneous | 5.2 | 3.5 | 3.5 | 3.5 | 3.5 | 19.3 |
| **Total operating disbursements** | **329.1** | **135.0** | **38.5** | **3.5** | **53.5** | **559.7** |
| | | | | | | |
| **Bankruptcy disbursements** | | | | | | |
| Professional fees - Greenberg | 301.5 | 70.7 | 250.0 | - | 500.0 | 1,122.2 |
| Professional fees - Ernst & Young | - | 50.0 | 10.0 | - | 20.0 | 80.0 |
| Professional fees - BDO | - | 6.0 | 3.0 | - | 6.0 | 15.0 |
| Professional fees - Lowenstein / Womble | - | 164.0 | 75.0 | - | 100.0 | 339.0 |
| Claims agent - Logan (Jan-Apr) | 20.2 | 20.0 | 20.0 | - | 20.0 | 80.2 |
| US trustee fees (Jan-Apr) | - | - | 30.0 | - | 10.0 | 40.0 |
| **Total bankruptcy disbursements** | **321.7** | **310.7** | **388.0** | **-** | **656.0** | **1,676.4** |
| | | | | | | |
| **Total disbursements** | **650.8** | **445.8** | **426.5** | **3.5** | **709.5** | **2,236.2** |
| | | | | | | |
| Net cash flow | (650.8) | (445.8) | (426.5) | (3.5) | (709.5) | (2,236.2) |
| Cumulative net cash flow | (650.8) | (1,096.6) | (1,523.1) | (1,526.6) | (2,236.2) | |

**Memo:**

| | Actual through 25-Mar | Forecast 1 1-Apr | Forecast 2 8-Apr | Forecast 3 15-Apr | Forecast 4 22-Apr | Total |
|---|---|---|---|---|---|---|
| Cash recovered by estate [2] | 144.7 | 202.3 | - | - | - | 347.0 |

[1] Easton monthly lease and related property taxes of $53k will be paid by the estate on behalf of Newco due to timing, but has been reimbursed up front by buyer (Kranos). The cash received from Kranos will be held in the general disbursements account until used.

[2] Cash recovered by the estate will be for the benefit of the general unsecured creditor group. Receipts primarily include cash remaining in legacy estate bank accounts, insurance refunds, unused professional fee retainer, and utility deposits.

# EXHIBIT D

## Liquidation Analysis

### Projected Cash Balance as of April 22, 2011

| | | |
|---|---|---:|
| Remaining Sale Proceeds for Trade Creditors | = $ | 106,300 |
| Cash Recovered by Estate for General Unsecured Creditors | = $ | 347,000 |
| Dec. 2010 20% Holdback of Bankruptcy Professional Fees | = $ | 215,000 |
| Jan. and Feb. 2011 20 % Holdback of Bankruptcy Professional Fees | = $ | 186,000 |
| Transaction Costs | = $ | 196,600 |
| Disbursements Scheduled for Week Ending April 22, 2011 | = $ | 708,000 |
| | $ | 1,758,900 |

### Maximum Chapter 7 Trustee Fee

| | | | | | |
|---|---|---|---:|---|---:|
| 25% | of | $ | 5,000 | = $ | 1,250 |
| 10% | of | $ | 45,000 | = $ | 4,500 |
| 5% | of | $ | 950,000 | = $ | 47,500 |
| 3% | of | $ | 758,900 | = $ | 22,767 |
| | | | | $ | 76,017 |