## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SSI LIQUIDATING, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 795, 796, 931 |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

WHEREAS, on September 6, 2010 (the "Joint Debtor Petition Date"), each of Mountain View Investment Company of Illinois, SSI Liquidating, Inc. (f/k/a Schutt Sports, Inc.), Circle System Group, Inc., Melas, Inc., R.D.H. Enterprises, Inc., and Triangle Sports, Inc. (collectively, the "Joint Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

WHEREAS, on September 15, 2010 (together with the Joint Debtor Petition Date, the "Petition Date"), SH Liquidating, Inc. (f/k/a Schutt Holdings, Inc.), a Delaware corporation and the parent company of the Joint Debtors ("SH Liquidating" and, together with the Joint Debtors, the "Debtors"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code;

WHEREAS, the Debtors and the Official Committee of Unsecured Creditors (the "Committee," collectively with the Debtors, the "Plan Proponents") appointed in these cases proposed the *First Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the*

---

[1] The new name for each of the Debtors, some of whose names have changed, along with the former name of each such Debtor and the last four digits of each Debtor's tax identification number, are: SSI Liquidating, Inc. (f/k/a Schutt Sports, Inc.) (0521), SH Liquidating, Inc. (f/k/a Schutt Holdings, Inc.) (0276), Mountain View Investment Company of Illinois (3563), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

*Official Committee of Unsecured Creditors* (as the same may be further amended, supplemented or modified, the "Plan")[2] [Docket No. 796][3] which was subsequently modified on May 9, 2011.

WHEREAS, on March 29, 2011, following a hearing on the adequacy of the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 821] (the "Disclosure Statement"), the Court entered an Order (the "Solicitation Procedures Order") [Docket No. 795], pursuant to which the Court, among other things, (i) approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, (ii) established procedures for the solicitation and tabulation of votes to accept or reject the Plan, (iii) established April 29, 2011, 5:00 p.m. (Eastern Time) as the Voting Deadline; (iv) established April 29, 2011, 4:00 p.m. (Eastern Time) as the deadline by which all objections to confirmation of the Plan must have been filed with the Court and received by certain parties listed in the Solicitation Procedures Order (the "Objection Deadline"); and (v) scheduled a hearing on May 9, 2011, at 2:30 p.m. (Eastern Time) to consider confirmation of the Plan (the "Confirmation Hearing");

WHEREAS, on April 13, 2011, Kathleen M. Logan of Logan & Company, Inc., the Claims and Noticing Agent in these Chapter 11 Cases ("Logan" or the "Claims Agent") executed (i) affidavits of service (which Logan filed with the Court on April 14, 2011 [Docket Nos. 838, 839, 840, 841, 842, 843]) regarding the mailing of the Confirmation Hearing Notice and the Solicitation

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Plan. The rules of interpretation set forth in Article I of the Plan are fully incorporated herein. In addition, in accordance with Article 1.119 of the Plan, any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

[3] On April 22, 2010, the Debtors filed the Plan Supplement [Docket No. 893]. On May 4, 2011, counsel for the Debtors filed an affidavit of service related to the mailing of the Plan Supplement [Docket No. 911].

2

Packages in accordance with the terms of the Solicitation Procedures Order (the "Solicitation Affidavit");[4]

WHEREAS, on May 5, 2011, Logan filed the *Declaration of Kathleen M. Logan and Etty M. Pollack Certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting First Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Voting Declaration") [Docket No. 916];

WHEREAS, on April 7, 2011, the Texas Comptroller filed the *Texas Comptroller's Objection to Confirmation of First Amended Joint Chapter 11 Plan* [Docket No. 815] (the "Texas Comptroller's Objection");

WHEREAS, on March 23, 2011, Jackie Jent, II ("Jent") and Customized Manufacturing Design & Technology Co., Ltd. d/b/a Denology Design, Technology & Manufacturing Solutions ("Denology") filed the *Objection to Debtors' Motion for Entry of Order (A) Approving the Disclosure Statement, (B) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors, (C) Scheduling a Hearing to Consider Confirmation of the Joint Plan of Liquidation, and (D) Establishing Notice and Objection Procedures in Respect Thereof* [Docket No. 761] (the "Denology/Jent Objection");

WHEREAS, on April 29, 2011, Jent filed the *Objection to Plan Confirmation as Relates to Portions of Article 7.7 and the Supplement to the First Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 905] (the "Jent Objection");

---

[4]     On April 20, 2011, Kathleen M. Logan of the Claims Agent executed a supplemental Solicitation Affidavit [Docket No. 880].

3

WHEREAS, the Debtors received informal comments from the counsel for the Internal Revenue Service (the "IRS") (the "IRS Informal Response") and counsel for Alan Abeshaus, Eric Abeshaus, and Mitchell Kurlander (collectively, the "Abeshaus Parties") (the "Abeshaus Informal Response");

WHEREAS, on May 5, 2011, the Debtors filed the *Debtors' Memorandum of Law in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 914] (the "Memorandum");

WHEREAS, on May 5, 2011, the Debtors filed the *Declaration of Steve Day in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Day Declaration") [Docket No. 917];

WHEREAS, the Court held the Confirmation Hearing on May 9, 2011;

WHEREAS, the Court has reviewed the Plan, the Disclosure Statement, the Solicitation Procedures Order, the Solicitation Affidavit, the Day Declaration and all other pleadings, statements and comments submitted to the Court in connection with the Confirmation Hearing;

WHEREAS, the Plan is a separate Plan for each of the Debtors' Estates and the provisions of the Plan, including the definitions and Distributions to Holders of Claims and Interests, shall apply to the respective assets of, Claims against and Interests in, each of the Debtors' separate Estates; and

4

WHEREAS, the Court has (i) considered the statements of counsel at the Confirmation Hearing, (ii) considered all evidence proffered or adduced at the Confirmation Hearing, and (iii) taken judicial notice of the entire record of the Chapter 11 Cases.

