# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SSI LIQUIDATING, INC., *et al.*,[1] | Case No. 10-12795 (KJC) |
| Debtors. | (Jointly Administered) |

---

## MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

### MAY 9, 2011

**GREENBERG TRAURIG, LLP**
Keith J. Shapiro
Nancy A. Peterman
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
-and-
Victoria W. Counihan (DE Bar No. 3488)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen
Jeffrey D. Prol
Vincent A. D'Agostino
Suzanne Iazzetta
65 Livingston Avenue
Roseland, New Jersey 07068
-and-
1251 Avenue of the Americas
New York, NY 10020

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
Steven K. Kortanek (DE Bar No. 3106)
James M. Lennon (DE Bar No. 4570)
222 Delaware Avenue, Ste. 1501
Wilmington, Delaware 19801

**COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

[1] The new name for each of the Debtors, some of whose names have changed, along with the former name of each such Debtor and the last four digits of each Debtor's tax identification number, are: SSI Liquidating, Inc. (f/k/a Schutt Sports, Inc.) (0521), SH Liquidating, Inc. (f/k/a Schutt Holdings, Inc.) (0276), Mountain View Investment Company of Illinois (3563), Circle System Group, Inc. (7711), Melas, Inc. (9761), R.D.H. Enterprises, Inc. (2752), and Triangle Sports, Inc. (6936).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ...................................... 1
    Defined Terms ........................................................................................................ 1
    Rules of Interpretation ............................................................................................ 13

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ........................................... 14
    2.1     Classification ......................................................................................... 14
    2.2     Unimpaired Classes of Claims ............................................................. 15
    2.3     Impaired Classes of Claims .................................................................. 15
    2.4     Impaired Classes of Interests ............................................................... 15

ARTICLE III TREATMENT OF UNCLASSIFIED CLAIMS ................................................... 16
    3.1     Administrative Expense Claims ............................................................ 16
    3.2     U.S. Trustee Fees .................................................................................. 16
    3.3     Priority Tax Claims ............................................................................... 17

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............................ 17
    4.1     Class 1: Priority Non-Tax Claims ........................................................ 17
    4.2     Class 2: Secured Claims ....................................................................... 17
    4.3     Class 3: General Unsecured Claims ...................................................... 17
    4.4     Class 4:  Critical Trade Vendor Claims ................................................ 17
    4.5     Class 5: Unsecured Convenience Claims ............................................. 18
    4.6     Class 6: Penalty Claims ........................................................................ 18
    4.7     Class 7: Interests .................................................................................. 18
    4.8     Class 8:  Intercompany Interests .......................................................... 18
    4.9     Reservation of Rights Regarding Claims and Interests ........................ 18

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN ............................................. 19
    5.1     Classes Entitled to Vote ........................................................................ 19
    5.2     Acceptance by Impaired Classes of Claims or Interests ...................... 19
    5.3     Presumed Acceptance by Unimpaired Classes .................................... 19
    5.4     Presumed Rejections by Impaired Classes ........................................... 19
    5.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .... 19
    5.6     Controversy Concerning Impairment .................................................... 19
    5.7     Elimination of Vacant Classes .............................................................. 19
    5.8     Removal of Debtors .............................................................................. 20

ARTICLE VI MEANS OF IMPLEMENTING THE PLAN ..................................................... 20
    6.1     Funding of Plan ..................................................................................... 20
    6.3     Liquidating Trust .................................................................................. 20
    6.4     Cancellation of Instruments and Stock ................................................. 23
    6.5     Operating Reports ................................................................................. 24
    6.6     Post-Confirmation Professional Fees and Expenses ............................ 24

| 6.7 | Disposition of Books and Records | 24 |
| 6.8 | Corporate Action | 24 |
| 6.9 | Dissolution of Debtors | 24 |

ARTICLE VII PROVISIONS GOVERNING RESERVES AND DISTRIBUTIONS .............. 25
| 7.1 | Establishment of Reserves | 25 |
| 7.2 | Funding of Reserves | 25 |
| 7.3 | Disbursing Agent | 26 |
| 7.4 | Distributions by Liquidating Trustee | 26 |
| 7.5 | Distributions on Account of the Allowed Windjammer Subordinated Note Claim | 26 |
| 7.6 | Distributions on Account of Allowed Critical Trade Vendor Claims | 27 |
| 7.7 | Distributions on Account of Allowed Claims of (i) ZUHUAI PUTUO COMMERCE AND TRADING COMPANY LIMITED d/b/a ZHUHAI PUTUO COM TRADING CO., LTD. d/b/a ZHUHAI PUTUO TRADING and (ii) CHI-AM GLOBAL MANUFACTURING SOLUTIONS COMPANY LIMITED d/b/a MANUFACTURING SOLUTIONS CO., LTD. d/b/a CHIAM GLOBAL MANUFACTURING SOLUTIONS d/b/a CHI-AM | 27 |
| 7.8 | Timing of Distributions | 27 |
| 7.9 | Distributions upon Allowance of Disputed Claims or Disputed Interests | 28 |
| 7.10 | Undeliverable and Unclaimed Distributions | 29 |
| 7.11 | Interest on Claims | 29 |
| 7.12 | No Distribution in Excess of Allowed Amount of Claim | 29 |
| 7.13 | Means of Cash Payment | 29 |
| 7.14 | Delivery of Distribution | 29 |
| 7.15 | Record Date for Distributions | 30 |
| 7.16 | No Distributions Pending Allowance | 30 |
| 7.17 | Withholding and Reporting Requirements | 30 |
| 7.18 | Setoffs | 30 |
| 7.19 | *De Minimis Distributions* | 30 |
| 7.20 | Extensions of Time | 31 |