NOW, THEREFORE, after due deliberation and good cause appearing therefor, the Court hereby makes and issues the following Confirmation Order:

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW [5]

A.   <u>Jurisdiction and Venue</u>. On the Petition Date, the Debtors commenced the Chapter 11 Cases in good faith by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are (and were as of the Petition Date) qualified to be debtors under section 109 of the Bankruptcy Code. The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(L). The Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. Venue was proper as of the Petition Date and continues to be proper before this Court as of the date hereof pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   <u>Modifications to the Plan</u>. Any modifications to the Plan described or set forth in this Confirmation Order (the "<u>Plan Modifications</u>") constitute technical or non-material changes and do not materially or adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change any previously-cast acceptances or rejections of the Plan.

---

[5]   This Confirmation Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any and all findings of fact herein shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law herein shall constitute conclusions of law even if stated as findings of fact.

5

C.     Judicial Notice.  The Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases, including, without limitation, the Confirmation Hearing.  The resolutions of any formal or informal objections to confirmation of the Plan, as explained on the record at the Confirmation Hearing, are incorporated herein by reference.

D.     Burden of Proof.  The Debtors and the Committee, as the Plan Proponents, have met their burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence as determined herein.

E.     Solicitation and Notice.  To obtain the requisite acceptances of the Plan, on or about April 1, 2011 (the "Solicitation Commencement Date"), the Plan Proponents commenced the solicitation of votes to accept or reject the Plan from the Holders of Claims and Interests in Classes 3, 4, 5, 6 and 7 (the "Voting Classes") who held such Claims or Interests as of March 29, 2011, at 5:00 p.m. (the "Voting Record Date").  To accomplish this, the Plan Proponents caused Logan to transmit to (1) holders of Claims and Interests entitled to vote copies of: (i) the Disclosure Statement together with the Plan and all other exhibits annexed thereto; (ii) the Solicitation Procedures Order, excluding exhibits annexed thereto; (iii) notice of the confirmation hearing (the "Confirmation Hearing Notice"); and (iv) an appropriate Ballot with a return envelope (collectively, the "Voting Packages"); (2) the Office of the United States Trustee, counsel to the Committee, and those parties requesting notice pursuant to Bankruptcy Rule 2002 copies of (i) the Disclosure Statement together with the Plan and all other exhibits annexed thereto; (ii) the Solicitation Procedures Order without Exhibits; and (iii) the Confirmation Hearing Notice but only to the extent such parties did not receive a Solicitation Package (collectively, the "Information Packages"); and

6

(3) holders of Unclassified Claims, Claims and Interests in Non-Voting Classes, and Claims and Interests no otherwise receiving a Voting Package or an Information Package pursuant to the Solicitation Procedures Order copies of (i) the Confirmation Hearing Notice and (ii) the Notice of Non-Voting Status (collectively, the "Non-Voting Packages" and with the Voting Packages and the Information Packages, the "Solicitation Packages"). The Solicitation Packages were transmitted and served as set forth in the Solicitation Affidavit, and such transmittal and service of the Solicitation Packages constitute due and sufficient notice of the Plan, the Confirmation Hearing, and the deadlines for submitting Ballots or filing objections to confirmation of the Plan. Such notice with respect to the Solicitation Packages was adequate and sufficient under the circumstances, was given in compliance with Bankruptcy Rules 2002, 3017 and 3020 and the Solicitation Procedures Order, and no other or further notice shall be required. All parties in interest in the Chapter 11 Cases had a full and fair opportunity to appear and be heard at the Confirmation Hearing.

F.     Good Faith Solicitation.  Votes to accept or reject the Plan were solicited fairly, in good faith, and in compliance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations. Based on the record of the Chapter 11 Cases, the Plan Proponents have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with the solicitation of votes to accept the Plan. Accordingly, the Plan Proponents are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

G.     Acceptance of the Plan by Impaired Classes of Claims.  As evidenced by the Voting Affidavit, an Impaired Class of Claims entitled to vote on the Plan has voted to accept the Plan, without counting the votes of any "insiders," as such term is defined in section 101(31) of the Bankruptcy Code.

7

H.    Propriety of Various Agreements and Documents Relating to the Plan.    In light of all of the circumstances and the record in these Chapter 11 Cases, each transaction contemplated in connection with the Plan, as identified in Article VI of the Plan, or any other document or agreement that is necessary to implement the Plan, is integral to the terms, conditions and settlements set forth in the Plan and is critical to the implementation of the Plan. All contracts, instruments, releases, agreements and documents related to, or necessary to implement, effectuate and consummate the Plan, including each transaction contemplated in Article VI of the Plan, are valid, proper and reasonable under the circumstances and due and sufficient notice thereof has been provided in connection with approval of the Disclosure Statement and confirmation of the Plan.

I.    Releases, Exculpations and Injunctions.    Based upon the facts and circumstances of these Chapter 11 Cases, the releases, exculpations and injunctions set forth in Article XI of the Plan are supported by good and valuable consideration, the adequacy of which is hereby confirmed, are fair, equitable, and reasonable, are supported by the record of these Chapter 11 Cases, and are in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests against the Debtors.