ARTICLE VIII PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS ............ 31
| 8.1 | Claims Objection Deadline; Prosecution of Claims Objections | 31 |
| 8.2 | Estimation of Claims | 31 |

ARTICLE IX EXECUTORY CONTRACTS AND LEASES ............ 32
| 9.1 | Executory Contracts and Unexpired Leases Deemed Rejected | 32 |
| 9.2 | Bar Date For Rejection Damages | 32 |

ARTICLE X CONFIRMATION AND CONSUMMATION OF THE PLAN ............ 32
| 10.1 | Conditions Precedent to the Effective Date | 32 |
| 10.2 | Notice of Effective Date | 32 |
| 10.3 | Waiver of Conditions Precedent to the Effective Date | 33 |
| 10.4 | Effect of Non-Occurrence of Effective Date | 33 |

ARTICLE XI EFFECTS OF CONFIRMATION ........................................................................ 33
    11.1    Exculpation and Releases. ............................................................................... 33
    11.2    Injunction ....................................................................................................... 36
    11.3    Term of Bankruptcy Injunction or Stays ....................................................... 37
    11.4    Vesting Provision........................................................................................... 37

ARTICLE XII RETENTION OF JURISDICTION ..................................................................... 37
    12.1    Exclusive Jurisdiction of Bankruptcy Court .................................................. 37

ARTICLE XIII MISCELLANEOUS PROVISIONS.................................................................... 39
    13.1    Modification of the Plan ................................................................................. 39
    13.2    Revocation, Withdrawal, or Non-Confirmation of the Plan ............................ 39
    13.3    Binding Effect................................................................................................ 40
    13.4    Subordination Rights ..................................................................................... 40
    13.5    Severability of Plan Provisions...................................................................... 40
    13.6    Dissolution of the Committee ........................................................................ 40
    13.7    Exemption from Section 1146 ....................................................................... 41
    13.8    Filing of Additional Documents .................................................................... 41
    13.9    Insurance........................................................................................................ 41
    13.10  Successors and Assigns................................................................................... 41
    13.11  Governing Law .............................................................................................. 41
    13.12  Exhibits and Schedules .................................................................................. 42
    13.13  Computation of Time...................................................................................... 42
    13.14  Notices .......................................................................................................... 42
    13.15  Reservation of Rights..................................................................................... 43

# INTRODUCTION

SSI Liquidating, Inc. (f/k/a Schutt Sports, Inc.), SH Liquidating, Inc. (f/k/a Schutt Holdings, Inc.), Mountain View Investment Company of Illinois, Circle System Group, Inc., Melas, Inc., R.D.H. Enterprises, Inc., and Triangle Sports, Inc., the debtors and debtors in possession in these Chapter 11 Cases, and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases hereby jointly propose the following Plan for the liquidation of the Debtors' remaining assets and for the resolution of all outstanding Claims against and Interests in the Debtors.

For a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, summary and analysis of this Plan, and certain other related matters, reference is hereby made to the Disclosure Statement that is distributed herewith. In the event of any inconsistencies between the Plan and the Disclosure Statement, the terms and provisions of the Plan shall control.

The Debtors and the Committee are the Plan Proponents within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### Defined Terms

**1.1** **"503(b)(9) Claims"** shall mean Claims arising under section 503(b)(9) of the **Bankruptcy** Code against a Debtor, which were to be filed against the Debtors on or before the 503(b)(9) Claims Bar Date.

**1.2** **"503(b)(9) Claims Bar Date"** shall mean February 14, 2011 at 5:00 p.m. (prevailing Eastern time) as established by the Bar Date Order.

**1.3** **"503(b)(9) Escrow"** shall mean the Escrowed Sale Proceeds in the amount of $800,000 set aside for payment of Allowed 503(b)(9) Claims pursuant to the Sale Order and the Settlement Order.

**1.4** **"Administrative Expense Bar Date"** shall mean the date that falls on the thirtieth (30th) day following the Confirmation Date by which Holders of Administrative Expense Claims, other than Administrative Expense Claims arising under section 503(b)(9) of

the Bankruptcy Code and Administrative Expense Claims arising pursuant to the allowance and payment of Professional Fee Claims, shall file with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

1.5 **"Administrative Expense Claims"** shall mean a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Debtors' Estates under section 1930, chapter 123 of title 28 of the United States Code; (d) any 503(b)(9) Claims, and (e) any Claims that have been designated **"Administrative Expense Claims"** by order of this Court.

1.6 **"Affiliate"** shall mean **"affiliate"** as defined in section 101(2) of the Bankruptcy Code.

1.7 **"Allowed"** shall mean all of or a portion of a Claim against the Debtors or an Interest in the Debtors (a) that has been listed by the Debtors in their Schedules as liquidated in amount and not Disputed or Contingent, and with respect to which no contrary proof of Claim or proof of Interest has been filed, (b) as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors (with the consent of the Committee) prior to the Effective Date, or the Liquidating Trustee on or after the Effective Date or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions under this Plan, a Claim or Interest that has been deemed **"Allowed"** shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

1.8 **"Asset Purchase Agreement"** shall mean that certain asset purchase agreement by and between the Debtors and the Purchaser dated December 16, 2010.

1.9 **"Assigned Avoidance Actions"** shall mean those Avoidance Actions identified in the Plan Supplement that were assigned to the Purchaser under the Asset Purchase Agreement and released by the Purchaser as of the closing date of the Sale.