J.    Rejection of Executory Contracts and Unexpired Leases.    The rejection by the Debtors of their remaining Executory Contracts and unexpired leases that were not previously assumed, assumed and assigned or rejected, as provided for in Article IX of the Plan, satisfies the applicable provisions of the Bankruptcy Code, is supported by the Debtors' sound business judgment, and is in the best interests of the Debtors and their Estates.    The rejection of any Executory Contract or unexpired lease pursuant to the Plan shall be legal, valid, and binding as of the Confirmation Date upon the Debtors and all non-Debtor parties to such Executory Contract or unexpired lease.

8

K.     No Regulatory Authority Required.  No registration under any applicable federal or state securities laws to the fullest extent permissible under applicable non-bankruptcy law and under bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy Code, is required to implement the Plan.

L.     Compliance with Requirements of Section 1129 of the Bankruptcy Code. The Plan satisfies all requirements for confirmation under section 1129 of the Bankruptcy Code.

(i)     Section 1129(a)(1) – Compliance with Applicable Provisions of the Bankruptcy Code.  The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code and Bankruptcy Rule 3016.

(ii)    Section 1122 – Classification of Claims and Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests against the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests against the Debtors under the Plan.

(iii)   Section 1123(a) – Mandatory Provisions of the Plan.  The Plan fully complies with each requirement of section 1123(a) of the Bankruptcy Code, as set forth below:

(a)     Section 1123(a)(1).  Article II of the Plan properly designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not required to be designated into Classes.

(b)     Section 1123(a)(2).  In accordance with section 1123(a)(2) of the Bankruptcy Code, Article II of the Plan specifies each Class of Claims or Interests that is

Unimpaired under the Plan. In particular, Article IV of the Plan provides that Classes 1 (Priority Non-Tax Claims) and 2 (Secured Claims) are Unimpaired under the Plan.

(c)     Section 1123(a)(3). In accordance with section 1123(a)(3) of the Bankruptcy Code, Article II of the Plan specifies the treatment of each Class of Claims and each Class of Interests that is Impaired under the Plan. In particular, Article IV of the Plan specifies the treatment of Classes 3 (General Unsecured Claims), 4 (Critical Trade Vendor Claims), 5 (Unsecured Convenience Claims), 6 (Penalty Claims), 7 (Interests) and 8 (Intercompany Interests).

(d)     Section 1123(a)(4). In accordance with section 1123(a)(4) of the Bankruptcy Code, Article II of the Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

(e)     Section 1123(a)(5). In accordance with section 1123(a)(5) of the Bankruptcy Code, Article VI of the Plan provides adequate means for the Plan's implementation. For example, the Plan provides, *inter alia,* for the funding and establishment of the Liquidating Trust and the automatic transfer of the Liquidating Trust Assets into the Liquidating Trust as set forth more fully in Article VI of the Plan. The Liquidating Trustee shall be vested with the right to liquidate the assets and make Distributions to Holders of Allowed Claims and Allowed Interest, as applicable to the Liquidating Trust. Accordingly, the Plan satisfies the requirements set forth in Section 1123(a)(5) of the Bankruptcy Code.

(f)     Section 1123(a)(6). Because the Debtors' corporate entities are deemed dissolved under the Plan and the assets will be transferred to the Liquidating Trust as set forth in the Plan, there are no equity securities being issued under the Plan and no charters being modified or approved as part of the Plan. Therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

DEL 86361665v9 May 9, 2011

(g)     Section 1123(a)(7). The Plan satisfies the requirements set forth in 1123(a)(7) of the Bankruptcy Code. The Liquidating Trustee, Steven D. Sass of Steven D. Sass LLC, is identified in Article 6.3(a) of the Plan. Mr. Sass' fee arrangement and background are included in the Plan Supplement.

(iv)     Section 1123(b) – Discretionary Provisions of the Plan. In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan does not contain any discretionary provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

(v)     Bankruptcy Rule 3016. Identification of the Plan; Conspicuous Injunction. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the entities submitting it as proponents. Other than conduct otherwise enjoined by the Bankruptcy Code, the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the parties subject to such injunction, in accordance with Bankruptcy Rule 3016(c).

(vi)     Section 1129(a)(2) – Compliance by the Plan Proponents with Applicable Provisions of the Bankruptcy Code. The Debtors and the Committee, as the Plan Proponents, have complied with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. The procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted, and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Solicitation Procedures Order, and any and all other applicable rules, laws and regulations. Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures Order, and all other applicable rules, laws and regulations.

Based on the record before the Court, the Plan Proponents and each of their respective current and former officers, directors, employees, members, attorneys, actuaries,

11

financial advisors, accountants, investment bankers, agents, professionals or other representatives have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the Plan.

(vii)     Section 1129(a)(3) – The Plan Proponents Have Proposed the Plan in Good Faith. The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to allow the Debtors to liquidate while maximizing recoveries to their creditors. The Plan is supported by the major constituents in the Chapter 11 Cases and was overwhelmingly accepted by creditors and equityholders. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. Based on the foregoing, the facts and record of these Chapter 11 Cases, the Disclosure Statement and the record of the Confirmation Hearing, the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

(viii)     Section 1129(a)(4) – Court Approval of Certain Administrative Expense Payments. In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, including Professional Fee Claims, has been or will be made by the Debtors other than payments that have been authorized by order of the Bankruptcy Court. Article VII of the Plan provides for the payment of various Administrative Expense Claims,

12

including Professional Fee Claims, which are subject to Bankruptcy Court approval and the standards of the Bankruptcy Code. Accordingly, the provisions of the Plan comply with section 1129(a)(4) of the Bankruptcy Code.