**1.10** **"Avoidance Actions"** shall mean any and all claims and causes of action of the Debtors arising under the Bankruptcy Code, including, without limitation, sections 544, 545, 547, 548, 549, and 550 thereof.

**1.11** **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**1.12** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

**1.13** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms or the Local Rules of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**1.14** **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing proofs of Claim or proofs of Interest against the Debtors in these Chapter 11 Cases for that specific Claim or Interest.

**1.15** **"Bar Date Order"** shall mean the Order (a) Fixing Last Date for Filing Proofs of Claim, (b) Fixing Last Date for Filing Proof of Claim by Governmental Units; (c) Fixing Last Date for Filing Requests for Allowance of Section 503(b)(9) Expense Claims; and (d) Designating Form and Manner of Notice Thereof [Docket No. 526].

**1.16** **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.17** **"Cash"** shall mean money that is legal tender of the United States of America.

**1.18** **"Causes of Action"** shall mean all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, defenses, judgments, third-party claims, counterclaims, and cross claims (including, but not limited to, all Claims arising under state, federal or other non-bankruptcy law, and any avoidance, recovery, subordination or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including any and all Claims and causes of action under sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code) that are or may be pending or existing on the Effective Date against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including the Unknown Causes of Action that have not been released by the Plan, the Sale Order, the Settlement Order or any other order of the Bankruptcy Court.

**1.19** **"Circle System"** shall mean Circle System Group, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.20** **"Circle System Matters"** shall mean all Causes of Action held by the Debtors related to their acquisition of Circle System, including, without limitation, with respect to each of

the following proceedings (and any and all appeals with respect to each of the following): (i) the breach of employment agreement action filed in the First Judicial District of Pennsylvania, Philadelphia County, styled as Alan Abeshaus, et al. v. Circle System Group, Inc., Case No. 02797; (ii) the breach of stock purchase agreement, securities and common law fraud action filed in First Judicial District of Pennsylvania, Philadelphia County, styled as Circle System Group, Inc., et al. v. Alan Abeshaus, et al., U.S.D.C. Ed of PA, No. 5:08-cv-05376; (iii) the false claims act filed in the United States District Court for the Eastern District of Pennsylvania, styled as Gerry Dale, et al. v. Circle System Group, Inc., et al., No. 06-cv-04747-JKG; and (iv) Twin City Fire Insurance Company v. Circle System Group, Inc., CCP Phila. County, July Term, 2010, No. 2648.

1.21 **"Chapter 11 Cases"** shall mean the chapter 11 cases commenced by the Debtors and jointly administered under case number 10-12795 (KJC) in the Bankruptcy Court.

1.22 **"Claim"** or **"Claims"** shall mean a claim or claims against any Debtor or Debtors, as such term is defined in section 101(5) of the Bankruptcy Code.

1.23 **"Claims Agent"** shall mean the Debtors' claims agent, Logan & Company, Inc.

1.24 **"Claims Objection Deadline"** shall mean one hundred and eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidating Trustee may seek extensions of this date from the Bankruptcy Court.

1.25 **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article II of this Plan.

1.26 **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

1.27 **"Confirmation Date"** shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

1.28 **"Confirmation Hearing"** shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.29 **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

1.30 **"Consummation"** shall mean the occurrence of the Effective Date.

1.31 **"Contingent"** shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.32** **"Creditor"** shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.33** ."**Critical Trade Vendor Escrow"** shall mean the Escrowed Sale Proceeds in the amount of $5,300,000 set aside for payment to the Critical Trade Vendors pursuant to the Sale Order and the Settlement Order.

**1.34** **"Critical Trade Vendors"** shall mean the critical trade vendors, as designated by the Purchaser in accordance with the Sale Order and the Settlement Order.

**1.35** **"Debtors"** shall mean SSI Liquidating, SH Liquidating, Mountain View, Circle System, Melas, RDH, and Triangle Sports.

**1.36** **"Disallowed"** shall mean with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the Debtors or Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, Contingent or unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (vi) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is Contingent as of the time of allowance or disallowance of such Claim. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**1.37** **"Disbursing Agent"** shall mean (a) on or prior to the Effective Date, the Debtors and (b) after the Effective Date, the Liquidating Trustee; provided that the Debtors or the Liquidating Trustee may, in their discretion, retain a third party to act as Disbursing Agent.

**1.38** **"Disclosure Statement"** shall mean the disclosure statement accompanying the Plan, as amended, supplemented or modified from time to time, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

**1.39** **"Disputed"** shall mean any Claim or Interest: (a) which is listed in the Schedules as disputed, Contingent or unliquidated and for which a proof of Claim or proof of Interest has been timely filed pursuant to this Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court; (b) which is objected to in whole or in part on or before the Claims Objection Deadline (or on or before any deadline for objecting to Interests) or for which a request for estimation has been Filed in accordance with the Bankruptcy Code and the Bankruptcy Rules and as to which no Final Order allowing or disallowing such Claim or Interest has been entered; or (c) for which a motion to approve a settlement of such Claim or Interest has been Filed in accordance with the Bankruptcy Code and the Bankruptcy Rules and as to which no Final Order approving or disapproving such settlement has been entered. To the extent an Objection relates to the allowance of only part of a Claim or Interest, such Claim or Interest shall be Disputed only to the extent of the Objection.

**1.40** **"Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve"** shall mean the reserve established pursuant to Article 7.1(a) of this Plan, which reserve shall contain amounts relating to Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims and Disputed Secured Claims.