(ix)     Section 1129(a)(5) – Disclosure of Identity of Officers and the Compensation of Insiders. The Plan Proponents have provided the information required under section 1129(a)(5) by identifying the Liquidating Trustee in the Plan, including the Liquidating Trustee's proposed fee arrangement (as set forth in the proposed Liquidating Trust Agreement included in the Plan Supplement) and background information (as included in the Plan Supplement). There is no committee, advisory board or other governing body overseeing the Liquidating Trust. No officer or director of the Debtors will continue after the Effective Date. The Debtors will be deemed dissolved as of the Effective Date in accordance with Article 6.9 of the Plan, and the Debtors' officers and directors will be deemed to have resigned as of the Effective Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

(x)     Section 1129(a)(6) – Approval of Rate Changes. The Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

(xi)     Section 1129(a)(7) – Best Interests of Holders of Claims and Interests. The Plan satisfies the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code. With respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or an Allowed Interest in such Class has either accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date pursuant to chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

13

(xii)    Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Voting Class. As indicated in Article II of the Plan, Classes 1 and 2 are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Each Impaired Class of Claims and Interests entitled to vote to accept or reject the Plan has overwhelmingly voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code, other than Class 6 and Class 8 is receiving no distribution under the Plan and is, therefore, presumed to reject the Plan.

(xiii)    Section 1129(a)(9) – Treatment of Claims Entitled to Priority. The Plan provides for the treatment of Claims entitled to priority pursuant to sections 507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

(xiv)    Section 1129(a)(10) – Acceptance by at Least One Impaired, Non-Insider Class. In accordance with the requirements of section 1129(a)(10) of the Bankruptcy Code and as evidenced by the Voting Affidavit, at least one Impaired Class of Claims under the  Plan has accepted the Plan, excluding the votes of insiders. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

(xv)    Section 1129(a)(11) – Feasibility of the Plan. The Plan adequately provides the means for the Debtors' liquidation. The Plan provides funding for the Liquidating Trust to make the necessary Distributions under the Plan and to liquidate the remaining assets vested in the Liquidating Trust. The Plan further provides a mechanism for the time and method of Distributions. See Plan, Article VII. The Plan is feasible because it: (i) provides the financial wherewithal necessary to implement the Plan; and (ii) offers reasonable assurance that the Plan is workable and has a reasonable likelihood of success. Accordingly, the Plan satisfies the requirements of feasibility under section 1129(a) of the Bankruptcy Code.

DEL 86361665v9 May 9, 2011

(xvi)     <u>Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees</u>.  Article 3.2 of the Plan provides for the payment, on or before the Effective Date, of any fees due pursuant to section 1930 of title 28 of the United States Code or other statutory requirement.  Based upon the Sources and Uses attached as Exhibit A to the Day Declaration, these fees are included in the projected amounts to be paid under the Plan, and there is sufficient Cash to pay such fees.  Therefore, the Plan meets the requirements of section 1129(a)(12) of the Bankruptcy Code.

(xvii)    <u>Section 1129(a)(13) – Treatment of Retiree Benefits</u>.  The Debtors have no obligations to provide any such retiree benefits, and accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

(xviii)   <u>Sections 1129(a)(14)-(16) – Domestic Obligations, Individual Debtor, or Nonprofit Corporation or Trusts</u>.  The Debtors are not (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.  Accordingly, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable to the Plan.

(xix)     <u>Section 1129(b) - The Plan Is Fair And Equitable With Respect To The Impaired Classes That Voted To Reject The Plan</u>.  The Plan is fair and equitable with respect to the Classes of Impaired Claims rejecting the Plan, as required by Section 1129(b)(1) of the Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the Plan Proponents' failure to satisfy section 1129(a)(8) of the Bankruptcy Code.  The Plan satisfies the "fair and equitable" requirement notwithstanding that Holders of Claims in Impaired Class 6 are not receiving payment in full under the Plan and that Class 8 is deemed to reject the Plan because no Class that is junior to these Classes will receive any property on account of Claims or Interests in such Class.  With respect to Class 6, this Class consists of Penalty Claims that are subordinate to all other general unsecured creditors.  There are no Classes junior to Class 6 that will receive Distributions before all Allowed Class 6 Claims are paid in full.  With respect to Holders of Interests in Class 8, there are no junior Classes.

15

Additionally, creditors in Classes senior to Classes 6 and 8 will not receive more than 100% of the value of their allowed Claims. Accordingly, the Plan satisfies the requirements of sections 1129(b)(2)(B) and 1129(b)(2)(C) for the Impaired Classes that either voted to reject the Plan or were deemed to reject the Plan and, therefore, is fair and equitable with respect to those Classes.