**1.41** **"Disputed General Unsecured Claims Reserve"** shall mean the reserve established pursuant to Article 7.1(c) of the Plan, which reserve shall contain amounts relating to Disputed General Unsecured Claims, Disputed Unsecured Convenience Claims, and Disputed Critical Vendor Claims.

**1.42** **"Distribution"** shall mean a delivery of Cash by the Disbursing Agent to the Holders of Allowed Claims or Allowed Interests pursuant to this Plan.

**1.43** **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to this Plan.

**1.44** **"Distribution Record Date"** shall mean the date established for determining the Holders of Claims and Interests entitled to Distributions pursuant to the Plan, which shall be the Confirmation Date.

**1.45** **"Effective Date"** shall mean the first Business Day after the later of the date on which (a) all conditions in Article 10.1 of this Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect; provided, however, the Effective Date may occur on such other date agreed to in writing by the Debtors and the Committee.

**1.46** **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.47** **"Escrowed Sale Proceeds"** shall mean the aggregate of $6.5 million of the Sale Proceeds comprised of the Critical Trade Vendor Escrow, the Trade Creditor Escrow and the 503(b)(9) Escrow.

**1.48** **"Estate(s)"** shall mean the estates of each of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.49** **"Excluded Assets"** shall have the meaning ascribed to it in the Asset Purchase Agreement.

**1.50** **"Executory Contract"** shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under 365 of the Bankruptcy Code.

**1.51** **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

**1.52** **"Final Order"** shall mean an unstayed order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors and the Committee (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.53** **"General Unsecured Claim"** shall mean a Claim against a Debtor, including any Rejection Claims or Intercompany Claims, but excluding any Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Critical Trade Vendor Claims, Unsecured Convenience Claims, Penalty Claims, Interests and Intercompany Interests.

**1.54** **"General Unsecured Claim Bar Date"** shall mean February 14, 2011 at 5:00 p.m. (Prevailing Eastern Time) for certain Claims arising before the Petition Date, including General Unsecured Claims, Unsecured Convenience Claims or Priority Non-Tax Claims as established by the Bar Date Order.

**1.55** **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.56** **"Governmental Unit Bar Date"** shall mean March 14, 2011 at 5:00 p.m. (Prevailing Eastern Time) as established by the Bar Date Order.

**1.57** **"Holder"** or **"Holders"** shall mean a Person or an Entity holding a Claim or Interest.

**1.58** **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.59** **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired.

**1.60** **"Insider"** shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

**1.61** **"Intercompany Claim"** shall mean any Claim by a Debtor against another Debtor.

**1.62** **"Intercompany Interests"** shall mean those Interests held by SH Liquidating in each of the other Debtors and any Interest of a Debtor in the Treasury stock of any other Debtor.

**1.63** **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated stock or a similar security.

**1.64** **"IRS"** shall mean the Internal Revenue Service.

**1.65** **"Liquidating Trust"** shall mean the liquidating trust established by this Plan and described in Article 6.3 of this Plan and the Liquidating Trust Agreement.

**1.66** **"Liquidating Trust Agreement"** shall mean the agreement establishing and delineating the terms and conditions of the Liquidating Trust, substantially in the form included in the Plan Supplement.

**1.67** **"Liquidating Trust Assets"** shall mean all assets of the Estates, including Causes of Action, Non-Trade Avoidance Actions and the Excluded Assets, transferred, conveyed and assigned, pursuant to the Plan, by the Debtors to the Liquidating Trust as of the Effective Date.

**1.68** **"Liquidating Trust Beneficiaries"** shall mean the Holders of Allowed Claims and Interests under this Plan.

**1.69** **"Liquidating Trust Expense Reserve"** shall mean the reserve established pursuant to Section 7.1(b) of the Plan by the Liquidating Trustee to hold funds as are reasonably necessary for the Liquidating Trust to satisfy the expenses of administering the Liquidating Trust, including, without limitation, the winding down and closing of the Chapter 11 Cases, the Liquidating Trustee's reasonable professional fees and expenses in respect of the claims reconciliation process, the liquidation of Liquidating Trust Assets, the prosecution, negotiation and settlement of any Causes of Action with respect thereto, and the making of Distributions by the Liquidating Trustee under this Plan.

**1.70** **"Liquidating Trust Protected Parties"** shall mean collectively the Liquidating Trust, the Liquidating Trustee, and each of their members, designees, agents, professionals, employees, mangers, partners, actuaries, financial advisors, investment bankers, and attorneys.

**1.71** **"Liquidating Trustee"** shall mean Steven D. Sass of Steven D. Sass, LLC.

**1.72** **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware.

**1.73** **"Melas"** shall mean Melas, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.74** **"Mountain View"** shall mean Mountain View Investment Company of Illinois, one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.75** **"Non-Trade Avoidance Actions"** shall mean any and all Avoidance Actions that are not Assigned Avoidance Actions, as identified in the Plan Supplement.

**1.76** **"Objection(s)"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim).

**1.77** **"Penalty Claim"** shall mean any Claim against a Debtor, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (but only to the extent that such attorneys' fees are punitive in nature), multiple, treble, exemplary or punitive damages, or for any other amount that does not represent compensation for actual pecuniary loss suffered by the Holder of such Claim, and all Claims against any of the Debtors of the type described in section 510(b) of the Bankruptcy Code.

**1.78** **"Permissible Investments"** shall mean (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) demand deposits or certificates of deposit at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, or (d) such other investments as the Bankruptcy Court may approve from time to time.