(xx)    Section 1129(b) - The Plan Does Not Discriminate Unfairly With Respect to the Impaired Classes That Have Rejected the Plan. The Plan does not discriminate with respect to the Classes of Impaired Claims rejecting the Plan, as required by Section 1129(b)(1) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Plan Proponents' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. The Debtors have separately classified Class 6 Penalty Claims from all other general unsecured Claims, namely Class 3 General Unsecured Claims, Class 4 Critical Trade Vendor Claims and Class 5 Unsecured Convenience Claims, all of which are entitled to be paid before Class 6 Penalty Claims. Once all Allowed Claims that are senior to Class 6 Penalty Claims are paid in full or as provided for under the Plan (as to Unsecured Convenience Claims), the Holders of Allowed Class 6 Claims will be entitled to receive a Distribution under the Plan and in accordance with the priorities established under the Bankruptcy Code and applicable caselaw. The Debtors have a legitimate business reason to treat Holders of Class 8 Interests differently from Class 7 Interests because Class 8 Interests are asserted by one Debtor against another Debtor. Therefore, it is only fair that the non-Debtor interest holders of the Estates be paid the maximum available Distribution rather than being required to share in Distributions with a Debtor. Moreover, given that Holders of Claims in Classes 3 through 6 likely will not be paid in full under the Plan, Holders of Class 8 Interests - the most junior Class under the Plan - is not entitled to a Distribution under the Plan. Therefore, the Plan does not unfairly discriminate with respect to the Impaired Classes, and the cram down test of section 1129(b) is satisfied.

16

*DEL 86361665v9 May 9, 2011*

(xxi)     Section 1129(d) – Principal Purpose of the Plan.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (the "Securities Act"), and no party in interest has filed an objection alleging otherwise. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## II.     ORDER

NOW THEREFORE, BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.     Order.  The Plan, including the Plan Supplement and any other documents and agreements necessary to implement the Plan are approved and confirmed under section 1129 of the Bankruptcy Code in all respects.

2.     Record Closed.  The record of the Confirmation Hearing is closed.

3.     Distribution Record Date.  The Distribution Record Date shall be the date of entry of this Confirmation Order.

4.     Objections.  To the extent that any objections to confirmation of the Plan have not been withdrawn, waived or settled prior to entry of this Confirmation Order or otherwise resolved as stated on the record at the Confirmation Hearing, they are hereby overruled. Specifically, the objections filed by Chi-Am Global Manufacturing Solutions Company Limited d/b/a Manufacturing Solutions Co., Ltd. d/b/a Chiam Global Manufacturing Solutions d/b/a Chi-Am (collectively, "Chi-Am") and Zhuhai Putuo Commerce and Trading Company Limited d/b/a Zhuhai Putuo Com  Trading Co., Ltd. d/b/a Zhuhai Putuo Trading (collectively, "Zhuhai") [Docket Nos. 896 and 897] are expressly overruled.

5.     Confirmation.  The Plan (a copy of which is attached hereto as **Exhibit A**), is hereby approved and confirmed in all respects pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into this Confirmation Order.  The terms of the

17

Plan shall be effective and binding as of the Effective Date. Notwithstanding the foregoing, if there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

6. **Plan Modifications.** Any modifications to the Plan, as set forth in this Order or the Plan, attached hereto as **Exhibit A**, (i) do not materially or adversely change the treatment of any Holders of Claims or Interests under the Plan, (ii) do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy Code, (iii) do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan, and (iv) are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.

7. **Plan Classification Controlling.** The classification of Claims and Interests for purposes of Distributions under the Plan shall be governed solely by the terms of the Plan. The classifications included in the Ballots tendered to or returned by the Holders of Claims or Interests for purposes of voting on the Plan (a) were included in the Ballots solely for purposes of voting on the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for Distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classifications of such Claims or Interests under the Plan for Distribution purposes; and (d) shall not be binding on the Debtors under any circumstances.

8. **Solicitation of the Plan and Exemption from Securities Laws.** The Plan Proponents and their respective representatives and agents have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable

18

provisions of the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the Plan and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the Distributions made pursuant to the Plan. Specifically, pursuant to section 1125(e) of the Bankruptcy Code, none of the parties listed above that participated in (i) the transmittal of Solicitation Packages (including transmittal of the Plan and the Disclosure Statement), (ii) the transmittal of the non-voting materials, or (iii) the solicitation of votes to accept or reject the Plan shall be liable, on account of such actions or such participation, for any violation of any applicable law, rule or regulation governing the solicitation of votes to accept or reject the Plan.

9.    Authorization and Direction to Act. Pursuant to section 1142(b) of the Bankruptcy Code and section 303 of the General Corporation Law of the State of Delaware, no action of the stockholders, creditors, managers or directors of the Debtors shall be required to authorize the Debtors (i) to effectuate and carry out the Plan or any order of this Court relating thereto, (ii) consummate the transactions contemplated by the Plan, the Disclosure Statement or any order of this Court, or (iii) take any other action contemplated by the Plan, the Disclosure Statement, or any order of this Court as may be necessary or appropriate to implement the Plan, and all such actions are hereby authorized, approved, and to the extent taken prior to the Effective Date, ratified in all respects as if they had been authorized or approved by the unanimous actions of the directors and stockholders of the Debtors. This Confirmation Order shall constitute the approval of the Plan and the transactions contemplated thereby.

10.    Approval of Documents and General Authorization. All documents and agreements necessary to implement the Plan, including, without limitation, the Liquidating Trust

19

Agreement, which are incorporated into and are a part of the Plan, are in the best interests of the Debtors, the Estates and the Holders of Claims and Interests, have been negotiated in good faith and at arm's length and are approved. The Debtors are authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the transactions contemplated by and the terms and conditions of the Plan on and after entry of this Confirmation Order, in each case without the need for any further authorizations by any boards of directors or others, and without the need for any other actions or approvals that might be required under any limited liability company agreement, articles of incorporation, bylaws or similar governance document for any Debtor. The Debtors and their respective directors, officers, members, agents, attorneys and any other authorized representatives are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the Liquidating Trust Agreement, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan and the transactions contemplated thereby in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan or the Plan Supplement, without further order of the Court or any other authorization other than this Confirmation Order, and any and all such actions taken by one or more Debtors shall be binding on every Debtor, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. Holders of Claims or Interests in the Debtors are authorized and directed to take or cause to be taken, on or prior to the Effective Date, all actions that are necessary to implement effectively the provisions of the Plan.