**1.79** **"Person"** shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

**1.80** **"Petition Date"** shall mean September 6, 2010 for Mountain View, SSI Liquidating, Circle System, Melas, RDH, Triangle Sports, and shall mean September 15, 2010 for SH Liquidating.

**1.81** **"Plan"** shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time

including in accordance with any Plan Supplement and the Bankruptcy Code or the Bankruptcy Rules.

**1.82** **"Plan Proponents"** shall mean the Debtors and the Committee.

**1.83** **"Plan Supplement"** shall mean the supplement to the Plan to be Filed as provided for herein.

**1.84** **"Plan Supplement Filing Date"** shall mean the date, which shall be at least five (5) days prior to the Voting Deadline, on which the Plan Supplement shall be Filed with the Bankruptcy Court.

**1.85** **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

**1.86** **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

**1.87** **"Professional"** or collectively **"Professionals,"** shall mean a Person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.88** ."**Professional Fee Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Confirmation Date, as set forth in Article 3.1 herein.

**1.89** **"Professional Fee Claims"** shall mean all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases on or prior to the Effective Date.

**1.90** **"Pro Rata"** shall mean the proportion that the Allowed Claim or Interest in a particular Class bears to the aggregate amount of (a) Allowed Claims or Allowed Interests in such Class as of the date of determination, plus (b) Disputed Claims or Disputed Interests in such Class as of the date of determination, in their aggregate face amounts or such other amount: (i) as calculated by the Debtors or the Liquidating Trustee, as applicable, on or before the date of any such Distribution, (ii) as determined by an Order of the Bankruptcy Court estimating such Disputed Claim, or (iii) as directed by a Final Order of the Bankruptcy Court.

**1.91** **"Purchaser"** shall mean Kranos Intermediate Holding Company, the Entity that acquired substantially all of the Debtors' assets pursuant to the Sale Order.

**1.92** **"RDH"** shall mean R.D.H. Enterprises, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.93 "Rejection Bar Date"** shall mean the deadline by which a counterparty to a rejected Executory Contract or an unexpired lease of the Debtors must file a proof of Claim for damages resulting from the rejection of such Executory Contract or unexpired lease by the Debtors, and shall be the later of: (a) the General Unsecured Claim Bar Date; (b) thirty (30) days after the entry of an order by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order authorizing such rejection.

**1.94 "Rejection Claim"** shall mean any Claim for amounts due as a result of the rejection by the Debtors of any Executory Contract or unexpired lease under section 365 of the Bankruptcy Code.

**1.95 "Released Parties"** shall mean the Debtors, the Committee, and any of their respective present or former officers, directors, shareholders, members, Affiliates, employees, managers, partners, attorneys, actuaries, financial advisors, investment bankers, agents, and professionals.

**1.96 "Reserves"** shall mean, collectively, the Disputed Administrative, Priority Tax, Priority Non-Tax, and Secured Claims Reserve, the Liquidating Trust Expense Reserve, the Disputed General Unsecured Claims Reserve and any other reserves established by the Liquidating Trustee pursuant to Article 7.1 of the Plan.

**1.97 "Sale"** shall mean the sale of substantially all of the Debtors' assets to Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

**1.98 "Sale Motion"** shall mean the Debtors' Motion for Entry of Orders: (A)(I) Approving Bid Procedures Relating to Sale of the Debtors' Assets; (II) Approving Bid Protections; (III) Scheduling a Hearing to Consider the Sale; (IV) Approving the Form and Manner of Notice of Sale by Auction; (V) Establishing Procedures for Noticing and Determining Cure Amounts; and (VI) Granting Related Relief; and (B)(I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of Debtors Outside the Ordinary Course of Business; (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (III) Authorizing the Assumption, Sale and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief [Docket No. 331], Filed on November 22, 2010.

**1.99 "Sale Order"** shall mean the Order (i) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of Debtors Outside the Ordinary Course of Business, (ii) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (iii) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (iv) Granting Related Relief entered by the Bankruptcy Court on December 16, 2010 [Docket No. 438].

**1.100 "Schedules"** shall mean the schedules of assets and liabilities, schedules of Executory Contracts and unexpired leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

**1.101 "Secured Claim"** shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected, and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of this Plan (subject to the Confirmation Order becoming a Final Order). The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.102 "Settlement Order"** shall mean the Order Authorizing and Approving (A) the Settlement by and Among Debtors, Riddell, Windjammer, Gridiron, Purchaser and Committee with Respect to the Global Resolution of Certain Litigation and Claims, and (B) The Consummation of the Transactions Contemplated entered by the Bankruptcy Court on February 11, 2011 [Docket No. 643].

**1.103 "SH Liquidating"** shall mean SH Liquidating, Inc., formerly known as Schutt Holdings, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.104 "SSI Liquidating"** shall mean SSI Liquidating, Inc., formerly known as Schutt Sports, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.105 "Solicitation Procedures Order"** shall mean the Order (A) Approving the Disclosure Statement, (B) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors, (C) Scheduling a Hearing to Consider Confirmation of the Joint Plan of Liquidation, and (D) Establishing Notice and Objection Procedures in Respect Thereof entered by the Bankruptcy Court on March 30, 2011 [Docket No. 795].

**1.106 "Tax"** or **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.107 "Trade Claims"** shall mean Claims asserted by Trade Creditors.

**1.108 "Trade Creditor Escrow"** shall mean Escrowed Sale Proceeds in the amount of $400,000.00 set aside for payment to the Trade Creditors pursuant to the Sale Order and the Settlement Order.