20

11. <u>Cancellation of Liens</u>. Except as otherwise provided in the Plan, on the Effective Date, in consideration for the Distributions to be made on the Effective Date pursuant to the Plan, (i) all Liens, charges, encumbrances and rights related to any Claim or Interest, shall be terminated, null and void and of no effect, and (ii) any Lien shall be deemed released and the Holder of such Lien shall be authorized and directed to release any collateral or other property of the Debtors (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors.

12. <u>Executory Contracts and Unexpired Leases</u>. As set forth in Article 9.1 of the Plan, on the Effective Date, all of the Debtors' Executory Contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except to the extent: (a) the Debtors previously have assumed, assumed and assigned or rejected such Executory Contract or unexpired lease, or (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an Executory Contract or unexpired lease on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts and unexpired leases pursuant to Article 9.1 of the Plan and sections 365(a) and 1123 of the Bankruptcy Code. If the rejection by the Debtors of an Executory Contract or an unexpired lease results in damages to the other party or parties to such Executory Contract or unexpired lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Claims Agent so as to actually be received on or before the Rejection Bar Date.

*DEL 86361665v9 May 9, 2011*

13.    <u>Distributions and Claims Reconciliation</u>.  The provisions of Article VII of the Plan regarding the Distributions under the Plan and the reconciliation of Disputed Claims and Disputed Interests are hereby approved in all respects.  From and after the Effective Date, the Liquidating Trustee shall have sole responsibility and authority for disputing, objecting to, compromising and settling, or otherwise resolving and making Distributions (if any) with respect to all Claims or Interests.

14.    <u>Binding Effect of the Plan</u>.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder of a Claim or Interest has voted to accept the Plan.

15.    <u>Exculpation</u>.  Pursuant to the Plan and this Confirmation Order, and to the fullest extent permitted under section 1125(e) of the Bankruptcy Code, the Released Parties shall not have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission relating to, in any way, or arising from (i) these Chapter 11 Cases, (ii) formulating, negotiating, or implementing the Plan (including the Disclosure Statement), any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtors; (iv) the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or (v) the administration of the Plan or the property to be

22

distributed under the Plan, except for their gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Released Parties from liability.

16. <u>Injunction</u>. Except as expressly contemplated by the Plan or this Confirmation Order, from and after the Effective Date, all Persons or Entities who have held, currently hold or may hold Claims against or Interests in the Debtors or their Estates that arose prior to the Effective Date (including, but not limited to, Governmental Units, and any official, employee or other entity acting in an individual or official capacity on behalf of any Governmental Unit) are permanently enjoined from:

(a) commencing, conducting or continuing in any manner, directly, or indirectly, any suit, action or other proceeding against the Debtors, the Estates or the Liquidating Trust Protected Parties in any forum (including, without limitation, any judicial, arbitral, administrative or other proceeding);

(b) enforcing, attaching, executing, collecting or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against the Debtors, the Estates or the Liquidating Trust Protected Parties;

(c) creating, perfecting, or enforcing, directly or indirectly, in any manner, any lien or encumbrance of any kind against the Debtors, the Estates or the Liquidating Trust Protected Parties;

(d) asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against any obligation due to the Debtors, the Estates or the Liquidating Trust Protected Parties; and

23

(e)    any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with the provisions of the Plan in respect of the Debtors, the Estates or the Liquidating Trust Protected Parties.

Any Entity injured by any willful violation of such injunction shall recover actual damages, including, but not limited to, costs and attorneys' fees and expenses, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in Article XI of the Plan shall prohibit the Holder of a Disputed Claim or Disputed Interest from litigating its right to seek to have such a Disputed Claim or Disputed Interest declared an Allowed Claim or Allowed Interest and paid in accordance with the Distribution provisions of the Plan or the Liquidating Trust Agreement, or enjoin or prohibit the enforcement by the Holder of such Disputed Claim or Disputed Interest of any of the obligations of any Liquidating Trust Protected Party under the Plan.

17.    <u>Releases by Debtors</u>.  Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors, on their own behalf and as a representative of their respective Estate, shall, and shall be deemed to, completely and forever release, waive, void, extinguish, and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective assets, property, and Estates or the Chapter 11 Cases, that may be asserted

24

by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties; provided, however, that nothing in this Paragraph of the Confirmation Order or Article 11.1 of the Plan shall be construed to release any Released Party from willful misconduct or gross negligence as determined by a Final Order.

18. <u>Releases by Holders of Claims or Interests</u>. Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action, or liability of any nature whatsoever, or any Interest, shall be deemed to, completely and forever release, waive, void, extinguish, and discharge unconditionally each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors or their respective assets, property and Estates, the Chapter 11 Cases or the Plan or the Disclosure Statement; provided, however, (1) that each Person that has submitted a ballot rejecting the Plan that has elected, by checking the appropriate box on its ballot, not to grant the releases set forth in Article 11.1(c) of the Plan with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise) and (2) that each Person that holds a Claim or Interest entitled to vote and who has abstained from voting to either accept or reject the Plan is not bound by the releases set forth in this Paragraph of the Confirmation Order or

25

Article 11.1(c) of the Plan with respect to the Released Parties and their respective successors and assigns (whether by operation of law or otherwise); and provided, further, however, that nothing in this Paragraph of the Confirmation Order or Article 11.1(c) of the Plan shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order. Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims will be deemed to be bound to the releases in this Paragraph of the Confirmation Order or Article 11.1(c) of the Plan.