**1.109 "Trade Creditors"** shall mean the trade creditors set forth in the Notice of Filing of Exhibit A (Trade Creditor Listing) to Term Sheet Annexed to Debtors' Motion For Entry of Order, Pursuant to Sections 105, 503(b)(3)(D) and 1107 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9019, Authorizing and Approving (A) Settlement By and Among Debtors, Riddell, Windjammer, Gridiron, Purchaser and Committee With Respect to the Global Resolution of Certain Litigation and Claims and (B) Consummation

of Transactions Contemplated Thereby Filed with the Bankruptcy Court on February 4, 2011 [Docket No. 613], which listing of Trade Creditors may be amended, modified or supplemented from time to time in accordance with the Settlement Order and which listing will be included in the Plan Supplement.

**1.110 "Triangle Sports"** shall mean Triangle Sports, Inc., one of the debtors and debtors in possession in the Chapter 11 Cases.

**1.111 "Unclaimed Distributions"** shall mean any undeliverable or unclaimed Distributions.

**1.112 "Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.113 "Unsecured Convenience Claims"** shall mean a Claim against a Debtor that is a General Unsecured Claim in an amount equal to or less than $5,000.

**1.114 "Unknown Causes of Action"** shall mean any Causes of Action that currently exist or may subsequently arise and which have not been otherwise set forth herein, in the Disclosure Statement or in the Plan Supplement, because the facts upon which such Causes of Action are based are not currently or fully known by the Debtors or the Committee.

**1.115 "U.S. Trustee Fees"** shall mean fees payable pursuant to 28 U.S.C. § 1930.

**1.116 "Voting Deadline"** shall mean April 29, 2011, at 5:00 p.m. (prevailing Eastern time), the date and time by which all ballots to accept or reject the Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.

**1.117 "Windjammer"** shall mean Windjammer Mezzanine & Equity Fund, II, L.P.

**1.118 "Windjammer Subordinated Note Claim"** shall mean the Allowed General Unsecured Claim of Windjammer in the amount of $17,357,529, against each of the Debtors, based upon the Amended and Restated Subordinated Note Agreement, as such agreement may have been amended or modified, which Claim was Allowed pursuant to the Settlement Order.

### Rules of Interpretation

**1.119** For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used in the Plan that is not otherwise defined in the Plan shall have the meaning ascribed to it in the Disclosure Statement (or any exhibit hereto or thereto), (b) any capitalized term used in the Plan that is not defined in the Plan or the Disclosure Statement, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (c) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter, (d) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on

particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (e) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (f) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (g) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (h) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (i) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

**2.1    Classification**.  All Claims and Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article III of the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

For purposes of brevity and convenience, the classification of Claims and Interests set forth in this Article II applies to each Debtor individually.

| Class | Status | Voting Rights |
|---|---|---|
| **Class 1**: Priority Non-Tax Claims | Unimpaired | Not entitled to Vote<br>Deemed to accept Plan |
| **Class 2**: Secured Claims | Unimpaired | Not entitled to Vote<br>Deemed to accept Plan |
| **Class 3**: General Unsecured Claims | Impaired | Entitled to Vote |
| **Class 4**: Critical Trade Vendor Claims | Impaired | Entitled to Vote |
| **Class 5**: Unsecured Convenience Claims | Impaired | Entitled to Vote |
| **Class 6**: Penalty Claims | Impaired | Entitled to Vote |
| **Class 7**: Interests | Impaired | Entitled to Vote |
| **Class 8**: Intercompany Interests | Impaired | Not entitled to Vote<br>Deemed to reject Plan |

### 2.2 Unimpaired Classes of Claims

**Class 1: Priority Non-Tax Claims**. Class 1 shall consist of Priority Non-Tax Claims against the Debtors. Class 1 Claims are Unimpaired by the Plan and the Holders of Allowed Class 1 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

**Class 2: Secured Claims**. Class 2 shall consist of the Allowed Secured Claims against the Debtors. Class 2 Claims are Unimpaired by the Plan and the Holders of Class 2 Claims are not entitled to vote on the Plan.

### 2.3 Impaired Classes of Claims

**Class 3: General Unsecured Claims**. Class 3 shall consist of all Allowed General Unsecured Claims. Class 3 Claims are Impaired by the Plan and the Holders of Class 3 Claims are entitled to vote on the Plan.

**Class 4: Critical Trade Vendor Claims**. Class 4 shall consist of all Allowed Critical Trade Vendor Claims. Class 4 Claims are Impaired by the Plan and the Holders of Class 4 Claims are entitled to vote on the Plan.

**Class 5: Unsecured Convenience Claims**. Class 5 shall consist of all Allowed Unsecured Convenience Claims against the Debtors. Class 5 Claims are Impaired by the Plan and the Holders of Class 5 Claims are entitled to vote on the Plan.

**Class 6: Penalty Claims**. Class 6 shall consist of all Penalty Claims. Class 6 Claims are Impaired by the Plan and the Holders of Class 6 Claims are entitled to vote on the Plan.

### 2.4 Impaired Classes of Interests

**Class 7: Interests**. Class 7 shall consist of all Interests, excluding Intercompany Interests. Class 7 Interests are Impaired by the Plan and the Holders of Class 7 Interests are entitled to vote on the Plan.