19.     <u>Exceptions to Releases</u>.  Notwithstanding the releases set forth in Paragraphs 15, 17 and 18 of this Confirmation Order and Articles 11.1(a), (b) and (c) of the Plan, the following Claims and Causes of Action are expressly excepted from such releases:

(a)     any and all Claims held by the Debtors and their respective Estates relating to or arising from the Circle System Matters, provided that the Debtors and the Liquidating Trustee shall have no right to pursue, and hereby expressly waive their right to pursue, Gridiron Capital, LLC, Windjammer or their respective current and former officers, directors, shareholders, Affiliates, employees, legal counsel, accountants, other professionals, agents and representatives of any kind, predecessors-in-interest, successors, assigns, for any matters relating to or arising from the Circle System Matters; and

(b)     any and all Non-Trade Avoidance Actions, provided that the Debtors and the Liquidating Trustee are expressly releasing Riddell, Inc., Gridiron Capital, LLC, Windjammer and the Purchaser from any such Non-Trade Avoidance Actions.

20.     <u>Injunction Related to Exculpation and Releases</u>.  Except as provided in the Plan or this Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, relating to any of the Debtors or any of their respective

26

assets, property and Estates, that is released or enjoined pursuant to Paragraphs 15, 17 and 20 of this Confirmation Order and Article XI of the Plan and (ii) all other parties in interest in these Chapter 11 Cases are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities:

(a)     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum;

(b)     enforcing, attaching (including, without limitation, any prejudgment attachment), executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or other order;

(c)     creating, perfecting or enforcing, directly or indirectly, in any manner, any lien or encumbrance of any kind;

(d)     setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article 11.1 of the Plan; and

(e)     commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order.

21.     <u>Governmental Approvals</u>.  Each federal, state, commonwealth, local, foreign or other Governmental Unit is hereby directed and authorized to accept any and all documents, mortgages, deeds of trust, security filings, financing statements and instruments necessary or

27

appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any Governmental Unit with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

22.     Term of Bankruptcy Injunction or Stays. All injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

23.     Dissolution of the Committee. The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to these Chapter 11 Cases, except with respect to, and to the extent of, any applications for Professional Fee Claims or expense reimbursements for members of such Committee. The Professionals retained by the Committee shall not be entitled to assert any Administrative Expense Claims nor shall they have an Allowed Administrative Expense Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Filed fee application.

24.     Dissolution of Debtors and Resignation of Debtors' Officers and Directors. The Debtors shall be deemed dissolved as of the Effective Date in accordance with Article 6.9 of the Plan, and the Debtors' officers and directors shall be deemed to have resigned as of the Effective Date.

25.     Appointment of Liquidating Trustee. Upon the Effective Date, Steven D. Sass of Steven D. Sass LLC shall be deemed appointed as the Liquidating Trustee.

26.     Bar Date for Certain Administrative Expense Claims. Holders of Administrative Expense Claims, other than 503(b)(9) Claims and Professional Fee Claims, shall file

28

with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, **so as to actually be received on or before the Administrative Expense Bar Date**. Any such Claim not filed by the Administrative Expense Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Administrative Expense Bar Date and shall constitute notice of such Bar Date. The Liquidating Trustee shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Expense Claims.

27. <u>Professional Fee Claims</u>. Professional Fee Claims are Administrative Expense Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

28. <u>Payment of Statutory Fees</u>. All fees payable on or before the Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. From and after the Effective Date, the Liquidating Trust shall be liable and shall pay the fees assessed against the Debtors' Estates until such time as a particular Debtor's Chapter 11 Case is closed, dismissed or converted.

*DEL 86361665v9 May 9, 2011*

29.     No Res Judicata Effect. The entry of this Confirmation Order shall not have any res judicata or other preclusive effect with respect to any Claims or Causes of Action that are not specifically and expressly released by the terms of the Plan, this Confirmation Order or another Final Order of the Bankruptcy Court entered prior to the Confirmation Hearing, and entry of this Confirmation Order shall not be deemed a bar to asserting such Causes of Action.

30.     Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not Contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interest, or Cause of Action;

30

(d)      determine and resolve controversies related to the Liquidating Trust;

(e)      determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f)      ensure that all Distributions to Holders of Allowed Claims or Allowed Interests under the Plan and the performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims or Allowed Interests pursuant to the provisions of the Plan;

(g)      construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and Consummation of the Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and this Confirmation Order, for the maintenance of the integrity of the Plan in accordance with sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(h)      determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Plan (and all exhibits and schedules to the Plan) or this Confirmation Order, including the releases and injunction provisions set forth in and contemplated by the Plan or this Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(i)      modify the Plan, the Disclosure Statement, and/or this Confirmation Order before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, as well as any contract, instrument, release, or other agreement or document created in connection with the Plan,

31

the Disclosure Statement or this Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, this Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or this Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(j)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of the Plan or this Confirmation Order;

(k)     enter and implement such orders as are necessary or appropriate if this Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)     determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, this Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or this Confirmation Order;

(m)     determine such other matters and for such other purposes as may be provided in this Confirmation Order;

(n)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with these Chapter 11 Cases;

(p)     determine and resolve controversies related to the Estates, the Debtors or the Liquidating Trust from and after the Effective Date;

(q)     hear and determine any other matter relating to the Plan; and

32

(r)     enter a final decree closing these Chapter 11 Cases.