**Class 8:  Intercompany Interests.**  Class 8 shall consist of all Intercompany Interests. Because Holders of Class 8 Intercompany Interests will receive no Distribution under the Plan, Holders of Class 8 Intercompany Interests are Impaired and deemed to reject the Plan, and, therefore are not entitled to vote on the Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

For purposes of brevity and convenience, the treatment of unclassified Claims set forth in this Article III applies to each Debtor individually.

**3.1**  **Administrative Expense Claims.**  Within the time period provided in Article VII of this Plan, each Holder of an Allowed Administrative Expense Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Expense Claim: (a) Cash equal to the amount of such Allowed Administrative Expense Claim; or (b) such other treatment as to which the Debtors, in consultation with the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Expense Claim shall have agreed upon in writing.

(a)  **Bar Date for Administrative Expense Claims.**  Holders of Administrative Expense Claims, other than 503(b)(9) Claims and Professional Fee Claims, shall file with the Claims Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, **so as to actually be received on or before the Administrative Expense Bar Date**.  Any such Claim not filed by the Administrative Expense Bar Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Administrative Expense Bar Date and shall constitute notice of such Bar Date.  The Liquidating Trustee shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Expense Claims.

(b)  **Bar Date for Applications for Professional Fees.**  Professional Fee Claims are Administrative Expense Claims and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.  If an application for a Professional Fee Claim is not Filed by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth the Professional Fee Bar Date and shall constitute notice of such Bar Date.

**3.2**  **U.S. Trustee Fees.**  All fees payable on or before the Effective Date pursuant to section 1930 of Title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date.  From and after the Effective Date, the Liquidating Trust shall be liable and shall

pay the fees assessed against the Debtors' Estates until such time as a particular Debtor's Chapter 11 Case is closed, dismissed or converted.

**3.3     Priority Tax Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) such other treatment as to which the Debtors, in consultation with the Committee, or the Liquidating Trustee, as appropriate, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

For purposes of brevity and convenience, the treatment of classified Claims and Interests set forth in this Article IV applies individually to each Debtor.

Unless the Holder of an Allowed Claim or Allowed Interest and the Debtors (in consultation with the Committee), or the Liquidating Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Claim or Allowed Interest shall receive the following Distributions in accordance with Article VII of the Plan:

**4.1     Class 1: Priority Non-Tax Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors, in consultation with counsel to the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

**4.2     Class 2: Secured Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) one of the treatments specified in section 1124 of the Bankruptcy Code; or (B) such other treatment which the Debtors, in consultation with counsel to the Committee, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Secured Claim have agreed upon in writing.

**4.3     Class 3: General Unsecured Claims.** Within the time period provided in Article VII of this Plan, each Holder of an Allowed General Unsecured Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 3 Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims and any expenses of the Liquidating Trust.

**4.4     Class 4: Critical Trade Vendor Claims.** Within the time period provided in Article VII of the Plan, each Holder of an Allowed Critical Trade Vendor Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed 4 Class Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of

all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims and all expenses of the Liquidating Trust; provided, however a Holder of an Allowed Critical Vendor Claim shall not receive any Distribution under the Plan until the Holders of Allowed General Unsecured Claims have received a percentage recovery under the Plan, on account of their Allowed General Unsecured Claims, that equals the percentage recovery received by such Holder of an Allowed Critical Vendor Claim, on account of its Allowed Critical Vendor Claim, from the Critical Trade Vendor Escrow.

4.5    **Class 5: Unsecured Convenience Claims.**  Within the time period provided in Article VII of this Plan, each Holder of an Allowed Unsecured Convenience Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 5 Claim a Distribution from the Liquidating Trust equal to Cash in the amount of eighteen percent (18 %) of its Allowed Unsecured Convenience Claim.   Holders of Class 5 Unsecured Convenience Claims shall not have any rights or receive any treatment as Holders of Class 3 General Unsecured Claims under the Plan or as Trade Creditors under the Settlement Order.

4.6    **Class 6: Penalty Claims.**  On the Effective Date, each Holder of an Allowed Penalty Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 6 Claim its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims, Allowed General Unsecured Claims, Allowed Critical Trade Vendor Claims and expenses of the Liquidating Trust.

4.7    **Class 7: Interests.**  Within the time period provided in Article VII of the Plan, each Holder of an Allowed Interest, excluding Intercompany Interests, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 7 Interest its Pro Rata share of Liquidating Trust Assets remaining after payment in full in Cash of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed Unsecured Convenience Claims, Allowed General Unsecured Claims, Allowed Critical Trade Vendor Claims, Allowed Penalty Claims and all expenses of the Liquidating Trust.  Each Holder of Allowed Interests shall be paid pursuant to the terms of any documents by and between the Debtors and such Holders, including without limitation, the corporate charter and any shareholder agreements.

4.8    **Class 8: Intercompany Interests.**  On the Effective Date, all Intercompany Interests shall be deemed canceled, extinguished and discharged and of no further force or effect. The Holders of Intercompany Interests shall not be entitled to receive or retain any property on account of such Intercompany Interests.

4.9    **Reservation of Rights Regarding Claims and Interests**.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1     Classes Entitled to Vote.**  Because Claims and Interests in Classes 3, 4, 5, 6 and 7 are Impaired and Holders thereof will receive or retain property or an interest in property under the Plan, Holders of Claims and Interests in Classes 3, 4, 5, 6 and 7 shall be entitled to vote to accept or reject the Plan.

**5.2     Acceptance by Impaired Classes of Claims or Interests.**  In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.  In accordance with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if such Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Plan.

**5.3     Presumed Acceptance by Unimpaired Classes.**  Because Claims in Classes 1 and 2 are Unimpaired pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 and 2 are deemed to have accepted the Plan and, therefore, Holders of Claims in Classes 1 and 2 are not entitled to vote to accept or reject the Plan.