31.     <u>Reference to and Validity and Enforceability of Plan Provisions</u>. The failure to reference any particular provision of the Plan in this Confirmation Order shall have no effect on the binding effect, enforceability or legality of such provisions and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan. Each term and provision of the Plan is valid and enforceable pursuant to its terms and is specifically approved pursuant to this Confirmation Order even if not referenced herein.

32.     <u>Notice of Entry of this Confirmation Order</u>. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), no later than five (5) Business Days after the entry of this Confirmation Order, the Debtors shall cause a notice of the entry of this Confirmation Order, substantially in the form of **Exhibit B** hereto, to be served on all Holders of Claims or Interests and any other persons on whom the Confirmation Hearing Notice was served. Such actual notice of entry of the Confirmation Order shall have the effect of an order of the Court and shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), and no other or further notice of entry of this Confirmation Order need be given.

33.     <u>Reversal or Vacatur</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Plan Proponents' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or

33

vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

34. <u>Authorization to Consummate the Plan</u>. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. The 14-day stay of this Confirmation Order under Bankruptcy Rule 3020(e) is hereby waived. The Plan Proponents are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to occurrence of the Effective Date as set forth in Article 10.1 of the Plan.

**Resolutions to Objections and Responses**

35. <u>Resolution of IRS Informal Response</u>. Notwithstanding any provision to the contrary in the Plan or this Confirmation Order, nothing shall: (i) affect the ability of the IRS to pursue any non-Debtor to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors; (ii) to the extent the IRS holds setoff or recoupment rights under applicable law, affect the rights of the IRS to assert setoff and recoupment rights, and such rights are expressly preserved; or (iii) require the IRS to file an administrative expense request to the extent the IRS is exempt from doing so pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

36. <u>Resolution of Abeshaus Informal Response</u>. Notwithstanding anything to the contrary contained in the Plan, the provision contained in Article 8.2 of the Plan that the amount of any Claim estimated by the Bankruptcy Court shall constitute the maximum allowed amount of such Claim shall not apply to the Claims of the Abeshaus Parties. Notwithstanding anything to the contrary contained in the Plan, the provisions of Article 11.2(d) of the Plan shall not affect or diminish the ability of the Abeshaus Parties to assert any and all setoff, recoupment or similar rights in connection with the Circle System Matters or their Claims against the Estates.

34

37.    <u>Resolution of Texas Comptroller's Objection</u>.    Notwithstanding any provision to the contrary in the Plan or this Confirmation Order, nothing shall to the extent the Texas Comptroller holds setoff or recoupment rights under applicable law, affect the rights of the Texas Comptroller to assert setoff and recoupment rights, and such rights are expressly preserved. Nothing in the Plan shall affect any right of a creditor holding a Claim for payment of taxes to seek penalties or interest to the extent that such Claim qualifies as an administrative expense claim. The rights of the Debtors or any other party in interest to object to such Claims are also preserved.

38.    <u>Resolution of Jent Objection</u>.

(a)    Chi-Am shall be granted an Allowed General Unsecured Claim in the amount of $100,108 against SSI Liquidating, which Allowed General Unsecured Claim shall be deemed a Trade Claim.    Zhuhai shall be granted an Allowed General Unsecured Claim in the amount of $207,392 against SSI Liquidating, which Allowed General Unsecured Claim shall be deemed a Trade Claim. The Claims Agent is hereby directed to update the official claims register for these Cases to reflect the Allowed General Unsecured Claim in favor of Chi-Am against SSI Liquidating in the amount of $100,108 and the Allowed General Unsecured Claim in favor of Zhuhai against SSI Liquidating in the amount of $207,392.

(b)    Jent shall be granted an Allowed General Unsecured Claim in the amount of $550,000 against SSI Liquidating (the "<u>Allowed Jent Claim</u>").  Any and all proofs of Claim filed by Jent, on his own behalf or in connection with the Claims of Chi-Am or Zhuhai, shall otherwise be Disallowed.   The Claims Agent is hereby directed to update the official claims register for these Cases to reflect an Allowed General Unsecured Claim in favor of Jent against SSI Liquidating in the amount of $550,000 and to remove any other proofs of Claim filed by Jent, on his own behalf or in connection with the Claims of Chi-Am or Zhuhai, from the official claims register for these Cases.

*DEL 86361665v9 May 9, 2011*

(c)     Jent shall be bound to the releases, exculpations and related injunctions contained in Paragraphs 15, 16, 17, 18 and 20 of this Confirmation Order and Articles 11.1(a), (b), (c) and (e) and 11.2 of the Plan.

(d)     Notwithstanding any provision to the contrary in the Plan or this Confirmation Order, to the extent Jent holds setoff, recoupment or similar rights under applicable law with respect to Allowed Jent Claim, nothing shall affect the rights of Jent to assert such setoff, recoupment or similar rights and such rights are expressly preserved.

Dated:     Wilmington, Delaware
           May 10, 2011

                              _____
                              HONORABLE KEVIN J. CAREY
                              CHIEF, UNITED STATES BANKRUPTCY JUDGE

DEL 86361665v9 May 9, 2011