**5.4     Presumed Rejections by Impaired Classes.**  Because Holders of Intercompany Interests in Class 8 are not entitled to receive or retain any property under the Plan, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Intercompany Interests in Class 8 are presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

**5.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents reserve the right to request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**5.6     Controversy Concerning Impairment.**  If a controversy arises as to whether any Claim or Interest is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**5.7     Elimination of Vacant Classes.**  Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

**5.8** **Removal of Debtors.** If this Plan cannot be confirmed with respect to one or more of the Debtors, the Plan Proponents may remove such Debtor(s) from this Plan. In such event, the Classes pertaining to such Debtor(s) will be removed from this Plan, and the Plan will omit any treatment of the assets and liabilities of such Debtor(s). The removal of any Debtor from this Plan will not affect this Plan with respect to any other Debtor.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

**6.1** **Funding of Plan.** The Plan will be funded by the Cash held by the Debtors as of the Effective Date, and thereafter by the proceeds of the Liquidating Trust Assets.

**6.2 -** [INTENTIONALLY OMITTED]

**6.3** **Liquidating Trust.**

**(a)** **Appointment of the Liquidating Trustee.** Steven D. Sass of Steven D. Sass, LLC shall serve as the Liquidating Trustee. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be as of the Effective Date.

In accordance with the Liquidating Trust Agreement, the Liquidating Trustee shall serve in such capacity through the earlier of (i) the date that the Liquidating Trust and the Reserves are dissolved in accordance with Article 7.8 and (ii) the date such Liquidating Trustee resigns, is terminated or is otherwise unable to serve, provided, however, that, in the event that the Liquidating Trustee resigns, is terminated or is unable to serve, then the Court, upon the motion of any party-in-interest, shall approve a successor to serve as the Liquidating Trustee, and such successor Liquidating Trustee shall serve in such capacity until the Liquidating Trust is dissolved.

**(b)** **Establishment of a Liquidating Trust.** On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant to this Plan. In the event of any conflict between the terms of this Article 6.3 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

**(c)** **Liquidating Trust Assets.** Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional Liquidating Trust Assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically vest in the Liquidating Trust free and clear of all Claims and liens, subject only to the Allowed Claims or Allowed Interests of the Liquidating Trust Beneficiaries as set forth in the Plan and the expenses of the Liquidating Trust as set forth herein and in the Liquidating Trust Agreement. Thereupon, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

In connection with any Causes of Action that are included in the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity

attaching to any documents or communications thereto (whether written or oral) shall also exist for the benefit of the Liquidating Trust and shall vest in the Liquidating Trustee and its representatives, and shall also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges.

(d) **Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor in-Interest.** The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, including the Causes of Action, make timely distributions to the Liquidating Trust Beneficiaries and not unduly prolong its duration. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors to the Liquidating Trust, as set forth in the Liquidating Trust Agreement, as a transfer of such assets by the Debtors to the Holders of Allowed Claims or Allowed Interests of Liquidating Trust Beneficiaries entitled to distributions from the Liquidating Trust Assets, followed by a transfer by such Holders to the Liquidating Trust. Thus, the Liquidating Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

As soon as reasonably practicable after the Effective Date, the Liquidating Trustee (to the extent that the Liquidating Trustee deems it necessary or appropriate in his or her sole discretion) shall value the Liquidating Trust Assets based on the good faith determination of the value of such Liquidating Trust Assets. The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidating Trust Assets.

The right and power of the Liquidating Trustee to invest the Liquidating Trust Assets transferred to the Liquidating Trust, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power to invest such Liquidating Trust Assets (pending distributions in accordance with the Plan) in Permissible Investments; provided, however, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

(e) **Responsibilities of Liquidating Trustee; Litigation.** The responsibilities of the Liquidating Trustee shall include, but shall not be limited to:

1.      the making of Distributions as contemplated herein;

2.      establishing and maintaining the Reserves in accordance with the terms of this Plan;

3.      conducting an analysis of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, General Unsecured Claims, Critical Trade Vendor Claims, Unsecured Convenience Claims, Intercompany Claims, Penalty Claims and Interests and prosecuting objections thereto or settling or otherwise compromising such Claims if necessary and appropriate in accordance with Articles 8.1 and 11.4;

4.      filing appropriate tax returns in the exercise of its fiduciary obligations;

5.      retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations;

6.      taking such actions as are necessary to prosecute, resolve or compromise, as appropriate, all Causes of Action, including, without limitation, the Circle Systems Matters and Non-Trade Avoidance Actions; and

7.      taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

**(f)      Expenses of Liquidating Trustee.**      Fees and expenses incurred by the Liquidating Trustee shall be paid from the Liquidating Trust Expense Reserve in accordance with Article VII below.

**(g)      Bonding of Liquidating Trustee.** The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his sole discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

**(h)      Fiduciary Duties of the Liquidating Trustee.** Pursuant to this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders all Claims and Interests that will receive Distributions pursuant to the terms of this Plan.

**(i)      Dissolution of the Liquidating Trust.** The Liquidating Trust shall be dissolved no later than three (3) years from the Effective Date unless the Bankruptcy Court, upon a motion Filed prior to the third anniversary or the end of any extension period approved by the Bankruptcy Court (the Filing of which shall automatically extend the term of the Liquidating Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  After (a) the final Distribution of the Reserves and the balance of the assets or proceeds of the Liquidating Trust